IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 06-728-JJF |
| v. | ) ) ) | **JURY DEMANDED** |
| DRIL-QUIP, INC. | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT DRIL-QUIP, INC.'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Attorneys for Defendant
Dril-Quip, Inc.*

OF COUNSEL:

Stephen H. Cagle
Eric S. Schlichter
Joan E. Beckner
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242
Telephone: (713) 787-1400
Facsimile: (713) 787-1440

DATED: April 4, 2007

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING ................................... 1

    A.    Prior Related Proceedings (Southern District of Texas) ..................... 3

    B.    This Proceeding ................................................................. 3


II.    SUMMARY OF ARGUMENT ....................................................... 4

    1.    The Standard for Transfer Is a Balancing Test ............................... 4

    2.    In This Case, the Balance Is Strongly in Favor of Transfer ................. 5


III.    STATEMENT OF FACTS ......................................................... 7

    A.    Both Parties Principally Reside in Houston, Texas .......................... 7

    B.    Neither Party Has a Presence in Delaware ................................... 8

    C.    The U.S. District Court for the Southern District of Texas
        Considered and Ruled on the Same or Similar Issues
        Regarding Closely Related Patents in a Prior Case .......................... 8

    D.    Based on Disclosures Filed in the Prior Case,
        Non-Party Witnesses Reside in Houston, Texas –
        But Not in Delaware ........................................................... 9


IV.    ARGUMENT ..................................................................... 9

    A.    This Patent Action Could Have Been Brought in the Southern
        District of Texas ............................................................. 10

    B.    Private Convenience Factors Favor Transfer to the Southern
        District of Texas.............................................................. 10

**TABLE OF CONTENTS**
**(continued)**

1.   The Convenience and Location of the Parties Strongly Favor Transfer to the Southern District of Texas .................. 11

     a.   Plaintiff's Forum Preference Should Be Assigned Little Weight As It Is Not Near Its Principal Place Of Business or the Site of the Activities at Issue in This Lawsuit......................................... 11

     b.   Plaintiff's Forum Preference Should Be Assigned Little Weight As Plaintiff Appears to Be Forum Shopping To Avoid Prior Adverse Rulings and Findings in a Related Case .................................... 12

     c.   The Location of the Parties Strongly Favors Transfer To the Southern District of Texas As It Is Both Plaintiff's "Home Turf" and Defendant's "Hub of Activity" ............................................ 13

2.   The Convenience and Location of the Witnesses and Documents Also Favor Transfer to the Southern District of Texas ...................................................... 16

C.   Public Judicial Economy Factors Strongly Favor Transfer to the Southern District of Texas ................................................. 19

1.   Prior Related Case in the Southern District of Texas Involving the Same Technology and the Same or Related Patents in Suit Strongly Favors Transfer..................... 19

2.   Relative Docket Conditions ........................................... 23

3.   The Southern District of Texas Has a Strong Local Interest in Resolving This Dispute.................................... 24

D.   The Sum Total Balance of the Private and Public *Jumara* Factors Justifies Transfer to the Southern District of Texas ........................ 27

V.   CONCLUSION ....................................................................... 28

ii

# TABLE OF AUTHORITIES

**Cases**

*3Com Corp. v. D-Link Sys., Inc.*,
 C.A. No. 03-014-GMS, 2003 WL 1966438 (D. Del. Apr. 25, 2003) ...................16, 17

*Affymetrix, Inc. v. Synteni, Inc.*,
 28 F. Supp. 2d 192 (D. Del. 1998) .......................................................................5, 10, 19

*Alloc, Inc. v. Unilin Decor N.V.*,
 C.A. Nos. 03-253-GMS, 05-587-GMS, 2006 WL 3050815
 (D. Del. Oct. 26, 2006) ........................................................................................................14

*Am. High-Income Trust v. Allied Signal Inc.*,
 C.A. No. 00-690-GMS, 2002 WL 373473 (D. Del. Mar. 7, 2002) ..........................24

*Amoco Oil Co. v. Mobil Oil Corp.*,
 90 F. Supp. 2d 958 (N.D. Ill. 2000) .............................................................................24

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
 295 F. Supp. 2d 393 (D. Del. 2002) .....................................................................11, 15

*Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*,
 C.A. No. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005) ......................11, 12

*Boers v. United States*,
 133 F. Supp. 2d 64 (D.D.C. 2001) ...............................................................................14

*Brunswick Corp. v. Precor Inc.*,
 C.A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ....................20, 27

*Burstein v. Applied Extrusion Techs., Inc.*,
 829 F. Supp. 106 (D. Del. 1992) ...................................................................................17

*Cashedge, Inc. v. Yodlee, Inc.*,
 C.A. No. 06-170-JJF, 2006 WL 2038504
 (D. Del. Jul. 19, 2006) ......................................................................19, 20, 21, 22

*Glickenhaus v. Lytton Fin. Corp.*,
 205 F. Supp. 102 (D. Del. 1962) ..............................................................................16, 19

*Hall v. Kittay*,
 396 F. Supp. 261 (D. Del. 1975) .................................................................................23

## TABLE OF AUTHORITIES
### (continued)

*IKOS Sys., Inc. v. Cadence Design Sys., Inc.*,
  C.A. No. 02-1335-GMS, 2002 WL 31414136 (D. Del. Oct. 21, 2002) ...............14, 26

*Jahncke Serv., Inc. v. OKC Corp.*,
  301 F. Supp. 866 (D. Del. 1969).................................................................14, 16, 18, 23

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)........................................................................... *passim*

*Lee v. Ohio Cas. Ins. Co.*,
  445 F. Supp. 189 (D. Del. 1978)...................................................................................12

*Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*,
  271 F. Supp. 2d 142 (D.D.C. 2003) ............................................................................13

*Nilssen v. Osram Sylvania, Inc.*,
  C.A. No. 00-695-JJF, 2001 WL 34368395
  (D. Del. May 1, 2001)...........................................................................................16, 22

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*,
  803 F. Supp. 971 (D. Del. 1992).................................................................................20

*Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*,
  C.A. No. 96-232-SLR (D. Del. Sept. 25, 1996).........................................................20

*Paragon-Revolute Corp. v. C.F. Pease Co.*,
  120 F. Supp. 488 (D. Del. 1954)................................................................................11

*Plum Tree, Inc. v. Stockment*,
  488 F.2d 754 (3d Cir. 1973).........................................................................................4

*Ricoh Co. v. Aeroflex Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003)............................................................................27

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
  230 F. Supp. 2d 655 (E.D. Pa. 2002) ............................................................15, 25, 26

*Smithkline Corp. v. Sterling Drug, Inc.*,
  406 F. Supp. 52 (D. Del. 1975)...................................................................................19

*Spiegelberg v. Collegiate Licensing Co.*,
  402 F. Supp. 2d 786 (S.D. Tex. 2005) .......................................................................25

## TABLE OF AUTHORITIES
### (continued)

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988)................................................................................5

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.,*
    C.A. No. 04-852-SLR, 2005 WL 735880
    (D. Del. Mar. 30, 2005)..................................................................22, 23

*In re Tripati,*
    836 F.2d 1406 (D.C. Cir. 1988) ..................................................13

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.,*
    357 F. Supp. 2d 924 (E.D. Va. 2005) ........................................12

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)...................................................................4

**Statutes**

28 U.S.C. § 1391(b) ....................................................................10

28 U.S.C. § 1391(c) ....................................................................10

28 U.S.C. § 1400(b) ....................................................................10

28 U.S.C. § 1404(a) ............................................................*passim*

**Other**

Kristina Shevory, *Houston, The Oil Town, Is Sharing in a Boom,*
    N.Y. TIMES, Mar. 14, 2007..................................................26

Offshore Technology Conference (OTC): About OTC,
    http://www.otcnet.org/otcnet/about_otc/index.html ..............26

I.    **NATURE AND STAGE OF THE PROCEEDING**

Plaintiff's Original Complaint alleges infringement of two patents that relate to subsea horizontal wellheads or "trees" for use in offshore oil and gas well completions. [D.I. 1]    Plaintiff recently filed an Amended Complaint in which it also alleges infringement of a third patent relating to the same subject matter. [D.I. 6]    On the same date that Plaintiff filed its amended pleading, Defendant Dril-Quip, Inc. filed its Original Answer, Defenses, and Counterclaims, which among other things asserts counterclaims for declaratory judgment of patent invalidity, declaratory judgment of non-infringement, and declaratory judgment of patent unenforceability, as to the two originally asserted patents and as to three parent patents from which those patents linearly descend. [D.I. 8] Dril-Quip is preparing and soon will file an amended pleading responsive to Plaintiff's Amended Complaint.

A statement of the procedural posture of this case, however, would be incomplete without mention of proceedings regarding the same patent family (the "Hopper patent family") conducted before Judge Nancy F. Atlas in the U.S. District Court for the Southern District of Texas.    A schematic of the Hopper patent family tree (Fig. 1) is provided for reference below.

## FIG. 1

## HOPPER PATENT FAMILY
(identical written description and drawings)



EP 92305014
App. Date:  June 1, 1992

Asserted by
Plaintiff in
S.D. Tex.
(#1 - #2)

① Patent No.
5,544,707
Issue date:  Aug. 13, 1996

Continuation

② Patent No.
6,039,119
Issue date:  Mar. 21, 2000

Divisional

Application No.
09/092,549
App. date:  June 5, 1998
(abandoned)

Continuation

③ Patent No.
6,547,008
Issue date:  Apr. 15, 2003

Divisional

④ Patent No.
7,093,660
Issue date:  Aug. 22, 2006

Asserted
By Plaintiff
In This Suit
(#4 - #6)

Divisionals

⑤ Patent No.
6,991,039
Issue date:  Jan. 31, 2006

⑥ Patent No.
7,117,945
Issue date:  Oct. 10, 2006

Patents
At Issue
In This
Litigation
(#1 - #6)

### A.    Prior Related Proceedings (Southern District of Texas)

On January 17, 1997, Cooper Cameron Corp., since renamed Cameron International Corp. ("Cameron") – the Plaintiff in this case – filed an action, No. 4:97-cv-00155, in the Southern District of Texas against Kvaerner Oilfield Products Inc. for alleged infringement of U.S. Patent No. 5,544,707 ("the '707 patent") (Fig. 1 #1). PACER Docket Report (Ex. A hereto), No. 1.  On  May 10, 2000, Cameron amended its Complaint to allege infringement of an additional issued patent, U.S. Patent No. 6,039,119 ("the '119 patent") (Fig. 1 #2), which is a continuation of the '707 patent. *Id.* No. 174.  During the pendency of the case, Presiding Judge Nancy F. Atlas considered and issued rulings on various questions related to the construction of patent terms and to patent non-infringement, invalidity, and unenforceability. *See, e.g., id.* Nos. 247, 310, 311.  Ultimately, on September 29, 2003, after the parties stipulated to a settlement, the case was dismissed. *Id.* No. 323.

### B.    This Proceeeding

On December 1, 2006, Cameron filed this action against Dril-Quip in the District of Delaware. [D.I. 1]  Cameron's Original Complaint alleges infringement of U.S. Patent Nos. 7,093,660 ("the '660 patent") (Fig. 1 #4) and 7,117,945 ("the'945 patent") (Fig. 1 #6), both of which descend directly from, and share an identical written description and drawings with, the '707 and '119 patents previously litigated in the Southern District of Texas. *Id.*  On March 16, 2007, Cameron filed an Amended Complaint adding an allegation of infringement of U.S. Patent No. 6,991,039 ("the '039 patent") (Fig. 1 #5), which also descends directly from, and shares an identical written description and

3

drawings with, the '707 and '119 patents previously litigated in the Southern District of Texas. [D.I. 6]

In its recently filed Original Answer, Defenses, and Counterclaims, Dril-Quip's requested relief includes a declaratory judgment of invalidity, non-infringement, and unenforceability regarding the originally asserted '660 and '945 patents (Fig. 1 #4 and #6), as well as their direct linear ancestors in the Hopper patent family tree – U.S. Patent No. 6,547,008 ("the '008 patent") (Fig. 1 #3), and the '707 and '119 patents (Fig. 1 #1 and #2) that Plaintiff Cameron previously litigated in the Southern District of Texas.[1] [D.I. 8]    Additionally, Dril-Quip soon will file an amended pleading responsive to Plaintiff's recent assertion of the '039 patent (Fig. 1 #5).    Thus, all of the patents identified as #1 through #6 on Fig. 1 are at issue in the present litigation.

## II.    SUMMARY OF ARGUMENT

### 1.    The Standard for Transfer Is a Balancing Test

Section 1404(a) of Title 28 of the United States Code provides:    "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."    28 U.S.C. § 1404(a).    Whether to grant a requested transfer of venue is at the discretion of the trial judge. *See, e.g.*, *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).    The determination is an individualized, case-by-case consideration of convenience and fairness. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).    Thus, a

---

[1]    Although not currently involved in this dispute, Cameron has filed additional patent applications that are divisional applications of the '660 and '945 patents.    These divisional applications remain pending in the U.S. Patent and Trademark Office.    Dril-Quip reserves its right to amend its counterclaims to incorporate any new patent(s) issued as a result of these or any other related applications.

court must weigh a number of relevant case-specific factors to determine whether the litigation would proceed more conveniently and the interests of justice would be better served by the transfer. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

The Third Circuit has noted that "there is no definitive formula or list of the factors to consider" yet nevertheless has identified factors and divided them into private and public categories. *Jumara*, 55 F.3d at 879. The private factors include: (1) the plaintiff's forum preference, (2) the defendant's forum preference, and (3) where the claim arose, which first three factors collapse into other portions of the *Jumara* analysis; (4) the convenience of the parties; (5) the convenience of the witnesses to the extent they may be unavailable for trial; and (6) the location of records and other documents to the extent they could not be produced in the alternate forum. *See, e.g., Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197-202 (D. Del. 1998) (citing *id.*). The public factors include: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; and (5) the public policies of the fora. *Id.*

### 2.    In This Case, the Balance Is Strongly in Favor of Transfer

As a threshold matter, transfer to the Southern District of Texas is proper under § 1404(a) because the Southern District of Texas is the district in which Defendant Dril-Quip principally resides and, as such, is a "district or division where [the action] might have been brought." Moreover, under the relevant § 1404(a) factors detailed in Part IV below, logic dictates that the requested transfer is warranted in this case.

First, the convenience of the parties and witnesses weighs toward transfer. Both of the parties' principal places of business are located in the Southern District of Texas, and neither party has a place of business in Delaware. The majority of the witnesses are located in the Southern District of Texas (none in Delaware). All of Defendant's relevant documents are located in the Southern District of Texas (none in Delaware). Any alleged infringements would have occurred in the Southern District of Texas (none in Delaware). Thus, the Southern District of Texas is the much more convenient forum for Dril-Quip, and Cameron would not be inconvenienced by the transfer.

Second, the interest of judicial economy supports a transfer. Two of the six patents in suit – the parent patents from which the remaining four patents linearly descend and with which the remaining four patents share an identical disclosure (written description and drawings) – *already have been litigated* for a period of years, through discovery, claim construction, and summary judgment briefing, before Judge Atlas in Southern District of Texas. Accordingly, Judge Atlas in the Southern District of Texas has a preexisting working knowledge of the very same technology that is at issue in the present lawsuit. The fact of Judge Atlas's preexisting familiarity, coupled with court statistics regarding the average time to trial within the two districts, indicates there would be no delay (and possibly an acceleration) in Plaintiff's and Defendant's respective rights to be heard if the transfer is granted. Accordingly, for all of these reasons (detailed in Part IV below), the weight in the balance strongly favors transfer to the Southern District of Texas.

III.    STATEMENT OF FACTS

Both Plaintiff Cameron and Defendant Dril-Quip are incorporated in the State of Delaware. Defendant Dril-Quip additionally sets forth the following facts regarding activities in the Southern District of Texas.

A.    **Both Parties Principally Reside in Houston, Texas**

*Defendant Dril-Quip has its principal place of business – including its World Headquarters office and its only U.S. manufacturing facility – in Houston, Texas.* Reimert Decl. (Ex. B hereto) ¶¶ 5-6; *see also* Dril-Quip Web Site (Ex. C hereto). All of Dril-Quip's *documents* relevant or potentially relevant to this case are located and maintained in Houston, Texas. Ex. B ¶ 11. Nearly all of Dril-Quip's *business and marketing functions* related to subsea horizontal trees are conducted and coordinated in Houston, Texas. *Id.* ¶ 8. All of Dril-Quip's work related to *design and development* of any potential subsea horizontal tree product is done or coordinated in Houston, Texas. *Id.*    ¶ 9. Material *witnesses* knowledgeable of Dril-Quip's subsea horizontal tree business include Messrs. Reimert, Smith, and Mills of Dril-Quip, as well as other preliminarily identified witnesses Messrs. Milberger, Helmreich, and Eickenroht, all of whom reside in Houston, Texas. *Id.* ¶¶ 13-17.

Likewise, *Plaintiff Cameron has its principal place of business – including its Corporate Office, multiple Drilling and Production Systems Headquarters facilities, and its principal Research and Development center – in Houston, Texas.* Cameron Web Site (Ex. D hereto). Presumably most of its corresponding witnesses and documents that would be considered relevant or potentially relevant to this case are also located and maintained in Houston, Texas. Indeed, based on information available in Rule 26(a)

disclosures filed of record in the prior related litigation between Cooper Cameron Corp. (predecessor in interest to Cameron) and Kvaerner Oilfield Products, Inc., most if not all of the Cameron witnesses who are Cameron employees will reside in Houston, Texas or Aberdeen, Scotland. Ex. B ¶¶ 18, 20 & ex. A.

### B.     Neither Party Has a Presence in Delaware

The flip side of the same coin is that ***Defendant Dril-Quip has no office or facility in the State of Delaware.*** Ex. B ¶ 7. None of the witnesses or documents of Dril-Quip relevant or potentially relevant to this case is located in the State of Delaware. *Id.* ¶¶ 12-17. No work related to design or development of any potential subsea horizontal tree product was or is done by or on behalf of Dril-Quip in the State of Delaware. *Id.* ¶ 10. Likewise, ***Plaintiff Cameron has no office or facility in the State of Delaware.*** Ex. D (Cameron's listing of all of its locations in the United States, none of them in Delaware). None of the Cameron offices or facilities associated with its Subsea Systems division is located anywhere on the East Coast, or for that matter in any state east of Louisiana. Cameron Web Site (Ex. E hereto). Moreover, based on information available in Rule 26(a) disclosures filed of record in the prior related litigation between Cameron's predecessor in interest and Kvaerner Oilfield Products, Inc., no witnesses are expected to reside in Delaware. Ex. B ¶¶ 18-19 & ex. A.

### C.     The U.S. District Court for the Southern District of Texas Considered and Ruled on the Same or Similar Issues Regarding Closely Related Patents in a Prior Case

Each of the Hopper patents at issue (Fig. 1 #1 through #6) is related and ultimately claims priority to the same "parent" European Patent Application, Serial No. 92305014, which was filed on June 1, 1992. All of the patents in this family of patents

have a common specification and figures, and all of the patents claim the same general subject matter of a subsea wellhead apparatus and/or method of using such apparatus. In Civil Action No. 4:97-cv-00155, the U.S. District Court for the Southern District of Texas previously considered and ruled upon claim construction and other substantive issues relating to two of the patents at issue in this litigation and relating to the written disclosure and parent prosecution histories shared by *all* of the patents presently in suit. *See* Part I.A *supra* (citing Ex. A attached hereto).

### D.  Based on Disclosures Filed in the Prior Case, Non-Party Witnesses Reside in Houston, Texas – But Not in Delaware

Based on Rule 26(a) disclosures filed of record in the prior related litigation between Cameron's predecessor in interest and Kvaerner Oilfield Products, Inc., important non-party witnesses who reside in or travel regularly to Houston, Texas, will include those with information relevant to, *inter alia*, (1) prosecution of the '707 patent and/or of its descendant applications in the Hopper patent family tree; (2) the prior art; and/or (3) the development and marketing of subsea horizontal trees. Ex. B ¶¶ 18, 21 & ex. A. No non-party witnesses are expected to reside in Delaware. *Id.* ¶ 19 & ex. A. Further, it is unlikely that any expert witness to be identified in this case will be located in the State of Delaware, while it is probable that at least one expert witness to be identified in this case will be located in Houston, Texas. *See id.* ¶ 22.

## IV.  ARGUMENT

This patent action should be transferred to the Southern District of Texas so that Cameron's infringement claims and Dril-Quip's counterclaims all can be fully litigated in the same court that previously considered the parent patents in suit, including issues regarding their construction, invalidity, and unenforceability, and the same court that is

located in the city wherein both of the present parties principally reside and wherein any alleged claim would have arisen. A review of the factors relevant to the issue of transfer demonstrates that in this particular case, the balance of factors weighs strongly in favor of transfer.

### A.    This Patent Action Could Have Been Brought in the Southern District of Texas

Transfer under § 1404(a) is proper only if venue is proper in the original forum. Dril-Quip stipulates that venue is properly lodged in the District of Delaware as both parties are Delaware corporations. Additionally, transfer under § 1404(a) is proper only if the proposed transferee forum is a venue in which the action "might have been brought." 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Defendant Dril-Quip has its principal place of business in Houston, Texas. [D.I. 8] *See also* Ex. B ¶¶ 5-6. Thus, because Defendant resides in the Southern District of Texas, personal jurisdiction over the Defendant can be obtained in the proposed transferee district, and venue is proper there. 28 U.S.C. §§ 1391(b)-(c), 1400(b).

### B.    Private Convenience Factors Strongly Favor Transfer to the Southern District of Texas

On balance the private convenience factors – (1) plaintiff's forum preference, (2) defendant's forum preference, and (3) where the claim arose, which first three factors collapse into other portions of the *Jumara* analysis; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records – strongly favor transfer to the Southern District of Texas. *See Affymetrix*, 28 F. Supp. 2d at 197-202 (citing *Jumara*, 55 F.3d at 879).

1.    **The Convenience and Location of the Parties Strongly Favor Transfer to the Southern District of Texas**

a.    **Plaintiff's Forum Preference Should Be Assigned Little Weight As It Is Not Near Its Principal Place of Business Or the Site of the Activities at Issue in This Lawsuit**

Exactly what weight to assign a plaintiff's choice of forum depends on "the particular facts of each arising case." *Paragon-Revolute Corp. v. C.F. Pease Co.*, 120 F. Supp. 488, 490 (D. Del. 1954). If the plaintiff is not a resident of the forum, or if the forum is not the site of any act giving rise to the lawsuit, then plaintiff's forum choice is entitled to less deference from the district judge. *See, e.g., Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*, C.A. No. 05-357-SLR, 2005 WL 2786691, at *2-*3 (D. Del. Oct. 26, 2005) (Ex. F hereto) (noting this Court's prior recognition that "[w]hen the plaintiff has chosen to bring suit in a district that is not plaintiff's 'home turf' and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit." (alteration in original) (quotation marks and citations omitted)); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (finding it "appropriate to give the plaintiff's choice of forum less deference" in circumstances where "[both parties] are Delaware corporations[] [but] neither conducts business or has facilities in Delaware" and "[w]here an alternative forum is more convenient and has more substantial connections with the litigation").

Plaintiff Cameron's forum preference based on incorporation in Delaware should be assigned little weight in this case. *See Sig Simonazzi*, 295 F. Supp. 2d at 398-99 ("Where an alternative forum is more convenient and has more substantial connections

with the litigation 'incorporation in Delaware will not prevent transfer.'"). Plaintiff's forum choice is not "at or near its principal place of business" in Houston, Texas. *See* Ex. D (indicating Cameron's Corporate Office, and its Drilling and Production Systems headquarters office (including the Subsea Systems Division), are located in Houston, Texas); *Arrow*, 2005 WL 2786691, at *2-*3 (Ex. F). Moreover, Plaintiff Cameron's forum choice cannot be "at the site of the activities at issue in the lawsuit" – alleged patent infringement by one or more acts of manufacture, use, sale, offer for sale, or importation – as all of Dril-Quip's manufacturing, sales and marketing activities are coordinated and conducted at one or more of its facilities in Houston, Texas and (to a minimum degree) New Orleans, Louisiana. Ex. B ¶¶ 5-6, 8-9; *Arrow*, 2005 WL 2786691, at *2-*3 (Ex. F). Dril-Quip does not coordinate or conduct any of the aforementioned activities in Delaware and has no place of business in Delaware. Ex. B ¶¶ 7, 10. Accordingly, plaintiff's forum choice should be accorded little weight relative to the other factors weighing toward transfer. *Lee v. Ohio Cas. Ins. Co.*, 445 F. Supp. 189, 192 (D. Del. 1978) (stating the rule that "plaintiff's choice of forum is given less weight when the subject matter of the suit has no connection with the forum selected by the plaintiff" or "when a plaintiff has not sued in a district which is his 'home turf'").

        **b.**    **Plaintiff's Forum Preference Should Be Assigned Little Weight As Plaintiff Appears to Be Forum Shopping To Avoid Prior Adverse Rulings and Findings in a Related Case**

Courts also give less weight to plaintiff's forum choice if that party appears to be forum shopping or seeking a safe haven from the lawful orders of another court. *See, e.g., U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 936-37 (E.D. Va. 2005) (noting "plaintiff's chosen forum should be accorded little weight" when a transfer

"would prevent [plaintiff] from using one district court as a 'safe haven' from the lawful orders of another" or when plaintiff otherwise has "invit[ed] an inference of forum shopping" by its prior filing of related actions elsewhere); *Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142, 150-51 (D.D.C. 2003) (citing *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (transferring case to a district that had heard earlier cases by the plaintiff)). Clearly, Cameron did not hesitate to select venue in the Southern District of Texas, its home turf, in its prior case asserting the same patent family against another defendant. However, likely because that district court made several adverse rulings and findings (including construction of patent terms and in denials of summary judgment) that would affect the merits of its present case, Cameron now seeks to begin anew in a different forum in the hope of achieving a better result. Such blatant forum-shopping is impermissible under federal law and should not be tolerated, particularly in view of the balance of convenience strongly in favor of transfer in this case.

c.    **The Location of the Parties Strongly Favors Transfer to the Southern District of Texas As It Is Both Plaintiff's "Home Turf" and Defendant's "Hub of Activity"**

The following related private convenience factors all strongly favor transfer to the Southern District of Texas in this case: Defendant's choice of forum, convenience to Defendant, no legitimate claim of inconvenience to Plaintiff, and the forum in which the alleged claims arose. *See Jumara*, 55 F.3d at 879. Defendant Dril-Quip's choice of forum, the Southern District of Texas (Houston), is the location of Dril-Quip's Worldwide Headquarters and only U.S. manufacturing facility and, as such, is also the location of its key personnel and documents. Ex. B ¶¶ 5-6, 9, 11, 13-15; Ex. C. Houston is also where Plaintiff Cameron is headquartered and has its principal offices (*see* Ex. D),

13

and therefore the forum choice of the Southern District of Texas simply makes more logical sense "[f]or the convenience of [both] parties." 28 U.S.C. § 1404(a).

Indeed, courts have acknowledged a strong inclination in favor of transfer when all parties are residents of the proposed transferee district. *See, e.g., IKOS Sys., Inc. v. Cadence Design Sys., Inc.*, C.A. No. 02-1335-GMS, 2002 WL 31414136, at *1 (D. Del. Oct. 21, 2002) (Ex. G hereto) (noting that both parties were Delaware corporations but finding "little connection between Delaware and this action or the parties" as the parties' headquarters and majority of witnesses were located in the transferee forum); *Jahncke Serv., Inc. v. OKC Corp.*, 301 F. Supp. 866, 867-68 (D. Del. 1969) (transferring venue to a district "much closer to [the parties'] bases of operation than in Delaware"). Clearly, litigating in Dril-Quip's home district is more convenient for the defendant; by the same token, it cannot legitimately be said that forcing Cameron to litigate in its home district will substantially inconvenience or "prejudice or burden the plaintiff in any way." *Boers v. United States*, 133 F. Supp. 2d 64, 65-66 (D.D.C. 2001); *see also Alloc, Inc. v. Unilin Decor N.V.*, C.A. Nos. 03-253-GMS, 05-587-GMS, 2006 WL 3050815, at *3 (D. Del. Oct. 26, 2006) (slip op.) (Ex. H hereto) (noting that both parties were Delaware corporations but finding "little connection between Delaware and this action or the parties" as no party had facilities or a principal place of business in Delaware and as one plaintiff's principal place of business and a prior related action involving some of the parties (including that plaintiff) were located in the transferee forum).

The Southern District of Texas is also the forum in which the alleged claims are most likely to have arisen. Houston is where Dril-Quip coordinates and conducts all of its manufacturing activities and the vast majority of its sales and marketing activities (the

only other U.S. location, which is of limited sales activity, is in New Orleans), and thus the Southern District of Texas is where any of the alleged infringing acts would have been most likely to occur. Ex. B ¶¶ 5-6, 8-9. *Cf. Sig Simonazzi*, 295 F. Supp. 2d at 399 (granting defendant's motion to transfer in part because the "patents at issue relate to machinery that is manufactured in Texas, not Delaware, and no infringement is alleged to have occurred in Delaware").

Further, in a patent action, transfer to a corporate defendant's principal place of business – its "center of gravity" or "hub of activity" – is particularly justified. As another district court in the Third Circuit has explained,

> In patent infringement cases, the preferred forum is that which is the center of gravity of the accused activity. The "center of gravity" for such a claim is in the district where the alleged infringement occurred. In finding that "center of gravity," a district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production. Appropriate considerations include the location of a product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred.

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (alteration in original) (quotation marks and citations omitted). Clearly Houston in the Southern District of Texas (and not Delaware) is the "center of gravity" or "hub" of Dril-Quip's research and development, production, and marketing and sales decision-making activities. *See* Ex. B ¶¶ 5-10; Ex. C. Accordingly, under federal law, the Southern District of Texas is the preferred venue for this patent infringement case.

In contrast, Delaware is a highly inconvenient forum for Defendant Dril-Quip. The distance to Wilmington from its operational base in Houston is in excess of 1300 miles and will require Dril-Quip to incur substantial travel costs and fees for discovery and trial, corresponding lost time for personnel key to the company's business operations,

as well as to incur local counsel attorneys' fees, none of which would be necessary if litigation were to proceed locally in Texas. *See 3Com Corp. v. D-Link Sys., Inc.*, C.A. No. 03-014-GMS, 2003 WL 1966438, at *1 (D. Del. Apr. 25, 2003) (Ex. I hereto) (concluding that "litigating this case [in the proposed district] would cause less disruption to business operations of each corporation, . . . eliminat[e] the cost and time of cross-country transportation of persons and documents," and save defendant the additional expense of being "forced to retain local counsel for purposes of litigating in this district").

For any or all of these reasons, on balance the convenience and location of the parties weighs strongly in favor of transfer of this case to the Southern District of Texas.

### 2. The Convenience and Location of the Witnesses and Documents Also Favor Transfer to the Southern District of Texas

Courts are significantly more likely to grant a motion to transfer under § 1404(a) in cases like this one, where the proposed forum will serve the convenience of witnesses better than the original forum. *See, e.g., Jahncke*, 301 F. Supp. at 868. The convenience of witnesses is not weighed from consideration of the qualitative value of the testimony of particular witnesses. *Glickenhaus v. Lytton Fin. Corp.*, 205 F. Supp. 102, 106 (D. Del. 1962). Most significant is the convenience of non-party witnesses who are important to the resolution of the case, particularly if they are not subject to compulsory process in Delaware. *Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395, at *2-*3 (D. Del. May 1, 2001) (Ex. J hereto) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power."); *see also*

*3Com Corp.*, 2003 WL 1966438, at \*2 (Ex. I) (observing that "[e]ven if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment"); *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 111-13 (D. Del. 1992) (considering witness-related factors under both convenience and interest of justice prongs).

The Declaration of Larry E. Reimert, Co-Chairman of the Board and Co-Chief Executive Officer of Dril-Quip ("the Reimert Declaration") is attached hereto as Exhibit B. The Reimert Declaration itself attaches Third Supplemental Rule 26(a) Disclosures, which were filed of record by the defendant in the prior related case and which identify potential key witnesses to be called for live testimony at trial, their location, and the general subject matter of their anticipated testimony. Ex. B ¶¶ 18-21 & ex. A. As indicated, many of the non-party witnesses reside in the greater Houston, Texas, area or frequently visit Houston for business reasons. The non-party witnesses that do not reside in Houston generally reside in European cities that share Houston's strong energy-based sector and thus have a connection to it via their shared industry, international companies, and routine transportation links. Specifically, the cities in which nearly all of the non-Houstonian non-party witnesses reside are Aberdeen and London in the United Kingdom, and Stavanger and Trondheim in Norway. None of the witnesses (party or non-party) reside in Delaware. *See id.*

Based on the Rule 26(a) disclosure filed by the defendant in the prior litigation in the Southern District of Texas and attached to the Reimert Declaration as its Exhibit A, Dril-Quip has preliminarily identified potential material non-party witnesses important to

the outcome of the case, in particular to Dril-Quip's defenses and declaratory judgment counterclaims of patent invalidity in view of the prior art and patent unenforceability under the doctrine of inequitable conduct.    Such preliminarily identified non-party witnesses include:

- patent prosecution attorneys who prosecuted one or more of the patents at issue in this litigation (e.g., outside counsel Messrs. Rose and Hunter, and former inside counsel Messrs. Patterson and Thiele, all of Houston);

- individuals with knowledge of material prior art (e.g., Mr. Scott of Aberdeen, Mr. Doyle of London, and Messrs. Sangesland and Owe of Norway); and

- individuals with knowledge of Cameron's design, development, and marketing of the technology at issue (e.g., Messrs. Byrd, Gullion, McGuire, Turner, and Wilkins of Houston, Mr. Hatton of near London, and Messrs. Dykes, Edward, and McKay of Aberdeen).

None of the identified witnesses reside in or near Delaware, and thus none are likely to be subject to the subpoena power of this Court.    In contrast, many if not most of the key party and non-party witnesses reside in or have sufficient minimum contacts with Houston that they will be subject to the subpoena power of the U.S. District Court for the Southern District of Texas.    As such, these witnesses tip the balance of this convenience factor toward transfer to the Southern District of Texas.

Related to the convenience of witnesses factor is the location of records and documents. *See, e.g.*, *Jumara*, 55 F.3d at 879; *Jahncke*, 301 F. Supp. at 868.    Here, the location of Dril-Quip's original documents relating to subsea horizontal trees technology

– the heart of the matter and thus clearly important to the ultimate resolution of the case – are located at its facilities in Houston, Texas.  Ex. B ¶ 11.  As Dril-Quip does not claim that copies of such documents cannot be made available in Delaware, this factor is neutral and thus does not affect the strong balance of convenience factors in favor of the requested transfer.  *Cf. Cashedge, Inc. v. Yodlee, Inc.*, C.A. No. 06-170-JJF, 2006 WL 2038504, at *2 (D. Del. Jul. 19, 2006) (slip op.) (Ex. K hereto).

### C.    Public Judicial Economy Factors Strongly Favor Transfer to the Southern District of Texas

The "interest of justice" factor is considered to be of "controlling importance" in determining whether to transfer venue from one federal district court to another.  *See* 28 U.S.C. § 1404(a); *Glickenhaus*, 205 F. Supp. at 105.  The various public factors enumerated by this Court – for example, "practical considerations that could make trial easy, expeditious, or inexpensive," "relative docket conditions," and the "local interest in deciding local controversies" – essentially are directed toward "the interest of justice," and, in particular, considerations of judicial economy.  *See Affymetrix*, 28 F. Supp. 2d at 197-202 (citing *Jumara*, 55 F.3d at 879).

### 1.    Prior Related Case in the Southern District of Texas Involving the Same Technology and the Same or Related Patents-in-Suit Strongly Favors Transfer

Another district court's familiarity with the issues of fact and law in a case through litigation of a prior related case in that district "stands as a further and distinct justification in a patent case for granting defendant's motion to transfer."  *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 56 (D. Del. 1975).  "Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with,

and (3) a common field of prior art." *Cashedge*, 2006 WL 2038504, at *2 (Ex. K).

This Court typically transfers cases to a forum in which another action was at one time pending that was related to the patents in suit or the technology at issue. *See, e.g., id. passim* (granting defendant's motion to transfer case to the district in which another action involved the same parties, similar technology, and related patents-in-suit, and where at least some discovery and a *Markman* hearing had been performed); *Brunswick Corp. v. Precor Inc.*, C.A. No. 00-691-GMS, 2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000) (Ex. L hereto) (finding "the relevant public factors weigh heavily in favor of transfer" where "there has already been litigation on . . . a parent patent of the one at issue here" in the proposed transferee district); *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*, C.A. No. 96-232-SLR, at 1, 4-5 (D. Del. Sept. 25, 1996) (slip op.) (Ex. M hereto) (order granting transfer of patent infringement action to district in which all parties were headquartered because of transferee court's "familiarity with the technology at issue through past and pending litigation"); *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 973-74 (D. Del. 1992) (stating that patent infringement action could be managed more efficiently in the venue in which the court had recent involvement in a concluded lawsuit pertaining to the same technology and patents).

In *Cashedge*, this Court considered whether to transfer an action to California, in which a prior related action had been filed by the same plaintiff. 2006 WL 2038504, at *1-*2 (Ex. K). Although the Delaware action differed in that it would require claim construction of a patent not part of the California action, the patents-in-suit in the California action were related and relevant to the defendant's defenses and counterclaim in the Delaware action. *Id.* at *2 & n.2. The parties in the California action already had

"conducted a two-hour technology tutorial . . . , argued *Markman* issues . . . , and commenced discovery on seemingly related products and technologies." *Id.* at *2. This Court found the Northern District of California was "more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies." *Id.* Under these facts the Court reasoned that "judicial efficiency regarding the ease, speed, or expense of trial strongly weigh in favor of transfer," and granted defendant's motion. *Id.* at *2-*3.

The present case is analogous. Plaintiff Cameron already has proven itself "capable to litigate" the Hopper family patents in the Southern District of Texas, which is also the location of both parties and the vast majority of the U.S.-based party and non-party witnesses. Further, although the present action potentially would require claim construction of patents not part of the prior Texas action (as they were not yet issued), the additional patents in suit (1) directly descend from those previously litigated; (2) share an identical written description with those previously litigated; and (3) like those in *Cashedge*, are key to Defendant Dril-Quip's defenses and counterclaims regarding patent invalidity and unenforceability. Moreover, in the prior action, the Southern District of Texas was "tutor[ed]" in the relevant technology, heard argument and ruled on "*Markman* issues," and also ruled on issues regarding "discovery on seemingly related products and technologies." As a result, the Southern Texas district court is "already familiar with" the subsea horizontal trees technology presently at issue, and thus in the interest of judicial efficiency, transfer is similarly justified in this case.

The *Cashedge* case does not stand alone; this Court has made similar rulings in other cases in which there was a prior related action in another district court. In *Nilssen v. Osram Sylvania, Inc.*, this Court granted defendants' motion to transfer a patent infringement action to the Northern District of Illinois in part because in a related case being litigated in Illinois, case dispositive motions had already been filed and *Markman* rulings had already been made for at least six of the twenty-six patents at issue in the Delaware action. 2001 WL 34368395, at *4 (Ex. J) (reasoning that judicial economy strongly weighed in favor of transfer). In this case, the Southern District of Texas has made *Markman* rulings for two of the six patents at issue in this action, which rulings apply to all six patents, as all six patents share the same written specification and its terminologies. Accordingly, to prevent figurative reinvention of the wheel and the need for an additional court to review the relevant prior art, which is substantial (over two hundred references are cited on the faces of the six patents alone), the interest of judicial economy supports a similar grant of transfer of the present case.

In *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, this Court granted defendant's motion to transfer because (1) an action in the Northern District of California was filed before the Delaware litigation, and the California court previously had considered and ruled on many of the issues presented in the Delaware pleadings; (2) the patent at issue in the California case was very similar to the one at issue in the Delaware case, as both patents had issued from the same parent application and shared similar written descriptions and many of the same figures; and (3) the California court had three years of experience with the similar litigation, and thus "[i]ts grasp of the facts and issues in connection with the [first] patent, together with the similarity between

[that patent] and [the current one], make that court a more appropriate venue for the present matter." C.A. No. 04-852-SLR, 2005 WL 735880, at *3 (D. Del. Mar. 30, 2005) (Ex. N hereto).

The present facts are even more supportive of transfer than in *Sumito*. Here, (1) the Southern District of Texas has previously considered and ruled on issues similar or the same as many of the issues presented in the pleadings; (2) the ***very same*** patents at issue in the prior case are also being litigated in the present case, in addition to more recently issued patents very similar to the ones at issue in the prior case, as they share the same patent family tree and ***identical*** written descriptions figures; and (3) the Southern District of Texas has years of experience with similar litigation (more than the transferee court did in *Sumito*). Accordingly, the Southern District of Texas court's familiarity with the facts and issues in connection with the first two patents, and the relatively short time that would be required to come up to speed regarding any new facts and issues in connection with the four related patents having the same specification and similar issues regarding their invalidity and unenforceability, make the Southern District of Texas a more appropriate venue for the present case.

### 2. Relative Docket Conditions

Courts also on occasion consider the relative docket conditions of this District in comparison with the proposed transferee forum. *See Jumara*, 55 F.3d at 879; *Hall v. Kittay*, 396 F. Supp. 261, 264-65 (D. Del. 1975); *Jahncke*, 301 F. Supp. at 869. Elements grouped into this factor include relative docket availability and speed of litigation, as well as relative substantive expertise. The two most relevant statistics in determining speed of litigation are (1) the median months from filing to disposition, and (2) the median months

from filing to trial. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000); *cf. Am. High-Income Trust v. Allied Signal Inc.*, C.A. No. 00-690-GMS, 2002 WL 373473, at *6 (D. Del. Mar. 7, 2002) (Ex. O hereto) (considering median times from filing to disposition; concluding in the particular case that "this factor neither weighs in favor of, nor against, one district or the other"; granting transfer).

With regard to the present Motion, Court Statistics published by the Federal Judiciary on its official web site at www.uscourts.gov (Ex. P hereto) indicate that the times from filing to case disposition and from filing to trial in the Southern District of Texas are on average speedier than in the District of Delaware:

| Court Statistics | 12-Month Period Ending September 30, 2006 | |
|---|---|---|
| | D. Del. | S. D. Tex. |
| Median time (months) from Filing to Disposition - Civil | 16.8 | 8.6 |
| Median time (months) from Filing to Trial - Civil | 26.0 | 18.8 |
| Civil Cases (%) Over 3 Years Old | 10.6 | 5.0 |

Therefore, if considered, speed of litigation statistics further favor transfer of this case to the Southern District of Texas. Additionally, because both the District of Delaware and the Southern District of Texas have substantial experience and expertise in determining issues in the field of patent law, their relative expertise is a district-neutral factor and of no weight one way or the other in the balance. Accordingly, on the whole, relative docket conditions weigh toward transfer.

### 3. The Southern District of Texas Has a Strong Local Interest In Resolving This Dispute

Courts have observed that justice is served more efficiently when an action is litigated in the forum that more clearly encompasses the locus of operative facts and

consequently has a particular local interest in deciding the controversy at home. *E.g.*, *Saint-Gobain Calmar*, 230 F. Supp. 2d at 662 (finding the district with the strongest interest in resolving the dispute was "where Defendant maintains its sole place of business" and finding "no reason why this Court or jurors from this community should bear the burden of overseeing the resolution of this potentially lengthy and complex patent dispute between corporations from [elsewhere]"); *see also Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005) (finding this factor strongly favored transfer because of the transferee district's "interest in adjudicating the claims of its residents" and "because the case arises out of events occurring [therein]").

In this case, Houston, as the location of Dril-Quip's worldwide headquarters, its only U.S. manufacturing facility, and its principal U.S. sales office, as well as its key development and marketing personnel and documents, is the locus of any operative facts with respect to Cameron's claims of alleged patent infringement. Additionally, Houston (and thus the Southern District of Texas) clearly encompasses the locus of operative facts with respect to Dril-Quip's counterclaim of inequitable conduct, as most of Cameron's party and non-party witnesses related to patent prosecution – including all of its U.S. patent prosecution attorneys – reside in Houston (*see* Part IV.B.2 *supra*).

Houston also is the locus of the dispute for reasons beyond the facts that both parties reside there and that Defendant Dril-Quip has its principal administrative and sales office and its only U.S. manufacturing facility there. Additionally, Houston is the location central to the parties' prior communications, beginning in August of 1996, relating to the patents at issue. This is reflected in a series of letters from Cameron's counsel (in Houston) to Dril-Quip (in Houston) regarding the Hopper family patents.

*See, e.g.*, Letters dated Aug. 15, 1996 and Feb. 4, 1997, regarding the '707 patent (Ex. Q hereto); Letter dated Nov. 3, 2000, regarding the '119 patent (Ex. R hereto); Letter dated Oct. 5, 2004, regarding the '707, '119, and '008 patents (Ex. S hereto). Thus, the locus of Cameron's dispute with Dril-Quip is Houston. Given this nexus, the Southern District of Texas has a strong local interest in resolving this dispute at home. In contrast, without such a nexus, this Court and the citizens of Delaware should not be burdened with "overseeing the resolution of this potentially lengthy and complex patent dispute between corporations from [Houston, Texas]." *See Saint-Gobain Calmar*, 230 F. Supp. 2d at 662.

Finally, in a broad sense, the Southern District of Texas has a strong local interest in resolving this dispute because Houston, Texas is generally recognized as the U.S. hub of the upstream energy industry and, in particular, of offshore technologies development. *See IKOS*, 2002 WL 31414136, at *1 (Ex. G) (indicating that although patent disputes typically are not regarded as "'local' in nature," when the relevant industry is located in the proposed transferee forum, local interest will weigh toward transfer); Kristina Shevory, *Houston, The Oil Town, Is Sharing in a Boom*, N.Y. TIMES, Mar. 14, 2007, at C6 (recognizing Houston as "the center of the country's energy industry" and "the country's energy capital") (Ex. T hereto); Offshore Technology Conference (OTC): About OTC, http://www.otcnet.org/otcnet/about_otc/index.html (last visited Mar. 26, 2007) (Ex. U hereto) (noting that Houston annually hosts the OTC, "the world's foremost event for the development of offshore resources" with attendance consistently in excess of 50,000). Indeed, both Dril-Quip's and Cameron's principal business operations, along with the principal business operations of most if not all of their competitors in the subsea

tree industry, are located in Houston, Texas. Accordingly, the Southern District of Texas has a strong local interest in resolving this dispute.

**D.    The Sum Total Balance of the Private and Public *Jumara* Factors Justifies Transfer to the Southern District of Texas**

For any or all of the reasons presented above, the facts of this case lead to the logical conclusion that transfer to the Southern District of Texas is justified. The private *Jumara* factors and the public *Jumara* factors, as well as the sum total balance of all of these factors, strongly favor transfer. Indeed, upon consideration of the sum total balance of factors in analogous cases, this Court has granted the defendant's motion to transfer. *See, e.g., Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554 (D. Del. 2003) (granting transfer to the Northern District of California based on at least the following considerations: (1) no party maintained any facilities, personnel, or documents in Delaware; (2) no acts of alleged infringement would have taken place in Delaware; (3) no relevant third-party witnesses were residents in Delaware; (4) another related case filed in the Northern District of California; (5) the relevant industry was located in the Northern District of California; and (6) any disparity in court congestion, to the extent there was any, was not so great as to weigh against transfer); *Brunswick*, 2000 WL 1876477 (Ex. L) (granting transfer of a patent action to the Western District of Washington based on at least the following considerations: (1) parties were Delaware corporations but neither had a physical presence in Delaware; (2) all of the witnesses and relevant documents, as well as the manufacturing facility for the type of product in question, were located in Washington; (3) related litigation in the Western District of Washington involving many of the same issues). Under the § 1404(a) statutory standard, the like facts in this case should lead to a like result.

27

## V.    CONCLUSION

In sum, because the balance of convenience and the interests of justice lay strongly in favor of transfer to the Southern District of Texas in this case, Defendant Dril-Quip respectfully requests this Court to transfer this action to the U.S. District Court for the Southern District of Texas.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen H. Cagle

By:  /s/ David E. Moore

Eric S. Schlichter
Joan E. Beckner
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242
Telephone: (713) 787-1400
Facsimile: (713) 787-1440

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Kenneth L. Dorsney (#3726)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

DATED: April 4, 2007

*Attorneys for Defendant*
*Dril-Quip, Inc.*

787325 / 31110

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 4, 2007, the attached document

was hand-delivered and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing(s) to the following persons and the

document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
Thomas H. Kovach
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Johnsone@pepperlaw.com
Kovacht@pepperlaw.com


I hereby certify that on April 4, 2007, I have Electronically Mailed the documents

to the following non-registered participants:

William D. Belanger
Pepper Hamilton LLP
101 Federal Street, Suite 1010
Boston, MA 02111-1817
belangerw@pepperlaw.com

By:  /s/ Richard L. Horwitz
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

783999 / 31110

# EXHIBIT  A

**U.S. District Court**
**SOUTHERN DISTRICT OF TEXAS (Houston)**
**CIVIL DOCKET FOR CASE #: 4:97-cv-00155**


Cooper Cameron Corp v. Kvaerner Oilfiled Pr                Date Filed: 01/17/1997
Assigned to: Judge Nancy F. Atlas                          Date Terminated: 04/16/2001
Demand: $50,000                                            Jury Demand: Plaintiff
Cause: 28:1338 Patent Infringement                         Nature of Suit: 830 Patent
                                                           Jurisdiction: Federal Question

**Special Master**

**Alan D Rosenthal**                    represented by  **Alan David Rosenthal**
                                                        Haynes & Boone LLP
                                                        1001 McKinney
                                                        Ste 1700
                                                        Houston, TX 77005
                                                        713-265-3650
                                                        Fax: 713-236-5481
                                                        Email: arosenthal@sbcglobal.net
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Cooper Cameron Corporation**         represented by  **David J Beck**
                                                        Beck Redden and Secrest
                                                        1221 McKinney
                                                        Ste 4500
                                                        Houston, TX 77010
                                                        713-951-3700
                                                        Fax: 713-951-3720 fax
                                                        Email: dbeck@brsfirm.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Geri L Haight**
                                                        Mintz Levin et al
                                                        One Financial Ctr
                                                        Boston, MA 02111
                                                        617-542-6000
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John M Delehanty**

Mintz Levin et al
666 Third Ave
Chrysler Ctr
New York, NY 10017
212-935-3000
Fax: 212-983-3115 fax
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lester L Hewitt**
Akin Gump et al
1111 Louisiana
44th Flr
Houston, TX 77002-5200
713-220-5851
Fax: 713-236-0822
Email: lhewitt@akingump.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael T Renaud**
Mintz Levin et al
One Financial Ctr
Boston, MA 02111
617-542-6000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen F Herbes**
Mintz Levin et al
One Financial Ctr
Boston, MA 02111
617-542-6000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William D Belanger**
Mintz Levin et al
One Financial Ctr
Boston, MA 02111
617-542-6000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kvaerner Oilfield Products Inc**          represented by  **Charles Estes Frost, Jr**
*also known as*                                              Chamberlain Hrdlicka et al
Kvaerner Oilfield Products Inc                               1200 Smith
                                                             Ste 1400
                                                             Houston, TX 77002
                                                             713-654-9674
                                                             Fax: 713-658-2553
                                                             Email:
                                                             charles.frost@chamberlainlaw.com
                                                             *TERMINATED: 06/16/1997*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **John F Lynch**
                                                             Howrey Simon et al
                                                             750 Bering Dr
                                                             Houston, TX 77057
                                                             713-787-1400
                                                             Fax: 713-787-1440 fax
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kvaerner Oilfield Products Inc**          represented by  **Charles Estes Frost, Jr**
*also known as*                                              (See above for address)
Kvaerner Oilfield Products Inc                               *TERMINATED: 06/16/1997*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **John F Lynch**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Cooper Cameron Corporation**             represented by  **David J Beck**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

DM_US:20335079_1

**Geri L Haight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John M Delehanty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael T Renaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen F Herbes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William D Belanger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lester L Hewitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/1997 | 1 | COMPLAINT filed; FILING FEE $ 150.00 RECEIPT # 463953 (fmremp) (Entered: 01/21/1997) |
| 01/17/1997 | 2 | ORDER FOR CONFERENCE: initial pretrial and scheduling conference for 2:00 5/23/97 before Judge Nancy F. Atlas , entered; Parties ntfd. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 01/21/1997) |
| 01/17/1997 | | (1) SUMMONS issued for Deft Kvaerner Nat'l Inc (fmremp) (Entered: 01/21/1997) |
| 01/24/1997 | 3 | RETURN OF SERVICE executed as to Kvaerner Nat'l Inc 1/21/97 filed Answer due on 2/10/97 for Kvaerner Nat'l Inc (psmith) (Entered: |

| | | 01/28/1997 |
|---|---|---|
| 02/07/1997 | 4 | STIPULATION re: 30 day extension for deft to respond to complaint by Cooper Cameron Corp and Kvaerner Nat'l Inc, filed. (fmremp) (Entered: 02/11/1997) |
| 03/12/1997 | 5 | MOTION to dismiss trade secrets claim by Kvaerner Nat'l Inc, Motion Docket Date 4/1/97 [5-1] motion , filed. (ddarneille) (Entered: 03/13/1997) |
| 03/12/1997 | 6 | DEFT'S MOTION for more definite statement by Kvaerner Nat'l Inc, Motion Docket Date 4/1/97 [6-1] motion , filed. (ddarneille) (Entered: 03/13/1997) |
| 04/01/1997 | 7 | Pltf's RESPONSE by Cooper Cameron Corp in opposition to Kvaerner National's [6-1] motion for more definite statement , filed (fmremp) (Entered: 04/02/1997) |
| 04/01/1997 | 8 | RESPONSE by Cooper Cameron Corp in opposition to deft's [5-1] motion to dismiss trade secrets claim , filed (fmremp) (Entered: 04/02/1997) |
| 04/07/1997 | 9 | REPLY by Kvaerner Nat'l Inc to pltf's opposition to deft's [5-1] motion to dismiss trade secrets claim, filed. (ddarneille) (Entered: 04/09/1997) |
| 04/11/1997 | 10 | REPLY by Kvaerner Nat'l Inc to pltf's opposition to deft's [6-1] motion for more definite statement , filed (fmremp) (Entered: 04/14/1997) |
| 04/15/1997 | 11 | ORDER granting Defts [6-1] motion for more definite statement , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 04/18/1997) |
| 04/21/1997 | 12 | ORDER denying without prejudice, deft's [5-1] motion to dismiss trade secrets claim entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 04/22/1997) |
| 04/24/1997 | 13 | ANSWER to Complaint by Kvaerner Nat'l Inc (Added attorney John F Lynch), filed. (fmremp) (Entered: 04/25/1997) |
| 04/24/1997 | 14 | Deft's INITIAL DISCLOSURE pursuant to Order for Accelerated Discovery by Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 04/25/1997) |
| 04/24/1997 | 13 | COUNTERCLAIM by Kvaerner Nat'l Inc against Cooper Cameron Corp , filed. (psmith) (Entered: 06/10/1997) |
| 05/15/1997 | 15 | Pltf's MOTION for extension of time to supplement court directed interrogatory by Cooper Cameron Corp, Motion Docket Date 6/4/97 [15-1] motion , filed. (fmremp) (Entered: 05/16/1997) |
| 05/20/1997 | 16 | JOINT DISCOVERY/Case Management Plan by Cooper Cameron |

| | | Corp, Kvaerner Nat'l Inc , filed. (ltien) (Entered: 05/21/1997) |
|---|---|---|
| 05/20/1997 | 17 | OPPOSITION by Kvaerner Nat'l Inc to pltf's [15-1] motion for extension of time to supplement court directed interrogatory , filed (ltien) (Entered: 05/21/1997) |
| 05/20/1997 | 18 | REQUEST by Kvaerner Nat'l Inc for hearing on motion for extension of time to supplement court-directed interrogatory, filed. (ltien) (Entered: 05/21/1997) |
| 05/20/1997 | 19 | JOINT MOTION for entry of protective order by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed (ltien) (Entered: 05/21/1997) |
| 05/22/1997 | 20 | PROTECTIVE ORDER granting [19-1] joint motion for entry of protective order , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (ltien) (Entered: 05/23/1997) |
| 05/23/1997 | 21 | ORDER granting Pltfs [15-1] motion for extension of time to supplement court directed interrogatory. The time for completion of the answer to this Court's interrogatory of its Order of April 18, 197 is extended through July 15, 1997 ; terminated deadlines , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 05/27/1997) |
| 05/23/1997 | 22 | SCHEDULING ORDER setting Mediation deadline for 11/14/97; Joining of parties, amending of pleadings 11/14/97 ; Expert witness list submitted by 3/2/98; for deft 3/16/98; Discovery cutoff 5/22/98 ; Deadline for filing all dispositive motions 6/22/98, entered. Parties notified. ETT: 12-14 days/Jury; ( by Judge Nancy F. Atlas ) (psmith) (Entered: 05/27/1997) |
| 05/23/1997 | 24 | Minute Entry Order entered following pretrial conference; Appearances: Lester Hewitt and Nichole Beatty f/pltf; John Lynch and Peter Balinskey f/deft; GRANTING pltf's [15-1] motion for extension of time to supplement court directed interrogatories; SETTING oral argument for 3:00 9/12/97 before Judge Nancy F. Atlas ; Ct Reporter: E Reed. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 06/05/1997) |
| 05/30/1997 | 23 | TRANSCRIPT OF PROCEEDINGS of hearing for dates of 5/23/97 before Judge Nancy Atlas , filed. ( Court Rptr: Reed) (fmremp) (Entered: 06/02/1997) |
| 06/06/1997 | 25 | REPLY by Cooper Cameron Corp to deft's [13-1] counter claim, filed. (ltien) (Entered: 06/10/1997) |
| 06/13/1997 | 26 | UNOPPOSED MOTION to permit withdrawal of the law firm of Chamberlain, Hrdlicka, White, Williams & Martin as counsel of record by Kvaerner Nat'l Inc, Motion Docket Date 7/3/97 [26-1] motion , filed. |

| | | (ltien) (Entered: 06/13/1997) |
|---|---|---|
| 06/16/1997 | 27 | ORDER granting Kvaerner's [26-1] motion to permit withdrawal of the law firm of Chamberlain, Hrdlicka, White, Williams & Martin as counsel of record , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 06/17/1997) |
| 06/25/1997 | 28 | Letter to Judge Atlas in response to docket item 9 in the Docket Control Order entered 5/27/97; counsel for the parties have conferred and have agreed that mediation in the form of ADR is best suited for this matter; Counsel will make arrangements to have the mediation completed by the 11/14/97 deadline, filed & fwd to Judge (fmremp) (Entered: 06/26/1997) |
| 07/29/1997 | | Recd/returned to atty Lynch, deft's second set of document requests to pltf (DISCOVERY) (fmremp) (Entered: 07/31/1997) |
| 07/30/1997 | 29 | AMENDED Hearing Minutes and Order: Pretrial conference held. Docket Control Order to follow. App: Hewitt/Beatty f/pltf, Lynch/Balinskey f/deft; granting [15-1] motion for extension of time to supplement court directed interrogatory; The minute entry of 5/23/97 (doc #24) erroneously stated that the oral argument hearing was set for 9/12/97 at 3:00 p.m. The corrected date for the oral argument hearing is 9/18/98 at 3:00 p.m.; reset miscellaneous hearing 3:00 9/18/98 before Judge Nancy F. Atlas Ct Reporter: Reed , entered. Parties ntfd. ( by Judge Nancy F. Atlas ) (fmremp) (Entered: 07/30/1997) |
| 09/12/1997 | 30 | MOTION to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office by Cooper Cameron Corp, Motion Docket Date 10/2/97 [30-1] motion , filed. (fmremp) (Entered: 09/15/1997) |
| 09/18/1997 | 31 | Pltf's MOTION to compel answer to amended interrogatory No. 7 by Cooper Cameron Corp, Motion Docket Date 10/8/97 [31-1] motion , filed. (fmremp) (Entered: 09/18/1997) |
| 09/30/1997 | 32 | MOTION to compel by Cooper Cameron Corp, Motion Docket Date 10/20/97 [32-1] motion , filed. (fmremp) (Entered: 09/30/1997) |
| 09/30/1997 | | Sealed exhibits filed. (fmremp) (Entered: 09/30/1997) |
| 10/01/1997 | 33 | AGREED MOTION to extend time to respond to motion to allow disclosure until 10/8/97 by Cooper Cameron Corp and Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 10/02/1997) |
| 10/01/1997 | 34 | ORDER: A pretrial conference is set for 3:30 pm on 10/17/97 , entered; Parties notified. Counsel should be prepared to argue all pending motions at the conference. (signed by Judge Nancy F. Atlas ) (psmith) (Entered: 10/02/1997) |

| 10/03/1997 | 35 | ORDER granting [33-1] agreed motion to extend time to respond to motion to allow disclosure; deft's response to motion reset to 10/8/97 for pltf's [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 10/03/1997) |
|---|---|---|
| 10/03/1997 | 38 | MOTION for sanctions and Supporting Brief, by Kvaerner Nat'l Inc, Motion Docket Date 10/23/97 [38-1] motion , filed. (psmith) (Entered: 10/06/1997) |
| 10/03/1997 | 39 | MOTION for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships , by Kvaerner Nat'l Inc, Motion Docket Date 10/23/97 [39-1] motion , filed. (psmith) (Entered: 10/06/1997) |
| 10/03/1997 | 36 | MOTION for partial summary judgment of pltf's misappropriation of trade secrets claim by Kvaerner Nat'l Inc, Motion Docket Date 10/23/97 [36-1] motion , filed (SEALED IN VAULT). (ltien) (Entered: 11/06/1997) |
| 10/03/1997 | 37 | Joint APPENDIX by Kvaerner Nat'l Inc to its [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim, filed (SEALED IN VAULT). (ltien) (Entered: 11/06/1997) |
| 10/08/1997 | 40 | Deft Kvaerner Nat'l Inc's RESPONSE to pltf's [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office , filed. (fmremp) (Entered: 10/09/1997) |
| 10/08/1997 | 41 | Deft Kvaerner Nat'l Inc's RESPONSE to pltf's [31-1] motion to compel answer to amended interrogatory No. 7 , filed. (fmremp) (Entered: 10/09/1997) |
| 10/21/1997 | 42 | ORDER: [31-1] motion to compel answer to amended interrogatory No. 7 referred to Magistrate Judge Calvin Botley, [32-1] motion to compel referred to Magistrate Judge Calvin Botley, [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office referred to Magistrate Judge Calvin Botley for all pretrial discovery matters., entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (VACATED BY ORDER #58) (fmremp) Modified on 11/12/1997 (Entered: 10/21/1997) |
| 10/22/1997 | 43 | AGREED MOTION to extend time to respond to pending motions by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 10/22/1997) |
| 10/23/1997 | 44 | MOTION to quash notice of deposition under Rule 30(b)(6) , and for protective order by Cooper Cameron Corp, Motion Docket Date 11/12/97 [44-1] motion, 11/12/97 [44-2] motion , filed. (w/exhibits A-E |

| | | FILED UNDER SEAL) (fmremp) (Entered: 10/24/1997) |
|---|---|---|
| 10/28/1997 | 45 | NOTICE of Hearing filed SETTING Motion Hearing for 10:00 on 11/5/97 for [32-1] motion to compel, [31-1] motion to compel answer to amended interrogatory No. 7, set and [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office before Magistrate Judge Calvin Botley. Parties notified. (fmremp) (Entered: 10/29/1997) |
| 10/30/1997 | 46 | Deft's RESPONSE by Kvaerner Nat'l Inc to pltf's [32-1] motion to compel discovery, w/Exhibits 1-6 FILED UNDER SEAL, filed. (fmremp) (Entered: 10/30/1997) |
| 10/31/1997 | 47 | REPLY by Cooper Cameron Corp to response to [32-1] motion to compel , filed (fmremp) (Entered: 11/03/1997) |
| 11/01/1997 | 55 | ORDER granting parties' [43-1] agreed motion to extend time to respond to pending motions Defendant shall have until 10/31/97 to respond to Plaintiff's [32-1] motion to compel , Plaintiff shall have until 11/4/97 to respond to Defendant's Motion for Partial Summary Judgment of Plaintiff's Misappropriation of Trade Secret Claim; Defendant's Motion for Partial Summary Judgment of Plaintiff's Intentional Interference with Contractual Relationships Claim and Defendant's Motion for Sanctions , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/06/1997) |
| 11/03/1997 | 48 | RESPONSE by Kvaerner Nat'l Inc to [44-1] motion to quash notice of deposition under Rule 30(b)(6), [44-2] motion for protective order , filed. (fmremp) (Entered: 11/04/1997) |
| 11/04/1997 | 49 | RESPONSE by Cooper Cameron Corp in opposition to deft's [39-1] motion for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships , filed (ltien) (Entered: 11/05/1997) |
| 11/04/1997 | 50 | RESPONSE by Cooper Cameron Corp in opposition to deft's [38-1] motion for sanctions , filed (ltien) (Entered: 11/05/1997) |
| 11/04/1997 | 51 | OPPOSITION/RESPONSE by Cooper Cameron Corp in opposition to [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim , filed (SEALED, PLACED IN VAULT) original eod 11/5/97 (fmremp) (Entered: 01/15/1999) |
| 11/04/1997 | 52 | OPPOSITION APPENDIX/RESPONSE by Cooper Cameron Corp in opposition to [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim, [39-1] motion for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships, [38-1] motion for sanctions , filed (SEALED, PLACED IN VAULT) original eod 11/5/97 (fmremp) |

| | | |
|---|---|---|
| | | (Entered: 01/15/1999) |
| 11/04/1997 | 53 | VOLUME II OF OPPOSITION APPENDIX/RESPONSE by Cooper Cameron Corp in opposition to [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim, [39-1] motion for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships, [38-1] motion for sanctions , filed (SEALED, PLACED IN VAULT) original eod 11/5/97 (fmremp) (Entered: 01/15/1999) |
| 11/06/1997 | 54 | REPLY to Pltf's [49-1] opposition response to Deft's Motion Pltf's Motion for Partial Summary Judgment by Kvaerner Nat'l Inc filed. (hlerma) (Entered: 11/06/1997) |
| 11/06/1997 | 56 | REPLY by Kvaerner Nat'l Inc to Plaintiff's opposition to Kvaerner's [38-1] motion for sanctions, filed (fmremp) (Entered: 11/06/1997) |
| 11/07/1997 | 57 | NOTICE of Hearing: Motion hearing set for 10:00 11/14/97 for [31-1] motion to compel answer to amended interrogatory No. 7, set for 10:00 11/14/97 for [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office before Magistrate Judge Calvin Botley , filed. parties ntfd. (fmremp) (Entered: 11/10/1997) |
| 11/07/1997 | 58 | ORDER vacating court's [42-1] order of referral of pending motions. Pltf's motion to compel (#31), Pltf's motion to compel (#32) and pltf's motion to allow disclosure of prior art to prosecuting patent attorney ...(#30) are no longer referred to U S Magistrate Judge Calvin Botley., entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/10/1997) |
| 11/07/1997 | | Motion(s) no longer referred: [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office, [31-1] motion to compel answer to amended interrogatory No. 7, [32-1] motion to compel (See order #58) (fmremp) (Entered: 11/10/1997) |
| 11/07/1997 | 59 | Hearing Minutes and Order: Ct Reporter: Traylor. App: (as listed). Pretrial conference held; terminated deadlines . Pltf's [30-1] motion to allow disclosure of prior art to prosecuting patent attorney and patent and trademark office is TERMINATED AS MOOT; Pltf's [44-1] motion to quash notice of deposition under Rule 30(b)(6) and [44-2] motion for protective order is TERMINATED AS MOOT; Pltf's [31-1] motion to compel answer to amended interrogatory No. 7 is GRANTED; Pltf's [32-1] motion to compel is GRANTED; deft Kvaerner's [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim is DENIED without prejudice; deft Kvaerner's [39-1] motion for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships is |

| | | |
|---|---|---|
| | | DENIED WITHOUT PREJUDICE; deft Kvaerner's [38-1] motion for sanctions is DENIED WITHOUT PREJUDICE. The deadline for mediation is reset to 2/15/97. All other deadlines remain unchanged, except that deft's [43-1] agreed motion to extend time to respond to pending motions is GRANTED nunc pro tunc. mediation deadline is 2/15/97 , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/13/1997) |
| 11/11/1997 | 60 | ORDER denying deft's [36-1] motion for partial summary judgment of pltf's misappropriation of trade secrets claim; denying [39-1] motion for partial summary judgment to dismiss pltfs claim of intentional interference with contractual relationships and denying [38-1] motion for sanctions , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/13/1997) |
| 12/18/1997 | 61 | SUPPLEMENTAL INITIAL DISCLOSURE pursuant to Order for Accelerated Discovery by Kvaerner Nat'l Inc , filed. (hlerma) (Entered: 12/18/1997) |
| 01/05/1998 | 62 | SUPPLEMENT to [61-1] disclosures by Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 01/05/1998) |
| 01/06/1998 | 63 | TRANSCRIPT OF PROCEEDINGS of hearing for dates of 11/7/97 before Judge Nancy F. Atlas , filed. ( Court Rptr: Anne Traylor) (fmremp) (Entered: 01/06/1998) |
| 01/26/1998 | 64 | Third SUPPLEMENTAL [14-1] disclosures by Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 01/26/1998) |
| 02/19/1998 | 65 | STIPULATION Regarding Plaintiff Cooper Cameron's Trade Secret Misappropriation Claim by Cooper Cameron Corp, and Defendant Kvaerner Nat'l Inc, filed. (fmremp) (Entered: 02/20/1998) |
| 02/27/1998 | 66 | STATUS REPORT by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed. (psmith) (Entered: 02/27/1998) |
| 03/02/1998 | 67 | NOTICE of agreement by parties to extend deadlines by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed (fmremp) (Entered: 03/02/1998) |
| 04/22/1998 | 68 | STIPULATION withdrawing Pltf's Trade Secret Misappropriation claim and interference with contract claim by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed. (fmremp) (Entered: 04/23/1998) |
| 04/23/1998 | 69 | JOINT MOTION to modify Docket Control Order by Cooper Cameron Corp, Kvaerner Nat'l Inc , filed (fmremp) (Entered: 04/23/1998) |
| 04/28/1998 | 70 | ORDER granting [69-1] joint motion to modify Docket Control Order , entered; the Docket Control Order of 5/23/97 as amended by this Court's Minutes and Order of 11/13/97 shall be modified to conform to |

| | | the dates set forth in the Joint Motion. Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 04/30/1998) |
|---|---|---|
| 04/29/1998 | 71 | AGREED AMENDED SCHEDULING ORDER; Expert witnesses for pltf and deft shall be deposed by 7/22/98; Expert witnesses for pltf's rebuttal shall be deposed by 7/22/98; Discovery cutoff 7/22/98 ; Deadline for filing all dispositive motions 8/5/98 ; Deadline for filing all other pretrial motions (except motions in limine) 8/5/98 ; Pretrial Conference on 2:30 11/6/98, terminated deadlines , entered. Parties notified. ( Signed by Judge Nancy F. Atlas ) (ltien) (Entered: 04/30/1998) |
| 05/04/1998 | 72 | MOTION to change name to Kvaerner Oilfield Products Inc by Kvaerner Nat'l Inc, Motion Docket Date 5/24/98 [72-1] motion , filed. (fmremp) (Entered: 05/04/1998) |
| 05/05/1998 | 73 | ORDER granting [72-1] motion to change name to Kvaerner Oilfield Products Inc , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 05/06/1998) |
| 06/11/1998 | 74 | ORDER setting telephone pretrial conference for 10:30 6/22/98 regarding pltf's letter to the Court dated 6/10/98 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 06/12/1998) |
| 07/17/1998 | 75 | JOINT MOTION to modify Docket Control Order by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (fmremp) (Entered: 07/17/1998) |
| 07/22/1998 | 76 | ORDER granting [75-1] joint motion to modify Docket Control Order set discovery due for 10/2/98 , set pretrial conference for 11/6/98 before Judge Nancy F. Atlas Depositions of Pltf's Experts/Deft's Experts/Rebuttal's 9/11/98 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 07/22/1998) |
| 08/05/1998 | 77 | JOINT MOTION to approve Request for Inernatinal Judicial Assistance by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (fmremp) (Entered: 08/06/1998) |
| 08/06/1998 | 78 | ORDER granting [77-1] joint motion to approve Request for Inernatinal Judicial Assistance , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 08/11/1998) |
| 08/10/1998 | | (NFA) LETTER OF REQUEST for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the taking of evidence in Civil or Commercial matters, issued. (fmremp) (Entered: 08/11/1998) |
| 08/25/1998 | 79 | ORDER reset pretrial conference for 2:30 9/4/98 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) |

| | | (fmremp) (Entered: 08/26/1998) |
|---|---|---|
| 09/02/1998 | 80 | ORDER resetting pretrial conference for 2:30 12/11/98 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 09/03/1998) |
| 09/03/1998 | 98 | LETTER re: communications with PTO by Cooper Cameron Corp , filed (fmremp) (Entered: 11/02/1998) |
| 09/03/1998 | 96 | LETTER to Judge Atlas dated 9/3/98 re: Kvaerner Patents, by Kvaerner Oilfield, filed. (SEALED, PLACED IN VAULT) (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 09/10/1998 | 82 | JOINT PRETRIAL ORDER, filed. (fmremp) (Entered: 09/10/1998) |
| 09/14/1998 | 83 | ORDER set pretrial conference for 2:30 12/11/98 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 09/15/1998) |
| 09/17/1998 | 84 | Minute Entry Order: HEARING held on 9/17/98. Apps: Hewitt; Cagle; Deever. Pltf can go forward with video deposition, but opponent gets three hours notice. Court granted oral request to extend deadlines for completion of discovery and filing of motions. terminated deadlines Ct Reporter: J Schaefer , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (psmith) (Entered: 09/17/1998) |
| 09/22/1998 | 97 | LETTER to Judge Atlas dated 9/22/98 re: Kvaerner Patents by Kvaerner Oilfield, filed. (SEALED, PLACED IN VAULT) (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 09/24/1998 | 86 | Minute Entry Order: PRETRIAL CONFERENCE held on 9/24/98. Apps: Hewitt; Luman; Cagle; Keville. Court orders parties to select a Special Master and submit a written order with the Special Master's name and date and time of the meeting. A telephone pretrial conference will be held at 4:00 pm on 10/30/98 for Court to rule on Kvaerner's request that all Cooper's dealings be tape recorded . Ct Reporter: J Schaefer , entered. Parties ( Signed by Judge Nancy F. Atlas ) (psmith) (Entered: 09/28/1998) |
| 09/24/1998 | 95 | JOINT MOITON AND ORDER TO MODIFY THE DOCKET CONTROL ORDER set discovery due for 11/2/98 , set dispositive motion filing deadline for 11/9/98 Depositions of pltf's experts 9/11/98; depositions of deft's experts 11/2/98 and depositions of pltf's rebuttal experts 11/2/98; oral argument and PTC pending motions 12/11/98 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/02/1998) |
| 09/24/1998 | 85 | REPLY to Kvaerner's REPONSE to Coopers 9/2/98 letter to Judge Atlas regarding production of Kvaerner's Pending Patent Applications |

| | | by Cooper Cameron Corp , filed. (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
|---|---|---|
| 09/29/1998 | 87 | TRANSCRIPT OF PROCEEDINGS of hearing for dates of 9/24/98 before Judge Nancy F. Atlas , filed. ( Court Rptr: Joyce K. Schaefer) (fmremp) (Entered: 09/29/1998) |
| 10/09/1998 | 88 | UNOPPOSED MOTION to place documents under seal by Cooper Cameron Corp, Motion Docket Date 10/29/98 [88-1] motion , filed. (fmremp) (Entered: 10/09/1998) |
| 10/09/1998 | 89 | LETTER of 9/3/98 to Judge Atlas regarding production of Kvaerner's pending patent applications and REPLY to Kvaerner's 8/21/98 letter to Judge Atlas regarding transcription of PTO interviews, by Cooper Cameron Corp , filed. (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
| 10/13/1998 | 90 | ORDER granting [88-1] motion to place documents under seal (#81 sealed document), entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 10/14/1998) |
| 10/22/1998 | 91 | JOINT MOTION to extend time to file dispositive motions by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (fmremp) (Entered: 10/22/1998) |
| 10/23/1998 | 92 | ORDER granting [91-1] joint motion to extend time to file dispositive motions set dispositive motion filing deadline for 11/17/98 , entered; Parties notified. Each party may file one motion addressing all summary jgmt issues. Court's page limit is waived. Replies must be filed 10 days after responses are served. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 10/23/1998) |
| 10/28/1998 | 93 | REQUEST by Kvaerner Oilfield that Examiner interviews be recorded , filed. (SEALED, PLACED IN VAULT) (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 10/30/1998 | 99 | Minute Entry Order of Telephonic Pretrial Conference: terminated deadlines (Ct Reporter: Y. Perry) , entered. Parties ntfd. App: Lester Hewitt f/pltf and Steve Cagle f/deft. Court issues its ruling on the record regarding Trademark Patent office communications. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/03/1998) |
| 10/30/1998 | 94 | FURTHER RESPONSE of 10/29/98 by Cooper Cameron Corp regarding the issue of recording interviews with the US Patent and Trademark Office or conducting all affairs in writing, filed. (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
| 11/10/1998 | 100 | TRANSCRIPT OF PROCEEDINGS of telephone conference for dates of 10/30/98 before Judge Nancy F. Atlas , filed. ( Court Rptr: Yvette F. |

|  |  | Perry) (fmremp) (Entered: 11/10/1998) |
|---|---|---|
| 11/16/1998 | 108 | REQUEST by Kvaerner Oilfield Pr for Reconsideration , filed. (fmremp) (Entered: 12/02/1998) |
| 11/17/1998 | 101 | MOTION for separate trial of deft's inequitable conduct defense by Cooper Cameron Corp, Motion Docket Date 12/7/98 [101-1] motion , filed. (fmremp) (Entered: 11/18/1998) |
| 11/17/1998 | 102 | MOTION for summary judgment by Kvaerner Oilfield Pr, Motion Docket Date 12/7/98 [102-1] motion , filed. (SEALED, PLACED IN VAULT) [3 envelopes] original eod 11/18/98 (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 11/17/1998 | 103 | MOTION to exclude opinion testimony of Martin Bowring by Cooper Cameron Corp, Motion Docket Date 12/7/98 [103-1] motion , filed. (SEALED, PLACED IN VAULT) original eod 11/18/98 (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 11/17/1998 | 104 | MOTION for summary judgment by Cooper Cameron Corp, Motion Docket Date 12/7/98 [104-1] motion , filed. (SEALED, PLACED IN VAULT) total of 6 envelopes (original eod 11/18/98) (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 11/25/1998 | 105 | MOTION to exclude testimony of Professor Stephen Magee by Kvaerner Oilfield Pr, Motion Docket Date 12/15/98 [105-1] motion , filed. (SEALED, PLACED IN VAULT) original eod 11/27/98 (fmremp) (Entered: 01/15/1999) |
| 12/01/1998 | 106 | MOTION for leave to file substitute title page and introduciton to Cooper Motions for Summary Judgment by Cooper Cameron Corp, Motion Docket Date 12/21/98 [106-1] motion , filed. (fmremp) (Entered: 12/02/1998) |
| 12/01/1998 | 107 | SUBSTITUTE PAGES for Motions for Summary Judgment filed on behalf of Cooper Cameron Corp , filed (fmremp) (Entered: 12/02/1998) |
| 12/03/1998 | 109 | ORDER granting leave to file introduction to pltf's motions for summary judgment , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 12/04/1998) |
| 12/04/1998 | 110 | ORDER granting [106-1] motion for leave to file substitute title page and introduciton to Cooper Motions for Summary Judgment , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 12/07/1998) |
| 12/07/1998 | 112 | Copy of RESPONSE by Kvaerner Oilfield Pr to [101-1] motion for separate trial of deft's inequitable conduct defense , filed. (fmremp) (Entered: 12/08/1998) |

| 12/07/1998 | 116 | OPPOSITION/RESPONSE by Cooper Cameron Corp in opposition to [102-1] motion for summary judgment , filed (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
|---|---|---|
| 12/07/1998 | 111 | OBJECTIONS TO AND MOTION to strike Declaration of Bjorn E. Klepsvik by Cooper Cameron Corp, Motion Docket Date 12/27/98 [111-1] motion , filed. (SEALED, PLACED IN VAULT) original eod 12/8/98 (fmremp) (Entered: 01/15/1999) |
| 12/07/1998 | 113 | OPPOSITION/RESPONSE by Kvaerner Oilfield Pr in opposition to [104-1] motion for summary judgment , filed (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
| 12/07/1998 | 114 | OPPOSITION/RESPONSE by Kvaerner Oilfield Pr in opposition to [103-1] motion to exclude opinion testimony of Martin Bowring , filed (SEALED, PLACED IN VAULT) original eod 12/8/98 (fmremp) (Entered: 01/15/1999) |
| 12/07/1998 | 115 | APPENDIX by Kvaerner Oilfield Pr to [113-1] opposition response , filed. (SEALED, PLACED IN VAULT) original eod 12/8/98 (fmremp) (Entered: 01/15/1999) |
| 12/07/1998 | 117 | EXHIBITS/APPENDIX by Cooper Cameron Corp to [116-1] opposition response , filed. (SEALED, PLACED IN VAULT) original eod 12/8/98 (fmremp) (Entered: 01/15/1999) |
| 12/08/1998 | 118 | MOTION for production of documents PJ21 and PJ22 and related correspondence on plaintiff's privilege log by Kvaerner Oilfield Pr, Motion Docket Date 12/28/98 [118-1] motion , filed. (fmremp) (Entered: 12/08/1998) |
| 12/15/1998 | 119 | JOINT MOTION for access to sealed document filed 12/7/98 by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (fmremp) (Entered: 12/16/1998) |
| 12/15/1998 | 120 | RESPONSE by Cooper Cameron Corp to [105-1] motion to exclude testimony of Professor Stephen Magee , filed. (SEALED, PLACED IN VAULT) original eod 12/16/98 (fmremp) (Entered: 01/15/1999) |
| 12/17/1998 | 122 | SUPPLEMENT to Opposition to Cooper's Motion for Summary Judgment by Kvaerner Oilfield Pr , filed. (fmremp) (Entered: 12/17/1998) |
| 12/21/1998 | 123 | UNOPPOSED MOTION to extend time to file replies to deft's Oppositions to Pltf's Motions for Summary Jgmt by Cooper Cameron Corp, Motion Docket Date 1/10/99 [123-1] motion , filed. (fmremp) (Entered: 12/21/1998) |
| 12/22/1998 | 124 | ORDER granting [123-1] motion to extend time to file replies to deft's Oppositions to Pltf's Motions for Summary Jgmt; set party's reply brief |

| | | due 12/23/98 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 12/22/1998) |
|---|---|---|
| 12/23/1998 | 125 | REPLY MEMORANDUM by Kvaerner Oilfield Pr in support of [102-1] motion for summary judgment , filed (SEALED, PLACED IN VAULT) (fmremp) (Entered: 01/15/1999) |
| 12/23/1998 | 126 | MOTION to strike SISL Documents as 35 USC 102(a) Defense by Cooper Cameron Corp, Motion Docket Date 1/12/99 [126-1] motion , filed. (SEALED, PLACED IN VAULT) original eod 12/24/98 (fmremp) (Entered: 01/15/1999) |
| 12/23/1998 | 127 | REPLY by Cooper Cameron Corp to response to [101-1] motion for separate trial of deft's inequitable conduct defense , filed (SEALED, PLACED IN VAULT) original eod 12/24/98 (fmremp) (Entered: 01/15/1999) |
| 12/23/1998 | 128 | OBJECTION TO AND MOTION to strike [122-1] supplement to deft's opposition to mtn for summary jgmt and Declaration of Jim Reid by Cooper Cameron Corp, Motion Docket Date 1/12/99 [128-1] motion , filed. (SEALED, PLACED IN VAULT) original eod 12/24/98 (fmremp) Modified on 01/15/1999 (Entered: 01/15/1999) |
| 12/23/1998 | 129 | REPLY to [114-1] opposition response by Cooper Cameron Corp , filed. (SEALED, PLACED IN VAULT) original eod 12/24/98 (fmremp) (Entered: 01/15/1999) |
| 12/23/1998 | 130 | REPLY by Cooper Cameron Corp to opposition/response to [104-1] motion for summary judgment , filed (SEALED, PLACED IN VAULT) original eod 12/24/98 (fmremp) (Entered: 01/15/1999) |
| 12/28/1998 | 131 | RESPONSE by Kvaerner Oilfield Pr in opposition to [111-1] motion to strike Declaration of Bjorn E. Klepsvik , filed (SEALED, PLACED IN VAULT) original eod 12/29/98 (fmremp) (Entered: 01/15/1999) |
| 12/30/1998 | 132 | RESPONSE by Cooper Cameron Corp in opposition to [118-1] motion for production of documents PJ21 and PJ22 and related correspondence on plaintiff's privilege log , filed (fmremp) (Entered: 12/31/1998) |
| 01/07/1999 | 137 | Minute Entry Order of Status Conference: granting [119-1] joint motion for access to sealed document filed 12/7/98 (Ct Reporter: K. Metzger) App: Lester Hewitt f/pltf and John Cagle f/deft. Clerk is ordered to correct docket sheet to show titles of all sealed documents, entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 01/14/1999) |
| 01/07/1999 | 133 | REPLY/MEMORANDUM by Kvaerner Oilfield Pr in support of [105-1] motion to exclude testimony of Professor Stephen Magee , filed (SEALED, PLACED IN VAULT) original eod 1/8/99 (fmremp) |

| | | (Entered: 01/15/1999) |
|---|---|---|
| 01/12/1999 | 134 | SEALED DOCUMENT placed in vault, filed (fmremp) (Entered: 01/13/1999) |
| 01/12/1999 | 136 | RESPONSE by Kvaerner Oilfield Pr in opposition to Pltf's Motion to strike SISL documents as a 35 USC Defense, filed (fmremp) (Entered: 01/13/1999) |
| 01/12/1999 | 135 | RESPONSE by Kvaerner Oilfield Pr in opposition to [128-1] motion to strike [122-1] supplement to deft's opposition to mtn for summary jgmt , filed (fmremp) (Entered: 01/25/1999) |
| 01/21/1999 | 138 | REPLY by Kvaerner Oilfield Pr to opposition/response to [118-1] motion for production of documents PJ21 and PJ22 and related correspondence on plaintiff's privilege log , filed (fmremp) (Entered: 01/22/1999) |
| 01/25/1999 | 139 | REPLY by Cooper Cameron Corp to response to [126-1] motion to strike SISL Documents as 35 USC 102(a) Defense , filed (fmremp) (Entered: 01/26/1999) |
| 02/01/1999 | 140 | MEMORANDUM AND ORDER granting [103-1] motion to exclude opinion testimony of Martin Bowring denying [105-1] motion to exclude testimony of Professor Stephen Magee , entered. Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/01/1999) |
| 02/01/1999 | 141 | ORDER granting in part, denying in part [101-1] motion for separate trial of deft's inequitable conduct defense , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/01/1999) |
| 02/01/1999 | 142 | ORDER granting [118-1] motion for production of documents PJ21 and PJ22 and related correspondence on plaintiff's privilege log , entered; Cooper Cameron Corp is ordered to supply documents PJ21, PJ22, PJ20, PJ25, PJ26 and PJ27 to the court. The documents shall be delivered directly to Chambers with an explanatory cover letter. Only the letter shall be delivered to dft's counsel. After the court's review of these documents, the Court will issue a ruling and will file under seal the document copies in the Court's docket. Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/01/1999) |
| 02/03/1999 | 143 | SUPPLEMENT to its [102-1] motion for summary judgment by Kvaerner Oilfield Pr , filed. (fmremp) (Entered: 02/03/1999) |
| 02/04/1999 | 144 | Agreed procedure governing submission of dispute to Special Master Rosenthal, by Kvaerner National Inc, filed (ltien) (Entered: 02/04/1999) |
| 02/05/1999 | 145 | SEALED DOCUMENT placed in vault, filed (fmremp) (Entered: 02/08/1999) |

| 02/08/1999 | 154 | SEALED DOCUMENT placed in vault, filed (fmremp) (Entered: 03/09/1999) |
|---|---|---|
| 02/09/1999 | 146 | STIPULATION by Cooper Cameron Corp that side valve trees with a workover port above the removable stopper plug do not literally infringe claim 10 of U.S. Patent 5,544,707, filed. (fmremp) (Entered: 02/09/1999) |
| 02/09/1999 | 147 | ORDER on Agreed Procedure governing submission of dispute to Special Master Rosenthal , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/10/1999) |
| 02/09/1999 | 148 | ORDER ON AGREED PROCEDURE governing Submission of Dispute to Special Master Rosenthal , entered; Parties notified. Alan Rosenthal is hereby appointed as a special master in this case. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/12/1999) |
| 02/16/1999 | 149 | SUPPLEMENTAL REPLY in Support of Motion for Summary Jgmt on the legal questions that SISL reports are not printed publications by Cooper Cameron Corp , filed. (fmremp) (Entered: 02/16/1999) |
| 02/17/1999 | 150 | RESPONSE by Cooper Cameron Corp in opposition to [143-1] supplement to motion for summary jgmt, filed (fmremp) (Entered: 02/18/1999) |
| 02/19/1999 | 151 | SURREPLY to [149-1] supplemntal reply to pltf's motionf or summary jgmt by Kvaerner Oilfield Pr , filed. (fmremp) (Entered: 02/22/1999) |
| 02/19/1999 | 152 | SCHEDULING ORDER setting Mediation deadline 5/14/99 and parties to agree on mediator by 3/12/99; Pretrial order to be submitted on or before 6/7/99 ; Docket call deadline 6/11/99; initial brief on claim interpretation 4/9/99; response to initial brief 4/28/999 and reply 5/7/99 before Judge Nancy F. Atlas , entered. Parties notified. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/22/1999) |
| 02/19/1999 | 153 | MEMORANDUM AND ORDER granting in part, denying in part [104-1] motion for summary judgment granting in part, denying in part [102-1] motion for summary judgment denying [128-1] motion to strike [122-1] supplement to deft's opposition to mtn for summary jgmt denying [126-1] motion to strike SISL Documents as 35 USC 102(a) Defense denying [111-1] motion to strike Declaration of Bjorn E. Klepsvik denying [118-1] motion for production of documents PJ21 and PJ22 and related correspondence on plaintiff's privilege log , entered. Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/22/1999) |
| 03/11/1999 | 155 | Notice of change of address by Lester L Hewitt and Douglas W Rommelmann, attys for Cooper Cameron Corp , filed. (ltien) (Entered: 03/11/1999) |

| 03/30/1999 | <u>156</u> | ORDER: A telephone pretrial conference is set for 2:00 4/1/99 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 03/31/1999) |
|---|---|---|
| 04/05/1999 | <u>157</u> | Minute Entry Order: telephone pretrial conference held; appearances: Lester Hewitt, Steve Cagle; Ct Reporter: J. Smith , entered. Parties update court on status of case. Parties to file joint letter with court as to their decision on administratively closing case pending the ruling from the Patent and Trademark Office, and the foreign deposition of Norsk Hydro. Current dockedt control order remains in effect with exception of the briefing on the Markman hearing, which is now due by 4/30/99. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 04/13/1999) |
| 04/15/1999 | 158 | LETTER NOTICE to Judge Atlas agreeing to the administrative closing of case, by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (psmith) (Entered: 04/15/1999) |
| 04/19/1999 | 159 | SEALED DOCUMENT placed in vault, filed. sa (fmremp) (Entered: 04/20/1999) |
| 04/21/1999 | <u>160</u> | ORDER FOR ADMINISTRATIVE CLOSING: This case is ADMINISTRATIVELY CLOSED until 12/31/99, unless either party files a written motion to reopen the case prior to that date. Counsel for Cooper Cameron Corp is directed to advise the Court in writing within 3 business days from the conclusion of the currently pending continuation patent application , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 04/22/1999) |
| 04/21/1999 | | Case closed (fmremp) (Entered: 04/22/1999) |
| 07/14/1999 | | Rec'd letter addressed to Judge Atlas re: Court's Order for Administrative Closure entered 4/22/99, counsel for Cooper Cameron was directed to advise the Court in writing w/in three business days from the conclusion of the currently pending continuation application; fwd to CRD (fmremp) (Entered: 07/14/1999) |
| 07/16/1999 | 161 | LETTER RESPONSE filed by Kvaerner Oilfield Products to [0-0] remark - Cooper Cameron's letter to Court dated 7/14/99 in which Mr. Hewitt asks that the case be removed from administrative closure. (aainsworth) (Entered: 07/16/1999) |
| 09/10/1999 | 162 | MOTION to reopen case and for entry of supplemental docket control order by Plaintiff Cooper Cameron Corp, Motion Docket Date 9/30/99 [162-1] motion, 9/30/99 [162-2] motion , filed. (fmremp) (Entered: 09/10/1999) |
| 09/15/1999 | 163 | RESPONSE filed by Kvaerner Oilfield Products in opposition to [162-2] motion for entry of supplemental docket control order. (aainsworth) |

| | | (Entered: 09/16/1999) |
|---|---|---|
| 09/21/1999 | 164 | ORDER that a pretrial conference regarding Plaintiff's Motion to Reopen Case and for Entry of Supplemental Docket Control Order [Doc #162] set for 9/27/99 at 9:30 am , entered, Ptys notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 09/22/1999) |
| 09/27/1999 | 165 | Hearing, Minutes and Order: Pretrial Conference held before Judge Atlas on 9/27/99; Appearances by Lester Hewitt/David Jones/Pete Balinsky f/Plaintiff, Steve Cagle/John Kettle f/Defendant, A Traylor/Ct Rptr, Plaintiff's [162-1] motion to reopen case and [162-2] for entry of supplemental docket control order is DENIED in large part; the oral motion to strike Defendant's designation of third expert witness, Mr Parks is DENIED, entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 09/29/1999) |
| 09/28/1999 | | Per Case Manager: The Court spoke with Alan Rosenthal by telephone, the special master apopinted by the Court; He promises the report on his work in no more than 2 weeks (fmremp) (Entered: 09/28/1999) |
| 11/11/1999 | 166 | AGREED LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE signed by Judge Nancy F. Atlas , filed (hcarr) (Entered: 11/15/1999) |
| 12/14/1999 | | Rec'd letter from Birgitte Janecke Lund, Deputy Judge to Judge Atlas Re: dates for the examination set for 3/16 and 3/17/00 to take place at Oslo City Court at CJ Hambros Plass 4, Oslo and the legal representatives to each of the parties will be summoned to the court hearings and the court recommends that the parties engage Norwegian attorneys who can carry through with the examinations are (fmremp) (Entered: 12/15/1999) |
| 01/19/2000 | 167 | SEALED DOCUMENT placed in vault, filed (hcarr) (Entered: 01/20/2000) |
| 02/22/2000 | 168 | TRANSCRIPT OF PROCEEDINGS of Hearing for dates of 9/27/99 at 3:00 PM before Judge Nancy K Atlas, filed. ( Court Rptr: Anne Traylor) (Loose in File) (fmremp) (Entered: 02/24/2000) |
| 04/26/2000 | 169 | RETURN OF SERVICE of subpoena executed as to ABB Vetco Gray Inc c/o Albert B Deaver Jr Esq 4/14/00, filed. (ddarneille) (Entered: 04/27/2000) |
| 04/28/2000 | 170 | JOINT MOTION for entry of docket control order to govern completion of discovery filed by Cooper Cameron Corp, Kvaerner Oilfield Pr. (leddins) (Entered: 04/28/2000) |
| 05/01/2000 | 172 | JOINT MOTION FOR ENTRY OF DOCKET CONTROL ORDER to govern completion of discovery & ORDER - GRANTED IN PART; a |

|  |  | new docket control order will be filed, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 05/03/2000) |
|---|---|---|
| 05/02/2000 | 171 | AMENDED DOCKET CONTROL ORDER: Supplementation of Expert Reports by Pltf 6/28/00, Supplementation of Expert Reports by Deft 8/1/00, Close of Fact and Expert Discovery 8/25/00; Dispositive and Non Dispositive Motions Relating to US Patent No 6,039,119, Markman Hearing and Daubert Motions for Both US Patent Nos 5,544,707 and 6,039,119 will be filed by 10/13/00, Oral Agument and PTC on Pending Motions 12/13/00 at 3:00 pm, All Other Pretrial Motions 12/31/00, Joint Pretrial Order and Motions in Limine 2/9/01, Docket Call 2/23/01 at 4:00 pm, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) Modified on 05/03/2000 (Entered: 05/03/2000) |
| 05/10/2000 | 173 | AGREED MOTION for leave to file first amended complaint by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed. (leddins) (Entered: 05/10/2000) |
| 05/10/2000 | 174 | FIRST AMENDED COMPLAINT filed by Cooper Cameron Corp ,(Answer due 5/20/00 for Kvaerner Oilfield Pr ) amending [1-1]. (leddins) (Entered: 05/10/2000) |
| 05/12/2000 | 175 | ORDER granting [173-1] agreed motion for leave to file first amended complaint, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 05/15/2000) |
| 05/18/2000 | 176 | FIRST AMENDED COMPLAINT by Cooper Cameron Corp ,(Answer due 5/28/00 for Kvaerner Oilfield Pr ) amending [1-1] complaint , filed. (psmith) (Entered: 05/18/2000) |
| 06/12/2000 |  | FIRST AMENDED ANSWER to AMENDED Complaint filed by Kvaerner Oilfield Pr : amends [13-1] answer. (leddins) Modified on 06/13/2000 (Entered: 06/13/2000) |
| 06/12/2000 |  | FIRST AMENDED ANSWER to Amended Complaint filed by Kvaerner Oilfield Pr : amends [13-1] answer. (part 1 of 2 of pleading) (leddins) (Entered: 06/13/2000) |
| 06/12/2000 | 177 | FIRST AMENDED ANSWER/AMENDED COUNTERCLAIM to Amended Complaint filed by Kvaerner Oilfield Pr : amends [13-1] answer. (leddins) (Entered: 06/15/2000) |
| 06/15/2000 |  | Case reopened (leddins) (Entered: 06/15/2000) |
| 06/15/2000 | 178 | ORDER REINSTATING CASE, entered; Case is now active on the courts docket. Parties notified. ( signed by Judge Nancy F. Atlas ) (leddins) (Entered: 06/15/2000) |
| 07/10/2000 | 179 | MOTION SEALED, filed. (fmremp) (Entered: 07/11/2000) |

| 07/25/2000 | 180 | SEALED DOCUMENT placed in vault, filed. (ddarneille) (Entered: 07/26/2000) |
| 07/31/2000 | 181 | OPPOSITION by Kvaerner Oilfield to Motion to Consolidate. (sguevara) (Entered: 08/01/2000) |
| 08/03/2000 |  | Discovery (subpoena) mailed back to pltf's atty Lester Hewitt (sguevara) (Entered: 08/03/2000) |
| 08/09/2000 | 182 | SUPPLEMENT to its [181-1] opposition to Motion to Consolidate, by Kvaerner Oilfield Pr , filed. (psmith) (Entered: 08/09/2000) |
| 08/09/2000 | 183 | SEALED DOCUMENT placed in vault, filed. (psmith) (Entered: 08/09/2000) |
| 08/09/2000 | 184 | ORDER that Pltf Cooper Cameron's [179-1] sealed motion for consolidation is DENIED, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 08/10/2000) |
| 08/28/2000 | 185 | JOINT MOTION to modify the docket control order by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (psmith) (Entered: 08/28/2000) |
| 08/31/2000 | 186 | ORDER granting parties' [185-1] joint motion to modify the docket control order. Scheduling order deadlines: Supplementation of Expert Reports by pltf: 10/20/00; Close of fact and expert Discovery cutoff 11/17/00; Deadline for filing all dispositive motions 12/8/00; Deadline for filing non-dispositive motions 12/8/00; Joint Pretrial order deadline: 3/26/01; Docket call is set for 4:00 pm on 3/30/01 ; Supplementation of expert reports by defts: 11/3/00 , oral argument on pending motions is set for 9:00 am on 1/19/01 before Judge Nancy F. Atlas , entered; Parties notified. (signed by Judge Nancy F. Atlas) (sguevara) (Entered: 08/31/2000) |
| 11/09/2000 | 187 | JOINT MOTION to modify the docket control order by Cooper Cameron Corp, Kvaerner Oilfield Pr, filed. (ddarneille) (Entered: 11/13/2000) |
| 11/15/2000 |  | Letter to Judge Atlas from atty for pltf requesting the Court to contact Mr. Rosenthal to set a date for the completion of his assignment. (sguevara) (Entered: 11/16/2000) |
| 11/15/2000 | 188 | Joint Motion to Modify The Docket Control Order and Order: Supplementation of Expert Reports by Pltf 12/8/00 ; Supplementation of Expert Reports by Deft 12/22/00 ; Close of Fact and Expert Discovery 1/8/00 ; Dispositive and Non-Dispositive Motions relating to US Patent No 6,039,119, Markman and Daubert Motions for both US Patent Nos 5,544,707 and 6,039,119 will be filed by 1/15/01; Motion Opposition Briefs 1/29/01; Oral Argument on Pending Motions 2/2/01; |

| | | Joint Pretrial Order 3/26/01; Docket Call 3/30/01, entered, Parties notfified (signed by Judge Nancy K Atlas) (fmremp) (Entered: 11/17/2000) |
|---|---|---|
| 11/16/2000 | 189 | SEALED DOCUMENT placed in vault, filed. (Report by Alan Rosenthal). (sguevara) (Entered: 11/20/2000) |
| 11/27/2000 | 190 | ORDER set oral argument on pending motions for 9:00 2/2/01 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 11/28/2000) |
| 11/30/2000 | | Special Master's Report faxed to counsel. (hcarr) (Entered: 11/30/2000) |
| 12/04/2000 | 191 | SEALED DOCUMENT (letter) placed in vault, filed. (fmremp) (Entered: 12/04/2000) |
| 12/07/2000 | | Letter to Judge Atlas from Stephent Cagle for deft in response to pltf's 12/4/00 letter to the court. (sguevara) (Entered: 12/12/2000) |
| 12/07/2000 | 192 | RESPONSE by Kvaerner Oilfield Pr to the [191-1] Letter to Court from Lester Hewitt, filed. (psmith) (Entered: 12/22/2000) |
| 12/22/2000 | 193 | ORDER entered. Cooper's request for an order directing the Special Master to complete his assignment is DENIED. The Special Master's Report is adopted by the Court as its ruling of the discovery dispute. Cooper's request for an order requiring Kvaerner to produce in full its five patent applications is DENIED. By 1/12/01, Kvaerner shall produce thos portions of its patent applications that contain a discussion of the small pressure relief port's function. Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 12/26/2000) |
| 01/11/2001 | 194 | JOINT MOTION to modify the docket control order by Kvaerner Oilfield Pr , filed (sguevara) (Entered: 01/12/2001) |
| 01/11/2001 | 195 | Minute Entry Order: telephone pretrial conference held, terminated deadlines . Apps: Mr Rommelmann f/pltf, J Lynch f/deft. Court hears oral argument on discovery issues. Court ruling as stated on the record. Ct Reporter: K Metzger , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (ltien) (Entered: 01/12/2001) |
| 01/17/2001 | 196 | ORDER granting [194-1] joint motion to modify the docket control order dispositive motion filing deadline for 1/19/01 , and non-dispositve motion filing deadline for 1/19/01 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 01/17/2001) |
| 01/18/2001 | 197 | ORDER reset oral arguments and status conf. hearing 9:00 3/2/01 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (hlerma) (Entered: 01/18/2001) |
| 01/19/2001 | 198 | SEALED BRIEF placed in vault, filed. (fmremp) (Entered: 01/22/2001) |

| 01/19/2001 | 199 | SEALED APPENDIX to Document #198, placed in vault, filed. (fmremp) (Entered: 01/22/2001) |
|---|---|---|
| 01/19/2001 | 200 | UNOPPOSED SEALED MOTION to Exceed Page Limit, filed. (fmremp) (Entered: 01/22/2001) |
| 01/19/2001 | 201 | SEALED MOTION (For Summary Judgment Of Non-Infringement Under The Doctrine Of Equivalents With Respect To US Patent No 5,544,707), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 202 | SEALED MOTION (For Partial Summary Judgment That Claims 1, 3, 6, 7, 14, 16, 24, 29 And 31 Of United States Patent No 6,039,119 Are Invalid), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 203 | SEALED MOTION (Renewed Motion For Partial Summary Judgment On The Issues Of Lost Profits And Price Erosion Damages), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 204 | SEALED APPENDIX, placed in vault, filed. (fmremp) (Entered: 01/22/2001) |
| 01/19/2001 | 205 | MOTION SEALED (For Partial Summary Judgment Of Literal Infringement Of US Patent No 6,039,119), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 206 | MOTION SEALED (For Partial Summary Judgment Denying Inequitable Conduct Charge As To US Patent No 6,039,119), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 207 | SEALED MOTION (For Claim Construction), filed. (fmremp) Modified on 02/01/2001 (Entered: 01/22/2001) |
| 01/19/2001 | 208 | SEALED EXHIBITS Vols 1, 2, and 3; placed in vault, filed. (fmremp) Modified on 01/23/2001 (Entered: 01/22/2001) |
| 01/23/2001 | 209 | SEALED ORDER entered and placed in vault. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 01/24/2001) |
| 01/26/2001 | 210 | UNOPPOSED MOTION to extend time to respond to deft's motions for partial summary judgment and claim construction until February 5, 2001 by Cooper Cameron Corp, Motion Docket Date 2/15/01 [210-1] motion , filed. (sguevara) (Entered: 01/29/2001) |
| 01/30/2001 | 211 | ORDER granting pltf's [210-1] unopposed motion to extend time to respond to deft's motions for partial summary judgment and claim construction until February 5, 2001 Response to motion due: 2/5/01 , Motion Docket Date 2/5/01 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 01/31/2001) |

| 01/30/2001 | | Deadline updated; notice of compliance due for 2/5/01 (sguevara) (Entered: 01/31/2001) |
|---|---|---|
| 02/05/2001 | 212 | Deft Kvaerner Oilfield Products, Inc's Opposition to Pltf's [207-1] Motion For Claim Construction, filed (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 213 | SEALED DOCUMENT (Deft Kvaerner Oilfield Products, Inc's Partial Opposition To Pltf's Motion For Partial Summary Judgment Of Literal Infringement And Cross-Motion . . . .) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 213 | MOTION SEALED (Deft Kvaerner Oilfield Products, Inc's Partial Opposition . . . . And Cross-Motion For Partial Summary Judgment of Noninfringement Of Claims 14 and 16 Of US Patent No 6,039,119), filed (no proposed order) (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 214 | Deft's Unopposed MOTION To Exceed Page Limit by Kvaerner Oilfield Pr, Motion Docket Date 2/25/01 [214-1] motion , filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 215 | Deft Kvaerner Oilfield Products, Inc's Opposition to Pltf's [206-1] Motion For Partial Summary Judgment Denying Inequitable Conduct As To Patent No 6,039,119, filed (placed in brown expandable folder) (fmremp) Modified on 02/06/2001 (Entered: 02/06/2001) |
| 02/05/2001 | 217 | SEALED DOCUMENT Pltf's Opposition To Deft Kvaerner Oilfield Products, Inc' s Brief On The Construction Of The Claims Of United States Patent Nos 5,544,707 And 6,039,119) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 218 | SEALED DOCUMENT (Pltf's Opposition To Deft's Renewed Motion For Partial Summary Judgment On The Issues Of Lost Profits And Price Erosion Damages) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 219 | SEALED DOCUMENT (Cooper's Opposition To Kvaerner's Motion For Partial summary Judgment That Claims 1, 3, 6, 7, 14, 16, 24, 29, and 31 Of United States Patent No 6,039,119 Are Invalid) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 221 | SEALED DOCUMENT (Pltf's Opposition To Deft's Motion For Summary Judgment Of Non-Infringement Under The Doctrine Of Equivalents With Respect To US Patent No 5,544,7070) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 222 | SEALED DOCUMENT (Combined Exhibits To Pltf's Oppositions To Deft's Motions For Partial Summary Judgment And Claim Construction) placed in vault, filed. (fmremp) (Entered: 02/06/2001) |
| 02/05/2001 | 216 | UNOPPOSED MOTION to exceed page limit regarding pltf's |

|  |  | opposition to deft's brief on the construction of the claims of United States Patent Nos 5,544,707 and 6,039,119 by Cooper Cameron Corp, Motion Docket Date 2/25/01 [216-1] motion , filed. (ltien) (Entered: 02/08/2001) |
|---|---|---|
| 02/05/2001 | 220 | UNOPPOSED MOTION to exceed page limit regarding pltf's opposition to deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No 5,544,707 by Cooper Cameron Corp, Motion Docket Date 2/25/01 [220-1] motion , filed. (ltien) (Entered: 02/08/2001) |
| 02/07/2001 | 223 | ORDER granting deft's [214-1] motion for leave to file a summary judgment opposition exceeding the page limit, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 02/08/2001) |
| 02/07/2001 | 224 | ORDER granting pltf's [216-1] motion to exceed page limit regarding pltf's opposition to deft's brief on the construction of the claims of United States Patent Nos 5,544,707 and 6,039,119 , entered; this order shall NOT be sealed. The [216-1] motion is UNSEALED. Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 02/08/2001) |
| 02/07/2001 | 225 | ORDER granting pltf's [220-1] motion to exceed page limit regarding pltf's opposition to deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No 5,544,707 , entered; this order and the associated motion are NOT to be filed under seal. Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 02/08/2001) |
| 02/08/2001 | 226 | NOTICE AND ORDER rescheduling oral argument hearing to 10:00 am on 3/28/01 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 02/12/2001) |
| 03/01/2001 | 227 | MOTION for leave to file a reply brief in support of deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No. 5,544,707 by Kvaerner Oilfield Pr, Motion Docket Date 3/21/01 [227-1] motion , filed. (no order) (sguevara) (Entered: 03/02/2001) |
| 03/01/2001 | 228 | SEALED REPLY BRIEF in support of deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No. 5,544,707 placed in vault, filed. (sguevara) (Entered: 03/02/2001) |
| 03/01/2001 | 229 | SEALED REPLY in further support of its renewed motion for partial summary judgment on the issues of lost profits and price erosion damages placed in vault, filed. (sguevara) (Entered: 03/02/2001) |
| 03/01/2001 | 230 | SEALED REPLY TO PLTF'S opposition to deft's motion for partial |

| | | summary judgment that claims 1,3,6,7,14,16,24,29 and 31 of US Patent No. 6,039,119 are invalid placed in vault, filed. (sguevara) (Entered: 03/02/2001) |
|---|---|---|
| 03/01/2001 | 231 | SEALED COMBINED APPENDIX (Volume II) placed in vault, filed. (sguevara) (Entered: 03/02/2001) |
| 03/02/2001 | 232 | UNOPPOSED MOTION for an extension of time to respond to deft's cross-motion for partial summary judgment of noninfringement of claims 14 and 16 of US Patent No. 6,039.119 until March 5, 2001 by Cooper Cameron Corp, Motion Docket Date 3/22/01 [232-1] motion , filed. (sguevara) (Entered: 03/02/2001) |
| 03/05/2001 | 233 | SEALED Pltf's opposition to deft's cross-motion for partial summary judgment of noninfringement of claims 14 and 16 of US Patent No 6,039,119 and reply to deft's partial opposition to pltf's motin for summary jdugment of literal infringement placed in vault, filed. (sguevara) (Entered: 03/06/2001) |
| 03/05/2001 | 234 | ORDER granting pltf's [232-1] unopposed motion for an extension of time to respond to deft's cross-motion for partial summary judgment of noninfringement of claims 14 and 16 of US Patent No. 6,039.119 until March 5, 2001 , entered; pltf is granted an extension of time until March 5, 2001 to responde to deft's cross-motion for partial summary judgment of infringement. Parties notified. signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 03/06/2001) |
| 03/06/2001 | 235 | ORDER granting deft's [227-1] motion for leave to file a reply brief in support of deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No. 5,544,707 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 03/06/2001) |
| 03/07/2001 | 236 | Minute Entry Order: informal conference held. Apps: L Hewitt f/pltf; J Cagle f/deft. Court sets docket call for 4:00 4/27/01 , jury selection and trial for 9:00 5/21/01 . Ct Reporter: n/a , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (ltien) (Entered: 03/09/2001) |
| 03/19/2001 | 237 | UNOPPOSED MOTION to substitute exhibit Nos. APP-3 and E-2 by Cooper Cameron Corp, Motion Docket Date 4/8/01 [237-1] motion , filed. (sguevara) (Entered: 03/19/2001) |
| 03/20/2001 | 238 | SEALED Motion for leave to file a sur-reply brief in opposition to deft's motion for partial summary judgment that claims 1,3,6,7,14,29 and 31 of US Patent No. 6,039,119 are invalid, filed. (sguevara) (Entered: 03/21/2001) |
| 03/20/2001 | 239 | SEALED SUR-REPLY brief in opposition to deft's motion for partial summary judgment that claims 1,3,6,7,14,16,24,29 and 31 of US Patent |

| | | No. 6,039,119 are invalid placed in vault, filed. (sguevara) (Entered: 03/21/2001) |
|---|---|---|
| 03/20/2001 | 240 | SEALED MOTION for leave to file a sur-reply brief in opposition to deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No. 5,544,707, filed. (sguevara) (Entered: 03/21/2001) |
| 03/20/2001 | 241 | SEALED SUR-REPLY brief in opposition to deft's motion for summary judgment of non-infringement under the doctrine of equivalents with respect to US Patent No. 5,544,707 placed in vault, filed. (sguevara) (Entered: 03/21/2001) |
| 03/23/2001 | 242 | ORDER; deft to file a brief due with supporting evidence re: the effect on the validity of the '119 patent by 12:00 noon on 4/2/01 ; pltf shall file a responsive brief with supporting evidence by 5:00 pm on 4/6/01 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 03/26/2001) |
| 03/25/2001 | 243 | ORDER granting pltf's [237-1] unopposed motion to substitute exhibit Nos. APP-3 and E-2 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 03/27/2001) |
| 04/02/2001 | 244 | BRIEF on the effect of a ruling that Cooper Cameron's '119 patent is not entitled to the claimed June 1, 1992 filing date by Kvaerner Oilfield Pr , filed. (sguevara) (Entered: 04/03/2001) |
| 04/02/2001 | 245 | APPENDIX by Kvaerner Oilfield Pr to Kvaerner's [244-1] brief on the effect of a ruling that Cooper Cameron's '119 patent is not entitled to the claimed June 1, 1992 filing date, filed. (sguevara) (Entered: 04/03/2001) |
| 04/09/2001 | 246 | SEALED DOCUMENT (Pltf's Brief On The Effect Of Priority Date On Validity Of The Patent) placed in vault, filed. (fmremp) Modified on 04/11/2001 (Entered: 04/10/2001) |
| 04/16/2001 | 247 | MEMORANDUM AND ORDER granting [201-1] sealed motion, [202-1] sealed motion, [238-1] sealed motion, and [240-1] sealed motion; denying as moot [203-1] sealed motion, [205-1] sealed motion, [206-1] sealed motion, [207-1] sealed motion, and [213-1] sealed motion, entered. Kvaerner's counterclaim is DISMISSED as moot. Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 04/16/2001) |
| 04/16/2001 | 248 | FINAL JUDGMENT granting [201-1] sealed motion and [202-1] sealed motion , entered. Case is DISMISSED with prejudice. All prior rulings in this case are hereby made final. Taxable costs are assessed against Cooper Cameron Corp. Parties ntfd. ( signed Judge Nancy F. Atlas ) (ltien) (Entered: 04/16/2001) |

| 04/16/2001 | | Case closed (ltien) (Entered: 04/16/2001) |
|---|---|---|
| 04/30/2001 | 249 | Bill of costs, filed by deft. (sguevara) (Entered: 04/30/2001) |
| 05/07/2001 | 250 | OBJECTIONS to deft's [249-1] bill of costs by Cooper Cameron Corp , filed. (sguevara) (Entered: 05/08/2001) |
| 05/15/2001 | 251 | ORDER that Deft Kvaerner Oilfield Products, Inc shall file any response to Pltf's Objections to Kvaerner's Bill of Costs by 10:30 am on 5/18/01 and shall deliver a courtesy copy of the response to chambers by the same deadline; if Deft does not intend to file a response, counsel for Deft shall promptly notify the Court, entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 05/15/2001) |
| 05/17/2001 | 252 | STIPULATED Bill of costs, filed by the parties (total taxable costs to be awarded to defendant in the amount of $108,992.45. (sguevara) Modified on 05/18/2001 (Entered: 05/17/2001) |
| 05/17/2001 | 253 | ORDER mooting pltf's [250-1] objections to deft's bill of costs, entered; Deft shall recover taxable costs in the stipulated amount of $108,992.45. Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 05/18/2001) |
| 05/17/2001 | 254 | NOTICE OF APPEAL to the U.S. Court of Appeals for the Federal Circuit of [248-1] order, [247-1] order by Cooper Cameron Corp , filed. Fee Status: paid Receipt #: 510227 (jdavenport) (Entered: 05/23/2001) |
| 05/23/2001 | | Notice of appeal and Copy of docket transmitted to USCAFC: [254-1] appeal (jdavenport) (Entered: 05/23/2001) |
| 05/29/2001 | 255 | NOTICE OF CROSS APPEAL to the U.S. Court of Appeals for the Federal Circuit of [248-1] order by Kvaerner Oilfield Pr , filed. Fee Status: paid Receipt #: 510611 (jdavenport) Modified on 06/05/2001 (Entered: 06/05/2001) |
| 06/05/2001 | | Notice of appeal and Copy of docket transmitted to USCAFC: [255-1] appeal (jdavenport) (Entered: 06/05/2001) |
| 06/12/2001 | | NOTICE of Docketing NOA from USCAFC Re: [255-1] appeal, [254-1] appeal USCA NUMBER: 01-1383 (jdavenport) (Entered: 06/13/2001) |
| 06/25/2001 | | NOTICE of Docketing NOA from USCAFC Re: [255-1] appeal USCAFC NUMBER: 01-1408 (jdavenport) (Entered: 06/28/2001) |
| 07/22/2002 | 256 | JUDGMENT OF USCA (certified copy) of 5/14/02 issued as mandate on 7/18/02 Re: [255-1] appeal, [254-1] appeal , filed. CCA No. 01-1383-1408 ORDERED AND ADJUDGED: AFFIRMED IN PART AND REVERSED IN PART (jdavenport) (Entered: 07/31/2002) |

| 07/22/2002 | 257 | Certified copy of USCA OPINION, filed. CCA No. 01-1383-1408 (jdavenport) (Entered: 07/31/2002) |
|---|---|---|
| 08/06/2002 | | Rec'd Proposed Motion to appear pro hav vice as to Willaim D. Belanger for Cooper Cameron Corp., frwd to crd. (hlerma) Modified on 08/07/2002 (Entered: 08/07/2002) |
| 08/06/2002 | | Rec'd Proposed Motion to appear pro hav vice as to Michael T. Renaud for Cooper Cameron Corp., frwd to crd. (hlerma) Modified on 08/07/2002 (Entered: 08/07/2002) |
| 08/06/2002 | | Rec'd Proposed Motion to appear pro hav vice as to Geri L Haight for Cooper Cameron Corp., frwd to crd. (hlerma) Modified on 08/07/2002 (Entered: 08/07/2002) |
| 08/06/2002 | | Rec'd Proposed Motion to appear pro hav vice as to Stephen F. Herbes for Cooper Cameron Corp., frwd to crd. (hlerma) Modified on 08/07/2002 (Entered: 08/07/2002) |
| 08/06/2002 | | Rec'd Proposed Motion to appear pro hav vice as to John M. Delehaanty for Cooper Cameron Corp., frwd to crd . (hlerma) (Entered: 08/07/2002) |
| 08/08/2002 | 258 | ORDER pursuant to L. R. 1, entered. Attorney Michael T Renaud may appear pro hac vice for the pltf. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (amaly) (Entered: 08/09/2002) |
| 08/08/2002 | 259 | ORDER pursuant to L. R. 1, entered. Attorney William D Belanger is admitted pro have vice for the pltf. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (amaly) (Entered: 08/09/2002) |
| 08/08/2002 | 260 | ORDER pursuant to L. R. 1, entered. Attorney Stephen F Herbes may appear pro hac vice for the pltf. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (amaly) (Entered: 08/09/2002) |
| 08/08/2002 | 261 | ORDER pursuant to L. R. 1, entered. Attorney John M Delehanty may appear pro hac vice for the pltf. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (amaly) (Entered: 08/09/2002) |
| 08/08/2002 | 262 | ORDER pursuant to L. R. 1, entered. Attorney Geri L Haight may appear pro hac vice for the pltf. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (amaly) (Entered: 08/09/2002) |
| 09/12/2002 | 263 | HEARING held 9/12/02 before Judge Atlas, MINUTES of Telephone Status Conference AND ORDER: Apps by Jones/Delehanty f/Pltf, Lynch f/Deft, Ct Rptr - None, Telephone status conference held, Scheduling Order as follows, Supplemental discovery on damages due 10/12/02, Experts Supplements due 11/22/02, Damages and SISL Depositions to be taken 1/15/03, Motions due 9/26/02 Responses due 10/17/02, Replies due 10/31/02, Sur-replies due 11/14/02, Pretrial |

| | | |
|---|---|---|
| | | Conference set for 2/20/03 at 1:00 pm before Judge Atlas, entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) Modified on 09/19/2002 (Entered: 09/19/2002) |
| 09/26/2002 | 264 | BRIEF on the construction of the claims of US Patent No 6,039,119 by Kvaerner Oilfield Pr , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 265 | APPENDIX of exhibits by Kvaerner Oilfield Pr to Deft's [264-1] brief on the construction of the claims of US Patent 6,039,119 filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 266 | UNOPPOSED MOTION for leave to file a memorandum in excess of the page limitation by Cooper Cameron Corp, Motion Docket Date 10/16/02 [266-1] motion , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 267 | MOTION for summary judgment of no inequitable conduct by Cooper Cameron Corp, Motion Docket Date 10/16/02 [267-1] motion , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 268 | MOTION for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119 by Cooper Cameron Corp, Motion Docket Date 10/16/02 [268-1] motion , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 269 | MOTION for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119 by Cooper Cameron Corp, Motion Docket Date 10/16/02 [269-1] motion , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 270 | MOTION for summary judgment of literal infringement of claim 1 of US Patent No 6,039,119 by Cooper Cameron Corp, Motion Docket Date 10/16/02 [270-1] motion , filed. (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 271 | MEMORANDUM by Cooper Cameron Corp in support of it's [270-1] motion for summary judgment, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, [267-1] motion for summary judgment of no inequitable conduct , filed (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 272 | APPENDIX of exhibits (Book 1) by Cooper Cameron Corp to it's [270-1] motion for summary judgment, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, [268-1] motion for summary judgment, motion for summary judgment of no anticipation of claim 1 US Patent No 6,039,119, [267-1] motion for summary judgment of no inequitable conduct , filed. (filed in brown expandable folder) (sfedele) (Entered: 09/27/2002) |
| 09/26/2002 | 273 | APPENDIX of exhibits (Book 2) by Cooper Cameron Corp to it's [270-1] motion for summary judgment, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, |

| | | |
|---|---|---|
| | | motion for summary judgment of no anticipation of claim 1 US Patent No 6,039,119,[268-1] motion for summary judgment [267-1] motion for summary judgment of no inequitable conduct , filed.(in brown expandable folder) (sfedele) (Entered: 09/27/2002) |
| 09/30/2002 | 274 | ORDER granting Pltf's unopposed [266-1] motion for leave to file a memorandum in excess of the page limitation , entered;Parties notified. ( signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 10/01/2002) |
| 10/17/2002 | 275 | MEMORANDUM by Cooper Cameron Corp in opposition to Kvaerner's [264-1] Proposed Claim Construction, filed (psmith) (Entered: 10/18/2002) |
| 10/17/2002 | 276 | APPENDIX by Cooper Cameron Corp Submitted In Support of Pltfs [275-1] Memorandum in Opposition to Kvaerner's Proposed Claim Construction, filed. (in brown expandable folder) (psmith) (Entered: 10/18/2002) |
| 10/17/2002 | 277 | UNOPPOSED MOTION to exceed page limit by Kvaerner Oilfield Pr, Motion Docket Date 11/6/02 [277-1] motion , filed. (sfedele) (Entered: 10/18/2002) |
| 10/17/2002 | 278 | RESPONSE by Kvaerner Oilfield Pr in opposition to Pltf's [270-1] motion for summary judgment, pltf's [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, pltf's [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, pltf's [267-1] motion for summary judgment of no inequitable conduct , filed (sfedele) (Entered: 10/18/2002) |
| 10/17/2002 | 279 | APPENDIX by Kvaerner Oilfield Pr to it's [278-1] response in opposition , filed. (sfedele) (Entered: 10/18/2002) |
| 10/21/2002 | 280 | ORDER granting Defts [277-1] motion to exceed page limit , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 10/22/2002) |
| 10/25/2002 | 281 | UNOPPOSED MOTION to extend time to reply to Motions for summary judgment by Cooper Cameron Corp, Motion Docket Date 11/14/02 [281-1] motion , filed. (sfedele) (Entered: 10/25/2002) |
| 10/29/2002 | 282 | ORDER granting pltf's [281-1] motion to extend time to reply to Motions for summary judgment , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sguevara) (Entered: 10/29/2002) |
| 10/31/2002 | 283 | REPLY to Pltf's [275-1] opposition memorandum to Kvaerner's Proposed Claim Construction by Kvaerner Oilfield Pr , filed. (hlerma) (Entered: 11/01/2002) |
| 11/07/2002 | 284 | MOTION for leave to file a memorandum in excess of the page |

| | | limitation permitted by Court Procedure No. 6A by Cooper Cameron Corp, Motion Docket Date 11/27/02 [284-1] motion , filed. (sguevara) (Entered: 11/08/2002) |
|---|---|---|
| 11/07/2002 | 285 | REPLY MEMORANDUM by Cooper Cameron Corp in support of its [267-1] motion for summary judgment of no inequitable conduct, [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, [270-1] motion for summary judgment , filed (sguevara) (Entered: 11/08/2002) |
| 11/07/2002 | 286 | APPENDIX of exhibits by Cooper Cameron Corp in support of pltf's [285-1] reply memorandum in support of its motions for summary judgment, filed. (in brown expandable folder) (sguevara) (Entered: 11/08/2002) |
| 11/12/2002 | 287 | UNOPPOSED MOTION to extend time to file it surreply in opposition to Pltf's motions for summary judgment by Kvaerner Oilfield Pr, Motion Docket Date 12/2/02 [287-1] motion , filed. (sfedele) (Entered: 11/13/2002) |
| 11/13/2002 | 288 | ORDER granting Cooper Cameron Corporations' [284-1] unopposed motion for leave to file a memorandum in excess of the page limitation permitted by Court Procedure No. 6A , entered; Parties notified. ( by Judge Nancy F. Atlas ) (sfedele) (Entered: 11/13/2002) |
| 11/14/2002 | 289 | ORDER granting deft's [287-1] motion to extend time to file its surreply in opposition to Pltf's motions for summary judgment; Surreply set to 11/21/02 for pltf's [267-1] motion for summary judgment of no inequitable conduct, [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, and [270-1] motion for summary judgment , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (ltien) (Entered: 11/14/2002) |
| 11/14/2002 | 290 | SUR-REPLY MEMORANDUM by Cooper Cameron Corp in opposition to Kvaerner's [264-1] proposed claim construction, filed (sguevara) (Entered: 11/15/2002) |
| 11/14/2002 | 291 | APPENDIX of exhibits by Cooper Cameron Corp submitted in support of pltf's [290-1] sur-reply memorandum in opposition to Kvaerner's proposed claim construction, filed. (sguevara) (Entered: 11/15/2002) |
| 11/21/2002 | 292 | REPLY by Kvaerner Oilfield Pr to response to Pltf's [270-1] motion for summary judgment,Pltf's [269-1] motion for summary judgment nonobviousness of claim 1 of US Patent No 6,039,119, motion for summary judgment of no anticipation of claim 1 US Patent No |

|  |  | 6,039,119,Pltf's [267-1] motion for summary judgment of no inequitable conduct , filed (sfedele) (Entered: 11/22/2002) |
| --- | --- | --- |
| 12/24/2002 | 293 | LETTER RESPONSE by Kvaerner Oilfield Pr to the 12/20/02 letter from counsel for pltf, filed. (sguevara) (Entered: 01/08/2003) |
| 01/06/2003 | 294 | LETTER RESPONSE by Kvaerner Oilfield Pr to pltf's 12/20/02 letter, filed. (sguevara) (Entered: 01/08/2003) |
| 01/06/2003 | 295 | Minute Entry Order:Telephone pretrial conference held; J Delehanty/W Belanger f/pltf; J Kettle f/deft Pltf's supplemental markman brief due for 1/21/03 , Deft's supplemental markman brief due for 1/31/03 , parties to submit to the court promptly a new proposed scheduling order pretrial conference is reset for 1:00 2/26/03 before Judge Nancy F. Atlas Ct Reporter: A Kielwasser Tape Number: none ETT: , entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 01/09/2003) |
| 01/15/2003 | 296 | TRANSCRIPT OF PROCEEDINGS of TELEPHONE CONFERENCE for dates of Jan 6, 2003 before Judge Nancy Atlas , filed. ( Court Rptr: A Kielwasser) (psmith) (Entered: 01/15/2003) |
| 01/16/2003 | 297 | JOINT MOTION for extension of time , by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (psmith) (Entered: 01/17/2003) |
| 01/23/2003 | 298 | ORDER granting the [297-1] joint motion for extension of time. Cooper's Brief is due Jan 23, 2003; Kvaerner's brief is due for 2/4/03 , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 01/24/2003) |
| 01/23/2003 | 299 | SEALED DOCUMENT (memorandum) placed in vault, filed. (ljackson) (Entered: 01/27/2003) |
| 02/04/2003 | 300 | RESPONSE by Kvaerner Oilfield Pr to Pltf's [290-1] opposition memorandum , filed. (sfedele) (Entered: 02/05/2003) |
| 02/04/2003 | 301 | SEALED Exhibit DOCUMENT placed in vault, filed. (sfedele) (Entered: 02/05/2003) |
| 02/07/2003 | 302 | NOTICE of Hearing: Pretrial Conference set for 2/26/03 at 1:00 and the court will hear oral argument as set forth. The purpose of the hearing shall be to provide the Court an opportunity to ask questions of counsel and hear legal argument. The court will not hear expert testimony at the 2/26/03 hearing before Judge Nancy F. Atlas , filed. (sfedele) (Entered: 02/10/2003) |
| 02/26/2003 | 303 | HEARING, MINUTES OF MOTION HEARING held 2/26/03 before Judge Atlas and ORDER: Apps: Jones/Delehanty f/Pltf, Lynch f/Deft, Ct Rptr: Johnny Sanchez, Oral argument heard; Kvaerner to provide to the Court w/in 10 days a supplement on the Graser patent application; |

| | | |
|---|---|---|
| | | the ptys may submit final supplements to their briefing on any topics they choose, but supplemental briefs are limited to a total of ten pages, 12 point font, double spaced; Ptys to submit a joint proposed scheduling order; Jury Selection tentatively set for 8/14/03 and trial to begin 8/18/03, entered. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (fmremp) (Entered: 02/28/2003) |
| 03/10/2003 | 304 | POST-HEARING BRIEF in opposition to Pltf's Motions: [270-1] motion for summary judgment, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, [267-1] motion for summary judgment of no inequitable conduct by Kvaerner Oilfield Pr , filed. (hlerma) (Entered: 03/11/2003) |
| 03/10/2003 | 305 | MEMORANDUM AND CLAIM CONSTRUCTION by Cooper Cameron Corp in support of [270-1] motion for summary judgment, [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119, [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119, [267-1] motion for summary judgment of no inequitable conduct , filed (hlerma) (Entered: 03/11/2003) |
| 03/10/2003 | 306 | BRIEF regarding The Graser Prio Art and Claim Construction by Kvaerner Oilfield Pr , filed. (hlerma) (Entered: 03/11/2003) |
| 04/02/2003 | 307 | TRANSCRIPT OF PROCEEDINGS of for dates of 2/26/03 before Judge Nancy Atlas , filed. (loose in file) (kprice) (Entered: 04/02/2003) |
| 04/28/2003 | 308 | JOINT MOTION for entry of a proposed scheduling order , by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed (psmith) (Entered: 04/28/2003) |
| 04/30/2003 | 309 | SCHEDULING ORDER setting Mediation (subject to mediator's availability) deadline 5/28/03 Completion of Fact and Expert Discovery cutoff 6/20/03 ; Deadline for filing motions in limine and Daubert motions by 7/18/03 ; Joint pretrial order due for 7/18/03 Oppositions to motions in limine and Daubert Motions due 7/28/03 before Judge Nancy F. Atlas , entered. Parties notified. Trial Term: August 14 through September 5 ( Signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 05/01/2003) |
| 04/30/2003 | | Deadline updated; Oppositions to motions in limine and Daubert motions due for 7/28/03 (sfedele) (Entered: 05/01/2003) |
| 04/30/2003 | | Deadline updated; pretrial order due for 7/18/03 (ltien) (Entered: 05/02/2003) |
| 05/06/2003 | 310 | MEMORANDUM AND ORDER denying Cooper's [267-1] motion for |

| | | summary judgment of no inequitable conduct denying Cooper's [268-1] motion for summary judgment of no anticipation of claim 1 of US Patent No 6,039,119 denying Cooper's [269-1] motion for summary judgment of nonobviousness of claim 1 of US Patent No 6,039,119 granting Cooper's [270-1] motion for summary judgment , entered. Parties notified. ( signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 05/07/2003) |
|---|---|---|
| 05/08/2003 | 316 | REQUEST by Cooper Cameron Corp for discovery hearing , filed. (sfedele) (Entered: 05/14/2003) |
| 05/09/2003 | 311 | MEMORANDUM AND ORDER , entered. The Court grants Kvaerner's request for construction of the disputed language of Claims 1, 14 and 16 of the '119 patent. Parties notified. ( signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 05/13/2003) |
| 05/09/2003 | 313 | Email regarding telephone pretrial conference set for 5/13/03 at 1:00 PM. Counsel for Kfaerner shall respond to the letter by 12:00 PM 5/12/03. (sfedele) Modified on 05/14/2003 (Entered: 05/14/2003) |
| 05/12/2003 | 312 | RESPONSE to the May 8, 2003 letter to the court from William Berlanger, counsel for Cooper Cameron Corp, filed. (psmith) (Entered: 05/13/2003) |
| 05/12/2003 | 314 | RESPONSE to discovery hearing request by Kvaerner Oilfield Pr to , filed. (sfedele) (Entered: 05/14/2003) |
| 05/13/2003 | 315 | Minute Entry Order: Telephone pretrial conference held. D Jones/J Delehanty/P Bielinski/W Belanger f/pltf; J Keville/S Cagle/I Finkelstein f/deft; Ct Reporter: J Sanchez Tape Number: none , entered. Argument heard on discovery issues. Rulings as stated on the record in open court. Parties ntfd. ( Signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 05/14/2003) |
| 05/20/2003 | 317 | LETTER to Judge Atlas addressing the continuing discovery abuses by deft, by Cooper Cameron Corp , filed (psmith) (Entered: 05/21/2003) |
| 05/22/2003 | 318 | TRANSCRIPT OF PROCEEDINGS of Telephonic Discovery Conference for dates of 5/22/03 before Judge Atlas , filed. ( Court Rptr: Diana Justice) Loose in file. (hlerma) Modified on 05/23/2003 (Entered: 05/23/2003) |
| 05/22/2003 | 319 | RESPONSE by Kvaerner Oilfield to the [317-1] Letter from William Berlanger regarding perceived discovery disputes, filed. (psmith) (Entered: 05/27/2003) |
| 05/23/2003 | 320 | ORDER discovery hearing for 10:30 5/30/03 before Judge Nancy F. Atlas , entered; Parties notified. ( signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 05/27/2003) |

| 07/08/2003 | <u>321</u> | ORDER, entered: The parties and counsel have stipulated to an extension of the time period for completion of the final documentation until August 15, 2003. Parties notified. ( signed by Judge Nancy F. Atlas ) (psmith) (Entered: 07/09/2003) |
|---|---|---|
| 09/25/2003 | 322 | STIPULATION re: Settlement by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed.(part 1 of 2) (sfedele) (Entered: 09/29/2003) |
| 09/25/2003 | 322 | STIPULATION of dismissal by Cooper Cameron Corp, Kvaerner Oilfield Pr , filed(part 2 of 2) (sfedele) (Entered: 09/29/2003) |
| 09/29/2003 | <u>323</u> | ORDER OF DISMISSAL granting parties'[322-1] stipulation of dismissal granting [322-1] stipulation , entered; This action is dismissed with prejudice. Parties notified. ( signed by Judge Nancy F. Atlas ) (sfedele) (Entered: 09/30/2003) |
| 09/29/2003 |  | Case closed (sfedele) (Entered: 09/30/2003) |

## PACER Service Center
### Transaction Receipt

| | 03/21/2007 11:07:40 | | |
|---|---|---|---|
| PACER Login: | aw0012 | Client Code: | 01032.0002.000000 |
| Description: | Docket Report | Search Criteria: | 4:97-cv-00155 |
| Billable Pages: | 21 | Cost: | 1.68 |

# EXHIBIT  B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAMERON INTERNATIONAL CORPORATION, | |
| Plaintiff, | CIV. ACTION NO. 1:06-CV-00728-JJF |
| v. | JURY DEMANDED |
| DRIL-QUIP, INC. | |
| Defendant. | |

## DECLARATION OF LARRY E. REIMERT

I, Larry E. Reimert, declare and state as follows:

1.    My name is Larry E. Reimert. I am above the age of eighteen and am competent to attest to the matters stated herein. I have personal knowledge of the facts in this Declaration, and they are true and correct.

2.    I, along with Gary D. Smith, J. Mike Walker, and Gary W. Loveless, co-founded Dril-Quip, Inc. ("Dril-Quip") in 1981.

3.    I am the Co-Chairman of the Board and Co-Chief Executive Officer of Dril-Quip, with principal responsibility for engineering, product development, and finance.

4.    Dril-Quip has been accused by Cameron International Corp. ("Cameron") of allegedly infringing one or more claims of U.S. Patent Nos. 6,991,039 and/or 7,093,660 and/or 7,117,945, each of which relates to subsea horizontal trees having no internal valves.

5.   Dril-Quip's World Headquarters (principal executive and administrative office) is located at 13550 Hempstead Hwy., Houston, Texas 77040, Telephone (713) 939-7711. Dril-Quip's U.S. Manufacturing Facility is located at 6401 N. Eldridge Pkwy., Houston, Texas 77041, Telephone (713) 939-7711. Dril-Quip also has a small sales office located at 701 Poydras Street, New Orleans, Louisiana 70139, Telephone (504) 522-5566.

6.   Dril-Quip has no facility or place of business within the United States other than the two large facilities (World Headquarters and U.S. Manufacturing) located in Houston, Texas, and the one sales office located in New Orleans, Louisiana, identified in item 3 above.

7.   Dril-Quip has no facility or place of business located in the state of Delaware.

8.   Nearly all of Dril-Quip's business and marketing functions related to subsea horizontal trees are conducted and coordinated in Houston, Texas. The remainder of Dril-Quip's business and marketing functions related to subsea horizontal trees are conducted in New Orleans, Louisiana. Dril-Quip conducts no business or marketing functions in the state of Delaware.

9.   All of Dril-Quip's work related to design and development of any potential subsea horizontal tree product is done or coordinated in Houston, Texas.

10.  No work related to design or development of any potential subsea horizontal tree product was or is done in Delaware by or on behalf of Dril-Quip.

11.    Any relevant or potentially relevant documents in Dril-Quip's possession, custody, or control relating to subsea horizontal trees designed by Dril-Quip and/or other companies within the United States are located in Houston, Texas.

12.    Dril-Quip has no relevant or potentially relevant documents located in the state of Delaware.

13.    Dril-Quip has preliminarily identified the following current and former employees as potential material witnesses who may have information relevant to Dril-Quip's design, development and marketing of its subsea trees:

> Larry E. Reimert
> Co-Chairman of the Board and Co-Chief Executive Officer
> Dril-Quip, Inc.
> Houston, Texas
> c/o Dril-Quip's counsel
>
> Gary D. Smith
> Co-Chairman of the Board and Co-Chief Executive Officer
> Dril-Quip, Inc.
> Houston, Texas
> c/o Dril-Quip's counsel
>
> Darren W. T. Mills
> Dril-Quip, Inc.
> Houston, Texas
> c/o Dril-Quip's counsel
>
> Blake T. DeBerry
> Dril-Quip, Inc.
> Singapore
> c/o Dril-Quip's counsel

14.    Each of the Dril-Quip employees identified above is a person whose time is vitally important to the ongoing successful operation of Dril-Quip's business.

15.     Most of the Dril-Quip witnesses who are also Dril-Quip employees reside in
        Houston, Texas.    None of the Dril-Quip witnesses who are also Dril-Quip
        employees reside in Delaware.

16.     Dril-Quip has preliminarily identified the following representatives as potential
        material witnesses who may have information relevant to Dril-Quip's design,
        development and marketing of its subsea horizontal trees:

                        Lionel J. Milberger (retired)
                        Houston, Texas
                        c/o Dril-Quip's counsel

                        Loren G. Helmreich, Esq.
                        Browning Bushman P.C.
                        5718 Westheimer, Suite 1800
                        Houston, Texas 77057

                        Marvin B. Eickenroht, Esq. (retired)
                        7529 Del Monte Drive
                        Houston, Texas 77063-1906

17.     All of the Dril-Quip witnesses identified immediately above reside in Houston,
        Texas, and none reside in Delaware.

18.     Additionally, Dril-Quip has preliminarily identified potential material witnesses
        based on a prior litigation filed in Houston, Texas, by Cooper Cameron Corp.
        (predecessor in interest to Cameron) against Kvaerner Oilfield Products, Inc.,
        relating to parent U.S. Patent Nos. 5,544,707 (the '707 patent) and 6,039,119 (the
        '119 patent) having the same written description and figures and priority date as
        those being asserted in this litigation against Dril-Quip.    A copy of Defendant's
        Third Supplemental Disclosures Pursuant to Rule 26(a)(1), which was filed with

the U.S. District Court for the Southern District of Texas on January 26, 1998 (Docket No. 64), is attached as Exhibit A.

19.   Based on the information available in Exhibit A, no witnesses are expected to reside in Delaware.

20.   Based on the information available in Exhibit A, most if not all of the Cameron witnesses who are Cameron employees will reside in Houston, Texas or Aberdeen, Scotland.

21.   Based on the information available in Exhibit A, the remaining non-employee (non-party) witnesses will reside in Houston, Texas; a variety of foreign cities and locales including London, England, Stavanger, Norway, and Singapore; and other cities and locales that are central to the energy exploration and production industry.

22.   It is unlikely that any expert witness to be identified in this case will be located in the state of Delaware. It is probable that at least one expert witness to be identified in this case will be located in Houston, Texas.

I declare under penalty of perjury under the laws of the United States, that the foregoing

is true and correct.

Executed on this _30th_ day of March, 2007, in Houston, Texas.


Larry E. Reimert
Dril-Quip, Inc.

# EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United State. Court
Southern District of Texas
FILED

JAN 2 6 1998

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| COOPER CAMERON CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H 97-0155 |
| | § | |
| KVAERNER NATIONAL, INC., | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

## DEFENDANT'S THIRD SUPPLEMENTAL DISCLOSURES
## PURSUANT TO RULE 26(a)(1)

Defendant Kvaerner National, Inc. submits the following supplemental disclosures

pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

**A. The following individuals are likely to have discoverable information relevant to
disputed facts alleged with particularity in the pleadings:**

| | | |
|---|---|---|
| Adams, J. | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Alsobrook, Sondra | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Bengtsson, Lars Erik | Albihns, Box 142, Stora Nygatan 15, S-401 22, Goteborg, Sweden | European Patent Attorneys for Kvaerner |
| Blizzard, Bill | Weatherford Houston, TX | Mr. Blizzard is a former employee of National Oilwell. He may have knowledge regarding the development of some of Kvaerner National's Side Valve Trees. |
| Boyle, Colin | Otis Halliburton | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| Brooke, Mark | Cooper Cameron<br>London | May have information relevant to Cooper Cameron's negotiations and agreement with Kvaerner regarding the choke orders. |
| Bunyard, Bob | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Byrd, Mike | Manatee | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Cameron, Archie | Kvaerner National Ltd<br>Sales Manager<br>Howe Moss Terrace<br>Kirkhill Industrial Estate<br>Dyce, Aberdeen,<br>Scotland AB21 0JP<br>(01224)406201 FAX<br>(01224)406 200 TEL | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Carter, Robert | Aker<br>Houston | May have information relevant to Cooper Cameron's negotiations with Norsk Hydro regarding the frame agreement. Stavanger Oil Show |
| Cassity, Thomas G. | Formerly with Cooper Cameron Corp. | Mr. Cassity is a named inventor on U. S. 5,544,707 (the '707 patent). He may have knowledge regarding the conception, development, and reduction to practice of the alleged invention. He may also have knowledge of the prior art, and information relevant to Cooper Cameron's design, development, and marketing of the Spool Tree, including components of the Spool Tree |
| Chastain, T. | Unknown | Former President of KNI from about 9/94 to 1/96 |
| Chou, Yung Sen | ABB Vetco<br>Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Compton, Dewey | Kvaerner Oilfield Products Inc. | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Corso, Vicki | ABB Vetco<br>Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Cowan, Bill | Mentor Engineering<br>801 N. Eldridge Pkwy.<br>Houston, TX 77079 | Mr. Cowan is a former employee of National Oilwell. He may have knowledge regarding the development of Kvaerner National's Side Valve Tree. |
| Crowley, Nick | Cooper Cameron | May have information relevant to Cooper |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | Plant Manager<br>Ville Platte, LA | Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Croy, David | Sun Exploration and Production, P. O. Box 1501, Houston, TX 77251 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Cullion, John | Kvaerner National Ltd.<br>Howemoss Avenue<br>Kirkhill Industrial Estate, Dyce<br>Aberdeen, Scotland AB2 0GP<br>011 44 1224 406200 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. He may also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Deauquier, Denise | Cooper Cameron | May have information relevant to the preparation, prosecution, maintenance and/or enforcement of the patent in suit. |
| Devlin, Kevin | Kvaerner, Oslo | May have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Dixon, Brian | National Oilwell | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Dobson, Donald | Health and Safety Executive (HSE)<br>London | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Doyle, Peter | London | May have information relevant to prior art, publications, use, and/or sale of the alleged invention of the patent in suit.  May have information relevant to the subsea drilling industry in general. |
| Dykes, Chris | Amerada Hess<br>Aberdeen | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Edward, Jeff | Expro<br>Aberdeen | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree |
| Eubanks, Gene | Sonsub International, Inc.<br>15950 Park Road<br>Houston, TX 77084<br>(281)5525600 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Fabri, Marco | KOP London | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. May also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|------|------------------|----------|
| | | the frame agreement. |
| Ferguson, Graham | British Petroleum | May have information relevant to prior art, publications, use, and/or sale of the alleged invention of the patent in suit.  May have information relevant to the subsea drilling industry in general. |
| Figenschou, Arild | Kvaerner/Oslo | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Fletcher, Arthur | Kvaerner, Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree.  May also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Foulk, Richard | Drillquip | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Furu, Harold | Kvaerner, Oslo | Norwegian inside patent counsel to Kvaerner. |
| Galbraith, Dick | Kvaerner UK | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Garbett, Keith | Cooper Cameron Leeds, England | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Garnham, Dave | Cooper-Cameron Leeds, UK | Cooper-Cameron representative on ISO Standards Committee for subsea trees.  Cooper representative instrumental in developing CRINE (U.K.) horizontal tree standard.  May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Garrett, Mike | Kvaerner National, Inc. 1255 Post Oak Road Houston, TX 77055-7213 (713)685-5700 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree.  May also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Goldie, Hal | Cooper Cameron Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Goonetilleke, Cecil | Kvaerner/Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | | marketing of its Side Valve Tree. |
| Grafton, John | Cooper Cameron<br>Computer Graphic Artist<br>Leeds, England | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Guarino, Joe | Kvaerner Oilfield Products, Inc. | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Gullion, Steve | Aker Omega, Inc.<br>11757 Katy Freeway<br>Houston, TX 77079<br>(713) 870-1111 | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May also have information relevant to Cooper Cameron's negotiations and agreement with Kvaerner regarding the choke orders. |
| Gunnerød, Tor Arne | Saga | Member of the horizontal tree work group |
| Hall, Doug | ABB-Vetco<br>Houston, TX | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Hatton, Steve | Consulting Business<br>Near London | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Helge, Hollund | Cooper Cameron<br>Stavanger, Norway | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Hoes, Larry | VP - Engineering (former)<br>Cooper Cameron | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Hopper, Hans | Cooper Cameron Corp.<br>Houston, TX | Mr. Hopper is a named inventor on U. S. 5,544,707 (the '707 patent). He may have knowledge regarding the conception, development and reduction to practice of the alleged invention. He may also have knowledge of the prior art. |
| Hopson, Bill | Cooper Cameron | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May also have information relevant to prior art, publication, use, and/or sale of the alleged invention and the patent in suit. May have information relevant to the subsea drilling industry in general. |
| Horton, Andrew | BOWLES HORTON, Felden House, Dower Mews, High Street, Berkhamsted, Hertfordshire, GB | European Patent Attorneys |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| Hunter, Shaun | Conley, Rose & Tayon<br>600 Travis Street, Suite 1850<br>Houston, TX 77002 | Mr. Hunter is an attorney who participated in the prosecution of the '707 patent |
| Jackson, Peter | Gill, Jennings & Every<br>53-64 Chancery Lane<br>London, England WC2A 1HN | Mr. Jackson is an attorney who participated in the prosecution of the European Patent Office application 92305014.0, from which the '707 patent claims priority |
| Johnson, Charles | Kvaerner National, Inc.<br>P. O. Drawer 990<br>Amelia, LA 70340<br>(504)631-2848 | Co-inventor of the Thru-bore tree, may have worked on the Side Valve Tree. Mr. Johnson has knowledge regarding the development, sales, and marketing of some of Kvaerner National's Side Valve Trees. |
| Jones, Charles | Cooper-Cameron | Engineer. Cooper / Kvaerner / Subsea International / Cooper (Subsea Eng. Mgr. at KNI). Mr. Jones is a former employee of Kvaerner National. He may have knowledge regarding the development of Kvaerner National's Side Valve Tree. |
| June, Dave | Cooper-Cameron<br>Engineer<br>Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree |
| Kennedy, Dave | Cooper Cameron<br>Sales Manager<br>Aberdeen | Mr. Kennedy is Sales Manager for District S-71. He was involved in selling the Spool Tree to Kerr McGee in 1992 through contact with Kerr McGee's project office in Aberdeen. He has been involved in sales of the Spool Tree since that time. |
| Kilde, Jon Harold | Kvaerner-Oslo | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Klepsvik, Bjorn | Kvaerner, London | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. May also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Knerr, Ed | Kvaerner, Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Through Bore Tree and Side Valve Tree. |
| Kors, Paul | Kors Montgomery<br>International<br>1980 Post Oak Road<br>Houston, TX 77056<br>840-7101 | Recruiter who contacted Wilkins, Guillion, Jones and 40 other engineers in 1994 regarding positions at Kvaerner. He has knowledge of the process through which Bob Wilkins and possibly other engineers were hired by Kvaerner National. |
| Lee, N. | Kvaerner, Houston | May have information relevant to National Oilwell |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | | and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Lingo, Dennis | Unknown - formerly Kvaerner National | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Lippold, Jeff | Houston, TX (281)580-0274 | Mr. Lippold is the former President of National Oilwell and Kvaerner National. He may have knowledge regarding the development of Kvaerner National's Side Valve Tree. He may also have knowledge of the process through which Bob Wilkins, Charles Jones, Scott Stjernstrom, Steve Gullion, and other engineers were hired by Kvaerner National. |
| Lobban, Alan | Kvaerner, Norway | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Lopez, Robert | Cooper Cameron Project Manager Subsea Business Houston | Project Manager for Spooltree at CC's Leed's facility. May have information relevant to Cooper Cameron's design, development, and marketing of its Spool Tree, including components of the Spool Tree. |
| Luke, Mike | Weatherford Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Mackie, George | Cooper Cameron Director of Finance Leeds, England | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May also have information relevant to Cooper Cameron's negotiations and agreement with Kvaerner regarding the choke orders, and information relevant to Cooper Cameron's negotiations with Norsk Hydro regarding the frame agreement. |
| Makins, J. E. | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Mansell, Mike | Kerr-McGee | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree |
| McDougal, Bill | KNI Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| McGuire, Bud | Enron | May have information relevant to Cooper |

H: 236725(52TP01! DOC)

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | Houston | Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| McKay, Andrew | NRG Consulting Ltd. Aberdeen 01-224-732-475 | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree |
| McKee, James | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Moles, Peter | Oceaneering | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Mooney, Frank | Subsea Ventures Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Moore, Roger | Cooper Cameron Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May hae knowledge of prior art as evidenced by his affidavit submitted to the Patent Office. |
| Morgan, David | Cooper Cameron Manager-Subsea Engineering Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Moyers, Tom | Cooper Cameron London | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Nation, Paul | Unknown | At one time, attorney with National Oilwell |
| Neff, Charles E. | Senior Counsel, Patents and Trademarks, Cooper Industries | |
| Norbom, Erik | Kvaerner Oilfield Products, A.S. Enebakkveien 71B Box 9357 Gronland Oslo, Norway 011 47 22 666900 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. May have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Norman, Willette | Conley, Rose & Tayon | Legal Assistant |
| Omreng, Bjorn | Kvaerner | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Owe, Mathias | Aker Norway | Student of Sigbjorn Sangesland working on horizontal tree. |
| Ower, Royce | Houston | May have information relevant to National Oilwell |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | | and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Parmer, Bhailal | KNI, Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Parris, Joe P. | Cooper Cameron Corp. Houston, TX | Mr. Parris is believed to have knowledge regarding the United States prosecution of the '707 patent, and the prosecution of its foreign counterparts in the European Patent Office, and through the PCT. |
| Patterson, William Bruce | Cooper Cameron Houston, TX | Patent attorney responsible for '707 patent. Mr. Patterson is believed to have knowledge regarding the United States Prosecution of the '707 patent, and the prosecution of its foreign counterparts in the European Patent Office, and through the PCT. |
| Persaud, Harold | Kvaerner/Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Peterson, Morton | Kvaerner-Oslo | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Peyrer, Erik | Cooper Cameron (Singapore) Pte. Ltd. | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Phillips, Brian | Kvaerner National, Ltd. Howemoss Avenue Kirkhill Industrial Estate, Dyce Aberdeen, Scotland AB2 OGP 011 22 1224 406200 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. May have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Pipe, Anthony | Kerr McGee London | May have information relevant to prior art, publications, use, and/or sale of the alleged invention of the patent in suit. May have information relevant to the subsea drilling industry in general. |
| Procell, Ann | Cooper Cameron, Houston | Secretary to Joe Parris |
| Query, Henry C. | Group Patent Counsel, FMC Corporation, 200 East Randolph Drive, Chicago, ILL 60601 | Knowledge of efforts by Cooper to assert the '707 patent against FMC and FMC's defenses to infringement |
| Reilly, Tom | Project Manager—Technical Sales, Subsea Proposals Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| Roark, Terrine | Project Manager--Subsea Cooper Cameron Leeds | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Robb, Dave | Kvaerner/Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree |
| Rogers, Ben | Cooper Cameron Accounting Department Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Rose, David | Conley, Rose and Tayon Houston | Mr. Rose and his firm were assigned by Cooper Industries to prosecute the U.S. patent application that led to the '707 patent. He worked with associate Shawn Hunter on that project. Mr. Rose is currently involved in prosecution of a continuation of the '707 patent. |
| Sangesland, Sigbjørn | Norwegian Institute of Technology, Trondheim, Norway | May have information relevant to prior art, publications, use, and/or sale of the alleged invention of the patent in suit. May have information relevant to the subsea drilling industry in general. |
| Scott, Duncan | Kvaerner/Aberdeen and Kvaerner/Oslo | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Scott, Eddie | Cooper Industries | Patent Counsel |
| Scott, Peter | ABB Vetco Grey Aberdeen | May have information relevant to prior art, publications, use, and/or sale of the alleged invention of the patent in suit. May have information relevant to the subsea drilling industry in general. |
| Jerry Skweres | Cooper Cameron | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Shields, George | Cooper Cameron Technical Sales Rep. Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Smart, Ken | Kvaerner, Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Stewart, Andy | Kerr-McGee | May have information relevant to Cooper Cameron's dealings with Kerr-McGee regarding the design, installation, use, and maintenance of Spool Trees. |
| Stjernstrom, Scott | Cooper Cameron Corp. | May have information relevant to Cooper |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| | Houston, TX | Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Tan, Stan | Kvaerner/Aberdeen | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Taylor, Bill | Cooper Cameron ? | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Taylor, William | Cooper Cameron Houston | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Teers, Michael, P.E. | Kvaerner National, Inc. 1255 Post Oak Road Houston, TX 77055-7213 (713)685-5700 | Mr. Teers is the current President of Kvaerner National. He has knowledge regarding the development, sales, and marketing of some of Kvaerner National's Side Valve Trees. |
| Theiss, David | Cooper Cameron ? | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Thiele, Alan R. | Jenkins & Gilchrist 1100 Louisiana #1800 Houston, TX 77002 (713)951-3355 | Former Cooper Cameron patent attorney - received responsibility for '707 foreign prosecution from Patterson on Jan. 1, 1994, left CC on Jan. 31, 1994. |
| Tompkins, D. | unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Tung, Larry | ABB Vetco Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Turner, Ed | Kvaerner National, Inc. 1255 Post Oak Road Houston, TX 77055-7213 (713)685-5700 | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May also have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Turner, Mal | SoFec Houston | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|---|---|---|
| Varvin, Kare | Norsk Hydro<br>Project Mgr. for TOGP (Troll Oil Gas Province) | May have information relevant to Cooper Cameron's negotiations with Norsk Hydro regarding the frame agreement. May also have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Watson, Eric | Cooper Cameron<br>Technical Sales,<br>Leeds, England | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Watson, Sandy | Kvaerner National, Ltd.<br>Howemoss Avenue<br>Kirkhill Industrial Estate,<br>Dyce<br>Aberdeen, Scotland AB20GP<br>011 44 1224 406200 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. May have information relevant to National Oilwell and/or Kvaerner's negotiations with Norsk Hydro regarding the frame agreement. |
| Weathers, Gary | Kvaerner National, Inc.,<br>1255 N. Post Oak Rd.,<br>Houston, TX 77055-7213<br>(713)685-5780<br>(713)685-5807 fax | General Manager, Marketing & Business Development. Mr. Weathers is the current General Manager of Kvaerner National. He has knowledge regarding the development, sales and marketing of some of Kvaerner National's Side Valve Trees. |
| Welch, John L. | Aqiulino & Welch, 2121<br>Crystal Drive, Suite 503,<br>Arlington, VA 22202 | Patent Attorney representing Kvaerner in certain matters. |
| Wiley, Dave | Cooper Cameron | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Wilkins, R.L.Bob | Kvaerner National, Inc.<br>1255 Post Oak Road<br>Houston, TX 77055-7213<br>(713)685-5700 | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree.. |
| Wilson, Reg | Cooper Cameron<br>Engineering Manager<br>Leeds, England | May have information relevant to Cooper Cameron's design, development and marketing of its Spool Tree, including components of the Spool Tree. |
| Winter, Karl | 4307 Westheimer<br>Houston, TX<br>(713)552-9468<br>Mustang Engineering<br>Houston, TX<br>(713)215-8000 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |

H. 236925(52T90!! DOC)

| NAME | EMPLOYER/ADDRESS | COMMENTS |
|------|------------------|----------|
| Worley, Bill | Kvaerner National, Inc.<br>12545 Post Oak Road<br>Houston, TX 77055-7213 | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Writt, Robert | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |
| Yoas, W. | Unknown | May have information relevant to National Oilwell and/or Kvaerner's design, development and marketing of its Side Valve Tree. |

Respectfully Submitted,

Date: January 23, 1998

By _____
John F. Lynch
Attorney in Charge
  State Bar No. 12728000
Stephen H. Cagle
  State Bar No. 03591900
ARNOLD, WHITE & DURKEE
750 Bering Drive, Suite 400
Houston, TX 77057-2198
TELEPHONE: (713) 787-1400
FACSIMILE:  (713) 789-1440

ATTORNEYS FOR DEFENDANT

H:236925(53T9011.DOC)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded via first class mail, postage prepaid, to the parties listed below on *January 26,* 1998:

David J. Beck, Esq.
Beck, Redden & Secrest
One Houston Center, Suite 4500
Houston, Texas 77010-2010
(713) 951-3700
(713) 951-3720 Fax

Lester L. Hewitt, Esq.
Pravel, Hewitt, Kimball & Krieger
1177 West Loop South, 10th Floor
Houston, Texas 77027-9095
(713) 850-0909
(713) 850-0165 Fax

R: 236925(3ZT3911.DOC)

# EXHIBIT C



Q Home    **About DQ**    **Investors**    **Locations**    **Capabilities**    **Products**    **Catalogs**    DQ J

**Houston**
**Aberdeen**
Singapore
Brazil





**Dril-Quip, Inc.** is one of the world's leading manufacturers of precision-engineer drilling and production equipment that is well suited for use in deepwater, harsh and severe service applications. The Company designs and manufactures subse offshore rig equipment for use by oil and gas companies in offshore areas throug **Dril-Quip** also provides installation and reconditioning services as well, as renta use with its products.



Manufacture
Service
Engineering
Sales
Training
Quality Control
Project Management



⋯⋇ **Products**                    ⋯⋇ **Catalogs**

| Choose One ▼ |    | Choose One |

Google [          ] Search    ○ WWW  ● dril-quip.com

© 2002 Dril-Quip Inc. All Righ
13550 Hempstead Hwy. Hous
for site info or comments infor



Home    About DQ    Investors    Locations    Capabilities    Products    Catalogs    DQ J

## Dril-Quip Locations (Houston)





**Dril-Quip Houston** (World Headquarters)
Dril-Quip, Inc. • 13550 Hempstead Hwy. Houston, TX 77040
Telephone: (713) 939-7711 • Fax: (713) 939-8063 • Telex: 795-108 (DRIL-QUIP H



**Dril-Quip Houston** (Eldridge Facility)
6401 N. Eldridge Pkwy. • Houston, TX 77041

# EXHIBIT  D



FORMERLY COOPER CAMERON

**CAMERON**    Name Change Info | Site Map | Login         RAISING PERFORMANCE. TOGET

| COMPANY | PRODUCTS & SERVICES | BRANDS | AFTERMARKET | DOCUMENTS | CAREERS | LOCATIONS | SEARCH |

You are here: Home > Locations

## Cameron Locator                                    ✉Email | 🖶 Print | 📖 Book

# Find a Cameron Location

**Begin Your Search**

**ENTER *Required fields**

***Country:**
United States ▾

***State:**                          Zip Code:        Distance:
All States... ▾        OR        [          ]        25 Miles ▾

**Refine your search by selecting these additional options:**

**Division:**
○ All                              ○ Distributed Valves
○ Drilling Systems                 ○ Engineered Valves
○ Surface Systems                  ○ Process Valves
○ Subsea Systems                   ○ Measurement Systems
○ Flow Control                     ○ Compression Systems
○ Petreco Process Systems

**Location Type:**
☐ Agents      ☐ Distributors      ☐ Manufacturing   ☐ Sales      ☐ Service

[ Find ]

**Your Search Found 122 locations...**

**LOCATION INFORMATION**              **CONTACT INFORMATION**

**MEASUREMENT SYSTEMS**               **Contact: BYRON LIPPE**
**REGIONAL SALES OFFICE**             Phone-1: 304.720.6207
1 FLETCHER SQUARE                     Fax: 304.720.6208
DUNBAR, WV 25064
UNITED STATES

**Location Capabilities:** Sales , Service

**Additional Service Areas:** West Virginia , Illinois , Minnesota , South Carolina , Ohio , Rhode
Island , Tennessee , Maryland , Massachusetts , New Jersey , Wisconsin , Kentucky , Maine ,
Pennsylvania , Vermont , Virginia , New Hampshire , New York , North Carolina ,
Connecticut , Indiana , Michigan

Email This Location

**MEASUREMENT SYSTEMS**               **Contact: GARY DELANDER**

---

**Cameron – Corporate Office**
1333 West Loop South
Suite 1700
Houston, TX 77027
**Phone:** 713-513-3300
**Fax:** 713-513-3456

**Drilling & Production System:**
4646 W Sam Houston Parkway North
PO Box 1212 (77251-1212)
Houston, TX 77041
**Phone:** 713-939-2211
**Fax:** 713-939-2753

**Divisions**
Drilling Systems      Surface System
Subsea Systems        Flow Control
Petreco Process Systems

**Valves & Measurement**
3250 Briarpark Drive
Suite 300
Houston, TX 77042
**Phone:** 281-499-8511
**Fax:** 281-261-3588

**Divisions**
Distributed Valves    Process Valves
Engineered Valves
Measurement Systems

**Compression Systems**
16250 Port Northwest Drive
Houston, TX 77041
**Phone:** 713-354-1900
**Fax:** 713-354-1923

**DIVISION HEADQUARTERS**
14450 JFK BLVD
HOUSTON, TX 77032
UNITED STATES

Phone-1: 281-582-9500
Fax: 281-582-9599

**Location Overview:** Division Headquarters; Sales Center and Manufacturing Facility

**Location Capabilities:** Sales , Manufacturing

Email This Location

---

**MEASUREMENT SYSTEMS
DIV HEAD/SALES/SERVICE**
14450 JFK BLVD
HOUSTON, TX 77032
UNITED STATES

**Contact: PAUL REYNOLDS**
Phone-1: 281-582-9500
Fax: 281-582-9599

**Location Overview:** Divisional headquarters: Sales, Service and Manufacturing

**Location Capabilities:** Sales , Manufacturing , Service

Email This Location

---

**PETRECO PROCESS SYSTEMS
PETRECO WAREHOUSE/LAB**
10810 TRAIN COURT
HOUSTON, TX 77041
UNITED STATES

Phone-1: 713-937-6902
Fax: 713-937-7203

---

**MEASUREMENT SYSTEMS
SALES/SERVICE/MANF**
2500 STEVEN ROAD
ODESSA, TX 79764
UNITED STATES

**Contact: DWYANE DOBBS**
Phone-1: 432-363-8185
Fax: 432-363-8376

**Location Capabilities:** Sales , Manufacturing , Service

Email This Location

---

**VALVE PRODUCTS
PROCESS VALVES**
562 RIVER PARK DRIVE
REDDING
CA 96003
UNITED STATES

**Contact: MATT LANKFORD**
Phone-1: 530-242-6916
Phone-2: 661-333-6172
Fax: 530-241-6965

**Location Overview:** Orbit, General Valve, Pow-R-Seal, Foster (D) Seal, Cameron TK, Entech

**Location Capabilities:** Sales

**Additional Service Areas:** California , Oregon , Washington

Email This Location

---

**ENGINEERED VALVES**
600 W. 58TH AVE, UNIT J
ANCHORAGE, AK 99518
UNITED STATES

**Contact: KEVIN MCNAUGHTON**
Phone-1: 907-563-8222
Fax: 907-563-3102

**Location Capabilities:** Sales , Manufacturing , Service



Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**
**ANCHORAGE DISTRICT**
600 EAST 57TH PLACE, SUITE A
ANCHORAGE, AK 99518-5761
UNITED STATES

Phone-1: 907-562-2332
Fax: 907-562-3880

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**
**HASHIM & ASSOCIATES INC.**
4609 NEW HORIZON, SUITE 6
BAKERSFIELD, CA 93313
UNITED STATES

Phone-1: 661-834-5642
Fax:

**Location Capabilities:** Sales

---

**SURFACE SYSTEMS**
**WEST COAST DISTRICT BAKERSFIELD DISTRICT**
3004 JEWETT AVE.
BAKERSFIELD, CA 93301
UNITED STATES

Phone-1: 661-323-8183
Fax: 661-323-0946

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**SALES/SERVICE**
34762 LENCIONI AVE
BAKERSFIELD, CA 93308
UNITED STATES

**Contact: JERRY STONE**
Phone-1: 661-387-6813
Phone-2: 661-340-2766
Fax: 661-387-6819

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Alaska , California , Nevada , Oregon , Washington

Email This Location

---

**PETRECO PROCESS SYSTEMS**
**BATON ROUGE (PETRECO)**
727 HIGHLANDIA DRIVE, SUITE D
BATON ROUGE, LA 70810
UNITED STATES

Phone-1: 225-753-7129
Fax: 225-752-4208

---

**DRILLING SYSTEMS**
**BERWICK PLANT**
3007 HIGHWAY 182
BAYOU VISTA, LA 70380
UNITED STATES

Phone-1: 985-395-8697
Fax: 985-395-8689

**Location Capabilities:** Sales

---

**SUBSEA SYSTEMS**
**BERWICK PLANT**
3007 HIGHWAY 182
BAYOU VISTA, LA 70380
UNITED STATES

Phone-1: 985-395-8697
Fax: 985-395-8689

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES & SERVICE**
114 WEST OLIVE STREET
BRIDGEPORT, WV 26330
UNITED STATES

**Contact: DON HORNE**
Phone-1: 304-476-1980

**Location Capabilities:** Sales , Service

Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**          Phone-1: 281-391-4600
**ELASTOMER PLANT**                        Fax: 281-391-4640
29501 KATY FREEWAY
BROOKSHIRE, TX 77494
UNITED STATES

**Location Capabilities:** Sales

---

**SURFACE SYSTEMS**                        Phone-1: 337-837-9568
**BROUSSARD OFFICE**                       Phone-2: 337-837-2951
120 WELLHEAD ROAD                          Fax: 337-837-2929
BROUSSARD, LA 70518
UNITED STATES

**Location Capabilities:** Sales

---

**COMPRESSION SYSTEMS**                    Phone-1: 877-805-7911
3101 BROADWAY                              Fax: 716 892 2905
BUFFALO, NY 14225
UNITED STATES

**Location Overview:** Centrifugal compressor customer service, technical support, and
manufacturing. Products supported include MSG, TurboAir, Joy, Cooper Turbocompressor, Cooper
Compression, and Cameron centrifugal compressors.

**Location Capabilities:** Sales , Distributor

**Additional Service Areas:** Anguilla , Angola , Argentina , Aruba , Bermuda , Brazil , Belize ,
Canada , Chile , Colombia , Costa Rica , Dominican Republic , Ecuador , Grenada ,
Guatemala , Guyana , Honduras , Jamaica , Saint Kitts and Nevis , Cayman Islands , Saint
Lucia , Martinique , Mexico , Nicaragua , Panama , Peru , Saint Pierre and Miquelon , Puerto
Rico , Paraguay , Saint Helena , Suriname , El Salvador , Trinidad and Tobago , United
States , Saint Vincent and the Grenadines , Venezuela , Virgin Islands (British) , Virgin Islands
(U.S.) , Rhode Island , Vermont , North Dakota , Ohio , Oregon , Maryland , New
Hampshire , New Mexico , Arkansas , Hawaii , Kentucky , Minnesota , New Jersey ,
Wyoming , West Virginia , Alabama , Florida , South Dakota , Texas , Utah , Nevada , North
Carolina , South Carolina , Kansas , Massachusetts , Montana , Delaware , Idaho , Iowa ,
Arizona , California , Connecticut , Washington , Wisconsin , Alaska , Pennsylvania ,
Tennessee , Virginia , Nebraska , New York , Oklahoma , Michigan , Mississippi , Missouri ,
Indiana , Louisiana , Maine , Colorado , Georgia , Illinois

---

**DISTRIBUTED VALVES**                     **Contact: STEVE CLOPTON**
28 HUNSLEY HILLS BLVD.                      Phone-1: 806-655-0374
CANYON, TX 79015                            Fax: 806-655-0374
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**PROCESS VALVES**                         **Contact: KENNETH KOZOLA**
CASPER, WY 82604                            Phone-1: 307-473-8502
UNITED STATES                              Fax: 307-237-4845

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**                     **Contact: GARY STOKES**
**ENGINEERED EQUIPMENT INC**               Phone-1: 307-473-8502
1444 NORTH DERICK DRIVE
CASPER, WY 82604
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**COMPRESSION SYSTEMS**                          Phone-1: 307-265-7653
1950 NORTH LOOP AVE.                              Fax: 307-266-6847
CASPER, WY 82601
UNITED STATES

**Location Overview:** Aftermarket Parts, Service, Repair for Cooper-Bessemer, Superior, Ajax,
Penn,Enterprise, Clark, IR, and Worthington Engines/Compressors.

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Washington , Colorado , Nevada , South Dakota , North Dakota ,
Oklahoma , Arizona , California , New Mexico , Utah , Oregon , Texas , Wyoming , Kansas ,
Montana , Nebraska , Alaska , Hawaii , Idaho



---

**SURFACE SYSTEMS**                              Phone-1: 307-472-0222
**CAMSERVE**                                     Fax: 307-265-1318
7048 ZERO ROAD
CASPER, WY 82604
UNITED STATES

**Location Capabilities:** Sales , Service



---

**SURFACE SYSTEMS**                              Phone-1: 307-472-0222
**CASPER DISTRICT**                              Fax: 307-265-1318
7048 ZERO ROAD
CASPER, WY 82604
UNITED STATES

**Location Capabilities:** Sales , Service



---

**MEASUREMENT SYSTEMS**                          **Contact: BRIAN DEWALD**
**REGIONAL SALES OFFICE**                        Phone-1: 307-265-9241
806 FOSTER ROAD                                  Fax: 307-265-5150
PO BOX 2533
CASPER, WY 82602
UNITED STATES

**Location Capabilities:** Sales

**Additional Service Areas:** Colorado , Idaho , Nebraska , North Dakota , Utah , Wyoming ,
Montana , South Dakota

Email This Location

---

**MEASUREMENT SYSTEMS**                          **Contact: KENT DAVENPORT**
**REGIONAL SALES OFFICE**                        Phone-1: 214-851-8486
1105 FOUNDERS LANE                               Phone-2: 972-839-0370
CELINA, TX 75009                                 Fax: 214-851-8487
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
PO BOX 6732
CHARLESTON, WV 25302
UNITED STATES
Email This Location

**Contact: MIKE HACKL**
Phone-1: 304-389-4930

---

**DISTRIBUTED VALVES**
7225 BROADFORD COURT
CHARLOTTE, NC 28277
UNITED STATES

**Contact: CHUCK WRIGHT**
Phone-1: 704-607-6307
Fax: 704-540-0720

**Location Capabilities:** Sales

Email This Location

---

7225 BROADFORD COURT
CHARLOTTE, NC 28277
UNITED STATES

**Contact: CHUCK WRIGHT**
Phone-1: 704-607-6307
Phone-2: 704-607-6307
Fax: 704-540-0720

**Location Capabilities:** Sales

**Additional Service Areas:** Florida , Georgia , South Carolina , Virginia

Email This Location

---

**DISTRIBUTED VALVES**
13453 HIDDEN VALLEY STREET
CORONA, CA 92880
UNITED STATES

**Contact: DAVID HOLBROOK**
Phone-1: 951-734-4472
Phone-2: 805-501-3301
Fax: 951-734-4472

**Location Overview:** Products: WKM Ball, WKM HPBFV, DEMCO, E-Series, Nutron, Thornhill Craver, Wheatley, Navco

**Location Capabilities:** Sales

**Additional Service Areas:** Alaska , Arizona , California , Hawaii , Idaho , Nevada , Oregon , Washington

Email This Location

---

**DISTRIBUTED VALVES**
7721 LEOPARD ST.
CORPUS CHRISTI, TX 78409
UNITED STATES

**Contact: QUENTIN WARREN**
Phone-1: 361-289-0535
Fax: 361-289-2842

**Location Overview:** CamServ Aftermarket Services Location

**Location Capabilities:** Sales , Service



Email This Location

---

**SURFACE SYSTEMS**
**CORPUS DISTRICT**

Phone-1: 361-289-1455
Fax: 361-289-6251

6441 I.H. 37
CORPUS CHRISTI, TX 78409
UNITED STATES

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**SALES/SERVICE**
5449 BEAR LANE SUITE 424
PO BOX 9571
CORPUS CHRISTI, TX 78405
UNITED STATES

**Contact: BOB CAREY**
Phone-1: 361-883-4489
Fax: 361-883-5614

**Location Overview:** Regional Sales Office

**Location Capabilities:** Sales , Service

Email This Location

---

**MEASUREMENT SYSTEMS**
**SALES/SERVICE**
2750 WADSWORTH BLVD, SUITE D-115
DENVER, CO 80227
UNITED STATES

**Contact: KIM ALLEN MILLER**
Phone-1: 720-887-1654
Phone-2: 720-530-4617
Fax: 720-887-1651

**Location Overview:** Regional Sales and Service

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Colorado , Montana , Nebraska , New Mexico , North Dakota , Utah , South Dakota , Wyoming

Email This Location

---

**PROCESS VALVES**
3377 BEAUMONT RD
DEVON, PA 19333
UNITED STATES

**Contact: BUZZ DAVIS**
Phone-1: 610-687-6893
Fax: 610-687-869

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**
210 HARBOUR RIDGE LANE
DOWNINGTOWN, PA 19335
UNITED STATES

**Contact: BOB PAUL**
Phone-1: 484-433-0065
Fax: 610-458-0989

**Location Overview:** Products: WKM Ball, WKM HPBFV, DEMCO, E-Series, Nutron, Thornhill Craver, Wheatley, Navco

**Location Capabilities:** Sales

**Additional Service Areas:** Connecticut , Delaware , Maine , Maryland , Massachusetts , New Hampshire , New York , Pennsylvania , Rhode Island , Vermont , New Jersey , West Virginia

Email This Location

---

**ENGINEERED VALVES**
5854 TARA HILL, PO BOX 3355 (43016-0166)
DUBLIN, OH 43017
UNITED STATES

**Contact: HANK MCCORMICK**
Phone-1: 281-382-0979
Phone-2: 614-799-8897
Fax: 614-799-8949

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**
**TECH CENTER/SALES**
7300 NIX DRIVE
DUNCAN, OK 73533
UNITED STATES

**Contact: KEN JENKINS**
Phone-1: 580-470-9600
Phone-2: 580-656-0570
Fax: 580-470-9900

**Location Overview:** Divisional Technology Center; Manufacturing Facility; Regional Sales and Service Office

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Kansas , Texas

Email This Location

---

**DISTRIBUTED VALVES**
4 MARCEL STREET
FAIRFIELD, OH 45014
UNITED STATES

**Contact: PHIL THOMPSON**
Phone-1: 513-607-9239
Phone-2: 513-607-9239

**Location Capabilities:** Sales

**Additional Service Areas:** Illinois , Iowa , Kentucky , Minnesota , Missouri , Nebraska , Ohio , Tennessee , Wisconsin

---

**ENGINEERED VALVES**
1400 LA PLATA HIGHWAY
FARMINGTON, NM 87401
UNITED STATES

**Contact: TERRY MCCLURG**
Phone-1: 505-326-4369
Fax: 505-564-8191

**Location Capabilities:** Sales , Service



Email This Location

---

**DISTRIBUTED VALVES**
**ENGINEERED EQUIPMENT INC**
FARMINGTON, NM 87401
UNITED STATES

**Location Capabilities:** Sales

---

**COMPRESSION SYSTEMS**
3900 EAST BLOOMFIELD HWY.
FARMINGTON, NM 87401
UNITED STATES

Phone-1: 505-325-4949
Fax: 505-325-5979

**Location Overview:** Aftermarket Parts, Service, Repair for Cooper-Bessemer, Superior, Ajax, Penn, and Enterprise Engines/Compressors.

**Location Capabilities:** Sales , Service

**Additional Service Areas:** New Mexico



---

**DRILLING & PRODUCTION SYSTEMS**
**FARMINGTON DISTRICT**

Phone-1: 505-327-3402
Fax: 505-327-0454

503 S. BEHREND AVE.
FARMINGTON, NM 87401
UNITED STATES

**Location Capabilities:** Sales

---

**ENGINEERED VALVES**
1915 HEATHER RD., PO BOX 507
GENEVA, IL 60134
UNITED STATES

**Contact: BOB SPORE**
Phone-1: 630-262-0495
Fax: 630-262-0496

**Location Capabilities:** Sales

Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**
**GRAND JUNCTION DISTRICT**
2323 LOGOS DRIVE
GRAND JUNCTION, CO 81505
UNITED STATES

Phone-1: 970-241-5711
Fax: 970-241-5730

**Location Capabilities:** Sales

---

**PROCESS VALVES**
**TK VALVES**
2175 SOUTHWEST RAILROAD AVENUE
HAMMOND, LA 70403
UNITED STATES

Phone-1: 985-345-6482

**Location Capabilities:** Sales

---

**SURFACE SYSTEMS**
**HOBBS DISTRICT**
110 NORTHWEST COUNTY RD.
HOBBS, NM 88240
UNITED STATES

Phone-1: 505-397-1325
Fax: 505-393-5957

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**
1108 BARATARIA AVE
HOUMA, LA 70360
UNITED STATES

Phone-1: 985-868-6343
Fax: 985-851-1868

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
256 EQUITY BLVD.
HOUMA, LA 70360
UNITED STATES

**Contact: JOHN TRAHAN**
Phone-1: 985-868-1514
Fax: 985-868-5346

**Location Capabilities:** Sales , Service

Email This Location

---

105 COLUMBUS STREET
HOUMA, LA 70360
UNITED STATES

**Contact: A.J. RODRIGUE**
Phone-1: 985-872-4062
Phone-2: 985-791-8362
Fax: 985-851-1868

**Location Capabilities:** Sales

**Additional Service Areas:** Alabama , Mississippi , Louisiana

Email This Location

---

**CAMSERV**                                    Phone-1: 971-4-288-2093
8820 MELDRUM LANE                              Phone-2: 713-946-2122
HOUSTON, TX 77075                              Fax: 713-946-2392
UNITED STATES

**Location Capabilities:** Sales , Service



---

**VALVES & MEASURMENT**                        Phone-1: 832-243-0003
**LANEX CORPORATION**                          Phone-2: 011-529-3838-31537
12227A FM 529                                  Fax: 832-243-0004
HOUSTON, TX 77041
UNITED STATES

**Location Capabilities:** Sales

---

**VALVES & MEASURMENT**                        **Contact: BON CHAE KOO,**
**UNIKOR MANUFACTURING LP**                    **PRESIDENT**
12931 MEMORIAL DRIVE                           Phone-1: 713-827-8548
HOUSTON, TX 77079                              Fax: 713-461-9938
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**COMPRESSION SYSTEMS**                        Phone-1: 866-754-3562
16250 PORT NORTHWEST DRIVE                     Fax: 713-354-1923
HOUSTON, TX 77041
UNITED STATES

**Location Overview:** Compression Systems world headquarters, aftermarket call center, and machining center. Products supported include all Cameron Compression reciprocating and centrifugal compressors.

**Location Capabilities:** Sales , Service , Distributor

**Additional Service Areas:** Andorra , Argentina , Aruba , Barbados , Bermuda , Bolivia , Brazil , Bahamas , Belize , Chile , Colombia , Costa Rica , Dominica , Dominican Republic , Ecuador , Falkland Islands (Malvinas) , Grenada , French Guiana , Greenland , Guadeloupe , Guatemala , Honduras , Haiti , Jamaica , Saint Kitts and Nevis , Cayman Islands , Saint Lucia , Martinique , Mexico , Nicaragua , Panama , Philippines , Saint Pierre and Miquelon , Puerto Rico , Saint Helena , Suriname , El Salvador , French Southern Territories , Trinidad and Tobago , United States Minor Outlying Islands , United States , Saint Vincent and the Grenadines , Venezuela , Utah , Vermont , South Dakota , Tennessee , Texas , New Jersey , Ohio , Rhode Island , Indiana , Montana , New Hampshire , California , Florida , Illinois , Wisconsin , Kansas , Nevada , Oregon , Pennsylvania , Virginia , Missouri , New Mexico , New York , Maine , Michigan , Minnesota , Idaho , Kentucky , Louisiana , Arkansas , Delaware , Georgia , West Virginia , Wyoming , Alaska , Oklahoma , South Carolina , Washington , Nebraska , North Carolina , North Dakota , Maryland , Massachusetts , Mississippi , Connecticut , Hawaii , Iowa , Alabama , Arizona , Colorado

---

**DRILLING & PRODUCTION SYSTEMS**              Phone-1: 713-280-3000
**WILLIS PLANT**                               Fax: 713-280-3056
11331 TANNER ROAD, PO BOX 1212, HOUSTON 77251
HOUSTON, TX 77041-6901
UNITED STATES

**Location Capabilities:** Sales

**DRILLING & PRODUCTION SYSTEMS**
**H & H RUBBER PDTS PLANT**
14510 BEAUMONT HWY
HOUSTON, TX 77049
UNITED STATES

Phone-1: 281-459-1100
Fax: 281-459-3796

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**CAMERON DHQ118**
4646 WEST SAM HOUSTON PARKWAY N., HOUSTON
77041 PO BOX 1212, HOUSTON 77251
HOUSTON, TX 77041
UNITED STATES

Phone-1: 713-939-2211
Fax: 713-939-2019

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**DHQ**
6650 BINGLE ROAD, PO BOX 1212 (77251-1212) PO BOX
1212 HOUSTON 77251
HOUSTON, TX 77092
UNITED STATES

Phone-1: 713-354-1900
Fax: 713-354-1923

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**R&D CENTER**
6750 BINGLE ROAD
HOUSTON, TX 77092
UNITED STATES

Phone-1: 713-369-4110
Fax: 713-369-4128

**Location Capabilities:** Sales

---

**PETRECO PROCESS SYSTEMS**
**PETRECO R&D HOUSTON**
5455 OLD SPANISH TRAIL
HOUSTON, TX 77023
UNITED STATES

Phone-1: 713-926-0862
Phone-2: 713-926-1183
Fax: 713-928-2690

---

**PETRECO PROCESS SYSTEMS**
**PETRECO**
4646 W. SAM HOUSTON PARKWAY N.
HOUSTON, TX 77041
UNITED STATES

Phone-1: 713-369-6600
Fax: 713-369-6690

---

**CAMERON FLOW CONTROL**
4903B W. SAM HOUSTON PARKWAY NORTH
HOUSTON, TX 77041
UNITED STATES

Phone-1: 281-809-1900
Fax: 281-809-1851

**Location Capabilities:** Sales

---

**PROCESS VALVES**
16621 SIMMONE LANE
HUNTINGTON, CA 92647
UNITED STATES

**Contact: TREVOR EVANS**
Phone-1: 714-842-7144
Fax: 714-842-8141

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**
**FLO-TEC**
200 UNION BOWER CT.

Phone-1: 972-554-6199

SUITE 210
IRVING, TX 75061
UNITED STATES

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**
**SPECIALTY SALES INC.**
212 EAST DANVILLE STREET
KILGORE, TX 75662
UNITED STATES

**Contact: DALE CATES**
Phone-1: 903-983-3658

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
3201 MAVERICK DR.
KILGORE, TX 75662
UNITED STATES

**Contact: CHESTER HENRY**
Phone-1: 903-984-8651
Phone-2: 903-985-1982
Fax: 903-988-9074

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
302 TOLEDO DRIVE
LAFAYETTE, LA 70506
UNITED STATES

**Contact: DANNY MCFARLAND**
Phone-1: 337-234-1824
Fax: 337-232-1580

**Location Capabilities:** Sales

**Additional Service Areas:** Louisiana

Email This Location

---

**PETRECO PROCESS SYSTEMS**
25283 CABOT RD., STE. 214
LAGUNA HILLS, CA 92653
UNITED STATES

Phone-1: 949-581-2264
Fax: 949-457-9310

---

**CAMSERV**
471 QUARRY ROAD SE
LANCASTER, OH 43140
UNITED STATES

**Contact: BILL WINGARD**
Phone-1: 740-522-0646
Fax: 740-522-8806

**Location Capabilities:** Sales , Service



Email This Location

---

**SURFACE SYSTEMS**
**LAUREL DISTRICT**
1020 HILLCREST DRIVE
LAUREL, MS 39440
UNITED STATES

Phone-1: 601-649-8900
Fax: 601-649-8909

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**

**Contact: RONNIE WILLIAMS**

**REGIONAL SALES OFFICE**
16 DONALD DRIVE
PO BOX 2594
LAUREL, MS 39440
UNITED STATES

Phone-1: 601-425-2377
Fax: 601-425-2380

**Location Capabilities:** Sales

**Additional Service Areas:** Alabama , Georgia , Mississippi , North Carolina , South Carolina , Tennessee

Email This Location

---

**SURFACE SYSTEMS**
**LIBERTY PLANT**
HIGHWAY 90 & FM 1909, PO BOX 10286 (77575)
LIBERTY, TX 77575
UNITED STATES

Phone-1: 936-336-8811
Fax: 936-336-2822

**Location Capabilities:** Sales

---

**DRILLING SYSTEMS**
**LIBERTY PLANT**
HIGHWAY 90 & FM 1909, PO BOX 10286 (77575)
LIBERTY, TX 77575
UNITED STATES

Phone-1: 936-336-8811
Fax: 936-336-2822

**Location Capabilities:** Sales

---

**PROCESS VALVES**
**ORBIT, GENERAL, WKM&FOSTER GATE VALVES**
7200 INTERSTATE 30
LITTLE ROCK, AR 72209
UNITED STATES

Phone-1: 501-570-5652
Phone-2: 501-568-6000
Fax: 501-570-5700

**Location Capabilities:** Sales

---

**PROCESS VALVES**
10132 SUMMIT VIEW PT.
LITTLETON, CO 80126
UNITED STATES

**Contact: BRENT YOUNG**
Phone-1: 303-346-2076
Fax: 303-346-2496

**Location Capabilities:** Sales

Email This Location

---

**SURFACE SYSTEMS**
**LONGVIEW DISTRICT**
2705 E. MARSHALL AVE, PO BOX 1311, LONGVIEW, TX 75606
LONGVIEW, TX 75602
UNITED STATES

Phone-1: 903-236-4884
Fax: 903-234-0336

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
2624 BAY ADAMS DRIVE
MARRERO, LA
UNITED STATES

**Contact: WALTER G'SELL**
Phone-1: 504-348-4619
Phone-2: 504-460-8525
Fax: 504-347-6879

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**                    **Contact: FRANK MAZZA**

4408 DAVID ST.                                    Phone-1: 504-779-7995
METARIE, LA 70003                                 Fax: 504-779-0307
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**PROCESS VALVES**                                Phone-1: 58-212-263-2755
**REPTEC**                                        Fax: 58-212-264-0980
P.O. BOX 491410
CALLE ELVIRA MENDEZ, EDF. BANCO DO BRASIL, NO.
10, CIUDAD DE PANAMA
MIAMI, FL
UNITED STATES

**Location Capabilities:** Sales

---

**PROCESS VALVES**                                Phone-1: 58-212-263-2755
**REPTEC**                                        Fax: 58-212-264-0980
P.O. BOX 491410
CALLE ELVIRA MENDEZ, EDF. BANCO DO BRASIL, NO.
10, CIUDAD DE PANAMA
MIAMI, FL
UNITED STATES

**Location Capabilities:** Sales

---

**PROCESS VALVES**                                Phone-1: 58-212-263-2755
**REPTEC**                                        Fax: 58-212-264-0980
P.O. BOX 491410
CALLE ELVIRA MENDEZ, EDF. BANCO DO BRASIL, NO.
10, CIUDAD DE PANAMA
MIAMI, FL
UNITED STATES

**Location Capabilities:** Sales

---

**PROCESS VALVES**                                Phone-1: 58-212-263-2755
**REPTEC**                                        Fax: 58-212-264-0980
P.O. BOX 491410
CALLE ELVIRA MENDEZ, EDF. BANCO DO BRASIL, NO.
10, CIUDAD DE PANAMA
MIAMI, FL
UNITED STATES

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**                            Phone-1: 508-887-9400
**TBV & TECHNO VALVES**                           Fax: 508-887-8612
1537 GRAFTON RD.
MILLBURY, MA 01527
UNITED STATES

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**                 Phone-1: 405-912-4446
**AOP INDUSTRIAL INC.**                           Fax: 405-912-4441
2101 S. BROADWAY ST.
MOORE, OK 73153-0979
UNITED STATES

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**                            **Contact: DARRELL LEBLANC**
405 W. ADMIRAL DOYLE DR.                          Phone-1: 337-367-3478
NEW IBERIA, LA 70560                              Fax: 337-367-5751

UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**SURFACE SYSTEMS**
**NOLA SALES OFFICE**
650 POYDRAS ST., POYDRAS CENTER SUITE 2310
NEW ORLEANS, LA 70130
UNITED STATES

Phone-1: 504-529-7634
Fax: 504-522-8837

**Location Overview:** Overview here.

**Location Capabilities:** Sales

---

**DISTRIBUTED/CAMSERV**
6101 TRUNK ST.
ODESSA, TX 79762
UNITED STATES

Phone-1: 432-362-1161
Fax: 432-362-1173

**Location Capabilities:** Sales , Service



---

**COMPRESSION SYSTEMS**
8927 ANDREWS HIGHWAY
ODESSA, TX 79765
UNITED STATES

Phone-1: 432-362-2511
Fax: 432-362-8959

**Location Overview:** Aftermarket Parts, Service, Repair for Cooper-Bessemer, Superior, Ajax, Penn,Enterprise, Clark, IR, and Worthington Engines/Compressors.

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Nevada , Wyoming , Arizona , Kansas , South Dakota , Texas , Washington , Nebraska , North Dakota , Oklahoma , Utah , California , Colorado , Montana , New Mexico , Oregon , Alaska , Hawaii , Idaho



---

**SURFACE SYSTEMS**
**ODESSA DISTRICT**
270 S. GRANDVIEW
ODESSA, TX 79761
UNITED STATES

Phone-1: 432-337-5475
Fax: 432-337-3001

**Location Capabilities:** Sales

---

**DISTRIBUTED VALVES**
809 SOUTHEAST 29TH STREET
OKLAHOMA CITY, OK 73129
UNITED STATES

**Contact: JOHN SPEEG**
Phone-1: 405-629-0490
Phone-2: 405-620-7989
Fax: 405-629-0430

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**
**WKM, DEMCO, WHEATLEY, TEXSTEAM VALVES**
845 S.E. 29TH ST., PO BOX 94700 (73143)
OKLAHOMA CITY, OK 73129

Phone-1: 405-629-0408
Phone-2: 405-631-1321
Fax: 405-629-0420

UNITED STATES

**Location Capabilities:** Sales

---

**CAMSERV**
8533 S.W. 2ND ST.
OKLAHOMA CITY, OK 73128
UNITED STATES

Phone-1: 405-789-8065
Phone-2: 405-789-8094
Fax: 405-789-2204

**Location Capabilities:** Sales , Service



---

**COMPRESSION SYSTEMS**
2101 S.E. 18TH STREET
OKLAHOMA CITY, OK 73129
UNITED STATES

Phone-1: 405-670-4121
Fax: 405 672-8103

**Location Overview:** Ajax integral engine technical support, customer service, and manufacturing.

**Location Capabilities:** Sales

---

**DRILLING SYSTEMS**
**AFTERMARKET SALES OFFICE**
4341 S.W. 33RD ST.
OKLAHOMA CITY, OK 73119
UNITED STATES

Phone-1: 405-682-1661
Fax: 405-682-1051

**Location Capabilities:** Sales

---

**SURFACE SYSTEMS**
**MANUFACTURING PLANT**
7500 SW 29TH STREET,
OKLAHOMA CITY, OK 73179
UNITED STATES

Phone-1: 405-682-1661
Fax: 405-357-3250

**Location Capabilities:** Sales

---

**MEASUREMENT SYSTEMS**
**TECH TEAM OFFICE**
151 AN CO RD 3596
PALESTINE, TX 75803
UNITED STATES

**Contact: NORMAN JONES**
Phone-1: 903-521-7423
Fax: 903-723-1021

**Location Capabilities:** Sales

Email This Location

---

**COMPRESSION SYSTEMS**
423 SOUTH GRAY
PAMPA, TX 79065
UNITED STATES

Phone-1: 806-665-1647
Fax: 806-669-3196

**Location Overview:** Aftermarket Parts, Service, Repair for Cooper-Bessemer, Superior, Ajax, Penn, and Enterprise Engines/Compressors.

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Nebraska , Kansas , Montana , Washington , California , Idaho , Oklahoma , South Dakota , Texas , Alaska , Colorado , Nevada , North Dakota , Utah , Wyoming , Arizona , Hawaii , New Mexico

**CAMSERV**

---

**SURFACE SYSTEMS**                         Phone-1: 806-665-1647
**COOPER ENERGY SERVICES**                  Fax: 806-669-3196
423 SOUTH GRAY
PAMPA, 79065
UNITED STATES

**Location Capabilities:** Sales

---

**ENGINEERED VALVES**                       **Contact: LARRY DUSEK**
19090 EAST MOLLY AVE.                       Phone-1: 303-841-1693
PARKER, CO 80134                            Fax: 303-841-5486
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**DISTRIBUTED VALVES**                      Phone-1: 304-428-6331
**NORTHRUP EQUIPMENT COMPANY**
595 FIFTH STREET
PARKERSBURG, WV 26101
UNITED STATES

**Location Capabilities:** Sales

---

**SURFACE SYSTEMS**                         Phone-1: 985-395-6171
**PATTERSON DISTRICT**                      Fax: 985-395-1257
585 HIGHWAY 90 EAST
PATTERSON, LA 70392
UNITED STATES

**Location Capabilities:** Sales

---

**CAMSERV**                                 **Contact: RICK BLACK**
1282 BAYVIEW FARM RD.                       Phone-1: 510-928-1480
PINOLE, CA 94564
UNITED STATES

**Location Capabilities:** Sales , Service

**CAMSERV**

Email This Location

---

**MEASUREMENT SYSTEMS**                     **Contact: CHRIS LAIRD**
**TECH CENTER/SALES/SERV**                  Phone-1: 412-341-9920
1070 BANKSVILLE AVENUE                      Fax: 412-341-9951
PITTSBURGH, PA 15216
UNITED STATES

**Location Overview:** CALDON Ultrasonics Technology Center; Manufacturing Plant; Regional
Sales & Service

**Location Capabilities:** Sales , Service

Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**           Phone-1: 972-398-1527
**PLANO SALES OFFICE**                      Fax: 972-398-1470
4144 NORTH CENTRAL EXPRESSWAY SUITE 600

PLANO, TX 75204
UNITED STATES

**Location Capabilities:** Sales

---

**ENGINEERED VALVES**
**MODERN SUPPLY PONCA CITY FACILITY**
1202 WEST SUMMIT
PONCA CITY, OK 74601
UNITED STATES

**Contact: CHARLES LEMONS**
Phone-1: 580-765-2524
Fax: 580-765-2518

**Location Capabilities:** Sales

Email This Location

---

**COMPRESSION SYSTEMS**
600 SOUTH FIRST STREET
PONCA CITY, OK 74601
UNITED STATES

Phone-1: 800-654-6419
Fax: 580 762 0521

**Location Overview:** Aftermarket Parts, Service, Repair for non-Cameron equipment such as DR, IR, Clark, and Worthington engines and compressors.

**Location Capabilities:** Sales

**Additional Service Areas:** Wisconsin , Wyoming , Virginia , Washington , West Virginia , Texas , Utah , Vermont , South Carolina , South Dakota , Tennessee , Oregon , Pennsylvania , Rhode Island , North Dakota , Ohio , Oklahoma , New Mexico , New York , North Carolina , Nevada , New Hampshire , New Jersey , Missouri , Montana , Nebraska , Michigan , Minnesota , Mississippi , Maine , Maryland , Massachusetts , Kansas , Kentucky , Louisiana , Illinois , Indiana , Iowa , Georgia , Hawaii , Idaho , Connecticut , Delaware , Florida , Arkansas , California , Colorado , Alabama , Alaska , Arizona

---

**CAMSERV**
420 ALLENDALE DR.
PORT ALLEN, LA 70767-3241
UNITED STATES

Phone-1: 225-383-3345
Fax: 225-383-9900

**Location Capabilities:** Sales , Service



---

**ENGINEERED VALVES**
POB 5249 (89513-5249), 7882 MORGAN POINTE CIRCLE
RENO, NV 89523
UNITED STATES

**Contact: JAMES STAVENA**
Phone-1: 775-787-0297
Fax: 775-787-0297

**Location Capabilities:** Sales

Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**
**ROCK SPRINGS DISTRICT**
2201 BLAIRTOWN ROAD
ROCK SPRINGS, WY 82901
UNITED STATES

Phone-1: 307-382-3134
Fax: 307-382-3190

**Location Capabilities:** Sales

---

**COMPRESSION SYSTEMS**
1648 WEST MAGNOLIA
SALINA, KS 67401
UNITED STATES

Phone-1: 800-972-7612
Fax: 785-825-7929

**Location Overview:** Turbine Specialties (TSI). Turbocharger specialists providing new turbochargers, parts, repairs, and upgrades for Cooper-Bessemer, Elliott, Delaval, EMD, ABB, Clark, and Man large bore turbochargers.

**Location Capabilities:** Sales

**Additional Service Areas:** Wisconsin , Wyoming , Utah , Virginia , Washington , North Dakota , Oklahoma , Pennsylvania , Maryland , Missouri , Nebraska , Kansas , Louisiana , Maine , Delaware , Georgia , Hawaii , Alaska , Arizona , Colorado , Nevada , New Jersey , Alabama , West Virginia , Arkansas , Idaho , Ohio , Oregon , Rhode Island , Minnesota , Mississippi , New York , Vermont , California , Massachusetts , South Dakota , Tennessee , Texas , New Mexico , North Carolina , South Carolina , Michigan , Montana , New Hampshire , Indiana , Iowa , Kentucky , Connecticut , Florida , Illinois

---

**DISTRIBUTED VALVES**                          **Contact: JAMES SIMMONS**
**SPECIALTY SALES INC.**                        Phone-1: 318-227-0181
1206 GRIMMETT                                   Fax: 318-425-7505
SHREVEPORT, LA 71107
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**                         **Contact: DAVE DAVIS**
**REGIONAL SALES OFFICE**                       Phone-1: 318-747-7008
SHREVEPORT, LA 71112                            Fax: 318-425-7505
UNITED STATES

**Location Capabilities:** Sales

**Additional Service Areas:** Arkansas

Email This Location

---

**ENGINEERED VALVES**                           **Contact: GIB BUSH**
1315 FARM VALLEY DR.                            Phone-1: 636-447-7232
ST. PETERS, MO 63376                            Fax: 636-447-7672
UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**COMPRESSION SYSTEMS**                         Phone-1: 504-465-0260
10446 RIVER ROAD                                Phone-2: 800-421-6075
ST. ROSE, LA 70087                              Fax: 504-465-9543
UNITED STATES

**Location Overview:** Aftermarket Parts, Service, Repair for Cooper-Bessemer, Superior, Ajax, Penn,Enterprise, Clark, IR, and Worthington Engines/Compressors.

**Location Capabilities:** Sales , Service

**Additional Service Areas:** Vermont , Massachusetts , Mississippi , New Hampshire , Delaware , Louisiana , Maryland , Virginia , Ohio , Connecticut , New Jersey , New York , Tennessee , Florida , Kentucky , Maine , West Virginia , Alabama , Arkansas , Pennsylvania , Rhode Island , South Carolina , Georgia , Michigan , North Carolina



---

**PROCESS VALVES**                              **Contact: MARK ORR**
10632 S. MEMORIAL #164                          Phone-1: 918-605-1381
TULSA, OK 74133                                 Fax: 918-743-8505

UNITED STATES

**Location Capabilities:** Sales

Email This Location

---

**MEASUREMENT SYSTEMS**
**REGIONAL SALES OFFICE**
5835 E. 103 ST.
TULSA, OK 74137
UNITED STATES

**Contact: JACK HEATH**
Phone-1: 918-296-9397
Fax: 918-296-5093

**Location Overview:** Regional Sales Office

**Location Capabilities:** Sales

Email This Location

---

**DRILLING & PRODUCTION SYSTEMS**
**VERNAL OFFICE**
1442 E. HIGHWAY 40
PO BOX 429
VERNAL, UT 84078
UNITED STATES

Phone-1: 435-781-0434
Fax: 435-789-5656

**Location Capabilities:** Sales

---

**ENGINEERED VALVES**
**CAMERON VALVES**
6 HOLLOWAY BLVD.
VILLE PLATTE, LA 70586
UNITED STATES

**Contact: MITCH FONTENOT**
Phone-1: 337-363-7500
Fax: 337-363-7516

**Location Capabilities:** Sales

Email This Location

---

**DRILLING SYSTEMS**
**SUPERIOR PLANT**
20110 G H CIRCLE
WALLER, TX 77484
UNITED STATES

Phone-1: 713-571-3100

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**WEST COAST DISTRICT BAKERFIELD DISTRICT**
930 SHILOH RD., BLDG 44, SUITE F
WINDSOR, CA 95492
UNITED STATES

Phone-1: 707-836-1611
Fax: 707-836-1612

**Location Capabilities:** Sales

---

UNITED STATES

**Location Capabilities:** Sales

**Additional Service Areas:** Russian Federation

---

UNITED STATES

**Location Capabilities:** Sales

**Additional Service Areas:** Ecuador

Home | Locations | Search | Site Map

1333 West Loop South, Suite 1700 • Houston,Texas 77027 • 713-513-3300 Phone • 713-513-3456 Fax
© 2006 Cameron. All rights reserved. | Privacy Statement | Terms of Service | Contact Us

# EXHIBIT E



FORMERLY COOPER CAMERON

**CAMERON**    Name Change Info | Site Map | Login        **RAISING PERFORMANCE. TOGET**

| COMPANY | PRODUCTS & SERVICES | BRANDS | AFTERMARKET | DOCUMENTS | CAREERS | LOCATIONS | SEARCH |

You are here: Home > Locations

## Cameron Locator                                    ✉ Email | 🖶 Print | 📖 Book

# Find a Cameron Location

## Begin Your Search

ENTER *Required fields

**\*Country:**
United States

**\*State:**                      Zip Code:        Distance:
All States...          OR                          25 Miles

**Refine your search by selecting these additional options:**

**Division:**
○ All                              ○ Distributed Valves
○ Drilling Systems                 ○ Engineered Valves
○ Surface Systems                  ○ Process Valves
◉ Subsea Systems                   ○ Measurement Systems
○ Flow Control                     ○ Compression Systems
○ Petreco Process Systems

**Location Type:**
☐ Agents    ☐ Distributors    ☐ Manufacturing    ☐ Sales    ☐ Service

[ Find ]

## Your Search Found 15 locations...

| LOCATION INFORMATION | CONTACT INFORMATION |
|---|---|
| **DRILLING & PRODUCTION SYSTEMS**<br>**ANCHORAGE DISTRICT**<br>600 EAST 57TH PLACE, SUITE A<br>ANCHORAGE, AK 99518-5761<br>UNITED STATES<br><br>Location Capabilities: Sales | Phone-1: 907-562-2332<br>Fax: 907-562-3880 |
| **SUBSEA SYSTEMS**<br>**BERWICK PLANT**<br>3007 HIGHWAY 182<br>BAYOU VISTA, LA 70380<br>UNITED STATES<br><br>Location Capabilities: Sales | Phone-1: 985-395-8697<br>Fax: 985-395-8689 |

**Cameron – Corporate Office**
1333 West Loop South
Suite 1700
Houston, TX 77027
**Phone:** 713-513-3300
**Fax:** 713-513-3456

**Drilling & Production System**
4646 W Sam Houston Parkway North
PO Box 1212 (77251-1212)
Houston, TX 77041
**Phone:** 713-939-2211
**Fax:** 713-939-2753

**Divisions**
Drilling Systems       Surface System
Subsea Systems         Flow Control
Petreco Process Systems

**Valves & Measurement**
3250 Briarpark Drive
Suite 300
Houston, TX 77042
**Phone:** 281-499-8511
**Fax:** 281-261-3588

**Divisions**
Distributed Valves      Process Valves
Engineered Valves
Measurement Systems

**Compression Systems**
16250 Port Northwest Drive
Houston, TX 77041
**Phone:** 713-354-1900
**Fax:** 713-354-1923

**DRILLING & PRODUCTION SYSTEMS**
**ELASTOMER PLANT**
29501 KATY FREEWAY
BROOKSHIRE, TX 77494
UNITED STATES

Phone-1: 281-391-4600
Fax: 281-391-4640

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**FARMINGTON DISTRICT**
503 S. BEHREND AVE.
FARMINGTON, NM 87401
UNITED STATES

Phone-1: 505-327-3402
Fax: 505-327-0454

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**GRAND JUNCTION DISTRICT**
2323 LOGOS DRIVE
GRAND JUNCTION, CO 81505
UNITED STATES

Phone-1: 970-241-5711
Fax: 970-241-5730

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**WILLIS PLANT**
11331 TANNER ROAD, PO BOX 1212, HOUSTON 77251
HOUSTON, TX 77041-6901
UNITED STATES

Phone-1: 713-280-3000
Fax: 713-280-3056

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**H & H RUBBER PDTS PLANT**
14510 BEAUMONT HWY
HOUSTON, TX 77049
UNITED STATES

Phone-1: 281-459-1100
Fax: 281-459-3796

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**CAMERON DHQ118**
4646 WEST SAM HOUSTON PARKWAY N., HOUSTON
77041 PO BOX 1212, HOUSTON 77251
HOUSTON, TX 77041
UNITED STATES

Phone-1: 713-939-2211
Fax: 713-939-2019

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**DHQ**
6650 BINGLE ROAD, PO BOX 1212 (77251-1212) PO
BOX 1212 HOUSTON 77251
HOUSTON, TX 77092
UNITED STATES

Phone-1: 713-354-1900
Fax: 713-354-1923

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**R&D CENTER**
6750 BINGLE ROAD
HOUSTON, TX 77092
UNITED STATES

Phone-1: 713-369-4110
Fax: 713-369-4128

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**

Phone-1: 405-912-4446

**AOP INDUSTRIAL INC.**
2101 S. BROADWAY ST.
MOORE, OK 73153-0979
UNITED STATES

Fax: 405-912-4441

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**PLANO SALES OFFICE**
4144 NORTH CENTRAL EXPRESSWAY SUITE 600
PLANO, TX 75204
UNITED STATES

Phone-1: 972-398-1527
Fax: 972-398-1470

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**ROCK SPRINGS DISTRICT**
2201 BLAIRTOWN ROAD
ROCK SPRINGS, WY 82901
UNITED STATES

Phone-1: 307-382-3134
Fax: 307-382-3190

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**VERNAL OFFICE**
1442 E. HIGHWAY 40
PO BOX 429
VERNAL, UT 84078
UNITED STATES

Phone-1: 435-781-0434
Fax: 435-789-5656

**Location Capabilities:** Sales

---

**DRILLING & PRODUCTION SYSTEMS**
**WEST COAST DISTRICT BAKERFIELD DISTRICT**
930 SHILOH RD., BLDG 44, SUITE F
WINDSOR, CA 95492
UNITED STATES

Phone-1: 707-836-1611
Fax: 707-836-1612

**Location Capabilities:** Sales

---

Home | Locations | Search | Site Map

1333 West Loop South, Suite 1700 · Houston,Texas 77027 · 713-513-3300 Phone · 713-513-3456 Fax
© 2006 Cameron. All rights reserved. | Privacy Statement | Terms of Service | Contact Us

# EXHIBIT  F

Westlaw.

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
(Cite as: 2005 WL 2786691 (D.Del.))

**c**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ARROW COMMUNICATION LABORATORIES,
INC., Plaintiff,
v.
JOHN MEZZALINGUA ASSOCIATES, INC.,
Defendant.
JOHN MEZZALINGUA ASSOCIATES, INC.,
Counterclaim Plaintiff,
v.
ARROW COMMUNICATION LABORATORIES,
INC., and Tresness Irrevocable Patent Trust,
Counterclaim Defendants.
**No. Civ. 05-357-SLR.**

Oct. 26, 2005.

Richard D. Kirk, of the Bayard Firm, Wilmington, Delaware. for Arrow Communication Laboratories, Inc., and Tresness Irrevocable Patent Trust. R. Terrance Rader, Charles W. Bradley, Glenn E. Forbis, Linda D. Kennedy, and Shelly L. Hokenstad, of Rader, Fishman & Grauer PLLC, Bloomfield Hills, Michigan, and Lawrence P. Trapani, of Manlius, New York, of Counsel.

Jeffrey B. Bove, and Kevin M. Baird, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware. for John Mezzalingua Associates, Inc., James R. Muldoon, and John A. Wasleff, of Wall, Marjama & Bilinski, LLP, Syracuse, New York. of Counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On June 3, 2005, plaintiff Arrow Communication Laboratories, Inc. ("plaintiff") filed a complaint in the United States District Court for the District of Delaware alleging patent infringement by defendant John Mezzalingua Associates, Inc. ("defendant"). (D.I.1) Plaintiff claims to be the lawful owner of all right, title and interest in U.S. Patent No. 5,745,838

("the '838 patent"). (Id.) Plaintiff alleges that defendant is infringing the '838 patent by manufacturing, selling and offering for sale in the United States, and by importing into the United States, electronic filters covered by one or more of the claims of the '838 patent. (Id.) Plaintiff further alleges that defendant is actively inducing others to infringe the '838 patent. (Id.)

On June 6, 2005, defendant filed an action for declaratory judgment of patent non-infringement and invalidity in the United States District Court for the Northern District of New York. (D.I.9, ex. A) On August 11, 2005, plaintiff's infringement suit was referred to the Magistrate Judge of the District of Delaware for the purpose of exploring alternative dispute resolution. (D.I.29) Trial is scheduled for November 2006. (Id.)

II. BACKGROUND

Plaintiff is a corporation organized under the laws of the State of New York with its principal place of business in Syracuse, New York. Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business in East Syracuse, New York.

III. STANDARD OF REVIEW

Defendant moves the court to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of New York. (D.I.6) Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. See Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. Id. Accordingly, "defendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. See Wesley-Jessen Corp. v.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
(Cite as: 2005 WL 2786691 (D.Del.))

*Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D.Del.1993). A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, *5 (D.Del.1999).

**\*2** In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404(a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). The Third Circuit, in fact, has indicated that the analysis for transfer is very broad and has urged consideration of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

In considering the private interest factors under *Jumara*, the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiff's choice of forum is a paramount consideration. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D.Del. Nov. 28, 2001); *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is

usually regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity or injury occurred, the "plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del.1993).

## IV. DISCUSSION

As an initial matter, the court notes that venue is proper in Delaware as defendant is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Northern District of New York. Indeed, this court previously recognized that,

**\*3** [w]hen the plaintiff has chosen to bring suit in a district that is not plaintiff's "home turf" and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit.

*Burstein v. Applied Extrusion Techs. Inc.*, 829 F.Supp. 106, 110 (D.Del.1992) (citing *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F.Supp. 634, 637 (D.Del.1983) (internal citations omitted)). Moreover, the locus of the alleged infringement occurred in Syracuse, New York. If defendant has infringed the '838 patent, such infringement was done primarily in Syracuse, where the accused products were developed, manufactured and sold. Based on the evidence offered, the majority of the witnesses with discoverable information also are located in and around Syracuse, New York. In addition, most of defendant's documents relating to the production, promotion, marketing and sales of the accused product are maintained in central New York. On this basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Northern District of New York.

One of the public interest factors under *Jumara* involves the administrative considerations of the courts. More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
(Cite as: 2005 WL 2786691 (D.Del.))

court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. M'Iver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently, the second-filed action is usually stayed or transferred to the court where the first-filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.,* 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.* at 972, 977. Invocation of the rule will usually be the norm, not the exception. Courts presented with exceptional circumstances may exercise their discretion to depart from the first-filed rule. *Id.* at 979. In this case, it is undisputed that the present patent infringement suit in the District of Delaware was first filed and involves the same patent and the same issues as the declaratory judgment action filed thereafter by defendant in the Northern District of New York. Therefore, the burden is on defendant to present some exceptional circumstances why the court should depart from the first-filed rule.

**\*4** In support of its argument supporting transfer, defendant states that all of its relevant witnesses reside in New York, all the documents and records related to the accused product are in New York, and the subject matter of the lawsuit has significant local interest in New York. (D.I. 7 at 1-3) In contrast, evidence suggests that the District of Delaware has no connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there. Defendant contends that pursuing the lawsuit in the District of Delaware will generate "significant expenses and other burdens" to the parties. (*Id.* at 3-4) Given this evidence and noting the regional character of the parties, with the primary business operations of each party located in the Northern District of New York, there are exceptional circumstances present which require the court to depart from the first-filed rule.

In considering the other public interest factors under *Jumara,* the court notes that the parties have taken significant steps to advance the instant litigation in the District of Delaware. The parties have exchanged initial disclosures, are set to explore settlement with the magistrate judge, and have arranged a schedule for litigation, with trial set to occur in about one year. These factors weigh in favor of maintaining the litigation in the District of Delaware. However, factors are also present which weigh in favor of transferring the case to the Northern District of New York. First, defendant's declaratory judgment action, which involves the same subject matter as this case, is currently pending in the United States District Court for the Northern District of New York. [FN1] In addition, both parties are regional in character and operate their businesses out of central New York, suggesting that the Northern District of New York is the most appropriate venue for the parties to litigate. Although a suit in this matter was first filed in Delaware, the public interest factors weighing in favor of keeping the litigation in the District of Delaware are not compelling. The court, therefore, concludes that the public interest factors under *Jumara* favor transferring venue to the Northern District of New York.

> FN1. By stipulation of the parties, that case has been stayed pending this court's decision on defendant's motion to transfer venue. (N.D. N.Y., Case No. 05-CV-703 (NAM/DEP), D.I. 6) The court has no reason to believe that, once the stay is lifted, the declaratory judgment action in the Northern District of New York will move forward with any less swiftness than that with which the instant case has progressed in the District of Delaware. The familiarity with the parties and subject matter possessed by the Northern District of New York will certainly promote expeditiousness in handling the case.

## V. CONCLUSION

On balance, the court finds that the public interest factors and private interest factors weigh strongly in favor of transferring venue in this case. The court, as a result, concludes that defendant has sufficiently proven that litigating in the District of Delaware would pose a unique burden which merits transfer of venue. For the reasons stated, defendant's motion to transfer is granted. An order consistent with this memorandum opinion shall issue.

## ORDER

At Wilmington this 26th day of October, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
**(Cite as: 2005 WL 2786691 (D.Del.))**

Page 4

1. Defendant's motion to transfer (D.I.6) is granted.

2. The above-captioned action shall be transferred to the United States District Court for the Northern District of New York.

Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3667196 (Trial Pleading) Plaintiff Arrow Communication Laboratories, Inc.'s and Counterclaim Defendant Tresness Irrevocable Patent Trust'S (Oct. 25, 2005)Original Image of this Document (PDF)

• 2005 WL 3667190 (Trial Pleading) Answer to First Amended Complaint of Arcom and Counterclaims (Oct. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 3667193 (Trial Pleading) Reply to the First Amended Counterclaims of Tresness Irrevocable Patent Trust (Oct. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 2868155 (Trial Motion, Memorandum and Affidavit) Supplemental Brief in Further Support of Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Oct. 5, 2005)Original Image of this Document (PDF)

• 2005 WL 2868149 (Trial Pleading) First Amended Complaint (Oct. 3, 2005)Original Image of this Document (PDF)

• 2005 WL 2868151 (Trial Pleading) Tresness Irrevocable Patent Trust's First Amended Counterclaim (Oct. 3, 2005)Original Image of this Document (PDF)

• 2005 WL 2868153 (Trial Pleading) Second Amended Answer and Counterclaims (Oct. 3, 2005)Original Image of this Document (PDF)

• 2005 WL 1529914 (Trial Pleading) Complaint (Jun. 3, 2005)Original Image of this Document (PDF)

• 1:05cv00357 (Docket) (Jun. 03, 2005)

• 2005 WL 3667183 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Motion to Dismiss State Law Claims

under Fed. R. Civ. P. 12(b)(6) (2005)Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  G

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31414136 (D.Del.)
**(Cite as: 2002 WL 31414136 (D.Del.))**

Page 1

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
IKOS SYSTEMS, INC., Plaintiff,
v.
CADENCE DESIGN SYSTEMS, INC., and Quick
Turn Design Systems, Inc., Defendant.
**No. Civ.A. 02-1335-GMS.**

Oct. 21, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On July 29, 2002, the plaintiff, IKOS Systems, Inc. ("IKOS"), filed the instant action for patent infringement against Cadence Design Systems, Inc. ("Cadence") and Quick Turn Design Systems, Inc. ("Quick Turn") (collectively "the defendants"). IKOS alleges that Quick Turn's Palladium™ design verification product infringes United States Patent No. 5,847,578 ("the '578 patent"). The defendants, move to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I.11). For the following reasons, the court will grant the defendants' motion.

II. DISCUSSION

Each of the parties in this case is a Delaware corporation [FN1] with headquarters located within several miles of one another in what is commonly known as the Silicon Valley of northern California.

FN1. IKOS is a subsidiary of Mentor Graphics Corporation ("Mentor") which is incorporated under the laws of the State of Oregon. The defendants assert that Mentor is the real party in interest in this action. IKOS does not seem to seriously contest this assertion. Nevertheless, given the court's analysis and conclusions as to the most

appropriate forum for the litigation of this matter, the court need not reach this issue.

The defendants move to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movants' burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id..* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN2] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion the court relied on the following considerations, among others: (1) while the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31414136 (D.Del.)
(Cite as: 2002 WL 31414136 (D.Del.))

Page 2

defendants and the plaintiff are Delaware corporations and should reasonably expect to litigate in the forum, there seems to be little connection between Delaware and this action or the parties; (2) each party is headquartered in northern California; (3) the parties are large national and international organizations with apparently substantial assets; (4) because the parties maintain geographically diverse operating locations, travel time and convenience in the aggregate would be neither increased nor decreased substantially with a transfer of forum; (5) any disparity in court congestion is not so great as to justify a transfer of venue; (6) while patent disputes are often not properly characterized as "local" in nature or otherwise unique to a particular locale, *see Affymetrix,* 28 F.Supp.2d at 207, the relevant industry, the Electronic Design Automotive Industry, is apparently located in the Silicon Valley. Finally, IKOS has identified six potential witnesses who are not employed by the defendants and reside on the east coast. [FN3] However, it appears that the majority of the defendants' engineers, as well as other potential witnesses, are located in the Northern District. Thus, the court is convinced that this fact and the other public and private interests are sufficient to tip "the balance of convenience ... *strongly* in favor of [the] defendant[s]." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970) (emphasis in original).

> FN3. In its brief and an accompanying declaration by Giovanni Mancini, a former employee of the plaintiff, IKOS has identified William R. Beausoleil as a seventh potential non-party employee witness. In his declaration, Mr. Mancini states that the witness elected not to join the defendant, Cadence. In contrast, the defendants offer the declaration of the witness himself. In that declaration, Mr. Beausoleil attests that he entered the employ of Cadence on March 28, 2002. The court will credit Mr. Beausoleil's declaration.

III. CONCLUSION

*2 For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion to transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01335 (Docket) (Jul. 29, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  H

Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2006 WL 3050815 (D.Del.)
(Cite as: 2006 WL 3050815 (D.Del.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ALLOC, INC., Berry Finance, N.V., and Välinge
Aluminum AB, Plaintiffs,
v.
UNILIN DÉCOR N.V., and Quick-Step Flooring,
Inc., Defendants.
ALLOC, INC., Berry Finance, N.V., and Välinge
Innovation AB (f/k/a Välinge
Aluminum AB), Plaintiffs,
v.
QUICK-STEP FLOORING, INC., Defendant.
**No. Civ.A. 03-253GMS, Civ.A. 05-587GMS.**

Oct. 26, 2006.
Francis Digiovanni, Connolly, Bove, Lodge & Hutz,
Wilmington, DE, Daniel J. O'Connor, pro hac vice,
Phoenix, AZ, David I. Roche, pro hac vice, Chicago,
IL, for Plaintiffs.

David Ellis Moore, Richard L. Horwitz, Potter
Anderson & Corroon, LLP, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

## I. INTRODUCTION

**\*1** On March 5, 2003 and December 12, 2005,
respectively, Alloc, Inc. ("Alloc"), Berry Finance,
N.V. ("Berry"), and Välinge Innovation AB
("Välinge") (collectively, "Alloc") filed the above-
captioned actions against Unilin Décor N.V.
("Unilin"), Quick-Step Flooring, Inc. ("Quick-Step"),
and Unilin Flooring N.C., LLC ("Unilin NC")
(successor to Quick-Step) (collectively, "Unilin"). In
the March 5, 2003 complaint, Alloc alleges that
Unilin is infringing United States Patent No. 6,516,
579 (the " '579 patent"). [FN1] In the December 12,
2005 complaint, Alloc alleges that Unilin is
infringing United States Patent No. 5,706,621 (the "
'621 patent"). These cases are part of a series of

federal actions that Alloc has filed across the country
involving the patents-in-suit and related patents.
Presently before the court is Unilin's motion to
transfer jurisdiction to the United States District
Court for the Eastern District of Wisconsin (the
"Eastern District of Wisconsin"), pursuant to 28
U.S.C. § 1404(a). For the reasons discussed below,
the court will grant the motion.

> FN1. On July 11, 2003, the court stayed the
> 03-253 action pending resolution of an
> appeal before the Federal Circuit, and the re-
> examination of a parent to the '579 patent.
> The appeal was resolved on May 24, 2004,
> and the court lifted the stay on March 31,
> 2006.

## II. BACKGROUND

Välinge is the assignee of the '579 and '621 patents,
which relate to a laminate flooring system that can be
connected and installed without the use of glue.
Välinge has licensed its patents to Berry who, in turn,
has sublicensed its patent rights to Alloc. Välinge and
Berry are foreign companies, incorporated and
headquartered in Sweden and Belgium, respectively.
Alloc is a Delaware corporation headquartered in
Racine, Wisconsin.

Unilin Décor is a Belgian corporation, with its
principle place of business in Wielsbeke, Belgium.
Quick-Step was a Delaware corporation
headquartered in Thomasville, North Carolina. Unilin
NC (successor to Quick-Step) is a North Carolina
limited liability company, with its headquarters in
Thomasville, North Carolina. Unilin, specifically
Unilin NC, sells Uniclic® laminate flooring products,
*i.e.* the disputed products, throughout the United
States.

Alloc has been litigating a case involving the '579
patent in the Eastern District of Wisconsin since
2000. *See Alloc Inc. v. Unilin Décor*, Case No.
2:00CV00999 (E.D.Wis.) (Randa, C.J.) (the
"Wisconsin Action"). On August 17, 2006, Chief
Judge Randa granted Alloc's motion to amend its
complaint to include the '621 patent. As a result, the
Wisconsin Action involves the same patents that are
at issue in the above-captioned cases. Fact discovery
is set to close in the Wisconsin Action on November
15, 2006, and claim construction issues are set to be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: 2006 WL 3050815 (D.Del.))**

Page 2

fully briefed by December 20, 2006.

III. DISCUSSION

Pursuant to <u>section 1404(a)</u>, the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, ... to any other district ... where it might have been brought." <u>28 U.S.C. § 1404(a)</u>. It is within the court's discretion whether to transfer a case according to an individualized case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 197 (D.Del.1998). In making its determination under <u>section 1404(a)</u>, the court must consider whether transferring these two actions would convenience (1) the parties and (2) the witnesses while (3) serving the interests of justice. *Affymetrix*, 28 F.Supp.2d at 196. It is the movant's burden to establish the need to transfer. *See* <u>Truth Hardware corp. v. Ashland Prods., Inc.</u>, No. C.A. 02-1541 GMS, 2003 WL 118005, at *1 (D.Del. Jan.13, 2003).

**\*2** As a threshold matter, the court must first ask whether Alloc could have brought these two actions in the Eastern District of Wisconsin. *See Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F.Supp. 359, 361 (D.Del.1994). If the court answers this question in the negative, then its inquiry ends. *See Camasso v. Dorado Beach Hotel Corp.*, 689 F.Supp. 384, 386 (D.Del.1988) (refusing to transfer the case when the target forum could not exercise personal jurisdiction over one of the defendants).

Alloc contests Unilin's assertion that these two actions could have been brought in the Eastern District of Wisconsin. Alloc also contends that Unilin has failed to make a showing that these cases could have been originally brought in the Eastern District of Wisconsin. The court disagrees. According to Unilin's opening brief in support of its motion, the "[p]laintiffs have already sued Unilin Décor in that district [Eastern District of Wisconsin] and no one ever questioned venue. Unilin N.C., the successor to Quick-Step, distributes and sells the Uniclic® flooring product in Wisconsin, including in the Milwaukee area in which the District Court for the Eastern District is located." (D.I. 9, at 8 n. 2.) Under <u>28 U.S.C. § 1391</u>, a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." <u>28 U.S.C. § 1391(c)</u>. Wisconsin's long-arm statute codifies federal due process requirements. *See Logan*

*Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir.1996). Therefore, venue is proper in the Eastern District of Wisconsin if Unilin had minimum contacts within the Eastern District at the time the action was commenced, and the exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice. *See id.*

Here, Unilin has submitted the sworn declaration of Unilin Décor's legal counsel, which states that Quick-Step, an indirect subsidiary of Unilin Décor, was selling and distributing the disputed flooring in Milwaukee, Wisconsin as of March 5, 2003. (D.I. 15 ¶ 2.) The declaration further states that Unilin NC (successor to Quick-Step) continues to sell and distribute the disputed flooring in Milwaukee, Wisconsin. (Id.¶ 3.) Moreover, Alloc has already sued Unilin Décor in the Eastern District of Wisconsin without objection to venue. Accordingly, Unilin has demonstrated sufficient minimum contacts in the Eastern District of Wisconsin to confer personal jurisdiction on that court. The court believes this conclusion to be consistent with traditional notions of fair play and substantial justice. Therefore, venue is proper in Unilin's proposed transferee court. The court now turns to an examination of the remaining criteria enumerated in Section 1404(a) in order to determine if transfer is warranted.

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875. These private interests include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records, to the extent that they could not be produced in the alternative forum. [FN2] Among the relevant public interests are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in decided local controversies at home; and (5) the public policies of the fora. *Id.* at 879-80.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3
Slip Copy, 2006 WL 3050815 (D.Del.)
(Cite as: 2006 WL 3050815 (D.Del.))

        FN2. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

*\*3* After having considered the relevant factors, the court finds that Unilin has met its burden of demonstrating that transfer to the Eastern District of Wisconsin is appropriate. First, although Alloc is incorporated in Delaware and Quick-Step was incorporated in Delaware, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,* 295 F.Supp.2d 393, 398-99 (A party's incorporation in Delaware is not dispositive of a motion to transfer. "Where an alternative forum is more convenient and has more substantial connection with the litigation 'incorporation in Delaware will not prevent transfer.' ") Further, none of the parties have facilities in Delaware nor maintain their principal place of business in Delaware. Moreover, Alloc's principal place of business is Racine, Wisconsin, and Alloc, Välinge, and Berry are currently parties to the Wisconsin Action, which involves both the '570 and '621 patents. Thus, it would be more convenient for Alloc to litigate this case in Wisconsin. Additionally, while Unilin Décor is a Belgian corporation and Unilin NC has a principal place of business in North Carolina, both would prefer to litigate this case in Wisconsin, especially given the fact that Unilin Décor is already a defendant in the Wisconsin Action. [FN3]

        FN3. The convenience of the expected witnesses is not a relevant consideration because neither party has produced witness lists or identified any witness who is a Delaware resident.

With respect to the documentary evidence, Unilin states that many of the relevant documents and other materials have already been produced in the Wisconsin Action, and that it can produce the documents it has as easily in Wisconsin as it can in Delaware. (D.I. 9, at 14.) Bringing relevant documents to only one location, here Wisconsin, minimizes the level of disruption caused to both parties by the litigation. *Omnicom Group, Inc. v. Employers Reinsurance Corp.,* C.A. No. 01-839-GMS, 2002 WL 109346, at *2 (D.Del. Jan.28, 2002). In other words, it "is certainly a more economical and efficient result than having each party moving ...

documents between two states, depending on which of the[ ] related actions is being litigated at the time." *Omnicom Group, Inc. v. Employers Reinsurance Corp.,* C.A. No. 01-839-GMS, 2002 WL 109346, at *2 (D.Del. Jan.28, 2002). Thus, the court finds that this factor weighs in favor of transfer.

Finally, the court finds that the public interest factors weigh in favor of transfer to Wisconsin. Most relevant to the courts inquiry, is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. Here, there has already been litigation on both the '579 and '621 patents in the Eastern District of Wisconsin. Discovery has already begun in the Wisconsin Action, which was filed before Alloc initiated these lawsuits, and involves the same patents. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518, 537 (D.N.J.2000 (citations omitted). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh against transfer. Finally, it is well settled that patent rights are not considered state or local matters, and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at *3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in either forum. Accordingly, the court concludes that, on balance, the public interest factors favor transfer in the instant case.

### ORDER

*\*4* For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
    1. The defendants' Motion to Transfer Venue to the Eastern District of Wisconsin (D.I.8) is GRANTED.
    2. The above-captioned actions are hereby TRANSFERRED to the United States District Court for the Eastern District of Wisconsin.

Slip Copy, 2006 WL 3050815 (D.Del.)

### Motions, Pleadings and Filings (Back to top)

• 2006 WL 1814031 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of their Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. 1404(a) (May 23, 2006)Original Image

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: 2006 WL 3050815 (D.Del.))**

Page 4

of this Document (PDF)

• 2006 WL 1814030 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. 1404(A) (May 15, 2006)Original Image of this Document (PDF)

• 2006 WL 1814029 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. s 1404(a) (May 1, 2006)Original Image of this Document (PDF)

• 2005 WL 4114532 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of their Motion to Lift the Stay and Order A Scheduling Conference (Dec. 12, 2005)Original Image of this Document (PDF)

• 1:05cv00857 (Docket) (Dec. 12, 2005)

• 2005 WL 4114531 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opening Brief in Support of their Motion to Lift the Stay and Order A Scheduling Conference (Nov. 23, 2005)Original Image of this Document (PDF)

• 2003 WL 24839954 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Plaintiffs' Motion to Lift the Stay and Order a Scheduling Conference (Dec. 8, 2003)Original Image of this Document (PDF)

• 1:03cv00253 (Docket) (Mar. 5, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  I

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)
(Cite as: 2003 WL 1966438 (D.Del.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
3COM CORPORATION, Plaintiff,
v.
D-LINK SYSTEMS, INC., Defendant.
No. C.A. 03-014 GMS.

April 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I.11). For the following reasons, the court will grant the defendant's motion.

II. DISCUSSION

D-Link moves to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.*. This inquiry requires "a multi-factor

balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. 28 U.S.C. § § 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides....").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)
**(Cite as: 2003 WL 1966438 (D.Del.))**

Page 2

some of D-Link's products, including the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

*2 In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost, and expediency favor a forum in

California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara, 55 F.3d at 879* (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
   1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 24229533 (Trial Pleading) Complaint (Jan. 7, 2003)Original Image of this Document (PDF)

• 1:03CV00014 (Docket) (Jan. 07, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  J

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: 2001 WL 34368395 (D.Del.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Ole K. **NILSSEN** and Geo Foundation, Ltd.,
Plaintiffs,
v.
**OSRAM SYLVANIA, INC.** and Osram Sylvania
Products, Inc., Defendants.
**No. Civ.A. 00-695-JJF.**

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Harry J. Roper, Raymond N. Nimrod, John E. Titus, and Jonathon Hill, of Roper & Quigg, Chicago, Illinois, for Plaintiffs, of counsel.

Richard K. Herrmann, of Blank Rome Comisky & Mccauley LLP, Wilmington, Delaware, Brian D. Sieve, Thomas G. Pasternak, Andrew M. Johnstone, and Kevin J. O'Shea, of Kirkland & Ellis, Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15). For the reasons stated below, the Court will grant the motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident with his principal place of business in Chicago, Illinois. [FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is engaged in the business of "identifying, formulating plans for, developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including electronic ballasts." (D.I. 1 at ¶ 8). Geo Foundation ("Geo") is a non-profit corporation incorporated in the Cayman Islands, British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and Geo collectively referred to as "Plaintiffs").

FN1. Mr. Nilssen contends that his ongoing business in Illinois, Innovations Center, "is now defunct." (D.I. 24, Exh. 1 at ¶ 8). However, Plaintiffs' Complaint alleges that Mr. Nilssen is currently engaged in "business opportunities." (D.I. 1 at ¶ 4). Further, Mr. Nilssen admits that he still travels to Illinois regularly to "bring closure to [his] other business dealings that take place in Illinois." (D.I. 24, Exh. 1 at ¶ 8). The Court concludes that, for purposes of the instant motion, this record sufficiently establishes that Mr. Nilssen's principal place of business is in Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania Products, Inc. (collectively "Defendants") are Delaware corporations with their principal places of business in Danvers, Massachusetts. (D.I. 13 at ¶ 6-7). Defendants are engaged in the business of making and selling electronic ballasts. (D.I. 13 at ¶¶ 11).

Plaintiffs filed the instant action against Defendants on August 1, 2000. In their Complaint, Plaintiffs contend that Defendants wilfully infringe twenty-six patents that were invented and are owned by Mr. Nilssen and of which Geo holds exclusive licenses. [FN2] (D.I. 1 at ¶¶ 9, 10, 13). On January 24, 2001, Defendants filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I.15).

FN2. These patents include U.S. Patent No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754; U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,681; U.S. Patent No. 5,510,680; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: 2001 WL 34368395 (D.Del.))**

Page 3

forum. *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.*, 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara*, 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics*, 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

*3 In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene--an employee of Mr. Nilssen, (2) Robert Schneider--a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped

depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.*, 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

> FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art. [FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. [FN7] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: 2001 WL 34368395 (D.Del.))

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).
>
> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola*, 58 F.Supp.2d at 359; *Sunds Defibrator, Inc. v. Durametal Corp.*, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defribator*.

C. Practical Considerations

**\*4** The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.*, 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. [FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer. [FN10]

> FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.*, Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v.*

*MagneTek, Inc.*, Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.
>
> FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

> FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: 2001 WL 34368395 (D.Del.))

Page 5

in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.

After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED*.

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv00695 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  K

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2038504 (D.Del.)
(Cite as: 2006 WL 2038504 (D.Del.))

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CASHEDGE, INC., Plaintiff,
v.
YODLEE, INC., Defendant.
**No. Civ.A.06-170 JJF.**

July 19, 2006.

Arthur G. Connolly, III, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, Drew M. Wintringham, III, and Mark W. Rueh, of Clifford Chance Rogers & Wells LLP, New York City, New York, for Plaintiff, of Counsel.

William J. Marsden, Jr., and Kyle Wagner Compton, of Fish & Richardson, P.C., Wilmington, Delaware, David M. Barken, and Craig R. Compton, of Fish & Richardson, P.C., Redwood City, California, for Defendant, of Counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*\*1* Pending before the Court is Defendant's Motion To Transfer (D.I.12). For the reasons discussed, the Motion will be granted.

## I. BACKGROUND

Plaintiff was issued United States Patent No. 7,013,310 ("the '310 patent"), entitled "Method And Apparatus For Retrieving And Processing Data" on March 14, 2006. That same day, Plaintiff filed its Complaint in this Court, alleging infringement of the '310 patent. (D.I.1). Defendant filed its Answer and Counterclaim on April 4, 2006, and stated its intent to file a motion to transfer. (D.I.5). On May 4, 2006, Defendant filed its Motion to Transfer. (D .I. 12).

Defendant's Motion to Transfer is based on a pending action in the Northern District of California, Case No. C-05-1550-SI. On April 14, 2005, Defendant filed a patent infringement action in the

Northern District of California, alleging that Plaintiff infringed several of its U.S. Patents. In response, Plaintiff filed an action in the same court, seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the patents asserted in Defendant's case and additional patents. Those two actions were consolidated into one nine-patent case ("the California action"). The California court conducted a Markman hearing on April 26, 2006.

## II. PARTIES' CONTENTIONS

By its Motion, Defendant contends that, pursuant to 28 U.S.C. § 1404(a), the Court should transfer this action to the Northern District of California. In support of this contention, Defendant argues that Plaintiff's allegations of infringement of the '310 patent are related to the allegations in the California action. Further, Defendant contends that certain patents in the California action are prior art to Plaintiff's '310 patent and form the basis of Defendant's inequitable conduct defense. [FN1] In response, Plaintiff contends that the Court should deny the Motion because Plaintiff chose Delaware, the California action is unrelated, and judicial economy would not be served by transfer.

> FN1. Defendant alleges that, at a minimum, United States Patent Nos. 6,317,783 ("the '783 patent"), 6,199,077 ("the '077 patent"), and 6,412,073 ("the '073 patent") are material prior art to Plaintiff's '310 patent. (D.I. 5 at ¶ 23).

## III. DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiff could have brought the instant action in the Northern District of California, the Court's only task is to determine whether the factors enumerated in Section 1404(a) warrant a transfer under the circumstances.

The Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). These factors

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. *Id.* at 879. The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id.* at 879-80. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all the aforementioned interests. *Id.* at 883. The burden is on the movant to establish that the balance of the interests weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *Continental Cas. Co. v. Am. Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999).

## A. *PRIVATE INTERESTS*

**\*2** Although the plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed, *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1920), when the plaintiff lacks a rational and legitimate reason to litigate in the forum, the transfer of a case to a more appropriate forum is less inconvenient. *Brunswick Corp. v. Precor Inc.,* 2000 U.S. Dist. LEXIS 22222, at *7 (D.Del. Dec. 12, 2000); *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E2O Communs., Inc.,* 2002 U.S. Dist. LEXIS 5653, C.A. No. 01-309 JJF, at *7 (D.Del. March 26, 2002). Accordingly, the first factor weighs against transfer, and Defendant must demonstrate that the other *Jumara* factors strongly favor a transfer to California.

The Court concludes that the other private interest factors weigh in favor of transfer. Here, both parties are Delaware corporations with principal places of business outside Delaware. Plaintiff is headquartered

in New York City, and Defendant is headquartered in Redwood City, California. Both parties maintain offices in the Northern District of California. Also, there are likely witnesses, such as former employees, that still reside in the Northern District of California. The location of books and records is neutral as neither party has argued that it would be unable to produce documents in either forum.

Importantly, the same parties are currently litigating in the Northern District of California. Although the Court understands that the California action and this action are different, [FN2] the technologies at issue all relate to data extraction, retrieval, or presentation through Internet technologies, such as web sites and web pages. The Northern District of California is more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies.

> FN2. This action requires claim construction of the claim language of the '310 patent, which is not part of the California action. However, Defendant's patents-in-suit in the California action are relevant to its defenses and counterclaim in this action.

## B. *PUBLIC INTERESTS*

The Court also concludes that the public interest factors weigh in favor of transfer. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *Brunswick,* 2000 U.S. Dist. LEXIS 22222, at *8. Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) a common field of prior art.

In this case, judicial efficiency regarding the ease, speed, or expense of trial strongly weigh in favor of transfer. The California action involves the same parties, similar technologies, and related patents-in-suit. The parties in the California action have already conducted a two-hour technology tutorial on April 19, 2006, argued Markman issues in nine patents on April 26, 2006, and commenced discovery on seemingly related products and technologies. Additionally, the Court concludes that public interests such as enforceability of the judgment, familiarity with state law in diversity actions, local

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2038504 (D.Del.)
**(Cite as: 2006 WL 2038504 (D.Del.))**

Page 3

interests in deciding local controversies, and court congestion are neutral or non-applicable factors in this case. *Jumara,* 55 F.3d at 879-880. Accordingly, the interests of judicial efficiency and justice are best served by transferring this case to the Northern District of California.

IV. CONCLUSION

**\*3** In sum, for the reasons discussed, the Court concludes that the balance of the private and public interest factors support transferring this case to the Northern District of California where related litigation is pending. Accordingly, the Court will grant Defendant's Motion To Transfer (D.I.12).

An appropriate Order will be entered.

### ORDER
At Wilmington, the *19* day of July 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Defendant's Motion To Transfer (D.I.12) is *GRANTED.*

Not Reported in F.Supp.2d, 2006 WL 2038504 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 850651 (Trial Pleading) Complaint for Patent Infringement (Mar. 14, 2006)Original Image of this Document (PDF)

• 1:06cv00170 (Docket) (Mar. 14, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  L

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
(Cite as: 2000 WL 1876477 (D.Del.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
BRUNSWICK CORPORATION Plaintiff,
v.
PRECOR INCORPORATED., Defendant.
**No. 00-691-GMS.**

Dec. 12, 2000.

Robert W. Whetzel, Richards Layton & Finger, of
Wilmington, DE, Stephen C. Neal, Linda F.
Callison, Jonathan H. Takei and Ricardo Rodriguez
of Cooley Godward LLP, Palo Alto, CA, for
Plaintiff, of counsel.

Samuel David Brickley, II, Connolly, Bove, Lodge
& Hutz of Wilmington, DE, James R. Uhlir, Stephen
P. Fricke, Steven V. Gibbons, F. Ross Boundy of
Christensen O'Connor Johnson Kindness, Seattle,
WA, for Defendants, of counsel.

*MEMORANDUM AND ORDER*

SLEET, J.

*1 On August 1, 2000, the plaintiff, Brunswick
Corporation, and its division Life Fitness ("Life
Fitness") brought this patent infringement action
against Precor Incorporated ("Precor"). Life Fitness
alleges that Precor is infringing its U.S. Patent No.
6,095,951 (" '951 patent") relating to exercise
treadmills. Presently before this court is Precor's
motion to transfer this case to the United States
District Court for the Western District of
Washington, pursuant to 28 U.S.C. § 1404(a).
Because the court finds that a transfer would
convenience the parties and the witnesses while
serving the interests of justice, Precor's motion to
transfer is granted.

## I. BACKGROUND

### A. The parties

Life Fitness and Precor both design, manufacture,
and sell exercise equipment and both directly
compete with one another in the exercise fitness
market. Although both parties are incorporated in
Delaware, neither party maintains a physical presence
(e.g., offices or facilities) in this state. Life Fitness
has its principal place of business in Franklin Park,
Illinois and Precor has its principal place of business
in Bothell, Washington.

### B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each
other, nor to patent litigation." D.I. 7, at 2. In 1994,
Precor filed a patent infringement suit against Life
Fitness in the United States District Court for the
Western District of Washington ("1994 litigation").
At issue in the 1994 litigation were U.S. Patent Nos.
5,599,259, 5,752,897 and certain Claims of U.S.
Patent No. 5,382,207 (respectively the " '259, '897,
and '207 patents"). The '207 patent is the parent of the
'951 patent currently at issue in the case before the
court.

In the 1994 litigation, Claims 1-36 of '207 patent
were dismissed on summary judgment in February
1996 leaving only claims 37, 38, and 39 at issue. In
early September 1999, Life Fitness voluntarily
stipulated to the dismissal of the claims for
infringement of the '259 and '897 patents as well as
Claims 38-39 of the '207 patent. As a result of this
stipulation, these claims were dismissed with
prejudice in an order dated September 23, 1999. *See
Precor Inc. v. Life Fitness,* No. C94-1586C
(W.D.Wash. Sept. 23, 1999) (stipulation and order of
dismissal). Thus, the only infringement claim
remaining for trial related to Claim 37 of the '207
patent. In October 1999, Life Fitness lost at trial as to
this one patent claim. The judgment from the 1994
litigation is currently on appeal to the Federal Circuit.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), the court may
transfer this action to "any other district where it
might have been brought" when it appears that a
change of venue would "convenience" the parties and
the witnesses while serving the "interest of justice."
28 U.S.C. § 1404(a) (1993). The parties here agree
that Life Fitness could have brought this action in the
Western District of Washington. *See* 28 U.S.C. S
1391(b)(1) (1993). Moreover, this lawsuit could have
initially been filed in Washington because it is a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 2
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: 2000 WL 1876477 (D.Del.))**

patent infringement matter. *See* 28 U.S.C. § 1400(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

**\*2** In *Jumara,* the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. 55 F.3d at 879-80; *see also Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 196- 97 (D.Del.1998). These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara,* 55 F.3d at 879- 80. [FN1] The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.* at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30-31 (1988)). The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara,* at 879.

> FN1. The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879-880. The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the

private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). In this case, however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace,* 56 F.Supp.2d 542, 545 (E.D.Pa.1999). "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen ... a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

**\*3** Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. [FN2] Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: 2000 WL 1876477 (D.Del.))**

before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518, (D.N.J.2000)* (citations omitted). Thus, the court finds that transferring this case would promote the interests of justice.

> FN2. The parties disagree as to whether this is a directly related matter.

III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00691 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PACESETTER, INC.,
ANGEION CORPORATION,                )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )    Civil Action No. 96-232-SLR
                                    )
CARDIAC PACEMAKERS, INC.,           )
                                    )
        Defendant.                  )

### MEMORANDUM ORDER

### I.    INTRODUCTION

Plaintiff Pacesetter, Inc. ("Pacesetter") commenced this patent infringement action on May 3, 1996, against Cardiac Pacemakers, Inc. ("CPI"). Pacesetter alleged infringement by CPI of three Pacesetter patents relating to implantable cardiac pacemakers and defibrillators. On June 20, 1996, Pacesetter and co-plaintiff Angeion Corporation ("Angeion") filed an amended complaint, further asserting infringement of three separate patents relating to implantable cardiac defibrillators. It is alleged that CPI is making, using, offering to sell, and selling the patented inventions as embodied in CPI's VIGOR and VENTAK MINI series of products. CPI is selling and/or offering to sell these products in Delaware.

On July 19, 1996, defendant CPI filed a motion to transfer this suit to the District of Minnesota. (D.I. 14) For the reasons that follow, the motion will be granted.

## II.  BACKGROUND

Pacesetter is a Delaware corporation having its principal place of business in Sylmar, California.  Pacesetter is a subsidiary of St. Jude, a Minnesota corporation headquartered in St. Paul, Minnesota.  Plaintiff Angeion is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.

CPI is a Minnesota corporation having its principal place of business in St. Paul, Minnesota.  CPI is a wholly-owned subsidiary of Guidant Corporation which is headquartered in Indianapolis, Indiana.

It would appear that all of the parties conduct business on a nationwide basis.

## III.  ANALYSIS

Title 28 of the United States Code, section 1404(a) provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interest of justice.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of

2

justice, and whether the action could have been brought in the suggested transferee court." <u>SportsMEDIA Technology Corp. v. Upchurch</u>, 839 F. Supp. 8, 10 (D. Del. 1993).  The parties do not dispute that both Delaware and Minnesota are proper venues.

As this court has recognized on numerous occasions, "[a] plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and the court should not disturb the plaintiff's choice lightly." <u>The Joint Stock Society v. Heublein, Inc.</u>, 1996 WL 471198 (D. Del. 1996) at 6. Therefore, "the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." <u>Bergman v. Brainin</u>, 512 F. Supp. 972, 973 (D. Del. 1981) (<u>citing</u> <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970), <u>cert. denied</u>, 401 U.S. 910 (1971) (emphasis added)).

Defendant in this case has alleged in support of its transfer motion that "[m]ost of the key witnesses wh[o] can be expected to testify live more than one hundred miles from Wilmington, Delaware;" "[m]any are subject[, however,] to the subpoena power of the District of Minnesota. . . ." (D.I. 16 at 7-8)  Defendant concedes that most of these witnesses are employees or ex-employees of the parties at suit (or related parties) and does not identify any specific witness who will not appear voluntarily.  Instead, defendant argues generally that '[t]here is every reason to believe that no current or former employee of Angeion or St. Jude voluntarily will consent to

3

testify at trial in Delaware (or Minnesota) unless it suits the
interest of Angeion or St. Jude." (D.I. 27 at 8)  The court
finds such general allegations singularly unpersuasive, given the
experience of this court in such matters.

Defendant also proffers the familiar argument that,
because of the location of witnesses and tangible evidence,
Delaware is not the most convenient trial forum.  As this court
has observed on previous occasions, the discovery process will
take place where the witnesses and evidence are located
regardless of where the trial is held.  Given the advent of
technological advances which have substantially reduced the
burden of having to litigate a case in a distant forum, <u>see</u>,
<u>e.g.</u>, <u>Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.</u>, 157
F.R.D. 215, 218 (D. Del. 1993), the convenience argument is
compelling only in circumstances where the moving party truly is
a local (versus a nationwide) concern.  The court does not
understand any of the parties to fit the former description.
Therefore, this factor, when weighed against the economies
related to the instant trial forum (a date certain within 21
months of filing a complex case), does not strongly favor
defendant's request to transfer.

The court, however, is persuaded that transfer of this
case to the District of Minnesota is warranted because of
Minnesota's familiarity with the technology at issue through past
and pending litigation.  It is the court's understanding that the
District of Minnesota is in a posture to accept such a complex

4

case without prejudice to plaintiffs' interest in a prompt resolution of the matter. Under these unusual circumstances, the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.

IV. CONCLUSION

For the reasons stated, at Wilmington this 25th of September, 1996,

IT IS ORDERED that defendant's motion to transfer (D.I. 14) is granted.

_____
United States District Judge

5

# EXHIBIT  N

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
(Cite as: 2005 WL 735880 (D.Del.))

C

Only the Westlaw citation is currently available.


United States District Court,
D. Delaware.
SUMITO MITSUBISHI SILICON CORP., aka
Sumco, and Sumco USA Corp., Plaintiffs,
v.
MEMC ELECTRONIC MATERIALS, INC.,
Defendant.
No. Civ. 04-852-SLR.

March 30, 2005.

Richard D. Kirk, of Morris, James, Hitchens &
Williams LLP, Wilmington, Delaware, for Plaintiffs,
R. Terrence Rader, David T. Nikaido, and Ellen A.
Efros, of Rader, Rishman & Grauer PLLC,
Bloomfield Hills, MI, of counsel.

Patricia S. Rogowski, of Connolly Bove Lodge &
Hutz LLP, Wilmington, Delaware, for Defendant,
Robert M. Evans, Jr., and Marc Vander Tuig, of
Senniger Powers, St. Louis, Missouri, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 13, 2004, plaintiffs Sumitomo Mitsubishi
Silicon Corporation and SUMCO USA Corporation
(collectively "plaintiffs") filed the present action
against defendant MEMC Electronic Materials,
Incorporated. (D.I.1) In response, defendant filed a
motion to dismiss, transfer, or stay plaintiffs'
complaint. (D.I.10) Plaintiffs subsequently filed a
first amended complaint. [FN1] (D . I. 14) Presently
before the court is defendant's motion to dismiss,
transfer, or stay plaintiffs' amended complaint. [FN2]
(D.I.19) For the reasons that follow, the court denies
defendant's motion to dismiss or stay plaintiffs'
amended complaint, but grants defendant's motion to
transfer the case to the United States District Court
for the Northern District of California.

> FN1. The amended complaint alleges
> defendant monopolized the low defect
> silicon wafer market in the United States by
> enforcing or threatening to enforce the

"fraudulently-procured" U.S. Patent No.
5,919,302 ("the '302 patent") and United
States Patent No. 6,287,380 ("the '380
patent"). Plaintiffs also request declaratory
judgment that: (1) none of their products
infringe the '302 patent or the '380 patent;
(2) the '302 patent and the '380 patent are
invalid for failure to comply with 35 U.S.C.
§ § 101, 102, 103, and 112; (3) the ' 302
patent and the '380 patent are unenforceable
under the doctrine of inequitable conduct;
and (4) the '302 patent and the '380 patent
are void and unenforceable because of
defendant's patent misuse. (D.I. 14 at 22-26)

> FN2. Since plaintiff filed an amended
> complaint, its original complaint and all
> motions related to that original complaint
> (i.e., D.I.10) are moot. The court will only
> issue a ruling on defendant's motion to
> dismiss, transfer, or stay plaintiffs' amended
> complaint. The court will consider
> arguments in motions related to the
> originally filed complaint only as they
> pertain to defendant's motion to dismiss,
> transfer, or stay the amended complaint.

II. BACKGROUND

Plaintiff Sumitomo Mitsubishi Silicon Corporation is
a Japanese corporation with its principal place of
business in Tokyo, Japan. (D .I. 14 at 4) Plaintiff
SUMCO USA Corporation is a Delaware corporation
with its principal place of business in Fremont,
California. (Id.) Defendant MEMC Electronic
Materials, Inc. is a Delaware corporation with its
principal place of business in St. Peters, Missouri.
(Id.) The parties are leading worldwide producers of
electronic grade silicon wafers for the semiconductor
industries. (Id.)

On December 14, 2001, defendant sued the
predecessors in interest of plaintiffs [FN3] in the
Northern District of California ("the Northern
District Litigation"). (D.I. 11, ex. 2 at 5; D.I. 14 at 13; D.I. 20
at 3) On July 15, 2002, defendant filed an amended
complaint which alleged that plaintiffs directly
infringed and induced infringement of the '302
patent. [FN4] (D.I.11, ex. 1)

> FN3. The predecessors in interest to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
(Cite as: 2005 WL 735880 (D.Del.))

plaintiffs are Mitsubishi Materials Silicon Corporation, Mitsubishi Silicon America Corporation, Sumitomo Mitsubishi Silicon Corporation, SUMCO USA Corporation and SUMCO USA Sales Corporation. (D.I.11, ex. 6) After a corporate merger in early 2002, the present plaintiffs were formed and defendant amended its complaint accordingly.

> FN4. In the Northern District Litigation, defendant attempted to expand the scope of the litigation to include another patent, the '380 patent, in an effort to preclude plaintiffs from arguing they had a noninfringing alternative to the '302 patent. (D.I.

In the Northern District Litigation, plaintiffs asserted in their amended answer that the '302 patent: (1) was not infringed; (2) was invalid; and (3) was unenforceable because of alleged inequitable conduct by defendant for failure to disclose material prior art to the United States Patent Office. (D.I. 11, ex. 3 at 3-4)

At the conclusion of discovery in the Northern District Litigation, plaintiffs and defendant filed motions for summary judgment: (1) of zero damages (D.I. 11, ex. 2 at 22); (2) of invalidity of the '302 patent (id. at 38); (3) of noninfringement of the '302 patent (id. at 45); (4) that the '302 patent correctly listed all inventors (id. at 46); (5) that the asserted claims read on the accused wafers (id. at 47); and (6) that the '302 patent met the enablement requirements of 35 U.S.C. § 112 (id.). The court granted plaintiffs' motion for summary judgment of zero damages and then struck all remaining motions for summary judgment. (Id. at 46, 51) On April 22, 2004, the court entered a final judgment of noninfringement. (Id. at 61) Defendant appealed the decision to the United States Court of Appeals for the Federal Circuit. (D.I.21, ex. 7)

After the court entered summary judgment, plaintiffs filed a motion for attorneys' fees, claiming that defendant had commenced the Northern District Litigation without conducting an adequate pre-filing investigation and prosecuted the lawsuit without ever asserting an adequate infringement contention. (D.I. 11, ex. 4 at 2, 14, 19, 20) This motion was denied. (Id., ex. 6 at 7-11)

III. STANDARD OF REVIEW

*2 Under 28 U.S.C. § 1404(a), [FN5] a district court

may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. _Stewart Org., Inc. v. Ricoh Corp._, 487 U.S. 22, 29 (1988); _Affymetrix, Inc. v. Synteni, Inc._, 28 F.Supp.2d 192, 208 (D.Del.1998).

> FN5. Title 28, Section § 1404(a) provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." _Bergman v. Brainin_, 512 F.Supp. 972, 973 (D.Del.1981) (citing _Shutte v. Armco Steel Corp._, 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". _ADE Corp. v. KLA-Tencor Corp._, 138 F.Supp.2d 565, 567 (D.Del.2001); _Shutte_, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. _C.R. Bard, Inc. v. Guidant Corp._, 997 F.Supp. 556, 562 (D. Del 1998); _Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc._, 2001 WL 1617186 (D.Del. Nov. 28, 2001); _Cont'l Cas. Co. v. Am. Home Assurance Co._, 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." _In re ML-Lee Acquisition Fund II, L.P._, 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. _Jumara v. State Farm Ins. Co._, 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," _id._, the Court has identified potential factors it characterizes as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
**(Cite as: 2005 WL 735880 (D.Del.))**

either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

IV. DISCUSSION

*3 The facts of this case balance strongly in favor of transfer to the Northern District of California. The Northern District Litigation was filed before the present action. The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In particular, that court has already considered briefs regarding whether the '302 patent was fraudulently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. [FN6] Furthermore, the court has already considered whether plaintiffs' Samsung wafer infringed the '302 patent. (D.I. 22, exs. 16, 17, 18, 19, 20, 21; D.I. 11, ex. 2 at 46, 61) Finally, the court was presented with several briefs addressing whether the '302 patent was invalid. (D.I.22, exs.19, 20, 21, 22) Thus, all of plaintiffs' contentions relating the '302 patent have already been presented to the court in the Northern District Litigation.

> FN6. As plaintiffs stated in its originally filed complaint, "[a] complete discussion of [defendant's] inequitable conduct is set forth in [plaintiffs'] expert reports, which were filed in the [Northern District Litigation]." (D.I. 1 at 10)

The '380 patent is very similar to the '302 patent. Both the '302 patent and the '380 patent issued from U.S. Patent Application Ser. No. 60/041,845. (D.I.14,

exs.A, B) The '302 patent and the '380 patent have similar written descriptions and share many of the same figures. (*Id.*) Consequently, the court's experience with the '302 patent in the Northern District Litigation may well be helpful in resolving many of plaintiffs' arguments regarding the '380 patent.

The court in the Northern District Litigation has three years of experience with this litigation and has already issued several orders regarding infringement of the '302 patent. Its grasp of the facts and issues in connection with the '302 patent, together with the similarity between the '302 patent and the '380 patent, make that court a more appropriate venue for the present matter. In the interests of judicial economy and of avoiding inconsistent rulings, this court transfers the present matter to the Northern District of California.

V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss or stay this matter, but grants defendant's motion to transfer the case. An appropriate order shall issue.

ORDER
At Wilmington this 30th day of March, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to dismiss or to stay (D.I.19) plaintiffs' complaint is denied.

2. Defendant's motion to transfer the present action to the Northern District of California (D.I.19) is granted.

Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT O

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)
(Cite as: 2002 WL 373473 (D.Del.))

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
AMERICAN HIGH-INCOME TRUST, et al.,
Plaintiffs,
v.
ALLIEDSIGNAL INC., et al., Defendants.
**No. CIV.A. 00-690 GMS.**

March 7, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On July 31, 2000, American High-Income Trust
("American High-Income"), The Bond Fund of
America, Inc. ("Bond Fund"), The Income Fund of
America ("Income Fund"), American Funds
Insurance ("American Funds"), Anchor Pathway
Fund ("Anchor"), Capital Guardian U.S. Fixed
Income Master Fund ("Capital Guardian"), and
Capital Guardian Global High-Yield Fixed-Income
Fund (Capital Guardian Global") (collectively "the
plaintiffs") filed suit against AlliedSignal, Inc.
("AlliedSignal"), Nationsbanc Montgomery
Securities, LLC ("Nationsbanc"), Prudential
Securities, Inc.("Prudential"), Allen K. Breed ("Allen
Breed"), Charles J. Speranzella, Jr. ("Speranzella")
and Johnnie Cordell Breed ("Breed") (collectively the
"director defendants"). The plaintiffs are purchasers
of Breed Technologies, Inc. ("Breed Technologies")
9 1/4 percent bonds. In their complaint, the plaintiffs
allege that the defendants are liable to them under the
federal securities laws, California statutes concerning
misrepresentations in the sale of securities, and
common law fraud in connection with the sale of
these bonds.

Presently before the court is the direct defendants'
motion to dismiss, or in the alternative, to transfer
venue. [FN1] For the reasons that follow, the court
will grant the defendant's motion to transfer venue.

FN1. Each of the remaining defendants
concedes that venue in this district is
appropriate with regard to them.

II. BACKGROUND

American High-Income, American Funds, and
Anchor are Massachusetts business trusts. [FN2] The
Bond Fund and the Income Fund are Maryland
corporations. Capital Guardian and Capital Guardian
Global are California business trusts. AlliedSignal,
NationsBanc and Prudential are Delaware
corporations. The director defendants are citizens of
Florida. [FN3]

FN2. For purposes of addressing this
motion, the court will set forth only those
facts pertinent to venue.

FN3. The director defendants were directors
of non-party Breed Technologies, which is a
Delaware Corporation.

On October 30, 1997, Breed Technologies purchased
the assets of AlliedSignal's SRS division for $710
million. The SRS transaction subsequently closed on
October 30, 1997. On August 20, 1998, Breed
Technologies issued the 9 1/4 percent bonds (the
"Notes"). The Notes were issued through a private
placement pursuant to Securities and Exchange
Commission Rule 144A. They were marketed
exclusively to large, sophisticated, institutional
investors through an Offering Memorandum. [FN4]

FN4. The Offering Memorandum was
prepared in Florida.

Pursuant to the terms of the Offering Memorandum,
the Notes were located at NationsBanc's New York
offices. They were subsequently delivered at either
NationsBanc's New York office or through the
Depository Trust Company, also located in New
York. Further, IBJ Schroder Bank and Trust
Company, the trustee for the Indenture/Notes, is
located in New York. In its capacity as trustee, IBJ
Schroder was responsible for sending all payments of
interest and principle from New York.

In Spring 1998, NationsBanc led a nationwide road
show in an effort to increase interest in the Notes.
The road show made stops across the country,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)
(Cite as: 2002 WL 373473 (D.Del.))

including one in Los Angeles, California on April 7, 1998. At that stop, the plaintiffs allege that Speranzella made false statements to prospective purchasers.

*2 On March 9, 1999, Breed filed an amended registration statement with the SEC in order to convert the 9 1/4 percent bonds into instruments that could be freely traded in the public markets. This took place in New York. Both the Notes and Exchange Notes are expressly governed by New York law.

On August 2, 1999, Breed Technologies sued AlliedSignal for fraud in connection with the SRS transactions. That action is currently pending in Delaware state court. On September 20, 1999, Breed Technologies filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the District of Delaware. On July 31, 2000, the purchasers of the 9 1/4 percent bonds filed the complaint in the above-captioned lawsuit.

IV. DISCUSSION

A. Venue

Before a district court may hear a case, it must have both personal jurisdiction and venue. *See FS Photo, Inc. v. Picturevision, Inc.,* 48 F.Supp.2d 442, 444 (D.Del.1999). None of the defendants argue that the court lacks personal jurisdiction over them. However, although the court has personal jurisdiction over the defendants, it still must decide whether the District of Delaware is the appropriate venue for this action. The plaintiff bears the burden of proving that venue is proper. *See Brautigam v. Priest,* 2000 U.S. Dist. LEXIS 3123, at *8 (D.Del. March 2, 2000).

Four venue statutes control this inquiry. The first two are the specific venue statutes for securities actions, 15 U.S.C. § § 77v and 78aa. The third venue statute is the general venue statute, 28 U.S.C. § 1391. The fourth is the bankruptcy venue provision, 28 U.S.C. § 1409. The court will address each statute in turn.

1. The Securities Venue Act Provisions

Where both Securities Act and Securities and Exchange Act violations are at issue, the broader Exchange Act venue provision controls. *See Puma v. Marriott,* 294 F.Supp. 1116, 1121 (D.Del.1969). Venue under the Exchange Act is proper in any district where: (1) "any act or transaction constituting

the violation occurred;" (2) the defendant is "found;" (3) the defendant is an inhabitant; or (4) the defendant "transacts any business." 15 U.S.C. § 78aa; *see also Jacobs v. Hanson,* 464 F.Supp. 777, 782 (D.Del.1979).

On the present facts, it is clear that the director defendants are neither "found" in this district, nor are they "inhabitants" of this district. Indeed, the director defendants themselves have minimal, if any, contacts with Delaware. They were directors of a Delaware corporation, which chose to file its bankruptcy in Delaware. These facts alone are not enough to establish that they themselves "transact any business" in Delaware. *See United Industrial Corp. v. Nuclear Corp. of America,* 237 F.Supp. 971, 980 (D.Del.1964) (rejecting the argument that directors of a Delaware corporation were transacting business in Delaware).

The plaintiffs' second argument in support of venue is Breed Technologies' alleged dissemination of materials in Delaware relating to the alleged violation. However, the fact that SEC filings and related press releases could have been received and read in Delaware is insufficient to find that Delaware is a proper venue for the director defendants. Notably, the plaintiffs do not allege that any of the defendants in the present action received or read anything related to the alleged fraud in Delaware. Nor do they allege that the director defendants took any other action in relation to the alleged fraud in Delaware.

*3 Finally, in the their complaint, the plaintiffs alternatively argue for a co-conspirator venue theory. It is true that "once venue has been established under § 78aa vis-a-vis one defendant, venue is proper with respect to the defendant co-conspirators." *FS Photo,* 48 F.Supp.2d at 445. However, this theory only applies where venue has been established over one conspirator by reason of an act or transaction performed in the district by that person in furtherance of the conspiracy. *See id.* The plaintiffs in this action have not established that any of the defendants performed an act or transaction in furtherance of the alleged conspiracy in Delaware. Accordingly, this theory must fail.

Thus, the court concludes that the plaintiffs have failed to meet their burden of demonstrating that venue under the security statutes is proper in Delaware.

2. 28 U.S.C. § 1391(a) and (b)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)
**(Cite as: 2002 WL 373473 (D.Del.))**

Page 3

Venue is improper under both Section 1391(a) and (b). [FN5] First, the defendants clearly do not all reside in the same state. Thus, it is irrelevant if some of the defendants reside in Delaware. *See* 28 U.S.C. § 1391(a)(1) and (b)(1). Second, as the court discussed above, Delaware is not a state where a substantial portion of the events giving rise to the claims occurred. *See* 28 U.S.C. § 1391(a)(2) and (b)(2). Indeed, it is doubtful that any part, let alone a substantial part, of the relevant events occurred in Delaware.

> FN5. Section 1391(a) is based on diversity jurisdiction actions and Section 1391(b) is based on non-diversity jurisdiction actions. However, their relevant venue requirements are the same. Thus, the court will treat them together.

Alternatively, the plaintiffs argue that, as a result of Breed's bankruptcy filing, the books, records and assets are "under the control of [the] court." From this assertion, they then argue that because such items are subject to the jurisdiction of the Bankruptcy Court, they are property "located in" Delaware. This argument is unpersuasive, however, because the "property that is the subject of the action" language in the statute applies only "to suits involving property disputes or in rem actions ... not to suits alleging financial damages to a corporation." *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu,* 660 F.Supp. 1536, 1543 (S.D.Tex.1987).

Accordingly, the court concludes that venue is improper under 28 U.S.C. § 1391.

**3. 28 U.S.C. § 1409(a)**

Although not alleged as a basis for venue in their complaint, the plaintiffs now argue that venue is proper under 28 U.S.C. § 1409(a). [FN6]

> FN6. The defendant AlliedSignal joins in this argument.

As an initial matter, the court notes that actions for securities violations should be venued in a district with a real connection to the alleged violations or parties, not simply a district where a non-party filed for bankruptcy. Moreover, this action is not sufficiently "related to" Breed Technologies' bankruptcy proceedings. [FN7] In support of their argument, the plaintiffs and AlliedSignal argue that if the plaintiffs succeed in their claims against the

director defendants, and if the director defendants successfully prosecute indemnification claims against Breed Technologies, Breed Technologies would be affected. In similar situations, however, other courts have concluded, that "[t]he present action [ ] is at most a precursor to [the director defendants'] potential indemnification action against [Breed]." *National City Bank v. Coopers & Lybrand,* 1985 WL 6424, at *5 (D. Minn. Nov. 1 1985), *aff'd* 802 F.2d 990 (8th Cir.1986); *see also Kalamazoo Realty Venture L.P. v. Blockbuster Entm't Corp.,* 249 B.R. 879, 885 (N.D.Ill.2000). In such a situation, the cases are not sufficiently related. *See Kalamazoo,* 249 B.R. at 885.

> FN7. The Bankruptcy Court confirmed the reorganization plan on November 22, 2000.

*4 The court thus holds that venue in Delaware is improper as to the director defendants. When venue is improper, the court has two options-- dismissal or transfer. For the reasons that follow, the court will transfer this case to the Southern District of New York. [FN8]

> FN8. Transfer, rather than dismissal, is in the interests of justice as it prevents the duplication of filing costs and possible statute of limitations problems arising from a dismissal at this point.

**B. Transfer**

As alternative relief, the plaintiffs and AlliedSignal seek to transfer this action to either the Middle District of Florida or the Southern District of New York, respectively. In their briefs, the parties base their transfer arguments on 28 U.S.C. § 1404(a). Whether Section 1404(a) or 28 U.S.C. § 1406(a) governs is dependant upon whether there was proper venue in the district in which the plaintiff properly brought this action. When venue exists in the district where the suit was filed, Section 1404(a) governs; when venue is improper in the original district, Section 1406(a) governs. *See FS Photo,* 48 F.Supp.2d at 449. Because the court has previously determined that venue is improper in the District of Delaware, Section 1406(a) governs this action. The court will nonetheless engage in the balance of convenience analysis applicable to Section 1404(a) due to the dispute as to where the court should transfer this case. [FN9]

> FN9. Furthermore, the balance of convenience analysis will serve to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)
(Cite as: 2002 WL 373473 (D.Del.))

Page 4

underscore the court's view that, even were venue proper in this district, this case is better brought in a district with a connection to the alleged securities fraud. As discussed in Section IV.A, *supra*, Delaware clearly has no connection to the facts underlying the alleged fraudulent conduct.

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Southern District of New York or the Middle District of Florida. [FN10] The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN10. Although the plaintiffs suggest in a footnote that "it is not clear" that they could have sued the other defendants in the Middle District of Florida, none of the defendants have made such a claim.

In *Jumara,* the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. [FN11]

> FN11. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the

court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of New York is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

a. The Convenience of the Parties

The director defendants reside in Florida. Prudential and Nationsbanc are located in New York City. AlliedSignal is headquartered in Morristown, New Jersey. The plaintiffs are located in California, Maryland and Massachusetts. Thus, five of the parties are located in the Northern-Northeastern United States. Three are located in Florida and one is located on the West Coast. Given these numbers, on balance, New York is the most convenient location for the greatest number of parties.

b. The Convenience of Witnesses

*5 Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that indicates that one of these districts is more convenient for non-party witnesses than another. AlliedSignal has alleged that the law firms that passed on the validity of the notes are located in New York. The director defendants have also identified several parties as "potential, material third-party witnesses" who reside in Florida. Given this information, the court concludes that this factor must remain neutral.

c. The Location of Records and Other Documents

The technological advances of recent years have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)
(Cite as: 2002 WL 373473 (D.Del.))

Page 5

significantly reduced the weight of this factor in the balance of convenience analysis. *See id.* at 205. There is no indication that either party would be unable to produce the relevant records and documents in either Florida or New York. Thus, because this factor is only relevant insofar as the documents would be unavailable in one forum, the court finds that this factor must also remain neutral.

2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

a. Interest in this Controversy

The parties allege that the Offering Memorandum was negotiated in Florida. In contrast, however, the bonds were issued in New York, New York is where the plaintiffs' claims arose, and New York law governs the Offering Memorandum and the Registration Agreement. Thus, the court concludes that New York has a stronger interest in this controversy than Florida.

b. Practical Considerations Making the Trial Easier, More Expeditious, and Less Expensive

As the court discussed above in relation to the convenience of the parties, the majority of the parties are located a comparably short drive from New York. The only parties located in Florida are the director defendants. Thus, it is clear that litigating this action in New York would be collectively less expensive in terms of travel costs.

c. Administrative Difficulty

*6 Statistics from the Administrative Office of the United States Courts for the twelve-month period ending September 30, 1999 demonstrate that both the New York and Florida courts have approximately nine month **median** time intervals from **filing** to **disposition**. Further, ten percent of the New York court's cases have been pending two to three years, and thirteen percent of the Florida court's cases have been pending two to three years. Given these numbers, the court concludes that this factor neither weighs in favor of, nor against, one district or the other.

V. CONCLUSION

The court concludes that venue is improper in the District of Delaware. Moreover, after engaging in a balance of convenience analysis, it is clear that the balance tips strongly in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED that:
1. Johnnie Cordell Breed, The Estate of Allen K. Breed, and Charles J. Speranzella, Jr's alternative motion (D.I.26) to transfer venue is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.
3. AlliedSignal's motion to dismiss (D.I.16) is declared MOOT.
4. Nationsbanc and Prudential's motion to dismiss (D.I.19) is declared MOOT.
5. Johnnie Cordell Breed, The Estate of Allen K. Breed, and Charles J. Speranzella Jr.'s motion to dismiss (D.I.22) is declared MOOT.
6. The Plaintiffs' motion to lift the discovery stay (D.I.49) is declared MOOT.
7. The Plaintiffs' motion to substitute defendants (D.I.65) is declared MOOT.

Not Reported in F.Supp.2d, 2002 WL 373473 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00690 (Docket) (Jul. 31, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  P

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,077 | 1,190 | 1,797 | 1,362 | 2,028 | 1,004 | U.S. | Circuit |
| | Terminations | | 1,419 | 1,448 | 1,516 | 1,507 | 1,478 | 1,020 | | |
| | Pending | | 1,501 | 1,853 | 2,085 | 1,836 | 1,999 | 1,477 | | |
| | % Change in Total Filings | Over Last Year | | -9.5 | | | | | 74 | 6 |
| | | Over Earlier Years | | | -40.1 | -20.9 | -46.9 | 7.3 | 34 | 3 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 1.9 | 3.1 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 270 | 298 | 449 | 340 | 507 | 251 | 82 | 5 |
| | | Civil | 233 | 264 | 414 | 306 | 462 | 233 | 73 | 5 |
| | | Criminal Felony | 30 | 28 | 29 | 25 | 38 | 18 | 88 | 5 |
| | | Supervised Release Hearings** | 7 | 6 | 6 | 9 | 7 | - | 87 | 4 |
| | Pending Cases | | 375 | 463 | 521 | 459 | 500 | 369 | 48 | 5 |
| | Weighted Filings** | | 367 | 422 | 534 | 424 | 516 | 379 | 71 | 4 |
| | Terminations | | 355 | 362 | 379 | 377 | 370 | 255 | 69 | 4 |
| | Trials Completed | | 15 | 20 | 19 | 23 | 18 | 16 | 65 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.3 | 9.4 | 9.1 | 8.3 | 9.8 | 8.0 | 56 | 2 |
| | | Civil** | 16.8 | 10.9 | 14.0 | 11.2 | 8.2 | 12.6 | 91 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 23.5 | 26.0 | 24.0 | 22.5 | 21.0 | 49 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 142 | 156 | 65 | 66 | 99 | 77 | | |
| | | Percentage | 10.6 | 9.1 | 3.4 | 3.9 | 5.4 | 5.5 | 76 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.2 | 1.3 | 1.1 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 39.60 | 39.82 | 38.50 | 34.98 | 33.84 | 32.68 | | |
| | | Percent Not Selected or Challenged | 24.1 | 22.8 | 20.9 | 24.0 | 24.4 | 19.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 930 | 32 | 6 | 233 | 12 | 6 | 20 | 76 | 52 | 160 | 132 | 51 | 150 |
| Criminal* | 117 | - | 26 | 14 | 29 | 20 | - | 2 | 5 | 10 | 2 | - | 9 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TEXAS SOUTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 13,469 | 14,887 | 15,102 | 13,487 | 12,762 | 10,919 | U.S. | Circuit |
| | Terminations | | 14,632 | 14,413 | 14,082 | 12,862 | 12,340 | 10,583 | | |
| | Pending | | 8,757 | 10,054 | 9,634 | 8,589 | 7,904 | 7,512 | | |
| | % Change in Total Filings | Over Last Year | -9.5 | | | | | | 74 | 7 |
| | | Over Earlier Years | | | -10.8 | -.1 | 5.5 | 23.4 | 12 | 2 |
| | Number of Judgeships | | 19 | 19 | 19 | 19 | 19 | 19 | | |
| | Vacant Judgeship Months** | | 3.8 | .3 | .0 | .0 | 14.0 | 21.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 709 | 783 | 794 | 709 | 672 | 575 | 5 | 2 |
| | | Civil | 340 | 377 | 433 | 408 | 405 | 357 | 40 | 7 |
| | | Criminal Felony | 277 | 326 | 295 | 254 | 220 | 218 | 3 | 2 |
| | | Supervised Release Hearings** | 92 | 80 | 66 | 47 | 47 | - | 4 | 1 |
| | Pending Cases | | 461 | 529 | 507 | 452 | 416 | 395 | 23 | 5 |
| | Weighted Filings** | | 536 | 600 | 629 | 609 | 585 | 520 | 17 | 5 |
| | Terminations | | 770 | 759 | 741 | 677 | 649 | 557 | 7 | 2 |
| | Trials Completed | | 23 | 25 | 27 | 32 | 41 | 44 | 28 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 4.9 | 4.7 | 4.5 | 4.6 | 4.8 | 4.5 | 3 | 1 |
| | | Civil** | 8.6 | 9.8 | 6.8 | 7.2 | 7.1 | 9.0 | 26 | 4 |
| | From Filing to Trial** (Civil Only) | | 18.8 | 15.3 | 19.5 | 20.8 | 18.9 | 18.5 | 15 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 229 | 176 | 61 | 65 | 99 | 169 | | |
| | | Percentage | 5.0 | 3.3 | 1.1 | 1.2 | 1.9 | 3.4 | 37 | 7 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.2 | 1.2 | 1.2 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 44.39 | 48.14 | 55.44 | 49.36 | 47.25 | 46.68 | | |
| | | Percent Not Selected or Challenged | 37.4 | 36.6 | 42.7 | 40.8 | 41.7 | 41.8 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6467 | 149 | 296 | 1835 | 95 | 64 | 347 | 1590 | 670 | 338 | 561 | 11 | 511 |
| Criminal* | 5245 | 495 | 557 | 3679 | 182 | 161 | 15 | 24 | 6 | 13 | 46 | 33 | 34 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\** See "Explanation of Selected Terms."

http://www.uscourts.gov/cgi-bin/cmsd2006.pl

# EXPLANATION OF SELECTED TERMS

## Vacant Judgeship Months

"Vacant judgeship months" is the total number of months that vacancies occurred in any judgeship position in a circuit or district. On September 30, 2006, a total of 31 vacancies existed in the district courts, and 14 vacancies existed in the U.S. courts of appeals (excluding the Federal Circuit).

## Visiting Judge Activity

Court profiles for both the courts of appeals and district courts reflect only caseloads within the circuit/district; the profiles do not address visiting judge activity in other circuits/districts. Detailed data on visiting judge activity can be found in Tables V-1 and V-2 of *Judicial Business of the United States Courts*.

## Supervised Release Hearings

Beginning with *2002 Federal Court Management Statistics,* data on hearings on violations of supervised release are included in the district court profiles. These hearings, which are conducted when defendants violate the terms of supervised release, can result in the modification of conditions or the revocation of supervised release. In addition to providing data for the category of supervised release hearings filed per authorized judgeship, data on supervised release hearings are included in the totals for overall filings and terminations, filings and terminations per authorized judgeship, and weighted filings per authorized judgeship. These changes to the district court profiles were approved by the Judicial Conference Subcommittee on Judicial Statistics.

## Weighted Filings

Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions. The federal Judiciary has employed techniques for assigning weights to cases since 1946. In 2004, the Judicial Resources Committee of the Judicial Conference of the United States approved a new civil and criminal case weighting system proposed by the Federal Judicial Center. On a national basis, weighted filings did not change significantly after the implementation of the new case weights. More than two-thirds of all district courts saw their weighted filings change by 10 percent or less. Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed (e.g., a death-penalty habeas corpus case is assigned a weight of 12.89); and cases demanding relatively little time from judges receive lower weights (e.g., a defaulted student loan case is assigned a weight of 0.031). Probation revocation hearings (both evidentiary and non-evidentiary) are included as part of the weighted filings statistics. For comparative analysis in this report, the totals for weighted civil and criminal filings for prior

years have been revised based on the new case weighting system. The weighted totals for criminal defendants include reopenings and transfers. Data on civil cases arising by reopening, remand, and transfer to the district by order of the Judicial Panel on Multidistrict Litigation are not included among the totals for weighted filings.

## Median Times: Civil

"Median times" are the median time intervals between the filing of cases and their disposition. Civil median times exclude data for civil cases involving land condemnation, prisoner petitions, deportation reviews, recovery of overpayments, and enforcements of judgments. Because courts can quickly process cases involving the recovery of overpayments (which primarily address veterans' benefits) and enforcements of judgments (which primarily address student loans), including data on these cases would shorten the civil median times for some courts to the point of giving an inaccurate impression of the time usually required to process a case in the federal courts.

## Median Times: From Filing to Trial

The median time for civil cases from filing to trial is calculated from the date a case was filed to the date trial began. For any reopened civil case resulting in a second completed trial, the median time remains based on the original filing date and the date the trial was completed.

## Civil Cases Over Three Years Old

Data for cases pending three years or more may not match those presented in the Civil Justice Reform Act (CJRA) reports because the profiles presented herein include data for cases on appeal in other courts (i.e., the Supreme Court, courts of appeals, other district courts, and state courts), whereas the CJRA reporting guidelines exclude such data. From 2000 to 2005, data for the Eastern District of Michigan included between 10,000 and 14,000 silicone breast implant cases assigned to one district judge that technically were pending, but effectively were stayed pending the resolution of an appeal in a related bankruptcy matter. On October 6, 2005, an order dismissed the 14,000 breast implant cases pursuant to the *In re Dow Corning Corporation* Bankruptcy Joint Amended Plan of Reorganization which went into effect on June 1, 2004. Since 1999, the three-year-old civil pending caseload in the Middle District of Louisiana has included more than 7,000 cases related to oil refinery explosions. For comparative purposes, any statistical average should exclude these cases.

## Civil and Criminal Felony Filings by Nature of Suit/Offense

Prior to 2005, alphabetical codes corresponded to different offenses and natures of suit. Therefore, data for 2005 and thereafter are not comparable to data for earlier years.

# Nature of Suit/Offense Codes

| CIVIL CODES | CRIMINAL FELONY CODES |
|---|---|
| **A** Social Security | **A** Marijuana |
| **B** Personal Injury/Product Liability | **B** All Other Drugs |
| **C** Prisoner Petitions | **C** Immigration |
| **D** Forfeitures and Penalties and Tax Suits | **D** Firearms and Explosives |
| **E** Real Property | **E** Fraud |
| **F** Labor Suits | **F** Violent Offenses |
| **G** Contracts | **G** Sex Offenses |
| **H** Torts(other than Personal/Injury/Product Liability) | **H** Forgery and Counterfeiting |
| **I** Copyright, Patent, and Trademark | **I** Larceny and Theft |
| **J** Civil Rights | **J** Justice System Offenses |
| **K** Antitrust | **K** Regulatory Offenses |
| **L** All Other Civil | **L** All Other Criminal Felony Cases |

# EXHIBIT  Q

Peter A. Bielinski
Intellectual Property Attorney

515  Post Oak Boulevard Suite 1200
Houston TX 77027
Tel 713 513 3323
Fax 713 513 3355

*file*



# COOPER CAMERON

## VIA COURIER

August 15, 1996

Mr. Larry Leimert, President
Dril-Quip, Inc.
13550 Hempstead Highway
Houston, Texas 77040

*Re:    Recently Issued Cooper Cameron Horizontal Tree Patents*

Dear Mr. Leimert: .

This letter is to bring to your attention the U.S. Patents listed below which were recently issued to Cooper Cameron Corporation.  Copies and the patents and granted foreign counterparts are attached.

| | | |
|---|---|---|
| U.S. 5,544,707 | August 13, 1996 | Wellhead |
| U.S. 5,372,199 | December 13, 1994 | Subsea Wellhead |
| U.S. 5,415,378 | May 16, 1995 | Valve Assembly |
| U.S. 5,456,313 | October 10, 1995 | Modular Control System |
| U.S. 5,542,475 | August 6, 1996 | Blanking Plug Assembly |

Cooper Cameron is willing to grant non-exclusive royalty bearing licenses under any of these patents.  We would like to meet with you to discuss this matter.

Very truly yours,

Peter A. Bielinski

PAB/mj/PB228B

Enclosure:      as noted above plus
                EPO 0572732A1
                EPO 0611874
                Austl 664634
                Austl 666417

Peter A. Bielinski
Intellectual Property Attorney

515 Post Oak Boulevard Suite 1200
Houston TX 77027
Tel 713 513 3323
Fax 713 513 3355



**COOPER CAMERON**

February 4, 1997

<u>**Certified Mail**</u>
<u>**Return Receipt Requested**</u>

Mr. Larry Reimert, President
Dril-Quip, Inc.
13550 Hempstead Highway
Houston, Texas 77040

      Re:    U.S. 5,444,707

Dear Mr. Reimert:

     This letter is a follow-up to my letter of August 15, 1996. We have reason to believe that Dril-Quip may be infringing Cooper Cameron's U.S. Patent 5,444,707 which covers Cooper Cameron's SpoolTree™ subsea production systems. Cooper Cameron is willing to grant a non-exclusive royalty bearing license under the patent. To avoid legal action please respond within fourteen days of your receipt of this letter.

          Very truly yours,

          Peter A. Bielinski

PAB:grr

cc:   David Beck
      Gus Cassity
      Shel Erikson
      Les Hewitt
      Franklin Myers
      Joe Parris

c:\msoffice\winword\pab\letter

# EXHIBIT  R

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

ATTORNEYS AT LAW

STIN
BRUSSELS
DALLAS
HOUSTON
LONDON
LOS ANGELES
MOSCOW
NEW YORK
PHILADELPHIA
SAN ANTONIO
WASHINGTON, D.C.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
1900 PENNZOIL PLACE-SOUTH TOWER
711 LOUISIANA STREET
HOUSTON, TEXAS 77002
(713) 220-5800
FAX (713) 236-0822
www.akingump.com

RECEIVED
NOV 0 8 2000
BY:

RIYADH – IN AFFILIATION WITH
THE LAW OFFICE OF ABDULAZIZ H. FAHAD

WRITER'S E-MAIL ADDRESS lhewitt@akingump.com

November 3, 2000

Marvin B. Eickenroht, Esq.
Browning, Bushman
5718 Westheimer, Suite 1800
Houston, Texas 77057

*Certified Mail (RRR)*
*P 362 683 886*

Re:    U.S. Patent No. 6,039,119

Dear Eick:

It has just come to the attention of Cooper Cameron that your client Dril-Quip is offering for a sale a "Horizontal Production System," as shown in the attached excerpt from the Dril-Quip catalog available on-line (Ex. A). This design is a literal infringement of a number of claims of Cooper's U.S. Patent No. 6,039,119.

As you may know, Cooper Cameron is in litigation against Kvaerner Oilfield Products relating to its infringement of both of Cooper's patents relating to its SpoolTree. Cooper values its patents relating to its SpoolTree technology. Cooper respectfully requests that Dril-Quip remove from the Internet and all other sources any offer for sale of the design of Exhibit A. If Dril-Quip has sold or manufactured any subsea X-mas trees in accordance with the design of Exhibit A, or other horizontal tree design having a workover port which extends through the wall of the tree housing as set forth in the claims of U.S. Patent No. 6,039,119, please report to us such sales.

Cooper Cameron is willing to enter into a license which would cover any past infringements as well as future use of its United States and worldwide patents and patent applications relating to the SpoolTree, which would require Dril-Quip to pay a reasonable royalty. Please advise if Dril-Quip wishes to enter into license negotiations.

It is my recollection that you contacted Pete Bielinski approximately six months ago with a request for a license on behalf of Dril-Quip. I understand that he provided you information with respect to the existing cross-license agreement between Cooper Cameron and ABB Vetco Gray, Inc., but that you did not pursue the matter further. In view of Dril-Quip's offering of the Horizontal Production System, Dril-Quip should have obtained a license at that time.

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

November 3, 2000
Page 2

    We look forward to receiving the information requested, and will be glad to discuss with you terms of a license agreement. Thank you.

Very truly yours,

Lester L. Hewitt

LLH/scs

Encl:  Ex. A: Horizontal Production System

cc:    Peter A. Bielinski (w/encl)
      David W. Jones (w/encl)

168037v1...52622.0005

# EXHIBIT  S



Peter A. Bielinski
Associate General Counsel,
Intellectual Property

Cooper Cameron Corporation
1333 West Loop South, Suite 1700
Houston, TX 77027
Tel 713 513 3323
Fax 713 513 3421
E-mail bielinskip@coopercameron.com.

October 5, 2004

Mr. Larry Reimert, President
Dril-Quip, Inc.
13550 Hempstead Highway
Houston, Texas 77040

Re:    U.S. Patent Nos. 6,039,119, 6,547,008 and 5,544,707

Dear Mr. Reimert:

In the past, specifically on August 15, 1996, February 04, 1997, and November 03, 2000,
Cooper Cameron Corporation (CCC) has contacted Dril-Quip regarding the possible
infringement of its Spool Tree patents. CCC were assured by Dril-Quip's attorneys that
the horizontal tree advertising was a mistake and would be removed from Dril-Quip's
general catalog and from the internet. CCC were further assured that Dril-Quip has made
no horizontal subsea trees and that Dril-Quip would not bid on or agree to supply an
infringing horizontal tree in the future.

CCC now believes that Dril-Quip has quoted an infringing horizontal tree to Vaalco
Energy for Gabon. CCC requests that Dril-Quip either demonstrate that the tree in
question is a non-infringing tree, take a license from CCC, or withdraw the offer for sale
of the tree. Because of the timing on the award of the project, we request that Dril-Quip
respond within five (5) days of receipt of this letter.

If CCC does not receive a timely response, CCC will be forced to assume that there has
been an infringement by Dril-Quip, and legal action will be initiated.

We look forward to your response.

Sincerely,

Peter A. Bielinski

PAB/rg

cc:    Marvin B. Eickenroht, Esq.
       Browning, Bushman
       5718 Westheimer, Suite 1800
       Houston, Texas 77057

# EXHIBIT  T

Westlaw.

3/14/07 NYT C6

NewsRoom

Page 1

3/14/07 N.Y. Times C6
2007 WLNR 4773653

New York Times (NY)
Copyright 2007 The New York Times Company

**March 14, 2007**

Section: C

Houston, the Oil Town, Is Sharing in a Boom

KRISTINA SHEVORY

**Houston**, Texas, **center** of country's **energy industry**, has shaken off effects of Enron implosion six years ago and is enjoying its strongest resurgence in more than 20 years; some energy companies are expanding and putting up new buildings; others, like Citgo, Schlumberger and Halliburton, have moved their headquarters to Houston; oil and natural gas companies have helped reduce office vacancy rates to 15 percent, five-year low; job growth is double national average--97,400 jobs were created in 2006; National Assn of Realtors says housing market is one of strongest in country; Chevron has signed lease for one of buildings that used

HOUSTON  The good times are back.

Galvanized by the record profits at energy companies, this city, the center of the country's energy industry, has shaken off the effects of the Enron implosion six years ago and is enjoying its strongest resurgence in more than 20 years, business officials and real estate developers say.

Some energy companies are expanding and putting up new buildings. Others, like Citgo, Schlumberger and Halliburton, have moved their headquarters to Houston. Oil and natural gas companies have helped reduce office vacancy rates to 15 percent, a five-year low, according to Grubb & Ellis, a real estate company. Job growth is double the national average -- 97,400 jobs were created in 2006. The National Association of Realtors says the housing market in Houston is one of the strongest in the country.

''The increase in the oil business has made Houston,'' said Randall Davis, a Houston condominium developer. ''It feels a touch like the 1980s -- everyone is out, the restaurants are full, the bars are full. It's like New York.''

The good news extends across the city. The port recently opened a $1.4 billion container terminal to tackle soaring traffic. In 2006, it handled 1.6 million 20-foot containers, up 29 percent from 2003. At the Texas Medical Center, hospitals and universities are investing billions in new facilities. Residential and mixed-use developments are going up downtown.

The Houston economy has been growing since 2004, when energy companies started investing more in big-ticket projects and hiring thousands of employees to run

®  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

them. Before that, oil companies had been hesitant to pour more into exploration and production, because they had lost millions in the past when oil and natural gas prices collapsed.

''There was always a real reluctance to buy into the commodity cycle,'' said Robert W. Gilmer, vice president and senior economist at the Federal Reserve Bank of Dallas.

Those fears are long gone. Real estate investors, enticed by rising rents and occupancy rates, are returning. Over the last five years, sale prices for office buildings in Houston have climbed by 34 percent, to an average of $129 a square foot in 2006, according to Real Capital Analytics, a national research and consulting firm. Compared with other large cities nationwide, like Chicago and San Francisco, where prices average $191 and $338 a square foot, respectively, Houston is still a relative bargain.

''The office investment market has taken off,'' said Ariel Guerrero, Texas research and client services manager at Grubb & Ellis in Houston. ''If you look at the price per pound, there's still value.''

Brookfield Properties, a New York-based real estate investment trust, seems to think so. Last October, Brookfield became the biggest landowner in downtown Houston when it joined with the Blackstone Group to buy Trizec Properties for $8.9 billion in cash and debt. The deal gave Brookfield eight buildings in Houston, for a total of 7.4 million square feet.

Although the merger included properties nationwide, Richard B. Clark, the chief executive of Brookfield, said Houston was one of the deal's attractions. (Almost a quarter of Brookfield's portfolio is energy-related.)

Chevron signed a lease shortly afterward for one of the buildings -- the 1.2-million-square-foot tower that used to be Enron's headquarters -- and plans to move in this year. The lease, Brookfield says, was the biggest in the country since 2000 and lowered the availability rate for Class A space downtown. In the fourth quarter, the rate dropped six percentage points, to 12 percent, according to Grubb & Ellis.

''This confirms our belief it's a strong market,'' Mr. Clark said. ''I think our timing is good, fundamentals are improving and tenants have confirmed that they're growing.''

Brookfield is banking that Houston will grow even more. It is considering putting up a new office tower downtown, Mr. Clark said, but is holding off until the availability rate for Class A office space drops below 10 percent. He said he expected it to reach that point within a year.

Encouraged, developers have started building again. In the fourth quarter, 2.4 million square feet of office space was under construction, more than double the amount in the third quarter. For the first time in years, developers are building without a signed tenant, though most projects are typically smaller than 500,000 square feet.

Nowhere is the growth more apparent than in the city's Energy Corridor. Straddling Interstate 10 west of downtown, the area -- home to companies like BP, Royal Dutch Shell, ConocoPhillips, Exxon Mobil and Citgo -- has become one of the strongest real estate markets in the city. Occupancy rates are at 92 percent, the highest in the city, and rents average $19.26 a square foot, according to Grubb &

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ellis.

''When occupancy rates reached the mid-90-percent range and there were no blocks of space, we said, 'Hey, maybe it's time to build,' '' said Aaron Thielhorn, a principal at Trammell Crow in Houston.

Last October, Trammell Crow broke ground on a 330,000-square-foot building in the Energy Corridor without a signed tenant. Construction is to begin this summer on a second building. The two-building project is now the largest under construction in the Energy Corridor.

Speculative office buildings are also going up in places like the Galleria and downtown, which have less available space. Work on Houston Pavilions, a $170 million complex with retail space, restaurants and music clubs as well as a 13-story office tower, began downtown in February. The Texas Real Estate Fund and the Entertainment Development Group, the builders of the project, have not yet signed an office tenant.

''If you would have told me six years ago I'd be investing $170 million downtown, I'd have said you were nuts,'' said William Denton, chief executive and president of the Entertainment Development Group of Agoura Hills, Calif. In those days, he said, downtown Houston often seemed virtually empty.

Of course, it is an open question whether the good times are here to stay and for how long. Only six years ago, Enron collapsed, the Arthur Anderson accounting firm imploded and Houston was hit hard when the national economy staggered after the Sept. 11 terrorist strikes.

[Halliburton announced Sunday that it would move its chairman and chief executive, David J. Lesar, from Houston to Dubai and open a corporate headquarters there. Analysts say, however, that the Halliburton move will not lead to a general exodus, because Houston is still the country's energy capital.]

Oil and natural gas prices could plummet, some worry, and stall Houston's economy. About half of the city's jobs, or 1.1 million positions, are tied to the energy industry.

''One thing we've learned, whether it's real estate or the oil industry, is that we're always looking over our shoulder,'' said James Arket, senior vice president at Grubb & Ellis in Houston. ''No one takes anything for granted.''

The Greater Houston Partnership, an organization of businesses, is not waiting for the economy to slow. In 2006, it started a $40 million effort to diversify the local economy and bring 600,000 new jobs to the area over the next decade. Typically, the city creates 45,000 new jobs a year.

''It's one of those gulp-and-hold-your-breath figures,'' said Jeff Moseley, president and chief executive of the partnership. ''The economy is very robust, but we're going forward because we know the economy will cool off.''


Photos: Chevron has leased the 1.2-million-square-foot tower that used to be Enron's headquarters, top, and plans to move in this year. In October, Trammell Crow broke ground on a 330,000-square-foot building, above. (Photographs by Michael Stravato for The New York Times)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3/14/07 NYT C6                                                    Page 4


                        ---- INDEX REFERENCES ----

COMPANY: FEDERAL RESERVE SYSTEM; BLACKSTONE GROUP; GREATER HOUSTON PARTNERSHIP;
CHEVRON U K LTD

NEWS SUBJECT:  (Economic Policy & Policymakers (1EC69); Major Corporations (1MA93);
Economics & Trade (1EC26))

INDUSTRY:  (Oil (1OI41); Housing (1HO38); Oil Regulatory (1OI92); Oil & Gas
(1OI76); Real Estate Regulatory (1RE53); Major Central Banks (1MA01); Oil & Gas
Prices (1OI34); Federal Reserve (1FE99); Oil & Gas Market (1OI62); Financial
Services Regulatory (1FI03); Real Estate (1RE57); Oil & Gas Regulatory (1OI37);
Commercial Real Estate (1CO51))

REGION:  (Americas (1AM92); North America (1NO39); Texas (1TE14); USA (1US73); New
York (1NE72))

Language:  EN

OTHER INDEXING:  (ARTHUR ANDERSON; BLACKSTONE GROUP; CHEVRON; CONOCOPHILLIPS EXXON
MOBIL; ENERGY CORRIDOR; ENRON; ENTERTAINMENT DEVELOPMENT GROUP; FEDERAL RESERVE
BANK; GREATER HOUSTON PARTNERSHIP; HALLIBURTON; NATIONAL ASSN OF REALTORS; NATIONAL
ASSOCIATION OF REALTORS; REAL CAPITAL ANALYTICS; TEXAS; TEXAS MEDICAL CENTER; TEXAS
REAL ESTATE FUND)  (Aaron Thielhorn; Ariel Guerrero; Brookfield; Brookfield
Properties; Clark; Compared; David J. Lesar; Grubb Ellis; James Arket; Jeff
Moseley; Michael Stravato; Randall Davis; Residential; Richard B. Clark; Robert W.
Gilmer; Trammell Crow; Trizec Properties; William Denton; Work)

EDITION: Late Edition - Final

Word Count: 1689
3/14/07 NYT C6
END OF DOCUMENT

®  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  U

  Offshore Technology Conference

Home | OTC .07 | About OTC | OTC Papers Online | Spotlight on Technology | Archives | Contact Us

**OTC Organizations**

**OTC Board of Directors**

**History of OTC**

**Audience Profile**

**Countries Represented**

**OTC Logo Policy**

**OTC Website Links Policy**

## About OTC

Founded in 1969, the Offshore Technology Conference is the world's foremost event for the development of offshore resources in the fields of drilling, exploration, production, and environmental protection. OTC is held annually at Reliant Center in Houston.

OTC ranks among the largest 200 trade shows held annually in the United States and is among the 10 largest meetings in terms of attendance. Attendance consistently exceeds 50,000, and more than 2,000 companies participate in the exhibition. OTC includes attendees from around the globe, with more than 110 countries represented at recent conferences.

OTC is sponsored by 12 industry organizations and societies, who work cooperatively to develop the technical program each year. OTC also has two endorsing organizations and six supporting organizations.

OTC is governed by a Board of Directors made up of 13 representatives, 11 from OTC's sponsoring organizations and two from OTC's endorsing organizations.

Home | OTC .07 | Contact Us
Copyright 2003-2005, Offshore Technology Conference