# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CAMERON INTERNATIONAL CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )    Civil Action No. 06-728-JJF ) |
| DRIL-QUIP, INC. | )    **JURY DEMANDED** ) |
| Defendant. | ) ) |

## PLAINTIFF'S REPLY BRIEF
## <u>IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER</u>

Edmond D. Johnson (DE Bar # 2257)
Thomas H. Kovach (DE Bar # 3964)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302-777-6539
Fax: 302-421-8390

Attorneys for Plaintiff

OF COUNSEL:

William D. Belanger
PEPPER HAMILTON LLP
101 Federal Street, Suite 1010
Boston, MA 02110-1817
Telephone: 617-956-4350
Fax: 617-956-4351

DATED: April 23, 2007

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDING ............................................................1

II.   SUMMARY OF ARGUMENT ...............................................................................1

III.  STATEMENT OF FACTS ......................................................................................4

    A.   Both Parties are International Companies Incorporated in Delaware. ...................5

    B.   Cameron's Asserted Patents Were Not Previously Litigated. ................................5

IV.   ARGUMENT...........................................................................................................7

    A.   Cameron's Choice of Forum Should be Given Substantial Deference. .................8

    B.   Private Interests Do Not Strongly Favor Transfer.................................................10

        1.   Convenience of the Parties Does Not Favor Transfer. ....................................10

        2.   Convenience of the Witnesses Does Not Strongly Favor Transfer. .................11

        3.   The Location of the Books and Records Does Not Strongly Favor Transfer....13

    C.   Public Interests Do Not Strongly Favor Transfer. ................................................13

        1.   Judicial Economy Does Not Favor Transfer. ..................................................13

        2.   Court Statistics Do Not Favor Transfer. ..........................................................15

        3.   Local Interests Do Not Favor Transfer. ...........................................................16

V.    CONCLUSION .....................................................................................................17

#8505119 v2

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. Unova, Inc.,*
   No. Civ. A. 03-101-JJF, 2003 WL 22928034 (D. Del. Nov. 25, 2003) ................................. 11

*C.R. Bard, Inc v. Guidant Corp.,*
   997 F. Supp. 556 (D. Del. 1998) ....................................................................................... 11

*Continental Casualty Co. v. America Home Assurance Co.,*
   61 F. Supp. 2d 128 (D. Del. 1999) ...................................................................................... 8

*Critikon v. Becton,*
   821 F. Supp. 962 (D. Del. 1993) ....................................................................................... 10

*Intel Corp. v. Broadcom Corp.,*
   167 F. Supp. 2d 692 (D. Del. 2001) ................................................................................... 11

*Jones Pharma, Inc. v. KV Pharmaceuticals Co.,*
   No. Civ. A. 03-786 JFF, 2004 WL 323109 (D. Del. Feb. 17, 2004)........................................ 9

*Jumara v. State Farm Insurance Co.,*
   55 F.3d 873 (3d Cir. 1995) ........................................................................................... 1, 7, 8,
                                                                                                           13

*Motorola Inc. v. PC-TEL, Inc.,*
   58 F. Supp. 2d 349 (D. Del 1999) ..................................................................................... 11

*Shutte v. Armco Steel Corp.,*
   431 F.2d 22 (3d Cir. 1970), *cert. denied,* 401 U.S. 910 (1971)............................................ 2, 8

*Stratos Lightwave, Inc. v. E20 Communications, Inc.,*
   No. Civ. A. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002) ..................................... 16

*Textron Innovations, Inc. v. The Toro Co.,*
   No. Civ. A. 05-486 GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005) .................................... 9

*The Variable Annuity Life Insurance Co. v. Bencor, Inc.,*
   2006 WL 1492249 (S.D. Tex. May 30, 2006)..................................................................... 15

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
   No. Civ. A. 04-360 JFF, 2005 WL 441077 (D. Del. Feb. 15, 2005)...............................2, 9, 12

## STATUTES

28 U.S.C. §1404(a) ............................................................................................................1, 7

## OTHER

Dril-Quip Website: Dril-Quip Locations,
   www.dril-quip.com/location.htm ...........................................................................................5

U.S. House Judiciary Committee, *Testimony of Kimberly A. Moore, Professor of
   Law, George Mason University School of Law before the House
   Subcommittee on Courts, the Internet, and Intellectual Property,*
   http://judiciary.house.gov/OversightTestimony.aspx?ID=470.................................................8

Table C-3 U.S. District Courts-Civil Cases Commenced,
   www.uscourts.gov ................................................................................................................15

U.S. District Court - Judicial Caseload Profiles,
   www.uscourts.gov ................................................................................................................16

# I.    NATURE AND STAGE OF PROCEEDING

Plaintiff Cameron International Corporation ("Cameron") submits this brief in opposition to Defendant Dril-Quip, Inc.'s ("Dril-Quip") motion, pursuant to 28 U.S.C. §1404(a), to transfer this case to the United States District Court for the Southern District of Texas.

Cameron brought this action for patent infringement against Dril-Quip in the District of Delaware on December 1, 2006.  In its original complaint, Cameron asserted that Dril-Quip infringes United States Patent Numbers 7,093,660 (the "'660 patent") and 7,117,945 (the "'945 patent").  In an Amended Complaint, filed March 16, 2007, Cameron also asserted infringement of U.S. Patent 6,991,039 (the "'039 patent"). On April 4, 2007 Dril-Quip filed its Answer to the Amended Complaint and also filed counterclaims with respect to U.S. Patent Numbers 5,544,707 (the "'707 patent"), 6,039,119 (the "'119 patent") and 6,547,008 (the "'008 patent").

# II.    SUMMARY OF ARGUMENT

Dril-Quip admits, as it must, that Cameron has selected a proper venue. The only issue, therefore, is whether Dril-Quip can meet its substantial burden of showing that another venue would be more convenient.  Dril-Quip's motion should be denied because Dril-Quip has failed to meet its high burden of showing that the balance of interests is sufficiently strong to overcome the substantial deference given to Cameron's choice of forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Cameron's chosen forum should prevail where, as here, other factors do not

*strongly* favor the defendant. *Id.* "It is black letter law that a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971).

Here, Cameron has chosen Delaware as a proper forum. Despite Dril-Quip's assertions to the contrary, there is little, if any impetus to disturb that choice and transfer this case to the Southern District of Texas. To the contrary, the factors dictate that the present case should remain in this Court, the venue chosen by the plaintiff, Cameron.

Most significantly, both Cameron and Dril-Quip are incorporated in Delaware. Both parties, therefore, have availed themselves of the protection of Delaware law and can be reasonably expected to avail themselves of the Delaware courts. Dril-Quip chose to be a corporate citizen of Delaware for legitimate legal and other business considerations, and cannot now argue that Delaware is an inconvenient forum within which to resolve disputes. *See Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360 JFF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (Exhibit A).

Dril-Quip simply has not shown that interests, including private and public interests, weigh strongly in favor of transfer. First, the convenience of the parties does not weigh in favor of transfer. Both parties are Delaware corporations, and both parties have a large global presence. Indeed, both Dril-Quip and Cameron have multiple offices located throughout the world. Nor does the convenience of witnesses favor transfer. Potential witnesses in this case reside in many venues, and third party witnesses will

-2-

likely include many witnesses located in foreign countries. As Dril-Quip acknowledges in its Motion, aside from Cameron's present and former prosecution counsel, the majority of potential third party witnesses reside in Europe. Thus, travel to Delaware would be as convenient if not more so than travel to Houston for those foreign third party witnesses. As for Dril-Quip's witnesses, Dril-Quip has chosen to avail itself of the laws of Delaware, and there is no reason why Dril-Quip employees cannot be made available in Delaware for testimony at trial. In addition, as Dril-Quip also concedes, the location of books and records does not favor transfer, since the books and records can be made readily available in Delaware, and will most likely be available electronically.

As with the private factors, the public interests do not favor transfer of the present case to the Southern District of Texas. Dril-Quip relies heavily on the fact that Cameron was involved in a prior case in Houston against another defendant. The prior pendency of a single case in that venue, a case that was dismissed in 2003, does not justify transfer of the present case. The patents asserted by Cameron in this case are different from the patents involved in the Southern District of Texas case. Moreover, Dril-Quip fails to mention that Cameron also brought a prior patent infringement case against Dril-Quip in this Court, and likewise filed a case on related patents against FMC Technologies, Inc. (Civil Action No. 1:04-cv-00054) in this Court. Thus, Cameron has selected both Delaware and Texas as appropriate fora for resolving patent issues in the past. In any event, the Southern District of Texas patent infringement case was brought against a different party, involved different patents, and is no longer pending.

-3-

Dril-Quip also makes allegations of "forum shopping" by alleging that Cameron received unfavorable rulings in the prior case. Again, Dril-Quip's arguments are misplaced. In fact, Cameron filed a successful appeal to the Federal Circuit and as a result obtained a favorable settlement. Cameron thereafter prevailed in arbitration when a former Federal Judge applied the Markman rulings from the prior case and found that the defendant was in breach of its settlement agreement. The only relevant proceeding pending in the Southern District of Texas relates to Cameron's request to confirm that Arbitration Award, which awarded Cameron substantial damages and attorney fees as a result of the prior defendant's breach of the settlement and license agreement that resolved the prior litigation.

Finally, while Dril-Quip argues judicial economy, nothing under the procedural rules of the Southern District of Texas ensures that Judge Atlas, who presided over the prior case, would also preside over this case. There is therefore no assurance that transfer to the Southern District of Texas would provide any judicial economy as this case may be assigned to a different Judge.

In short, Cameron's decision to bring this case in Delaware, where both Dril-Quip and Cameron are incorporated and reside, should be respected and Dril-Quip's motion to transfer should be denied.

## III.    STATEMENT OF FACTS

Cameron is a leading international manufacturer of oil and gas pressure control equipment, including subsea trees, valves, wellheads, controls, chokes, blowout preventers and assembled systems for oil and gas drilling, production and transmission

#8505119 v2

used in onshore, offshore and subsea applications. Cameron's patented invention at issue

in this litigation, its subsea oil well design called the Spool Tree™, is a novel and unique

apparatus for controlling the flow of fluids in a subsea oil well. Cameron's invention

revolutionized the offshore oil industry and allowed oil companies to save millions of

dollars in operating offshore wells. This invention has been widely copied, and every

major supplier of subsea trees, aside from Dril-Quip, has taken a license to Cameron's

patented technology.

Dril-Quip also manufactures and sells oilfield equipment, and has recently

begun marketing a version of Cameron's patented Spool Tree design.

### A.     Both Parties are International Companies Incorporated in Delaware.

Both Cameron and Dril-Quip are incorporated in the state of Delaware,

demonstrating their desire to avail themselves of Delaware law. Like Cameron, Dril-

Quip has operations in countries around the world, and offers its products and services

both nationally and internationally. In addition to its Houston operation, Dril-Quip

maintains facilities in 28 locations around the globe. *See* Dril-Quip Website (Exhibit B).

Cameron also maintains manufacturing and sales facilities throughout the world.

### B.     Cameron's Asserted Patents Were Not Previously Litigated.

Cameron has asserted three patents in this case, namely the '660, '039 and

'945 patents. None of those three patents has been at issue in any prior litigation. Dril-

Quip has opted to file counterclaims in the present suit, seeking a declaratory judgment

related to the '008 patent, the '707 patent and the '119 patent. These patents were not put

at issue by Cameron, and Cameron denies that there is any justiciable controversy

involving those patents as they have not been asserted against Dril-Quip.  Only the '707

and '119 Patents have been at issue in prior litigation filed in Delaware and in the

Southern District of Texas.

Since its invention in 1992, Cameron's SpoolTree invention has been

widely copied by Cameron's competitors.  In an effort to remedy the open and

undisputed copying of Cameron's patented technology, Cameron asserted the '707 patent

against Kvaerner Oilfield Products, Inc., in a case filed in the Southern District of Texas

on January 17, 1997 (No. Civ. A.  4:97-cv-00155).  The '119 patent was later added to

that case.  The Kvaerner case was dismissed in 2003 when Kvaerner agreed to pay a

royalty in exchange for a license to Cameron's patented technology.  Thereafter, in

January 2004, Cameron filed a case against FMC Technologies, Inc. in Delaware

asserting infringement of the '707 patent and the '119 patent. (No. Civ. A. 1:04-cv-

00054-SLR).  FMC also brought suit in the UK, seeking a declaration of non-

infringement and invalidity of Cameron's related European and UK patents.  The FMC

case was also dismissed with prejudice in April 2004 when FMC agreed to pay a royalty

in exchange for a license to Cameron's patented technology.  Cameron also filed a patent

infringement case in the District of Delaware in 2005, against Dril-Quip, asserting patents

that are not at issue in the present case.  That case was voluntarily dismissed on February

27, 2006 (No. Civ. A. 1:05-cv-00188-SLR).  Thus, Cameron's patented technology has

been at issue in a number of venues over the past ten years, including Delaware.

The single case that was adjudicated in the U.S. District Court for the

Southern District of Texas, the venue to which the defendant now wishes to transfer this

-6-

case, was resolved favorably for Cameron in 2003. None of the patents asserted by

Cameron against Dril-Quip – the '660 patent, the '039 patent and the '945 patent –were

at issue in that suit. While that Court is presently considering Cameron's motion to

confirm an arbitration award that resulted from Kvaerner's breach of its license

agreement, the arbitration did not involve any of the patents asserted by Cameron. The

briefing schedule in that matter will conclude by June 8, 2007, and the confirmation

proceeding is expected to be limited to an exchange of briefs.

## IV.    ARGUMENT

Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." The Third Circuit has held

that in determining whether transfer is warranted, all private and public interests that are

protected by §1404(a) should be considered. *Jumara*, 55 F.3d at 879. The private

interests that are to be considered include (1) plaintiff's forum preference as manifested

in the original choice; (2) the defendant's preference; (3) whether the claim arose

elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses – but

only to the extent that witnesses may actually be unavailable for trial in one of the fora;

and (6) the location of books and records (similarly limited to the extent that the files

could not be produced in the alternative forum). *Id.* The public interests to be considered

include (1) the enforceability of the judgment; (2) practical considerations that could

make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty

#8505119 v2

in the two fora resulting from court congestion; (4) the local interest; and (5) the public policies of the fora. *Id.*

        A transfer should be denied if the factors do not *strongly* favor the defendant, and the plaintiff's forum should prevail. Further, "[i]t is black letter law that a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte*, 431 F.2d at 25. The burden is on Dril-Quip to prove that the balance of interests weighs strongly in favor of transfer. *Id.* A transfer will be denied if the private and public interests weigh only slightly in favor of transfer. *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999).

        Here, these factors do not favor Dril-Quip and its motion should be denied.

**A.    Cameron's Choice of Forum Should be Given Substantial Deference.**

        Cameron has legitimate reasons to litigate in Delaware, and therefore deference should be given to Cameron's choice of forum. Delaware is a forum recognized for its experience with patent cases. In recent testimony before the U.S. Congress, Professor Kimberley Moore stated that Delaware courts have heard 4.8% of all patent cases resolved in the last five years. *See* Testimony of Kimberly A. Moore before the House Subcommittee on Courts, Exhibit C. In addition, Delaware Courts employ an alternative dispute resolution mechanism which is particularly effective in resolving complex disputes. Thus, as a forum with a depth of experience in resolving patent cases and other complex disputes, Delaware is an appropriate forum for resolving this case.

Both Cameron and Dril-Quip have chosen to avail themselves of the laws of Delaware, as both parties are incorporated in the state of Delaware. It is well settled that a corporation's selection of Delaware as its state of incorporation makes that corporation a resident of the State. Thus, Dril-Quip and Cameron both reside in Delaware and this Court should give 'paramount consideration' to Cameron's decision to file in Delaware, since "a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum." *Trilegiant Loyalty Solutions, Inc.*, 2005 WL 41077 at *2 (Exhibit A). *See also Jones Pharma, Inc. v. KV Pharmaceuticals Co.*, No. Civ. A. 03-786 JFF, 2004 WL 323109, at *2 (D. Del. Feb. 17, 2004) (Farnan, J.) ("Both [plaintiff] and [defendant] are Delaware corporations. And … a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum") (Exhibit D). Thus, that both of the parties in this case are incorporated in Delaware is a rational and legitimate reason for the case to remain in this Court. *See also Textron Innovations, Inc. v. The Toro Co.*, No. Civ. A. 05-486 GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) (Exhibit E).

Given the global operation of both parties in this case, and because both parties are incorporated in the state of Delaware, this is clearly not a case of forum shopping, as Dril-Quip asserts. While Dril-Quip attempts to color this allegation by contending that the Southern District of Texas made rulings "adverse" to Cameron, the Court of Appeals for the Federal Circuit overturned those adverse rulings and following remand the defendant agreed to a settlement and took a license to the Cameron patents. Therefore, Cameron obtained a favorable result in the prior case, and this is not an effort

-9-

to avoid any "adverse" ruling of that Court. Rather than "forum shopping," which is what Dril-Quip appears to be attempting, Cameron has a legitimate reason to file in this Court. While much of the delay was caused by defendant's counsel – who now represents Dril-Quip in this action – the prior case was pending for almost six years. As shown from the below statistics, the Southern District of Texas has a crowded docket. Delaware has expertise in expediently and efficiently handling patent cases, and is an appropriate alternate forum. Cameron has filed other cases in Delaware involving the same or similar technology as that covered in the patents involved in the present suit. Indeed, past cases involving Cameron's patented technology have been litigated in various fora, including Delaware, Texas and the United Kingdom. This case is, therefore, properly filed in this court.

**B.    Private Interests Do Not Strongly Favor Transfer.**

**1.    Convenience of the Parties Does Not Favor Transfer.**

The convenience of the parties does not favor transfer, particularly since both the plaintiff and the defendant are incorporated in the state of Delaware. Dril-Quip should not have the benefit of availing itself of Delaware law, and then succeed in arguing that it is an inconvenience to litigate in Delaware. *See, e.g.*, *Jones Pharma, Inc.*, at *2; *see also Critikon v. Becton*, 821 F. Supp. 962, 965 (D. Del. 1993) (Farnan, J.) ("By incorporating in Delaware, it can be assumed that [defendant] desired the benefits it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another corporation has decided to sue [defendant] in Delaware.").

Not only has Dril-Quip chosen to avail itself of the Delaware legal system, but it is a large company with operations in many locations worldwide, and travel to Delaware will not in any way burden Dril-Quip. Although Dril-Quip has a principal place of business in Houston, its many other substantial places of business span the globe. Dril-Quip's multiple operations and substantial international practice are credence to the fact that it will not suffer undue financial burden if the case remains in Delaware. *Apple Computer, Inc. v. Unova, Inc.*, No. Civ. A. 03-101-JJF, 2003 WL 22928034, at \*5 (D. Del. Nov. 25, 2003) (Farnan, J.) (denying motion to transfer where parties as a whole are not located close to the transferee forum, and where the parties are substantial enough to litigate in Delaware") (Exhibit F). Dril-Quip is sufficiently positioned to litigate a case in Delaware, which factor weighs against transferring the case to another venue. Further, given the technological advancements available to Dril-Quip, any burden of litigating outside of their headquarters in Houston is substantially reduced. *See Motorola Inc. v. PC-TEL, Inc.*, 58 F. Supp. 2d 349, 358 n.12 (D. Del 1999); *C.R. Bard, Inc v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998). *See also Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) (stating that "the 'home turf' rule does not create irrebuttable presumptions for or against a transfer…and it does not alter a defendant's burden of proof to show that such a transfer is warranted.").

## 2. Convenience of the Witnesses Does Not Strongly Favor Transfer.

The availability of witnesses in this case does not favor litigating in one venue over another. First, as a general matter, employees who will be witnesses are presumed to be willing to testify, and therefore it is of no consequence to consider

-11-

whether employees will be inconvenienced. *Jones Pharma, Inc.*, at *2. To make its point, Dril-Quip argues that the majority of non-party witnesses that were identified as potentially key witnesses in the prior case adjudicated in Texas reside in or are in close proximity to Houston. However, at least half of the non-party witnesses identified by the Rule 26(a) disclosure from the prior litigation in the Southern District of Texas reside in locations outside of the United States, let alone outside of Houston. *See* Dril-Quip Opening Brief at 17-18. In fact, those that are identified as residing in Houston are limited to individuals knowledgeable about Cameron's technology, as well as Cameron's patent attorneys and former inside counsel. *Id.* First, it is much more efficient for witnesses residing in Europe to appear on the east coast in Delaware than it would be for such individuals to appear in Houston. For that matter, most of the individuals identified by Dril-Quip as non-party witnesses – those residing in Texas and outside of Texas – may not appear as testifying witnesses in any event. Dril-Quip has not provided any evidence to show that Cameron's counsel and former employees, if needed, would not present themselves in Delaware. In fact, Dril-Quip has not presented any evidence that indicates why these individuals would be "key" witnesses or why these individuals would be unwilling to testify in Delaware. *Jones Pharma, Inc.*, at *2 (giving little weight to the residence of the non-party witness because defendant gave no evidence of why a former employee would be unwilling to testify on its behalf); *see also Trilegiant Loyalty Solutions, Inc.*, at *3 (Exhibit A). Thus, the convenience of the witnesses is, at best, a neutral consideration in determining whether to transfer the present case.

-12-

### 3.    The Location of the Books and Records Does Not Strongly Favor Transfer.

As Dril-Quip admits, this factor is neutral and does not tip the scale in favor of transfer, since copies of documents can be made available in Delaware. *See* Defendant Dril-Quip's Opening Brief at 19. *See also Jones Pharma, Inc.*, at *2 ("[Defendant] does not contend that [books and records] could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of books and records as weighing in favor of transfer.").

### C.    Public Interests Do Not Strongly Favor Transfer.

In addition to the private factors considered in determining whether to transfer a case, a number of public factors are also considered, including the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest, and the public policies of the fora. *See Jumara*, 55 F.3d at 879. Dril-Quip has failed to show that transferring this case to the Southern District of Texas would promote any public interests.

### 1.    Judicial Economy Does Not Favor Transfer.

Dril-Quip relies heavily on a prior case adjudicated in the Southern District of Texas, between Cameron and Kvaerner Oilfield Products, Inc. ("Kvaerner"), an unrelated party, in which different patents were asserted, to support its position that transfer is proper. The prior pendency of a single case in that venue, a case that was dismissed in 2003, does not justify transfer of the present case. The patents asserted by Cameron in this case are different from the patents involved in the Southern District of

-13-

Texas case. The only relevant proceeding pending in the Southern District of Texas relates to Cameron's request to confirm an Arbitration Award, which awarded Cameron substantial damages and attorney fees as a result of the prior defendant's breach of the settlement and license agreement that resolved the prior litigation. In any event, the Southern District of Texas patent infringement case was brought against a different party, involved different patents, and is no longer pending.

Dril-Quip also asserts that the Southern District of Texas court is familiar with the facts and issues in the prior case, and that, therefore, there is strong judicial economy in transferring this case to that court. However, different patents are being asserted in the present case than those that were adjudicated in the prior litigation. The patents at issue in the prior case are only in the present case because of Dril-Quip's decision to file counterclaims related to those patents. The present action would not just "potentially" require claim construction of patents not part of the prior Texas action: the present action would in fact require claim construction of such patents, since the asserted patents were not previously adjudicated.

In addition, there is no guarantee that this case would be assigned to the same judge. Nothing under the procedural rules of the Southern District of Texas ensures that Judge Atlas, who presided over the prior case, would also preside over this case. There is therefore no assurance that transfer to the Southern District of Texas would provide any judicial economy as this case may be assigned to a different Judge. In addition, even if this case was assigned to Judge Atlas, her substantive involvement

-14-

occurred many years ago and her decisions are publicly available to the present court to the extent that this Court deems such information necessary and relevant.

The only case presently pending for Cameron in the U.S. District Court for the Southern District of Texas is merely a summary proceeding, not substantively determining a patent case.  (No. Civ. A. 4:97-cv-00155).  That court has commented that confirming an arbitration award is "a summary proceeding that converts a final arbitration award into a judgment of the court." *The Variable Annuity Life Ins. Co. v. Bencor, Inc.*, 2006 WL 1492249, at *2 (S.D. Tex. May 30, 2006) (Exhibit G).  Further, the briefing schedule in that case will be completed by June 8, 2007, and the U.S. District Court for the Southern District of Texas is merely determining whether the arbitration award should be confirmed.  Therefore, judicial economy is not better served by transferring this case to Houston.

## 2.     Court Statistics Do Not Favor Transfer.

The relative speed of litigation between the District of Delaware and the Southern District of Texas and the relative docket conditions do not weigh in favor of transferring the present case.  A comparison of civil cases commenced by nature of the suit for the Southern District of Texas and the District of Delaware during the 12-month period ending March 31, 2006, indicates that Delaware is more likely to expeditiously resolve this case.  First, the total private civil cases filed in Delaware during the aforementioned time frame numbers 964, while in the Southern District of Texas, the total number of private civil cases is 4,898.  *See* Table C-3 U.S. District Courts-Civil Cases Commenced (Exhibit H)  Also, other statistics reporting the U.S. District Court

-15-

caseloads are equally in favor of maintaining the present case in Delaware.  According to

court statistics published by the Federal Judiciary, the weighted filings of actions per

judgeship in the District of Delaware for the twelve-month period ending September 30,

2006 numbers 367 weighted filings.[1]  See Judicial Caseload Profiles (Exhibit I).  That

same statistic for the Southern District of Texas numbers 536 weighted filings.  This

statistic indicates that judges in the Southern District of Texas have less capacity to

consider the present case efficiently than would this Court.  Therefore, it appears that

Delaware, not Texas, is better positioned to adjudicate this patent infringement dispute.

       Further, Delaware has a higher percentage of intellectual property matters.

In the District of Delaware, 17% (166 cases) of the total civil cases filed are of copyright,

trademark and patent in nature, while in the Southern District of Texas, only 7% (358

cases) of the total filed cases are intellectual property disputes.  (Exhibit H).  Such

statistics indicate that the docket condition in Delaware is better positioned to

expeditiously try the present case.

    **3.**     **Local Interests Do Not Favor Transfer.**

       Dril-Quip's argument that Houston has a strong local interest in this case

is baseless.  Patent cases are national matters and do not implicate local or state interests

or local public policy.  *See Stratos Lightwave, Inc. v. E20 Communications, Inc.*, No. Civ.

A. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (Exhibit J).  Delaware is

---

[1] Weighted filings statistics refer to the different amounts of time that a district judge requires to resolve particular types of civil and criminal matters.  For example, an average civil case receives a weight of approximately 1.0, while more time-consuming cases receive higher weights.  This number, therefore, indicates that the weighted filings caseload per judgeship is noticeably higher in the Southern District of Texas than in Delaware.

the state where both corporations reside. Both Delaware and Texas have an equal interest in the outcome of this case, as patent infringement disputes do not give rise to local public policy concerns. *See Jones Pharma*, at *3 ("there is no strong local interest in litigating this action in [transferee state]. The instant action is a patent infringement case, and, as the Court held in *Stratos*, rights relating to patents are not local or state matters. Therefore, patent rights cannot give rise to a local controversy or implicate local interests."). Therefore, this factor does not weigh in favor of transferring the case in any way.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Dril-Quip's Motion to Transfer this case to the Southern district of Texas.

By: /s/ Edmond D. Johnson
      Edmond D. Johnson (DE Bar # 2257)
      Thomas H. Kovach (DE Bar #3964)
      PEPPER HAMILTON LLP
      Hercules Plaza, Suite 5100
      1313 N. Market Street
      P.O. Box 1709
      Wilmington, DE   19899-1709
      Telephone: 302-777-6500
      Fax:  302-421-8390

      Attorneys for Plaintiff

OF COUNSEL:

William D. Belanger
PEPPER HAMILTON LLP
101 Federal Street, Suite 1010
Boston, MA 02110-1817
Telephone: 617-956-4350
Fax:  617-956-4351

DATED: April 23, 2007

#8505119 v2

## CERTIFICATE OF SERVICE

I, Thomas H. Kovach, hereby certify that on 23rd day of April, 2007, I

caused a true and correct copy of the foregoing *Plaintiff's Reply Brief In Opposition To*

*Defendant's Motion To Transfer* to be served to be filed with the Clerk of the Court using

CM/ECF, which will send automatic notification of the filing to the following::

          Richard L. Horwitz, Esquire
          David E. Moore, Esquire
          Potter Anderson & Corroon LLP
          Hercules Plaza, 6th Floor
          1313 N. Market Street
          Wilmington, Delaware 19899-0951

                    Thomas H. Kovach (DE Bar #3964)

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

**(Cite as: 2005 WL 441077 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TRILEGIANT LOYALTY SOLUTIONS, INC.
Plaintiff,
v.
MARITZ, INC., Defendant.
**No. Civ.A. 04-360 JJF.**

Feb. 15, 2005.

Jack B. Blumenfeld, and Rodger D. Smith II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Steven Lieberman, Sharon L. Davis, and R. Elizabeth Brenner, of Rothwell, Figg, Ernst & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz, and Patricia Smink Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, J. Bennett Clark, Jennifer E. Hoekel, and Marc W. Vander Tuig, of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is the Motion To Transfer Under 28 U.S .C. § 1404(a) (D.I.13) filed by Defendant Maritz, Inc. ("Maritz"). For the reasons discussed, Maritz's Motion To Transfer will be denied.

BACKGROUND

Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") initiated this lawsuit in this Court alleging patent infringement arising from Defendant Maritz's development and operation of online incentive programs. Trilegiant is incorporated in Delaware, and has its principal place of business in

Richmond, Virginia. Maritz is a Missouri corporation with its principal place of business in Fenton, Missouri.

PARTIES' CONTENTIONS

By its motion, Maritz contends that a transfer to the Eastern District of Missouri is appropriate in this case pursuant to the factors identified in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir .1995). Maritz contends that both the private and public interests favor a transfer to Missouri. With regard to the private interests, Maritz contends that none of the parties has a presence in Delaware, and that transfer to the Eastern District of Missouri would not significantly change the burden Trilegiant already bears by virtue of choosing Delaware. Maritz further contends that party witnesses and potential non-party witnesses appear to be located far from Delaware. Maritz also contends that accused activities likely took place in Missouri and that relevant documents are not likely to be located in Delaware. With regard to the public interests, Maritz contends that none of the interests involved in this lawsuit are unique to Delaware and that Missouri is the more practical venue for this lawsuit. Maritz did not address the following factors: 1) likelihood of an enforcement problem; 2) administrative difficulty in the two fora resulting from court congestion, and 3) familiarity with applicable state law.

In response, Trilegiant claims that its choice to bring suit in Delaware is entitled to substantial deference because Trilegiant chose to litigate in Delaware for several rational and legitimate reasons. Trilegiant contends that it sought the benefits of Delaware law by incorporation in this state. Trilegiant further contends that Magistrate Thyne mediated a previous case that involved two of the three patents in this suit. With regard to the convenience of the parties and witnesses, Trilegiant contends that Delaware is more convenient than Missouri for it and the inventor, Mr. Storey.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

**(Cite as: 2005 WL 441077 (D.Del.))**

Trilegiant stresses the Delaware Court has subpoena power over potential third-party Delaware corporations that would make access to documents easier in Delaware than in Missouri.

## DISCUSSION
### I. Legal Standard

Maritz moves for a transfer to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1404(a) is the general transfer statute that provides, "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Courts in the Third Circuit apply the public and private interest factors outlined in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 **(3d Cir.**1995), to decide if they should order a transfer. The private interests outlined in *Jumara* include: (1) Plaintiff's forum preference; (2) Defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records--but only to the extent that the documents may be unavailable for trial in one of the fora. *Id.* **at 879** (citations omitted).

**\*2** The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.*

Maritz bears the burden of establishing the need for transfer. *Id.*

### II. Analysis

A. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d

Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* C.A. No. 01-309 JJF, 2002 WL 500920 at \*2 (D.Del. March 26, 2002).

Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Trilegiant's decision to file the instant action in Delaware. Trilegiant is a Delaware corporation. As the Court observed in *Stratos,* a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at \*2. Therefore, to prevail on its Motion, Maritz must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

B. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and Maritz has its principal place of business in Missouri, I conclude that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri.

First, I conclude that the convenience of the parties does not favor venue in Missouri over Delaware. Neither party would be unduly burdened by litigating this action in Delaware. *See Pennwalt Corp. v. Purex Inds., Inc.,* 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). Maritz's annual sales approximate $1.4 billion (D.I. 16 App. D) and Trilgiant chose to litigate in Delaware. Therefore, I conclude that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt,* 659 F.Supp. at 290.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

**(Cite as: 2005 WL 441077 (D.Del.))**

Next, although Maritz contends that the books and records necessary to litigate this action are in Missouri, Maritz does not contend that they could not be produced or would be unavailable in Delaware. Therefore, I do not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara,* 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files **"could not be produced in the alternative forum ").**

*3 Further, party witnesses or witnesses who are employed by Maritz or Trilegiant carry no weight in the "balance of convenience" analysis since each party is able to procure the attendance of its own employees. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998). With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware.

Finally, although I appreciate the additional expense that Maritz may incur as a result of litigating in Delaware, I find that this hardship is substantially outweighed by the private interest considerations.

C. Whether The Public Interests Strongly Favor Transfer

I also conclude that the public interests do not weigh strongly in favor of a transfer to Missouri. Maritz did not argue that the congestion of the Delaware courts strongly favors a transfer. Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. *Stratos,* 2002 WL 500920 at *2. Therefore, patent rights do not alone give rise to a local controversy or implicate local interests. *Id.* Accordingly, I conclude that the fact that the

alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

In addition, I find that the *Jumara* factor that requires examining the difficulty in enforcing a judgment, were Trilegiant to prevail in the Delaware litigation, does not weigh in favor or against a transfer because there has been no dispute in either state over in personam jurisdiction.

CONCLUSION

Based upon Trilegiant's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, I conclude that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, I will deny Maritz's Motion.

An appropriate Order will be entered.

ORDER

At Wilmington, this 15th day of February 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Transfer (D.I.13) filed by Defendant is *DENIED.*

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Dril-Quip.com

**DRIL-QUIP, Inc.**



## Dril-Quip Locations

**Dril-Quip** has locations and representatives throughout the world. Roll over the name of the location in the list below the map for location information. Click on the name to the right of the map for more detailed information on that location.

| | | |
|---|---|---|
| Houston, TX | Angola | Perth, Australia | Abu Dhabi | Mexico |
| Aberdeen, Scotland | Stavanger, Norway | Dubai | Egypt | Kuwait |
| Singapore | Denmark | France | Rio de Janeiro | Qatar |
| Macae | London | Malaysia | Indonesia | Japan |
| New Orleans, LA | Netherlands | Canada | Saudi Arabia | India |
| Nigeria | Great Yarmouth | China | Philippines | |

- Aberdeen
- Abu Dhabi
- Angola
- Australia
- Canada
- China
- Denmark
- Dubai
- Egypt
- France
- Great Yarmouth
- Houston
- India
- Indonesia
- Japan
- Kuwait
- London
- Macae, Brazil
- Malaysia
- Mexico
- Netherlands
- New Orleans
- Nigeria
- Philippines
- Qatar
- Rio de Janeiro
- Saudi Arabia
- Singapore
- Stavanger


Capabilities


Choose One


Catalogs

Choose One




Products

Choose One

# EXHIBIT C



**U. S. House of Representatives**
**Committee on the Judiciary**

**Testimony of Kimberly A. Moore, Professor of Law, George Mason University School of Law before the House Subcommittee on Courts, the Internet, and Intellectual Property**

Chairman Smith, Ranking Member Berman and members of the Subcommittee, thank you for the opportunity to testify today on the topic of improving federal court adjudication of patent cases. Patent litigation is critically important to the functioning of our patent system. Without a credible, predictable means of enforcing patent rights, the rights themselves would cease to function effectively to spur innovation.

I plan to speak today about two problems confronting the patent litigation system.

Patent Venue Statute: The first is the virtually unfettered ability of patentee plaintiffs to file a patent suit in any of the 94 different district courts. The patent venue statute, 35 U.S.C. §1391, allows a corporation to be sued anywhere that personal jurisdiction exists which is any judicial district in any state where products are sold. This was not a problem when commerce was limited geographically, but in this day of national and, in fact, global commerce, this venue statute is no longer workable. The Amendment to H.R. 2795 addresses this problem by limiting venue to the judicial district where the defendant resides or the judicial district where the defendant has committed acts of infringement and has a regular and established place of business. The Amendment defines corporate residence as the district where the corporation has its principle place of business. I support this change to the venue statute.

I have two minor suggestions to make. First, expand the definition of corporate residence to include state of incorporation. Venue is appropriate in either the judicial district where the principle place of business is located or the judicial districts in the corporation's state of incorporation. When a corporation selects a state in which to incorporate and thus avails themselves of the corporate laws of that state, it seems reasonable to permit them to be sued there.

My second minor suggestion is to consider creating an exception to the venue rule that permits patentee plaintiffs to consolidate actions against defendants pursuant to the MDL procedures. If a patentee would like to simultaneously sue multiple defendants for the same or similar acts of infringement, it is more efficient to have these cases consolidated in a single forum and venue ought not to be an obstacle to that consolidation.

I have also read the Coalition's recommendation for venue reform which instead suggests a more vibrant transfer of venue statute. I favor the Amendment to H.R. 2795. It is more effective and efficient to fix a problem ex ante than ex post. Transfer of venue motions will delay resolution and divert resources unnecessarily. Moreover, the Coalition draft language which allows the action to go forward anywhere there is "substantial evidence or witnesses" is sufficiently vague and likely to cause additional unnecessary litigation.

The Coalition draft also suggests that venue ought to be appropriate in any judicial district where the patentee resides or maintains its principle place of business. The suggestion being that it should not be fair to make the patentee bear the expensive of litigating away from home. First, let me note that this merely shifts the burden of litigating away from home from the plaintiff to the defendant. Second, patent litigation now costs on average two to four million dollars per side, the marginal cost

to the patentee of conducting the litigation in a district other than its home turf is not likely to inhibit anyone who can already afford this expense. Moreover, there are always contingent fee options and patent infringement insurance which aid patentees in enforcing their rights. Finally, the patentee who files suit gets to select the judicial district and the Amendment to H.R. 2795 gives her several districts from which to choose. Giving the patentee the option of choosing its own district would allow patent trolls to game the system more than they already do. They would simply locate themselves where they believe the laws and procedures to be most favorable and then litigate all their cases there.

Amending the venue statute as proposed in H.R. 2795 with the modest changes suggested above will significantly reduce forum shopping by plaintiffs and some of the unpredictability which plagues the patent litigation system.

Forum Shopping in Patent Cases: To the extent that there is any doubt about the existence and pervasiveness of forum shopping in patent cases, let me offer some empirical evidence. See Kimberly A. Moore, Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation, 79 N.C. L. REV. 934 (2001). Patent cases are not evenly distributed among the 94 district courts. Comparing the data on patent litigations from the five year period 1995-1999 (9542 patent cases) and 2000-2004 (12,768 patent cases) provides insight into the changing landscape of patent litigation. In the last five years, the top ten district courts have 47% of all patent cases. Comparing this to the data from 1995-1999, where the top ten jurisdictions had 44%, it seems at first blush like patent cases are even more heavily consolidated now in just a few key jurisdictions than they were five years ago. The problem is that it is not the same key jurisdictions. The data show, however, that plaintiffs in patent cases are moving en mass away from some judicial districts and towards others. I have titled the draft paper where I present these empirical results – Patent Lemmings.

For example, the Eastern District of Virginia, affectionately know as the Rocket Docket, used to be a hub for patent cases. In 1997, 3.2% of all patent cases were resolved there. In 2004, the percentage dropped to 1.6% (a 50% decrease) – dropping in the rankings from seventh to twenty-third. The Eastern District of Texas, on the other hand had 0.3% of all patent cases in 1997 and in 2004, it had 1.9% (a 633% increase) – going from tied for fifty-eighth to seventeenth. These changes are not due to a major relocation of large sectors of industry – they reflect forum shopping on the part of opportunistic plaintiffs who perceive a benefit to filing in the Eastern District of Texas and who have grown disenchanted with the Eastern District of Virginia. I am not suggesting that the cases that are filed in Texas belong more properly in Virginia, in fact, the Eastern District of Virginia was not the appropriate venue for many of the patent cases that had been filed there – a fact reflected in their 16% transfer rate in 1997.

I have also found that the percentage of patent cases in a given district is not always linked to the percentage of civil cases filed there or the percentage of patents acquired by the residents of the district. For example, the District of Delaware, had 4.8% of all patent cases resolved in the last five years, but only 0.4% of all civil cases generally. Delaware's high percentage of patent cases is not correlated with patenting by local industry either—Delaware only has 0.41% of U.S. patents issued to U.S. inventors. Some practitioners claim that Delaware is selected by patentees because it is a pro-patentee forum. Empirical evidence demonstrates that Delaware judges do not grant summary judgment as frequently as judges in other courts and that summary judgment is more often a win for the infringer. The failure to grant summary judgment means that Delaware allows a much higher than average number of cases to go to trial – generally a trial by jury. Given the perception that juries are pro-patentee (which is supported by empirical evidence), patentees may prefer Delaware for this reason.

My conclusion from this empirical analysis is that plaintiffs, who are patentees in 85% of the patent suits, forum shop and their preferences change over time which

undermines any expertise judges in a given district do develop in patent cases. I have also found considerable variation in the manner of patent case adjudication by the different district courts and significant differences in win rate. In short, patentees are gaining an unfair advantage in litigation by forum shopping. The Amendment to H.R. 2795 would significantly curtail this gamesmanship and level the playing field.

This brings me to my second, related proposal.

Designating Specialized District Court Judges: Patent cases are complex, difficult, time consuming and expensive. Despite the nature of these cases, they are litigated before generalist judges and lay juries. The United States is unique in this respect. No other country allows lay juries to decide patent cases. In fact, many countries no longer have patent cases decided by generalist judges and have instead created specialized patent trial courts such as Germany, China, Japan, the United Kingdom, Australia, New Zealand, Singapore, Zimbabwe, Jamaica, Kenya, Thailand, Korea and Turkey.

In the United States, there are 680 active district court judges in the 94 districts (and 290 additional senior judges). With 2800 patent cases per year and only 3% going to trial, district court judges have little exposure to patent cases. If patent cases were consistently being consolidated in the same jurisdictions, then the market would itself be creating specialization and there would be no real need for a specialized trial court. However, as the empirical evidence demonstrates, the distribution of patent cases among the judicial districts fluctuates with patentee preferences. Although a few notable patent jurists have arisen from the mass of district court judges who hear patent cases, forum shopping combined with the small number of cases has inhibited judges from developing expertise.

If all patent cases in a given district were consolidated in one or more designated trial court judges, they would have a better chance to develop expertise in this area. The high claim construction reversal rate of district court judges supports the need for such specialization. Claim construction is the most important part of any patent dispute. The Supreme Court ruled that claim construction ought to be performed by district court judges rather than juries because they would be better at it. The Federal Circuit held that claim construction is a matter of law which results in de novo review of all district court claim construction decisions. In an empirical study of all claim construction decisions appealed to the Federal Circuit from 1996 through 2003, I found that district court claim constructions were reversed 35% of the time. Worse yet, the reversal rate is still going up ten years after district court judges were charged with the task of construing patent claims indicating that district court judges are not getting better at construing patent claims. See Kimberly A. Moore, Markman Eight Years Later: Is Claim Construction More Predictable?, 9 LEWIS & CLARK L. REV. 231 (2005). See also Kimberly A. Moore, Are District Court Judges Equipped to Resolve Patent Cases?, 15 HARV. J. L. & TECH. 1 (2001). Given that claim construction is the starting point for any infringement or validity analysis, the high reversal rate of district court determinations results in considerable uncertainty until the Federal Circuit review process is over. Since the Federal Circuit has declined to review any claim construction decisions on interlocutory appeal, the parties and the district court are forced to adjudicate the entire patent case on what ends up being a faulty claim construction more than one third of the time. The inefficiencies and frustrations are obvious.

The high reversal rate undermines confidence in district court decision-making and the integrity of our legal system. It also results in considerable frustration for the district court judges. This brings me to my proposed solution to these serious and pervasive problems -- designating a limited number of district court judges in each judicial district to adjudicate patent disputes. The number of designated judges would, of course, have to be correlated with the size of the court generally. Clearly one district court judge would not be able to handle all the patent cases brought in the Northern District of California for example.

Although there would certainly be advantages to a single specialized patent trial court, in my opinion, designating trial court judges in each judicial district is a better approach. If a specialized trial court were created, it would have to be given exclusive jurisdiction rather than concurrent jurisdiction with the district courts. Concurrent jurisdiction would merely provide yet another forum shopping alternative.

A specialized trial court would eliminate forum shopping, inconsistency and unpredictability which would decrease patent litigation overall. The judges on a specialized trial court would develop greater expertise in patent law due to increased exposure. Moreover, creation of a specialized patent trial court would help reduce the crowded dockets of the district courts.

There are, however, drawbacks to a specialized patent trial court. First, specialized courts are potentially subject to capture by the bar – in this case the patent bar. Second, having only one trial court for all patent cases would eliminate the percolation that currently occurs among the various district courts. Having numerous courts simultaneously considering similar issues permits the law to evolve and often aids in flushing out the best legal rules. Unlike other countries, the United States already has a specialized appellate court which resolves all patent cases – the United States Court of Appeals for the Federal Circuit. Given the single appellate court for all patent cases, adding a single specialized patent trial court would in my opinion be too much specialization.

Instead, I propose that a single judge or a small number of judges in each judicial district be designated to adjudicate all the patent cases filed there. To the extent possible, the docket of the designated judge should not be limited to patent cases. Ideally, the judge who is appointed to this role would be technically educated or trained and/or have a patent background. This proposal would considerably limit the number of potential judges who would preside over patent cases and increase predictability without loosing the percolation and considered development of the law. Through experience these judges would develop more expertise at resolving patent cases. It would, of course, be important, that the designated judge remain the designated judge. In short, this position should not be rotated among the judges or the benefits of experience and predictability would be entirely eviscerated. Limiting the number of judges who adjudicate patent cases will decrease forum shopping and with experience these judges will develop greater expertise.

Let me caveat this proposal by saying that I am not meaning to criticize the existing district court judges. They are charged with a difficult job and an ever increasing workload. District court judges work hard to resolve patent cases. In fact, many excellent patent jurists have evolved from this group. Yet, even some of these judges have raised concerns about adjudicating patent cases and one has publicly advocated for a specialized trial court to adjudicate patent cases. See Judge James F. Holderman, Judicial Patent Specialization: A View From the Trial Bench, 2002 U. ILL. J.L. TECH. & POL'Y 425 (2002).

Let me also explain that I am not proposing that the specialized trial court eliminate the role of the American jury in patent litigation. Under current interpretations of the Seventh Amendment, it seems unlikely that the jury could ever be entirely removed from patent litigation. To the extent though that there is concern about juror comprehension or bias, a specialist district court judge would be in a better position to preside over patent cases to ensure more informed, accurate decision-making by the jury. The specialist judge, by virtue of his knowledge and experience, would also be better able to resolve issues as appropriate on summary judgment, eliminating unnecessary jury trials.

In conclusion, empirical evidence substantiates forum shopping by patentee plaintiffs which is inefficient and reflects inequity in our legal system. By amending the patent venue statute, the Amendment to H.R. 2795 will significantly level the playing field for plaintiffs and defendants in patent cases. While changing the venue statute might result in a greater dispersion of patent cases among the judicial districts, designating

specialized judges in each judicial district would consolidated patent cases among a smaller number of judges. The experience and expertise gained through this consolidation will increase predictability, reduce litigation, improve patent case adjudication and enhance the integrity of the legal process.

# EXHIBIT D

Westlaw.

Slip Copy
(Cite as: 2004 WL 323109 (D.Del.))

Only the Westlaw citation is currently available.


United States District Court,
D. Delaware.

JONES PHARMA, INC. and King Pharmaceuticals, Inc., Plaintiffs,
v.
KV PHARMACEUTICAL CO., Defendant.

**No. Civ.A. 03-786 JJF.**

Feb. 17, 2004.

Paul E. Crawford, and Patricia S. Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, F. Dominic Cerrito, Daniel L. Malone, and John C. Martin, of Pennie & Edmonds LLP, New York, New York, for Plaintiffs Jones Pharma, Inc., and King Pharmaceuticals, Inc., of counsel.

Josy W. Ingersoll, and Christian Douglas Wright, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Defendant KV Pharmaceutical Co.


*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendant KV Pharmaceutical Co.'s ("KV") **Motion To Transfer** To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a). (D.I.8.) For the reasons set forth below, the Court will deny KV's Motion.

BACKGROUND

This case is a Hatch-Waxman patent infringement action under 35 U .S.C. § 271(e)(2) arising from an Abbreviated New Drug Application KV submitted for approval in order to sell a generic version of Jones Pharma, Inc.'s ("Jones") drug Levoxyl. By its Motion, KV seeks a transfer of the instant action to the Eastern District of Missouri.


I. Parties' Contentions

KV contends that the instant action could have been brought in Missouri. Further, KV contends that Jones did not file the instant action on its "home turf," and therefore, Jones's decision to file in Delaware is not entitled to the deference ordinarily accorded to a plaintiff's choice of forum. KV also contends that the private and public interests favor transfer to Missouri.

In response, Jones contends that although its principal place of business is not in Delaware, both KV and it are Delaware corporations. Therefore, Jones contends that the Court should give strong deference to its decision to file the instant action in Delaware. Further, Jones contends that the private and public interests do not strongly favor transfer to Missouri.

DISCUSSION

28 U.S.C. § 1404(a) provides the standard for a convenience transfer to another jurisdiction. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Third Circuit has not limited itself to the factors listed in Section 1404(a), instead requiring courts to consider the private and public interests protected by Section 1404. The private interests include:

> plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties ..., the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.* (citations omitted). "The burden of establishing the need for transfer ... rests with the movant." *Id.* Unless the movant demonstrates that the balance of conveniences strongly favors transfer, plaintiff's forum choice should prevail. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

I. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

**\*2** Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, C.A. No. 01-309 JJF, 2002 WL 500920 at \*2 (D.Del. March 26, 2002). Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Jones's decision to file the instant action in Delaware.

Both Jones and KV are Delaware corporations. And, as the Court observed in *Stratos*, a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at \*2. Therefore, to prevail on its Motion, KV must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

II. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and the parties have their principal places of business in Missouri, the Court concludes that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri. First, the Court concludes that the convenience of the parties does not favor venue in one jurisdiction over the other. Neither party would be unduly burdened by litigating this action in Delaware or Missouri. *See Pennwalt Corp. v. Purex Inds., Inc.*, 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). KV's annual sales approximate $240 million (D.I. 12; Ex. 1) and Jones's annual sales approximate $245 million. (D.I. 14; Ex. D.) Therefore, the Court concludes that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt*, 659 F.Supp. at 290. Further, although both parties have their principal places of business in Missouri, both parties are incorporated in Delaware. And, as KV chose to avail itself of the laws of

Delaware, it may not now complain because Jones decided to sue it in this state. *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F.Supp. 450, 453 (D.Del.1993).

Next, although KV contends that the books and records necessary to litigate this action are in Missouri, KV does not contend that they could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara*, 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum."). Further, all of the witnesses relating to the formulation and development of its generic drug that KV intends to call at trial, save Mr. Franz, are current KV employees. (D.I.10.) These employee witnesses are party witnesses and are presumed willing to testify at trial. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D.Del.1998) ("Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial."). With respect to Mr. Franz, the Court is not persuaded by KV's contention that Mr. Franz's retirement from KV and residence in Missouri strongly favors a transfer of the instant action. As noted above, the movant bears the burden in **motions** to **transfer**, *Jumara*, 55 F.3d at 879, and KV has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf. Accordingly, the Court gives little weight to Mr. Franz's status as a non-party witness and residence in Missouri.

III. Whether The Public Interests Strongly Favor Transfer

**\*3** The Court also concludes that the public interests do not weigh strongly in favor of a transfer to Missouri. First, the Court is unpersuaded by KV's contention that the congestion of the Delaware courts strongly favors a transfer. *See Affymetrix*, 28 F.Supp.2d at 206 (noting that the congestion of a court's docket is a legitimate factor to be considered in a **motion** to **transfer**). The median time for completion of non-jury trials in the District of Delaware is twenty-seven months, compared to twenty-three months in the Eastern District of Missouri. (D.I. 9; Ex. B.) The Court considers this four-month difference as, at most, only minimally favoring a transfer.

Further, there is no strong local interest in litigating

this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. 2002 WL 500920 at *2. Therefore, patent rights cannot give rise to a local controversy or implicate local interests. *Id.* Accordingly, the Court concludes that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

## CONCLUSION

Based upon Jones's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, the Court concludes that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, the Court will deny KV's Motion.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 17th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that KV Pharmaceutical Co.'s **Motion** To **Transfer** To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a) (D.I.8) is *DENIED.*

2004 WL 323109 (D.Del.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1

Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Textron Innovations, Inc. v. The Toro Co.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L.
Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiff.
Richard L. Horwitz, David Ellis Moore, Potter
Anderson & Corroon, LLP, Wilmington, DE, for
Defendants.

*MEMORANDUM*
SLEET, J.

## I. INTRODUCTION

**\*1** On July 12, 2005, the plaintiff, Textron
Innovations Incorporated ("TII") filed the
above-captioned action against The Toro Company (
"Toro"), alleging infringement of United States
Patent Nos. 6,047,530,6,336,311, and 6,336,312,
which are directed to a gang type rotary mower.
Presently before the court is Toro's motion to
transfer this action to the District of Minnesota,
pursuant to 28 U.S.C. § 1404(a). For the following
reasons the court will deny the motion.

## II. BACKGROUND

On July 12, 2005, TII filed the present patent
infringement action involving technology related to
the rotary mower used to cut golf course roughs. TII
is the subsidiary of Textron Inc., and the assignee of
the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I.

19, at 2.) TII is incorporated in Delaware and
maintains its headquarters in Providence, Rhode
Island. (D.I. 1 ¶ 3.) Toro is a Delaware corporation
that maintains its headquarters in Bloomington,
Minnesota. (*Id.* ¶ 4.) Toro's allegedly infringing
products are manufactured in Tomah, Wisconsin.
(D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in
Minnesota against Textron, Inc. and Jacobsen, a
division of Textron, Inc., alleging that their
products infringe two Toro patents relating to
hydraulic drive system technology for riding
mowers. The following day, Toro filed this motion
to transfer venue to the District of Minnesota.

## III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer
a civil action "for the convenience of parties and
witnesses, in the interest of justice, ... to any other
district ... where it might have been brought." 28
U.S.C. § 1404(a). It is the movant's burden to
establish the need to transfer, and "the plaintiff's
choice of venue [will] not be lightly disturbed."
*Truth Hardware corp. v. Ashland Prods., Inc.,* No.
C.A. 02-1541 GMS, 2003 WL 118005, at *1
(quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d
873, 879 (3d Cir.1995)). In other words, "unless the
balance of convenience strongly favors a transfer in
favor of defendant, the plaintiff's choice of forum
should prevail." *Shutte v. Armco Steel Corp.,* 431
F.2d 22, 25 (3d Cir.1970).

When considering a motion to transfer, the court
must determine "whether on balance the litigation
would more conveniently proceed and the interest
of justice be better served by transfer to a different
forum." *Jumara,* 55 F.3d at 879. This inquiry
requires "a multi-factor balancing test," embracing
not only the statutory criteria of convenience of the
parties and the witnesses and the interest of justice,
but all relevant factors, including certain private and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

public interests. *Id.* at 875. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN1] *Id* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80.

> FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

**\*2** Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187 (D.Del.1996). In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920, at \*2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any

inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.,* 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 3, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at \*2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 3

Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

*3 Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505, 513 (D.Del.1999) (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at * 3 (D.Del. Feb.17, 2004) . The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

D.Del.,2005.
Textron Innovations, Inc. v. The Toro Co.
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

Westlaw.

Slip Copy
(Cite as: 2003 WL 22928034 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

APPLE COMPUTER, INC., Plaintiff,
v.
UNOVA, INC. Intermec Technologies Corporation,
Cincinnati Machine of Unova,
Inc., and Unova Industrial Automation Systems, Inc.
Defendants.

No. Civ.A. 03-101-JJF.

Nov. 25, 2003.

Josy W. Ingersoll, and John W. Shaw, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Robert G. Krupka, Alexander F. MacKinnon, and Shannon M. Hansen, of Kirkland & Ellis, Los Angeles, California, for Plaintiff Apple Computer, Inc., of counsel.

Jack B. Blumenfeld, and Sean T. O'Kelly, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Frederick A. Lorig, and David M. Kleiman, of Bright & Lorig, Los Angeles, California, for Defendants Unova, Inc. and Intermec Technologies Corporation, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are the Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1), **Motion to Transfer** (D.I.12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. ("Unova") and Intermec Technologies Corporation ("Intermec"). For the reasons discussed, Defendants' motions will be denied.

BACKGROUND

Apple Computer, Inc., ("Apple") filed suit against the Defendants alleging infringement of several Apple patents. Unova and Intermec responded by filing the instant Motion to Dismiss and **Motion to Transfer**. Apple then filed an amended complaint

that added supplemental allegations and claims of patent infringement against Cincinnati Machine of Unova, Inc. ("CMU"), and Unova Industrial Automation Systems, Inc. ("UIAS"). Unova and Intermec filed a motion to strike the amended complaint. Unova is currently involved in a patent infringement lawsuit against Apple in the Central District of California.

Apple is a California corporation with its principal place of business in northern California. Intermec, CMU, and UIAS are subsidiaries of Unova. Unova is a Delaware corporation, has its principal place of business in California, and is in the process of moving its headquarters to Seattle. Intermec is a Washington corporation with its principal place of business in Washington. CMU and UIAS are Delaware corporations with their principal places of business in Ohio and Michigan respectively.

DISCUSSION

I. The Legal Standards

A. *Motion to Strike*

Federal Rule of Civil Procedure 12(f), in relevant part, states that "[a] court may order stricken ... any redundant, immaterial, impertinent, or scandalous matter." However, such motions are generally disfavored unless the matter is clearly irrelevant to the litigation or will prejudice the adverse party. *See Rechsteiner v. Madison Fund, Inc., 75 F.R.D. 499, 505 (D.Del.1977).*

B. *Motion to Transfer*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the Third Circuit, decisions on **motions to transfer** are guided by the private and public factors announced in *Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3d Cir.1995).* When determining whether transfer is warranted, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. *Id. at 883.* The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999).

### C. Motion to Dismiss

**\*2** Federal Rule of Civil Procedure 12(b)(6) allows a claim to be dismissed for "failure to state a claim upon which relief can be granted." The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Strum v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987), 835 F.2d at 1011. A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

### II. Assertions of the Parties

### A. Motion to Strike

Intermec and Unova assert that the claims against Cincinnati Machine, and UIAS were only added in an attempt to maintain forum in Delaware. Intermec and Unova assert that Apple's complaint could not be amended without leave of court and that such leave was not granted.

Apple contends that under Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") it had the right, without leave of court, to add UIAS and CMU and to amend its allegations based on facts in existence before the filing of the original complaint. As to its other amendments, Apple requests leave under Federal Rule of Civil Procedure 15(d) ("Rule 15(d)") to the extent leave is required. Apple makes this request in its briefs and has not filed a motion seeking leave. Apple contends that allowing its amendments will not unfairly prejudice the defendants.

### B. *Motion to Transfer*

Unova and Intermec assert that the parties in the instant case have no substantial connection to Delaware and that the case should be moved to the Central District of California, a forum more convenient for the parties and more related to the action. Unova and Intermec contend that because

Delaware is not the forum closest to Apple's residence or principal place of business, Apple will be less inconvenienced by a transfer and assert that Apple only chose the current forum for tactical reasons. Defendants allege that the case will be more quickly resolved in the Central District of California and that, because the parties already have litigation between them pending in the Central District of California, the case will be more efficiently heard in that District. Unova and Intermec contend that CMU and UIAS were not properly joined to this case and should not be considered in determining whether to transfer the case.

Unova and Intermec assert forum is appropriate in California and have asserted facts indicating that all parties are subject to personal jurisdiction in California. Unova and Intermec assert that the Central District of California is closer to the headquarters of Unova, Apple, and Intermec.

**\*3** Unova and Intermec assert that the Central District of California will provide greater access to witnesses. Unova and Intermec contend that the patents involved have inventors most of whom are in California and none of whom are in Delaware. According to Unova and Intermec, no witness with knowledge of Apple's use of the inventions or licensing of the patents is in Delaware. Apple and Unova contend that unless a court has personal jurisdiction over a witness, that witness's presence at trial cannot be ensured. Apple and Unova contend that therefore the presence of more witnesses can be ensured by moving the case to California.

Unova and Intermec assert that nothing concerning Apple's inventions is located in Delaware. Unova and Intermec contend that more sales of the allegedly infringing products have occurred in California than in Delaware and that the products are manufactured far from Delaware. Unova and Intermec contend that no documents on the design, manufacture, use, or sale of the products accused to violate the patents are located in or near Delaware.

Apple asserts that, as the plaintiff, it is entitled to deference on its choice of forum and that it has chosen an appropriate forum. Apple asserts that, with the exception of Intermec, three of the four defendants are Delaware corporations and are properly sued in Delaware even if not conducting business in the state. Apple asserts that Unova will be headquartered in Washington and not California by the time this case reaches trial.

Apple asserts that no location will be ideal for the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                              Page 3
**(Cite as: 2003 WL 22928034 (D.Del.))**

convenience of the witnesses who are dispersed throughout the United States and France. Apple contends that Defendants have not provided evidence establishing that any witness critical to its case will be unavailable for trial in Delaware. Apple contends that the key witnesses on infringement are in Washington, Michigan, and Iowa, and not in California.

Apple contends that this case is unrelated to the one pending in the Central District of California and that moving the case would not produce improvements in judicial economy. Apple contends that the disposition of this case would occur at essentially the same time in Delaware as in California.

Apple asserts that there is not sufficient reason to justify moving this case. Apple asserts that patent law does not implicate local interests and that local interest should not be a factor in deciding whether to move this case. Apple asserts that Delaware's expertise and experience in patent law also point to keeping the case in Delaware. Apple asserts that Defendants are large corporations with substantial resources who will not be substantially burdened by travel to Delaware.

*C. Motion to Dismiss*

Unova contends that all of Apple's claims against it should be dismissed; Intermec contends that Apple's claims against it alleging indirect infringement should be dismissed. Unova asserts that it is a holding company that does not make, use, sell, or import any of the accused products and that has not contributed to or induced infringement. Unova asserts that Apple has neither alleged that Unova sold infringing products nor alleged that Unova should be held liable for Intermec's sale of allegedly infringing products.

**\*4** Unova and Intermec contend that Apple has not and can not set forth a basis for its allegations of induced infringement. Unova and Intermec contend they were unaware of the patents at issue in the case before the lawsuit was filed and have introduced an affidavit in support of this contention.

Apple asserts that its amended complaint has cured any defects in the original complaint and made the motion to dismiss moot. Apple asserts that the motion to dismiss targets the non-operative former complaint and that a ruling on this complaint would be, in effect, an advisory opinion. Apple asserts that it has sufficiently pled its causes of action.

Apple asserts that no discovery has occurred in this case and that neither dismissal nor summary judgment (should the Court choose to convert the motion to dismiss) is appropriate. Apple asserts that Unova's website and public declarations indicate that Unova makes and sells products. Apple asserts that Intermec also makes and sells products. Apple asserts that Unova and Intermec both have products infringing on at least one claim of each patent at issue in this action and have been actively and intentionally inducing their customers and, in the case of Unova, subsidiaries, to use the infringing products. Apple asserts that all of the facts relevant to infringement are in Unova and Intermec's possession and that it is entitled to discovery as to its claims. Apple contends that there are material issues of fact that preclude summary judgement.

III. Analysis

*A. Motion to Strike*

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]" Fed. R. Civ. P. 15(A). "Neither a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a)." *Centifanti v. Nix*, 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). Apple's amended complaint was filed before Defendants made a responsive pleading and therefore the Court concludes that Apple was generally entitled to amend its complaint.

Even if a responsive pleading has not been filed, Court approval is required for "supplemental pleading[s] setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(D). "[A] supplemental pleading adds to the original some matter occurring after the beginning of the action or after a responsive pleading has been filed." *Klee v. Pittsburgh & W. V. Ry. Co.*, 22 F.R.D. 252, 254 (W.D.Pa.1958). Apple's claims alleging knowledge based on information conveyed in the original complaint are clearly supplemental pleadings.

Additionally, Federal Rule of Civil Procedure 21 ("Rule 21"), in relevant part, holds that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 15(A). Some courts have held that Rule 21 supersedes Rule 15 and requires court permission before parties are added. *See, e.g., Renard v. Dillman*,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 U.S.App. LEXIS 38626 (2nd Cir.1998). Other courts, including courts in this District, have indicated that, before a responsive pleading has been issued, parties may be added even without leave to amend. *See e.g., Standard Chlorine of Del., Inc. v. Sinibaldi,* 821 F.Supp. 232, 259 (D.Del.1992). The Court has not considered on the issue and need not do so today.

**\*5** Apple has requested leave to amend to the extent its pleading requires such leave. "[I]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive[ ], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment," leave to amend is to be given freely and is entrusted to the discretion of the court. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court finds that Defendants will not suffer unfair prejudice from granting leave to amend. While Apple should have made its request more formally, the Court will grant Apple leave to amend to the extent such leave is now required.

### B. *Motion to Transfer*

*Jumara v. State Farm Ins. Co.* dictates that the Court examine the private and public interest in determining whether a transfer is warranted. 55 F.3d 873, 879 (3d Cir.1995).

The Court finds that the asserted public advantages of moving the case to the Central District of California are insufficient. The parties are already involved in a dispute in the Central District of California; however, the California action is unrelated to the claims of the instant action and involves multiple parties not joined in this case. Also, on comparing the jurisdictional statistics for the Central District of California and the District of Delaware, the Court finds that moving the case to the Central District of California will produce little advantage in expediency and in the allocation of judicial resources. Neither California nor Delaware has a local interest in the decision of this case.

The Court also finds that the private factors do not favor transfer. While more witnesses can be subpoenaed in California, a particular need to subpoena these witnesses has not been demonstrated. The parties are predominantly located closer to California and neither the parties nor the case have strong ties to Delaware. However, the parties as a whole are not located close to the Central District of California and all of the parties are sophisticated and

substantial enough to litigate in Delaware. Apple is entitled to deference on its choice of forum, and therefore the Court concludes that Unova and Intermec's **Motion** to **Transfer** must be denied.

### C. *Motion to Dismiss*

Initially the Court observes that Apple's amended complaint has made parts of Unova and Intermec's motion to dismiss moot. In its Amended Complaint, Apple has alleged that, since the initial pleading, Intermec and Unova were aware of Apple's patents. In this regard Apple has plead a claim for inducement of infringement and contributory infringement.

Unova contends that it does not make, use, sell, or offer for sale any of the accused products and is entitled to the dismissal of Apple's claims. Apple has pled the opposite and has stated a claim for infringement. The parties have not yet engaged in discovery, and, at this early stage, factual determinations are not appropriate. If Unova is correct in its contentions about itself and about Apple's motives in filing suit, summary judgment and sanctions may later be appropriate. At present, however, the Court will deny Unova and Intermec's motion to dismiss.

### CONCLUSION

**\*6** For the reasons discussed, the Court has denied the Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1), **Motion to Transfer** (D.I.12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation. An Order consistent with this Memorandum Opinion will be entered.

### *ORDER*

At Wilmington, this 25th day of November, 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
  1) The Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*
  2) The **Motion to Transfer** (D.I.12-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*
  3) The Motion to Dismiss (D.I.14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
**(Cite as: 2003 WL 22928034 (D.Del.))**

Page 5

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT G

Westlaw.

Slip Copy                                                                     Page 1

Slip Copy, 2006 WL 1492249 (S.D.Tex.)
**(Cite as: Slip Copy)**

Variable Annuity Life Ins. Co. v. Bencor, Inc.
S.D.Tex.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas, Houston
Division.
THE VARIABLE ANNUITY LIFE INSURANCE
COMPANY, Plaintiff,
v.
BENCOR, INC., Defendant.
No. Civ.A. H-05-1843.

May 30, 2006.

Daniel McNeel Lane, Jr., Thomas Edwards Sanders
, Akin Gump et al., San Antonio, TX, Steven Mark
Zager, Attorney at Law, Houston, TX, for Plaintiff.
William Scott Helfand, Chamberlain Hrdlicka,
Houston, TX, for Defendant.

MEMORANDUM AND OPINION
ROSENTHAL, J.
**\*1** Defendant/counterplaintiff BENCOR, Inc., filed
a motion to confirm an arbitration award entered in
its favor against plaintiff/counterdefendant Variable
Annuity Life Insurance Company ("VALIC") and
for entry of final judgment. (Docket Entry No. 32).
VALIC filed a stipulation of dismissal under Rule
41 of the Federal Rules of Civil Procedure,
asserting that because the claims between it and
BENCOR had been resolved in arbitration and the
arbitration award fully paid, dismissal was
appropriate. (Docket Entry No. 33). VALIC
opposed the motion for entry of an order confirming
the award, (Docket Entry No. 35), and BENCOR
replied, (Docket Entry No. 38). On May 11, 2006,
Barry W. Sylvia filed a motion to intervene under
Federal Rule of Civil Procedure 24(a)(2), arguing
that he is a third-party beneficiary of the action
between VALIC and BENCOR. (Docket Entry No.
36).

Based on the motions and responses, the pleadings,
the record, and the applicable law, this court denies
VALIC's motion for entry of a stipulated dismissal
and grants BENCOR's motion for entry of an order
confirming the arbitration award in its favor and for
entry of final judgment. This court also denies
Sylvia's motion for intervention. The reasons for
these rulings are explained below.

I. Background

On March 24, 2005, VALIC sued BENCOR in state
court. BENCOR removed to federal court on the
basis of diversity jurisdiction. VALIC filed the suit
after BENCOR terminated the Marketing
Agreement the parties had entered in June 2002.
BENCOR asserted that it terminated the Agreement
after VALIC had breached by refusing to paying
BENCOR commissions and by reducing other
payments it owed BENCOR under the Agreement
to recoup commissions previously paid. BENCOR's
right to compete with VALIC during the remainder
of the contract term-which lasted until November
2007-depended on whether BENCOR was justified
in terminating the Agreement, which in turn
depended on whether VALIC had breached. In this
lawsuit, VALIC denied that its actions breached the
Agreement and asserted that BENCOR had
terminated without cause.

The Marketing Agreement provided for binding
arbitration of "any dispute" between VALIC and
BENCOR "in connection with" the Agreement. The
Agreement also provided that the "substantive and
procedural laws of the State of Texas" would
govern the arbitration; that the arbitration would be
conducted under the commercial rules of the
American Arbitration Association; that the parties
could apply to a court for interim relief pending
arbitration; and that the "award rendered by the
arbitrators may be entered in any court having
jurisdiction."

BENCOR invoked the arbitration clause in 2004,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1492249 (S.D.Tex.)
**(Cite as: Slip Copy)**

amending its arbitration demand several times to seek not only damages but also a declaratory judgment as to its rights and remedies under the Agreement. VALIC filed an answer and counterclaim in the arbitration proceeding. In this lawsuit, VALIC sought a temporary restraining order and preliminary injunction to restrain BENCOR from competing with VALIC pending the arbitration proceeding. This court denied VALIC's application for a temporary restraining order and, after discovery and an evidentiary hearing, denied the preliminary injunction. In August 2005, BENCOR filed a petition in aid of arbitration in this court under section 171.085(a) of the Texas Civil Practice and Remedies Code.

**\*2** Arbitration as called for under the Marketing Agreement took place in late February and early March 2006. The arbitration panel reached a unanimous decision in favor of BENCOR, finding that VALIC had breached the Agreement; that BENCOR had not breached the Agreement; and that BENCOR was entitled to compete with VALIC after VALIC stopped paying BENCOR commissions due under the Agreement. The panel awarded BENCOR $8,045,425.00 for damages as a result of VALIC's breach of the Marketing Agreement; $859,058.09 for BENCOR's attorneys' fees; $202,319.57 for BENCOR's costs and expenses; $35,586.60 for reimbursement of the arbitration fees and expenses in excess of BENCOR's apportioned amount; and post-award interest. VALIC did not challenge the arbitration award and has paid it in full.

### II. BENCOR's Motion to Confirm the Award and VALIC's Motion to Dismiss

VALIC asks this court to dismiss the case, nothing more. BENCOR asks this court to enter an order confirming the arbitration award and then enter final judgment. As analyzed below, BENCOR's request is firmly supported by the case law, while VALIC's has been rejected.

Under both the Federal Arbitration Act and the Texas Arbitration Act, if a party applies for a court order confirming an arbitration award, the court-assuming jurisdiction-must confirm the award unless there are grounds for vacating, modifying, or correcting it. 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11...."); Tex. Civ. Prac. & Rem.Code Ann. § 171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award."). The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the court. *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 89 n. 2 (2d Cir.2005); *Yusef Ahmed Alganhim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997); *Val-U Const. Co. of S.D. v. Rosebud Sioux Tribe,* 146 F.3d 573, 582 (8th Cir.1998); *Cullen v. Paine, Webber, Jackson & Curis, Inc.,* 863 F.2d 851, 854 (11th Cir.1989); *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986); *Blumberg v. Bergh,* No. 04-138, 2005 WL 1047592, at \*2 (Tex.App.-Fort Worth May 5, 2005) (unreported). A court is required to confirm the award unless a basis for modification or vacateur exists. *Schlobohm v. Pepperidge Farm, Inc.,* 806 F.2d 578, 580 n. 2 (5th Cir.1986); *Humm v. Millennium Income Fund., L.L.C.,* 178 S.W.3d 256, 262 (Tex.App.-Hou. [1st Dist.] 2005). The Federal and Texas Arbitration Acts list specific grounds for modifying or vacating an award, 9 U.S.C. § 10(a); Tex. Civ. Prac. & Rem.Code Ann. §§ 171.088, 171.091, and courts have held that vacateur may result if an award was rendered in "manifest disregard of the law." *Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 353 (5th Cir.2004); *Homes v. Cull,* 173 S.W.3d 565, 572 (Tex.App.-Fort Worth 2005). Judicial review of an arbitration award is "extraordinarily narrow" and "exceedingly deferential." *Prestige Ford v. Ford Dealer Computer Servs., Inc.,* 324 F.3d 391, 393 (5th Cir.2003); *Homes,* 173 S.W.3d at 572-73.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 1492249 (S.D.Tex.)
**(Cite as: Slip Copy)**

**\*3** The arbitration award in the present case issued on April 18, 2006. BENCOR moved to confirm the award two days later, on April 20, 2006. As noted, VALIC does not contest the arbitration award and has paid it in full. VALIC argues that BENCOR's petition for confirmation is improper precisely because VALIC has paid the arbitration award and not sought vacateur or modification. (Docket Entry No. 35). BENCOR responds that the Federal and Texas Arbitration Acts require this court to enter an order confirming the award.

The Marketing Agreement between VALIC and BENCOR provided that "the award rendered by the arbitrators may be entered in any court having jurisdiction." (Docket Entry No. 32, Ex. A at ¶ 11(c)). Cases involving similar arbitration agreement language have held that a court with jurisdiction to do so must grant a timely motion to affirm the arbitration award unless there is a basis to modify, vacate, or correct it. *See, e.g., Ono Pharm. Co., Ltd. v. Cortech,* No. 03-5840, 2003 WL 22481379 (S.D.N.Y. Nov.3, 2003). In *Ono Pharmaceutical,* the court also rejected an argument similar to VALIC's assertion that confirmation is inappropriate when there is no challenge to an arbitral award. Like the party resisting confirmation in *Ono Pharmaceutical,* VALIC can cite no precedent to support its position that "a party must refuse to honor an arbitral award before the award can be confirmed." *Id.* at \*3; *see also 1199 SEIU v. St. Luke Residential Health Care Facility, Inc.,* No. 04-1463, 2005 WL 1828762 (N.D.N.Y. July 26, 2005).

VALIC relies on *Derwin v. Gen. Dynamics Corp.,* 719 F.2d 484, 492 (1st Cir.1983), in which the court held that confirmation was unwarranted. In *Derwin,* the arbitration award upheld an off-the-job pass system under a collective bargaining agreement and approved certain practices for the system. *Id.* at 486. The parties neither challenged the award nor sought confirmation for almost three years after it issued. *Id.* After controversy developed over the pass system and resulted in numerous grievances, the union sought confirmation of the prior arbitration award. The court held that " [t]o grant the requested confirmation at this juncture would risk injecting the courts improperly into the arbitration process, since absent a concrete dispute there is no way for the district court to know whether there is any matter which it can properly review and its order may merely serve to skew the bargaining balance between the parties." *Id.* at 491. In *Ono Phamaceutical,* the party resisting confirmation of the award also cited the *Derwin* case. The *Ono Pharmaceutical* court noted that *Derwin* was primarily an example of special concerns over a court's role in arbitration under collective bargaining agreements. The *Ono Pharmaceutical* court also noted that the *Derwin* court stated that confirmation would be proper " ' where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand." ' 2003 WL 22481379, at \*3 n. 42 (quoting *Derwin,* 719 F.2d at 491). The *Ono Pharmaceutical* court ruled that even under *Derwin,* confirmation was appropriate.

**\*4** The same result applies here. Even under the *Derwin* standard, confirmation of the arbitration award in this case would be appropriate. Although VALIC has paid the monetary portion of the award, BENCOR also sought a declaratory judgment as to its post-termination rights under the Marketing Agreement. (Docket Entry No. 38 at 8). The award is intended to have a prospective effect, establishing both BENCOR's ability to compete with VALIC and to receive certain compensation from VALIC during the remainder of the contract term. VALIC does not allege that BENCOR seeks to extend the scope of the award to other disputes or to avoid further arbitration of other disputes, as in *Derwin.*

None of the other collective bargaining cases VALIC cites supports the result it seeks in this case. VALIC has not offered any Fifth Circuit precedent holding that a party must refuse to honor an arbitral award before the award can be confirmed. The motion for entry of an order confirming the award, and for final judgment on that basis, is granted.

### III. The Third-Party Motion to Intervene

Barry W. Sylvia, an alleged third-party beneficiary to the action between VALIC and BENCOR,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1492249 (S.D.Tex.)
**(Cite as: Slip Copy)**

moved to intervene in this action. (Docket Entry No. 36). Sylvia argues that he has a contractual relationship with VALIC that gives him the right to a 1% commission "paid as a result of [his] relationship with both the Plaintiff and the Defendant, which is the subject matter of the dispute between the parties herein." (Docket Entry No. 36). Sylvia asserts the right to $99,000. (Docket Entry No. 37).

Federal Rule of Civil Procedure 24(a) addresses intervention as of right and states:
Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Rule 24(b), which provides for permissive intervention, states:Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**\*5** Fed. R. Civ. P. 24(a).

Sylvia's first problem is that he filed his motion too late. The Fifth Circuit has identified four factors to consider in evaluating whether a motion to intervene is timely: "(1) the length of time the intervenor knew or should have known of his

interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances." *Trans Chem. Ltd. v. China Nat. Machinery Import & Export Corp.*, 332 F.3d 812, 822 (5th Cir.2003). This case was removed to this court on May 24, 2005, one year ago. Sylvia has not shown why he failed to intervene in this case for a year after removal, after the parties had arbitrated their dispute, an arbitration award had been issued, and this court was asked to confirm the award. The motion is not timely.

Sylvia also fails to identify an interest in the subject matter of this litigation that would justify intervention as of right or identify how his claim has a common question of law or fact with the litigation. Nothing remains to be done in this case except confirm the award. No basis for intervention exists.

### III. Conclusion

BENCOR's motion for confirmation of the arbitration award is granted. The arbitration award issued on April 18, 2006 is confirmed. VALIC's motion to dismiss is denied. Sylvia's motion to intervene is denied. Final judgment will be entered by separate order.

S.D.Tex.,2006.
Variable Annuity Life Ins. Co. v. Bencor, Inc.
Slip Copy, 2006 WL 1492249 (S.D.Tex.)

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

**Table C-3.**
**U.S. District Courts—Civil Cases Commenced, by Nature of Suit and District, During the 12-Month Period Ending March 31, 2006**

| Circuit and District | Total Civil Cases | Total U.S. Civil | Contract | Real Property Actions | Tort Actions | Civil Rights | U.S. Cases — Prisoner Petitions | | | | | Mandamus and Other | Forfeitures and Penalties | Labor Suits | Social Security | All Other |
| | | | | | | | Motions to Vacate Sentence | Habeas Corpus General | Death Penalty | Prison Civil Rights | Prison Condition | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL** | 244,068 | 47,298 | 3,103 | 2,096 | 2,019 | 2,603 | 8,480 | 4,561 | 7 | 910 | 245 | 643 | 2,299 | 469 | 14,404 | 5,459 |
| DC | 2,566 | 1,427 | 37 | 5 | 63 | 269 | 55 | 291 | - | 168 | 11 | 9 | 18 | 10 | 37 | 454 |
| **1ST** | 6,139 | 1,438 | 47 | 131 | 85 | 79 | 262 | 98 | 2 | 29 | 2 | 28 | 87 | 24 | 355 | 209 |
| ME | 448 | 140 | 3 | 5 | 7 | 5 | 27 | 2 | - | - | - | - | 7 | 2 | 7 | 14 |
| MA | 3,213 | 633 | 31 | 13 | 43 | 32 | 81 | 76 | 2 | 24 | 1 | 26 | 22 | 14 | 68 | 142 |
| NH | 490 | 108 | 2 | 1 | 3 | 4 | 13 | - | - | 1 | 1 | 1 | 26 | - | 126 | 18 |
| RI | 580 | 145 | 1 | - | 4 | 4 | 27 | 4 | - | 1 | 1 | - | 8 | 4 | 40 | 14 |
| PR | 1,408 | 412 | 10 | 110 | 28 | 34 | 114 | 16 | - | 4 | 1 | 1 | 24 | 4 | 75 | 21 |
| **2ND** | 22,422 | 3,489 | 163 | 128 | 200 | 179 | 491 | 347 | - | 26 | 8 | 88 | 184 | 42 | 1,081 | 554 |
| CT | 2,020 | 287 | 12 | 4 | 12 | 27 | 35 | 57 | - | 4 | - | 5 | 17 | 9 | 58 | 47 |
| NY,N | 1,687 | 419 | 8 | 2 | 22 | 17 | 42 | 1 | - | - | - | - | 32 | 1 | 280 | 14 |
| NY,E | 6,126 | 1,051 | 110 | 12 | 79 | 59 | 113 | 86 | - | 6 | - | 43 | 27 | 8 | 265 | 243 |
| NY,S | 10,520 | 1,091 | 21 | 6 | 65 | 54 | 234 | 148 | - | 11 | 7 | 37 | 57 | 14 | 217 | 220 |
| NY,W | 1,720 | 518 | 11 | 69 | 16 | 17 | 43 | 53 | - | 5 | 1 | 3 | 37 | 9 | 231 | 24 |
| VT | 349 | 123 | 1 | 33 | 6 | 5 | 24 | 2 | - | - | 1 | - | 14 | 1 | 30 | 6 |
| **3RD** | 27,444 | 3,857 | 80 | 240 | 170 | 209 | 383 | 742 | 1 | 161 | 18 | 32 | 110 | 44 | 1,093 | 374 |
| DE | 1,067 | 103 | 1 | 2 | 7 | 16 | 13 | - | - | 17 | - | - | 4 | 4 | 38 | 17 |
| NJ | 6,103 | 1,024 | 31 | 2 | 54 | 79 | 82 | 273 | - | 17 | - | 15 | 31 | 19 | 287 | 134 |
| PA,E | 14,439 | 947 | 25 | 29 | 50 | 65 | 176 | 88 | - | 3 | - | 7 | 8 | 7 | 379 | 110 |
| PA,M | 2,819 | 877 | 3 | 158 | 17 | 19 | 72 | 343 | 1 | 123 | 5 | 4 | 12 | 4 | 101 | 15 |
| PA,W | 2,633 | 623 | 18 | 35 | 35 | 23 | 39 | 32 | - | 15 | 13 | 1 | 54 | 10 | 288 | 60 |
| VI | 383 | 83 | 2 | 14 | 7 | 7 | 1 | 6 | - | 2 | - | 5 | 1 | - | - | 38 |
| **4TH** | 18,241 | 4,633 | 92 | 286 | 204 | 221 | 1,299 | 347 | 1 | 88 | 21 | 112 | 261 | 18 | 1,404 | 279 |
| MD | 3,532 | 882 | 17 | 1 | 46 | 78 | 162 | 7 | - | 7 | - | 79 | 94 | 4 | 291 | 96 |
| NC,E | 1,317 | 555 | 29 | 10 | 17 | 22 | 94 | 101 | - | 10 | 8 | 21 | 47 | 1 | 173 | 22 |
| NC,M | 1,201 | 425 | 8 | 1 | 8 | 14 | 243 | 7 | 1 | 10 | - | - | 45 | 1 | 79 | 7 |
| NC,W | 1,004 | 259 | - | 9 | 4 | 11 | 120 | - | - | 2 | - | - | 24 | 3 | 69 | 17 |
| SC | 3,768 | 851 | 13 | 259 | 35 | 12 | 179 | 68 | - | 2 | 5 | 5 | 10 | - | 221 | 42 |
| VA,E | 3,950 | 621 | 14 | 3 | 58 | 63 | 232 | 60 | - | 8 | 6 | 5 | 24 | 5 | 73 | 70 |
| VA,W | 1,382 | 492 | 2 | - | 12 | 9 | 154 | 51 | - | 22 | - | 5 | - | - | 226 | 8 |
| WV,N | 643 | 238 | 2 | 2 | 10 | 8 | 56 | 43 | - | 25 | 2 | 1 | 8 | 1 | 79 | 7 |
| WV,S | 1,444 | 310 | 7 | 1 | 14 | 4 | 59 | 10 | - | 2 | - | 2 | 7 | 3 | 193 | 10 |

## Table C-3. (March 31, 2006—Continued)

| Circuit and District | Total Private Civil Cases | Contract | Real Property | FELA* | Marine Personal Injury | Motor Vehicle Personal Injury | Other Personal Injury | Other Tort Actions | Civil Rights | Habeas Corpus General | Death Penalty | Conditions and Civil Rights | Mandamus and Other | Copyright, Patent, Trademark | Labor Suits | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 198,770 | 24,854 | 2,669 | 594 | 1,636 | 4,218 | 37,849 | 3,900 | 31,440 | 18,755 | 230 | 23,846 | 620 | 12,015 | 17,133 | 17,211 |
| DC | 1,139 | 121 | 26 | - | 1 | 19 | 142 | 21 | 309 | 40 | 1 | 79 | 1 | 59 | 139 | 182 |
| 1ST | 4,701 | 851 | 107 | 24 | 69 | 94 | 620 | 121 | 898 | 204 | 1 | 201 | 21 | 392 | 447 | 651 |
| ME | 308 | 83 | 3 | 1 | 4 | 8 | 43 | 8 | 73 | 11 | - | 26 | - | 18 | 15 | 35 |
| MA | 2,580 | 481 | 27 | 23 | 45 | 44 | 285 | 81 | 438 | 139 | - | 83 | 17 | 263 | 265 | 408 |
| NH | 382 | 60 | 5 | - | - | 8 | 36 | 6 | 64 | 26 | - | 47 | - | 36 | 26 | 68 |
| RI | 435 | 93 | 7 | - | 11 | 7 | 40 | 20 | 74 | 19 | - | 15 | 2 | 42 | 50 | 55 |
| PR | 996 | 174 | 65 | - | 9 | 27 | 216 | 6 | 249 | 9 | - | 30 | 2 | 33 | 91 | 85 |
| 2ND | 18,933 | 2,973 | 113 | 98 | 110 | 523 | 2,484 | 388 | 3,510 | 1,087 | 1 | 1,220 | 22 | 1,453 | 2,096 | 2,855 |
| CT | 1,733 | 275 | 16 | 16 | 9 | 28 | 110 | 58 | 496 | 55 | - | 132 | 2 | 126 | 137 | 273 |
| NY,N | 1,268 | 108 | 16 | 13 | - | 29 | 104 | 27 | 240 | 190 | 1 | 277 | 1 | 64 | 98 | 100 |
| NY,E | 5,075 | 422 | 37 | 28 | 44 | 240 | 761 | 85 | 1,089 | 308 | - | 90 | 1 | 323 | 708 | 937 |
| NY,S | 9,429 | 2,025 | 32 | 38 | 55 | 187 | 1,317 | 195 | 1,431 | 379 | - | 508 | 13 | 864 | 985 | 1,399 |
| NY,W | 1,202 | 109 | 8 | 4 | 1 | 24 | 157 | 16 | 207 | 147 | - | 199 | 5 | 61 | 146 | 122 |
| VT | 226 | 34 | 4 | - | - | 15 | 35 | 7 | 47 | 8 | - | 14 | - | 15 | 22 | 24 |
| 3RD | 23,787 | 2,461 | 528 | 115 | 69 | 552 | 8,275 | 306 | 3,159 | 1,293 | 29 | 1,579 | 23 | 1,885 | 1,398 | 2,115 |
| DE | 964 | 84 | 2 | - | - | 13 | 23 | 12 | 127 | 74 | - | 157 | 3 | 166 | 24 | 277 |
| NJ | 5,079 | 923 | 37 | 6 | 38 | 189 | 554 | 111 | 856 | 179 | 2 | 369 | 9 | 368 | 765 | 673 |
| PA,E | 13,492 | 883 | 28 | 89 | 17 | 220 | 7,394 | 125 | 1,283 | 566 | 18 | 496 | 7 | 1,237 | 340 | 791 |
| PA,M | 1,942 | 235 | 407 | 9 | - | 84 | 109 | 23 | 326 | 233 | 2 | 290 | 2 | 28 | 75 | 119 |
| PA,W | 2,010 | 305 | 17 | 11 | 8 | 32 | 122 | 30 | 536 | 232 | 7 | 260 | 1 | 86 | 191 | 172 |
| VI | 300 | 31 | 39 | - | 4 | 14 | 73 | 5 | 31 | 9 | - | 7 | 1 | - | 3 | 83 |
| 4TH | 13,608 | 1,916 | 144 | 18 | 46 | 428 | 1,855 | 473 | 1,930 | 1,330 | 21 | 2,347 | 176 | 852 | 1,120 | 1,152 |
| MD | 2,650 | 424 | 23 | 2 | 9 | 120 | 253 | 58 | 475 | 121 | 7 | 359 | 135 | 108 | 234 | 319 |
| NC,E | 762 | 106 | 10 | - | 10 | 15 | 61 | 16 | 153 | 100 | 7 | 134 | 1 | 77 | 32 | 40 |
| NC,M | 776 | 82 | 7 | 1 | 1 | 13 | 62 | 12 | 135 | 142 | 3 | 139 | 1 | 80 | 52 | 45 |
| NC,W | 745 | 112 | 7 | 1 | 1 | 14 | 116 | 17 | 126 | 51 | 2 | 79 | - | 87 | 56 | 77 |
| SC | 2,917 | 409 | 16 | 6 | 12 | 124 | 361 | 44 | 446 | 251 | 3 | 683 | 22 | 100 | 338 | 102 |
| VA,E | 3,329 | 403 | 16 | 2 | 9 | 49 | 754 | 61 | 345 | 438 | 4 | 519 | 14 | 168 | 264 | 283 |
| VA,W | 890 | 82 | 39 | 2 | - | 26 | 75 | 13 | 115 | 126 | - | 300 | 1 | 15 | 48 | 47 |
| WV,N | 405 | 145 | 5 | - | 1 | 28 | 60 | 4 | 31 | 41 | - | 41 | - | 6 | 20 | 25 |
| WV,S | 1,134 | 153 | 11 | 4 | 4 | 39 | 113 | 248 | 104 | 63 | - | 93 | 1 | 11 | 76 | 214 |

46

## Table C-3. (March 31, 2006—Continued)

| Circuit and District | Total Civil Cases | Total U.S. Civil | Contract | Real Property Actions | Tort Actions | Civil Rights | Motions to Vacate Sentence | Habeas Corpus General | Death Penalty | Prison Civil Rights | Prison Condition | Mandamus and Other | Forfeitures and Penalties | Labor Suits | Social Security | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **5TH** | **34,822** | **5,856** | **914** | **59** | **238** | **271** | **1,495** | **850** | **-** | **119** | **16** | **28** | **289** | **43** | **1,094** | **440** |
| LA,E | 7,302 | 235 | 8 | 8 | 45 | 28 | 38 | 19 | - | 3 | - | - | 3 | 3 | 55 | 25 |
| LA,M | 1,504 | 60 | 8 | 4 | 3 | 3 | 23 | 4 | - | 3 | - | - | 3 | - | 29 | 8 |
| LA,W | 2,351 | 697 | 10 | 23 | 34 | 16 | 69 | 275 | - | 7 | 11 | 3 | - | 2 | 221 | 26 |
| MS,N | 1,182 | 102 | 5 | 2 | 8 | 8 | 8 | 1 | - | 7 | - | - | 5 | 1 | 49 | 7 |
| MS,S | 4,398 | 171 | 4 | 10 | 14 | 13 | 58 | 16 | - | 1 | 3 | - | 16 | 2 | 35 | 10 |
| TX,N | 4,577 | 891 | 32 | 2 | 21 | 40 | 229 | 139 | - | 14 | - | 2 | 16 | 15 | 238 | 141 |
| TX,E | 2,971 | 589 | 4 | 1 | 12 | 23 | 123 | 138 | - | 58 | 1 | 1 | 19 | 15 | 149 | 44 |
| TX,S | 6,912 | 2,014 | 807 | 7 | 42 | 80 | 503 | 210 | - | 16 | 1 | 12 | 68 | 15 | 162 | 100 |
| TX,W | 3,425 | 1,077 | - | - | 60 | 60 | 436 | 60 | - | 19 | 1 | 4 | 157 | 3 | 156 | 79 |
| **6TH** | **22,556** | **4,545** | **442** | **366** | **142** | **214** | **580** | **223** | **1** | **62** | **16** | **13** | **189** | **71** | **1,828** | **398** |
| KY,E | 2,188 | 1,150 | 5 | 166 | 14 | 8 | 43 | 131 | - | 47 | 10 | 2 | 9 | 5 | 675 | 35 |
| KY,W | 1,510 | 321 | 4 | 130 | 16 | 8 | 28 | 2 | - | 1 | - | - | 16 | 1 | 98 | 18 |
| MI,E | 5,642 | 1,013 | 362 | 13 | 28 | 54 | 109 | 10 | 1 | 1 | - | 6 | 64 | 15 | 237 | 114 |
| MI,W | 1,537 | 234 | 8 | 2 | 7 | 17 | 60 | 8 | - | 1 | - | - | 13 | 6 | 88 | 25 |
| OH,N | 5,176 | 599 | 29 | 16 | 32 | 47 | 82 | 38 | 1 | 6 | 1 | 3 | 12 | 16 | 224 | 91 |
| OH,S | 2,402 | 483 | 16 | 9 | 15 | 31 | 55 | 5 | - | 3 | 1 | 1 | 44 | 17 | 236 | 50 |
| TN,E | 1,334 | 270 | 10 | 7 | 11 | 7 | 87 | - | - | 1 | 2 | 1 | 3 | 5 | 123 | 14 |
| TN,M | 1,446 | 233 | 7 | 22 | 11 | 14 | 41 | - | - | 2 | - | - | 10 | 3 | 96 | 29 |
| TN,W | 1,321 | 242 | 5 | 1 | 8 | 28 | 75 | 27 | - | 3 | - | - | 18 | 3 | 51 | 22 |
| **7TH** | **16,811** | **2,659** | **318** | **336** | **104** | **153** | **463** | **129** | **-** | **23** | **10** | **15** | **158** | **32** | **598** | **320** |
| IL,N | 7,608 | 1,008 | 276 | 17 | 50 | 101 | 111 | 27 | - | 8 | 6 | 8 | 22 | 14 | 140 | 228 |
| IL,C | 1,076 | 232 | 5 | 89 | 3 | 11 | 45 | 9 | - | 1 | - | 1 | 13 | 1 | 46 | 9 |
| IL,S | 1,254 | 246 | 4 | 26 | 22 | 9 | 49 | 61 | - | 4 | 1 | 5 | 8 | 1 | 42 | 14 |
| IN,N | 1,885 | 288 | 10 | 59 | 7 | 6 | 61 | - | - | 4 | - | - | 30 | 3 | 97 | 14 |
| IN,S | 2,802 | 528 | 13 | 135 | 14 | 12 | 106 | 4 | - | 2 | 2 | - | 29 | 8 | 184 | 21 |
| WI,E | 1,428 | 192 | 4 | 1 | 5 | 8 | 46 | 6 | - | 1 | 1 | 2 | 35 | 3 | 64 | 16 |
| WI,W | 758 | 165 | 6 | 9 | 3 | 6 | 45 | 22 | - | 8 | - | - | 21 | 2 | 25 | 18 |
| **8TH** | **15,982** | **3,454** | **90** | **164** | **106** | **143** | **591** | **403** | **-** | **38** | **34** | **16** | **122** | **25** | **1,486** | **236** |
| AR,E | 2,954 | 626 | 12 | 33 | 8 | 18 | 37 | 204 | - | 9 | 29 | 1 | 2 | - | 261 | 12 |
| AR,W | 753 | 252 | 4 | 4 | 1 | 9 | 26 | - | - | - | 1 | - | 7 | - | 198 | 4 |
| IA,N | 569 | 229 | 14 | 14 | 2 | 3 | 69 | 4 | - | 2 | - | 1 | 15 | - | 112 | 4 |
| IA,S | 868 | 276 | 1 | 28 | 5 | 2 | 82 | 3 | - | 2 | - | 1 | 15 | 1 | 124 | 12 |
| MN | 3,676 | 376 | 14 | 4 | 18 | 19 | 46 | 109 | - | 11 | - | 2 | 19 | 9 | 66 | 59 |
| MO,E | 2,810 | 466 | 15 | 2 | 22 | 48 | 106 | 10 | - | 5 | - | 4 | 20 | 7 | 191 | 36 |
| MO,W | 2,597 | 740 | 15 | 1 | 24 | 22 | 106 | 47 | - | 4 | - | 7 | 12 | 4 | 429 | 65 |
| NE | 1,109 | 267 | 6 | 51 | 7 | 22 | 66 | 12 | - | 1 | - | 1 | 20 | 4 | 60 | 30 |
| ND | 230 | 89 | 3 | 24 | 9 | 7 | 13 | 1 | - | - | - | - | 4 | - | 17 | 8 |
| SD | 416 | 133 | 18 | 3 | 10 | 6 | 40 | 13 | - | 4 | - | - | 5 | - | 28 | 6 |

*Note: The "Motions to Vacate Sentence," "Habeas Corpus General," "Death Penalty," "Prison Civil Rights," "Prison Condition," and "Mandamus and Other" columns fall under the grouping "U.S. Cases — Prisoner Petitions."*

# Table C-3. (March 31, 2006—Continued)

| Circuit and District | Total Private Civil Cases | Contract | Real Property | FELA* | Marine Personal Injury | Motor Vehicle Personal Injury | Other Personal Injury | Other Tort Actions | Civil Rights | Prisoner Petitions Habeas Corpus General | Death Penalty | Conditions and Civil Rights | Mandamus and Other | Copyright, Patent, Trademark | Labor Suits | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **5TH** | **28,766** | **3,589** | **312** | **56** | **727** | **802** | **9,120** | **450** | **2,629** | **3,391** | **61** | **3,326** | **73** | **1,218** | **1,466** | **1,546** |
| LA,E | 7,067 | 460 | 95 | 8 | 375 | 154 | 4,750 | 122 | 237 | 374 | 9 | 192 | 8 | 48 | 86 | 149 |
| LA,M | 1,424 | 106 | 7 | 1 | 14 | 27 | 180 | 13 | 119 | 103 | - | 265 | 5 | 10 | 494 | 80 |
| LA,W | 1,654 | 211 | 24 | 1 | 102 | 67 | 314 | 35 | 174 | 207 | 1 | 307 | 4 | 42 | 77 | 53 |
| MS,N | 1,080 | 143 | 13 | 1 | 4 | 127 | 249 | 26 | 161 | 174 | 1 | 187 | - | 11 | 14 | 33 |
| MS,S | 4,227 | 775 | 39 | 3 | 13 | 96 | 2,339 | 45 | 249 | 170 | 3 | 352 | 29 | 23 | 43 | 75 |
| TX,N | 3,686 | 495 | 45 | 1 | 1 | 34 | 191 | 74 | 516 | 779 | 14 | 653 | 5 | 275 | 193 | 385 |
| TX,E | 2,382 | 237 | 20 | 14 | 10 | 136 | 374 | 30 | 211 | 471 | 3 | 472 | 5 | 221 | 82 | 96 |
| TX,S | 4,898 | 853 | 42 | 27 | 204 | 80 | 538 | 73 | 527 | 751 | 20 | 612 | 7 | 358 | 352 | 454 |
| TX,W | 2,348 | 309 | 27 | - | 3 | 46 | 185 | 32 | 435 | 426 | 13 | 286 | - | 230 | 125 | 221 |
| **6TH** | **18,011** | **2,073** | **592** | **73** | **90** | **408** | **4,428** | **305** | **3,162** | **1,633** | **16** | **1,498** | **29** | **757** | **1,694** | **1,253** |
| KY,E | 1,038 | 195 | 11 | 4 | 2 | 75 | 264 | 18 | 154 | 82 | 1 | 78 | 2 | 15 | 56 | 81 |
| KY,W | 1,189 | 178 | 10 | 8 | 22 | 67 | 321 | 21 | 170 | 73 | 1 | 93 | - | 35 | 122 | 69 |
| MI,E | 4,629 | 558 | 66 | 18 | 39 | 50 | 808 | 80 | 738 | 657 | 1 | 298 | 6 | 254 | 599 | 458 |
| MI,W | 1,303 | 118 | 13 | 3 | 1 | 9 | 41 | 46 | 185 | 229 | - | 402 | 4 | 51 | 95 | 106 |
| OH,N | 4,577 | 366 | 388 | 17 | 5 | 49 | 2,193 | 45 | 533 | 223 | 7 | 110 | 7 | 129 | 291 | 214 |
| OH,S | 1,919 | 277 | 19 | 12 | 10 | 28 | 187 | 33 | 542 | 135 | 5 | 96 | 4 | 150 | 279 | 142 |
| TN,E | 1,064 | 142 | 10 | 6 | 6 | 69 | 183 | 19 | 270 | 63 | 2 | 129 | 1 | 25 | 83 | 59 |
| TN,M | 1,213 | 113 | 65 | 2 | 3 | 21 | 240 | 17 | 286 | 66 | - | 152 | 2 | 55 | 115 | 77 |
| TN,W | 1,079 | 126 | 10 | 3 | 6 | 40 | 191 | 26 | 284 | 105 | 1 | 140 | 3 | 43 | 54 | 47 |
| **7TH** | **14,152** | **1,650** | **267** | **110** | **34** | **249** | **1,018** | **275** | **3,260** | **1,122** | **6** | **1,463** | **8** | **780** | **2,196** | **1,714** |
| IL,N | 6,600 | 865 | 216 | 47 | 7 | 86 | 385 | 167 | 1,508 | 180 | 1 | 314 | 2 | 466 | 1,379 | 975 |
| IL,C | 844 | 78 | 11 | 4 | 4 | 2 | 39 | 10 | 198 | 80 | 1 | 185 | - | 39 | 135 | 59 |
| IL,S | 1,008 | 98 | 7 | 29 | 9 | 50 | 240 | 31 | 149 | 53 | 1 | 168 | 2 | 20 | 91 | 50 |
| IN,N | 1,597 | 161 | 12 | 9 | 2 | 59 | 115 | 19 | 369 | 258 | - | 250 | 1 | 51 | 182 | 108 |
| IN,S | 2,274 | 238 | 13 | 16 | 2 | 42 | 159 | 24 | 624 | 329 | 3 | 258 | 1 | 73 | 218 | 274 |
| WI,E | 1,236 | 125 | 8 | 4 | - | 4 | 58 | 16 | 267 | 156 | - | 156 | 1 | 87 | 136 | 219 |
| WI,W | 593 | 85 | - | 1 | - | 6 | 22 | 8 | 145 | 66 | - | 132 | - | 44 | 55 | 29 |
| **8TH** | **12,528** | **1,216** | **59** | **31** | **19** | **306** | **4,164** | **320** | **1,877** | **827** | **9** | **1,477** | **28** | **529** | **1,157** | **500** |
| AR,E | 2,328 | 95 | 11 | 2 | 4 | 43 | 1,233 | 12 | 344 | 117 | 3 | 322 | 2 | 21 | 94 | 25 |
| AR,W | 501 | 70 | 5 | 1 | 1 | 24 | 70 | 16 | 88 | 14 | 1 | 121 | - | 16 | 43 | 32 |
| IA,N | 340 | 37 | 9 | 5 | 5 | 6 | 40 | 5 | 75 | 40 | - | 62 | 1 | 24 | 29 | 18 |
| IA,S | 592 | 71 | 9 | 5 | 3 | 6 | 69 | 9 | 129 | 54 | - | 96 | 1 | 72 | 36 | 30 |
| MN | 3,300 | 308 | 7 | 4 | 3 | 24 | 1,409 | 208 | 373 | 172 | - | 124 | 4 | 162 | 385 | 119 |
| MO,E | 2,344 | 226 | 11 | 3 | 3 | 101 | 825 | 29 | 360 | 165 | 4 | 190 | - | 112 | 205 | 110 |
| MO,W | 1,857 | 202 | 11 | 8 | 2 | 63 | 382 | 28 | 298 | 184 | - | 392 | 18 | 60 | 128 | 86 |
| NE | 842 | 138 | 4 | 8 | - | 18 | 68 | 25 | 155 | 39 | 1 | 102 | 2 | 43 | 204 | 55 |
| ND | 141 | 22 | 2 | - | - | 11 | 18 | 5 | 14 | 4 | - | 15 | - | 13 | 22 | 12 |
| SD | 283 | 47 | 1 | - | - | 12 | 50 | 2 | 41 | 38 | - | 53 | - | 6 | 11 | 22 |

# Table C-3. (March 31, 2006—Continued)

*Columns under "U.S. Cases." "Prisoner Petitions" comprises: Motions to Vacate Sentence, Habeas Corpus General, Death Penalty, Prison Civil Rights, and Prison Condition.*

| Circuit and District | Total Civil Cases | Total U.S. Civil | Contract | Real Property Actions | Tort Actions | Civil Rights | Motions to Vacate Sentence | Habeas Corpus General | Death Penalty | Prison Civil Rights | Prison Condition | Mandamus and Other | Forfeitures and Penalties | Labor Suits | Social Security | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | **41,030** | **8,581** | **500** | **107** | **492** | **499** | **1,187** | **602** | **1** | **121** | **5** | **189** | **489** | **88** | **2,831** | **1,470** |
| AK | 367 | 121 | 8 | 4 | 19 | 12 | 17 | - | - | 1 | - | 1 | 11 | - | 26 | 22 |
| AZ | 5,006 | 866 | 40 | 3 | 60 | 33 | 363 | 71 | - | 8 | 1 | 12 | 64 | 7 | 124 | 80 |
| CA,N | 6,624 | 799 | 92 | 6 | 68 | 76 | 55 | 42 | - | 8 | 2 | 25 | 21 | 10 | 155 | 239 |
| CA,E | 4,197 | 748 | 13 | 7 | 36 | 36 | 83 | 58 | - | 18 | - | 1 | 21 | - | 370 | 86 |
| CA,C | 11,585 | 2,931 | 264 | 8 | 109 | 130 | 188 | 266 | 1 | 56 | 1 | 20 | 178 | 31 | 1,064 | 616 |
| CA,S | 2,646 | 582 | 6 | 8 | 65 | 51 | 127 | 10 | - | 11 | - | 101 | 67 | 3 | 70 | 63 |
| HI | 785 | 143 | 15 | 8 | 13 | 22 | 31 | 1 | - | - | - | - | 9 | 4 | 4 | 37 |
| ID | 567 | 138 | 6 | 16 | 7 | 7 | 23 | 3 | - | 1 | - | 2 | 9 | 3 | 46 | 18 |
| MT | 630 | 189 | 4 | 27 | 19 | 4 | 48 | 1 | - | 2 | - | - | 3 | - | 65 | 15 |
| NV | 2,232 | 312 | 11 | - | 23 | 41 | 53 | 3 | - | 2 | - | - | 27 | 5 | 20 | 92 |
| OR | 2,572 | 793 | 17 | 8 | 21 | 27 | 88 | 15 | - | 7 | 1 | 11 | 20 | 14 | 480 | 81 |
| WA,E | 736 | 291 | 8 | 7 | 12 | 10 | 41 | 19 | - | 1 | - | 11 | 19 | - | 174 | 14 |
| WA,W | 2,997 | 638 | 13 | 5 | 36 | 41 | 62 | 109 | - | 2 | - | 5 | 22 | 6 | 232 | 105 |
| GUAM | 39 | 18 | 1 | - | - | 5 | 1 | 4 | - | 1 | - | - | 1 | - | 1 | 1 |
| NMI | 47 | 12 | 2 | - | - | 4 | 3 | - | - | 1 | - | - | 2 | - | - | 1 |
| **10TH** | **10,089** | **2,396** | **62** | **141** | **91** | **126** | **449** | **87** | **-** | **28** | **65** | **7** | **128** | **30** | **890** | **294** |
| CO | 2,766 | 396 | 16 | 6 | 12 | 30 | 28 | 13 | - | 3 | 8 | 4 | 21 | 7 | 154 | 94 |
| KS | 1,537 | 457 | 9 | 40 | 6 | 21 | 88 | 54 | - | - | 57 | 2 | 12 | 5 | 146 | 17 |
| NM | 1,300 | 394 | 7 | 5 | 30 | 27 | 127 | 1 | - | 2 | - | - | 47 | 5 | 110 | 35 |
| OK,N | 779 | 170 | 3 | 11 | 6 | 5 | 34 | 3 | - | - | - | - | 6 | 1 | 85 | 14 |
| OK,E | 541 | 224 | 2 | 12 | 7 | 3 | 24 | 13 | - | 19 | - | - | 3 | - | 136 | 5 |
| OK,W | 1,576 | 350 | 13 | 58 | 15 | 17 | 42 | - | - | - | - | - | 11 | 3 | 159 | 31 |
| UT | 1,275 | 338 | 11 | 9 | 11 | 22 | 83 | 3 | - | 1 | - | 1 | 24 | 9 | 82 | 82 |
| WY | 315 | 67 | 1 | - | 4 | 1 | 23 | - | - | - | - | - | 4 | - | 18 | 16 |
| **11TH** | **26,166** | **5,163** | **358** | **135** | **124** | **240** | **1,225** | **442** | **1** | **47** | **39** | **106** | **266** | **42** | **1,707** | **431** |
| AL,N | 2,766 | 535 | 4 | 2 | 5 | 32 | 60 | 31 | - | 4 | - | 2 | 23 | 3 | 349 | 22 |
| AL,M | 1,274 | 197 | 2 | 3 | 3 | 14 | 53 | 5 | - | - | - | - | 17 | 1 | 84 | 16 |
| AL,S | 772 | 161 | 3 | 4 | 3 | 8 | 36 | 1 | - | 1 | - | - | 5 | 1 | 93 | 7 |
| FL,N | 1,498 | 368 | 5 | 8 | 16 | 18 | 120 | 67 | - | - | 15 | 1 | 8 | 1 | 96 | 13 |
| FL,M | 6,692 | 1,412 | 44 | 21 | 41 | 47 | 310 | 145 | - | 15 | 19 | 39 | 32 | 3 | 576 | 120 |
| FL,S | 6,829 | 1,378 | 262 | 95 | 27 | 62 | 376 | 120 | - | 8 | - | 9 | 72 | 22 | 131 | 194 |
| GA,N | 3,984 | 632 | 28 | 5 | 14 | 37 | 130 | 54 | 1 | 16 | 4 | 53 | 73 | 8 | 172 | 38 |
| GA,M | 1,194 | 288 | 7 | - | 9 | 8 | 78 | 7 | - | - | - | 1 | 19 | 1 | 147 | 11 |
| GA,S | 1,157 | 192 | 3 | - | 6 | 14 | 62 | 12 | - | 4 | 1 | 1 | 17 | 3 | 59 | 10 |

# Table C-3. (March 31, 2006—Continued)

Private Cases — Prisoner Petitions columns: Habeas Corpus General, Death Penalty, Conditions and Civil Rights, Mandamus and Other.

| Circuit and District | Total Private Civil Cases | Contract | Real Property | FELA* | Marine Personal Injury | Motor Vehicle Personal Injury | Other Personal Injury | Other Tort Actions | Civil Rights | Habeas Corpus General | Death Penalty | Conditions and Civil Rights | Mandamus and Other | Copyright, Patent, Trademark | Labor Suits | All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | 32,449 | 3,756 | 234 | 46 | 255 | 224 | 3,164 | 702 | 4,977 | 4,807 | 38 | 6,141 | 96 | 2,833 | 2,113 | 3,083 |
| AK | 246 | 76 | 3 | 1 | 10 | 5 | 35 | 2 | 47 | 16 | - | 15 | - | 2 | 18 | 17 |
| AZ | 4,140 | 321 | 27 | - | 2 | 20 | 113 | 26 | 391 | 314 | 2 | 2,422 | 3 | 168 | 93 | 237 |
| CA,N | 5,825 | 495 | 22 | 6 | 32 | 15 | 1,360 | 310 | 656 | 734 | 4 | 652 | 9 | 477 | 476 | 577 |
| CA,E | 3,449 | 259 | 27 | 11 | 1 | 22 | 139 | 30 | 654 | 894 | 8 | 1,072 | 9 | 91 | 95 | 138 |
| CA,C | 8,654 | 1,166 | 47 | 6 | 18 | 34 | 616 | 155 | 1,120 | 1,627 | 19 | 745 | 9 | 1,371 | 752 | 969 |
| CA,S | 2,064 | 192 | 13 | - | 13 | 6 | 102 | 44 | 506 | 338 | - | 251 | 28 | 191 | 61 | 319 |
| HI | 642 | 123 | 17 | - | 25 | 8 | 34 | 14 | 208 | 20 | - | 42 | 4 | 41 | 42 | 64 |
| ID | 429 | 80 | 12 | - | - | 10 | 54 | 6 | 74 | 39 | - | 76 | - | 7 | 23 | 46 |
| MT | 441 | 111 | 10 | - | - | 22 | 56 | 6 | 53 | 28 | - | 78 | 2 | 20 | 21 | 29 |
| NV | 1,920 | 356 | 21 | 2 | 9 | 16 | 112 | 33 | 383 | 248 | 2 | 212 | 2 | 185 | 93 | 253 |
| OR | 1,779 | 200 | 8 | 3 | - | 39 | 112 | 25 | 442 | 333 | 1 | 182 | 27 | 116 | 138 | 145 |
| WA,E | 445 | 54 | 4 | 7 | - | 5 | 41 | 3 | 88 | 41 | 1 | 112 | 1 | 9 | 28 | 49 |
| WA,W | 2,359 | 319 | 21 | 7 | 141 | 15 | 381 | 45 | 338 | 173 | 1 | 281 | 1 | 154 | 268 | 216 |
| GUAM | 21 | 1 | - | - | - | 1 | 2 | - | 8 | - | - | - | - | 1 | - | 2 |
| NMI | 35 | 3 | - | - | - | 6 | 7 | 3 | 9 | 2 | - | 1 | 1 | - | 5 | 2 |
| **10TH** | 7,593 | 1,315 | 97 | 13 | 2 | 246 | 742 | 133 | 1,850 | 829 | 6 | 1,043 | 18 | 415 | 391 | 593 |
| CO | 2,370 | 390 | 26 | 3 | 2 | 44 | 172 | 47 | 415 | 270 | 4 | 518 | 4 | 154 | 89 | 236 |
| KS | 1,080 | 174 | 9 | 3 | - | 45 | 112 | 13 | 274 | 89 | - | 146 | 4 | 45 | 90 | 71 |
| NM | 906 | 143 | 15 | - | - | 50 | 104 | 13 | 370 | 70 | 1 | 89 | 3 | 15 | 31 | 42 |
| OK,N | 609 | 132 | 5 | - | - | 14 | 48 | 4 | 149 | 53 | - | 53 | - | 19 | 60 | 64 |
| OK,E | 317 | 52 | 5 | 1 | - | 27 | 35 | 17 | 86 | 49 | - | 28 | 1 | 19 | 13 | 13 |
| OK,W | 1,226 | 199 | 15 | 2 | - | 31 | 123 | 19 | 287 | 239 | 1 | 111 | 4 | 44 | 42 | 59 |
| UT | 937 | 163 | 19 | 1 | - | 11 | 102 | 15 | 236 | 41 | - | 70 | 1 | 57 | 57 | 95 |
| WY | 248 | 62 | 3 | 3 | - | 24 | 46 | 5 | 33 | 18 | - | 28 | 1 | 62 | 9 | 13 |
| **11TH** | 21,003 | 2,933 | 190 | 10 | 214 | 367 | 1,837 | 406 | 3,879 | 2,192 | 42 | 3,272 | 125 | 1,042 | 2,916 | 1,578 |
| AL,N | 2,231 | 303 | 10 | 2 | 4 | 66 | 273 | 45 | 569 | 199 | 7 | 412 | 24 | 46 | 189 | 105 |
| AL,M | 1,077 | 166 | 8 | - | - | 29 | 83 | 18 | 201 | 115 | 2 | 334 | 1 | 10 | 27 | 60 |
| AL,S | 611 | 152 | 6 | - | 11 | 32 | 80 | 20 | 103 | 48 | 1 | 85 | 1 | 16 | 27 | 19 |
| FL,N | 1,130 | 132 | 3 | - | - | 20 | 55 | 17 | 243 | 213 | 3 | 303 | 10 | 42 | 37 | 41 |
| FL,M | 5,280 | 673 | 30 | 3 | 25 | 62 | 483 | 64 | 911 | 698 | 17 | 625 | 35 | 275 | 52 | 371 |
| FL,S | 5,451 | 877 | 24 | - | 170 | 31 | 524 | 93 | 766 | 338 | 8 | 384 | 26 | 315 | 1,008 | 527 |
| GA,N | 3,352 | 466 | 69 | 4 | 4 | 70 | 222 | 118 | 747 | 251 | 1 | 583 | 26 | 277 | 1,368 | 350 |
| GA,M | 906 | 73 | 10 | 1 | - | 30 | 55 | 12 | 200 | 124 | 1 | 257 | 2 | 45 | 167 | 50 |
| GA,S | 965 | 91 | 30 | - | - | 27 | 62 | 19 | 139 | 206 | 2 | 289 | - | 16 | 41 | 55 |

* FELA = FEDERAL EMPLOYERS' LIABILITY ACT.

# EXHIBIT I

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,077 | 1,190 | 1,797 | 1,362 | 2,028 | 1,004 | | U.S. | Circuit |
| | Terminations | | 1,419 | 1,448 | 1,516 | 1,507 | 1,478 | 1,020 | | | |
| | Pending | | 1,501 | 1,853 | 2,085 | 1,836 | 1,999 | 1,477 | | | |
| | % Change in Total Filings | Over Last Year | | -9.5 | | | | | | 74 | 6 |
| | | Over Earlier Years | | | -40.1 | -20.9 | -46.9 | 7.3 | | 34 | 3 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 1.9 | 3.1 | .0 | | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 270 | 298 | 449 | 340 | 507 | 251 | | 82 | 5 |
| | | Civil | 233 | 264 | 414 | 306 | 462 | 233 | | 73 | 5 |
| | | Criminal Felony | 30 | 28 | 29 | 25 | 38 | 18 | | 88 | 5 |
| | | Supervised Release Hearings** | 7 | 6 | 6 | 9 | 7 | - | | 87 | 4 |
| | Pending Cases | | 375 | 463 | 521 | 459 | 500 | 369 | | 48 | 5 |
| | Weighted Filings** | | 367 | 422 | 534 | 424 | 516 | 379 | | 71 | 4 |
| | Terminations | | 355 | 362 | 379 | 377 | 370 | 255 | | 69 | 4 |
| | Trials Completed | | 15 | 20 | 19 | 23 | 18 | 16 | | 65 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.3 | 9.4 | 9.1 | 8.3 | 9.8 | 8.0 | | 56 | 2 |
| | | Civil** | 16.8 | 10.9 | 14.0 | 11.2 | 8.2 | 12.6 | | 91 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 23.5 | 26.0 | 24.0 | 22.5 | 21.0 | | 49 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 142 | 156 | 65 | 66 | 99 | 77 | | | |
| | | Percentage | 10.6 | 9.1 | 3.4 | 3.9 | 5.4 | 5.5 | | 76 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.2 | 1.3 | 1.1 | 1.3 | | | |
| | Jurors | Avg. Present for Jury Selection | 39.60 | 39.82 | 38.50 | 34.98 | 33.84 | 32.68 | | | |
| | | Percent Not Selected or Challenged | 24.1 | 22.8 | 20.9 | 24.0 | 24.4 | 19.9 | | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 930 | 32 | 6 | 233 | 12 | 6 | 20 | 76 | 52 | 160 | 132 | 51 | 150 |
| Criminal* | 117 | - | 26 | 14 | 29 | 20 | - | 2 | 5 | 10 | 2 | - | 9 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **TEXAS SOUTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing |
| | | | | | | | | | U.S. / Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 13,469 | 14,887 | 15,102 | 13,487 | 12,762 | 10,919 | U.S. | Circuit |
| | Terminations | | 14,632 | 14,413 | 14,082 | 12,862 | 12,340 | 10,583 | | |
| | Pending | | 8,757 | 10,054 | 9,634 | 8,589 | 7,904 | 7,512 | | |
| | % Change in Total Filings | Over Last Year | | -9.5 | | | | | 74 | 7 |
| | | Over Earlier Years | | | -10.8 | -.1 | 5.5 | 23.4 | 12 | 2 |
| Number of Judgeships | | | 19 | 19 | 19 | 19 | 19 | 19 | | |
| Vacant Judgeship Months** | | | 3.8 | .3 | .0 | .0 | 14.0 | 21.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 709 | 783 | 794 | 709 | 672 | 575 | 5 | 2 |
| | | Civil | 340 | 377 | 433 | 408 | 405 | 357 | 40 | 7 |
| | | Criminal Felony | 277 | 326 | 295 | 254 | 220 | 218 | 3 | 2 |
| | | Supervised Release Hearings** | 92 | 80 | 66 | 47 | 47 | - | 4 | 1 |
| | Pending Cases | | 461 | 529 | 507 | 452 | 416 | 395 | 23 | 5 |
| | Weighted Filings** | | 536 | 600 | 629 | 609 | 585 | 520 | 17 | 5 |
| | Terminations | | 770 | 759 | 741 | 677 | 649 | 557 | 7 | 2 |
| | Trials Completed | | 23 | 25 | 27 | 32 | 41 | 44 | 28 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 4.9 | 4.7 | 4.5 | 4.6 | 4.8 | 4.5 | 3 | 1 |
| | | Civil** | 8.6 | 9.8 | 6.8 | 7.2 | 7.1 | 9.0 | 26 | 4 |
| | From Filing to Trial** (Civil Only) | | 18.8 | 15.3 | 19.5 | 20.8 | 18.9 | 18.5 | 15 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 229 | 176 | 61 | 65 | 99 | 169 | | |
| | | Percentage | 5.0 | 3.3 | 1.1 | 1.2 | 1.9 | 3.4 | 37 | 7 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.2 | 1.2 | 1.2 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 44.39 | 48.14 | 55.44 | 49.36 | 47.25 | 46.68 | | |
| | | Percent Not Selected or Challenged | 37.4 | 36.6 | 42.7 | 40.8 | 41.7 | 41.8 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6467 | 149 | 296 | 1835 | 95 | 64 | 347 | 1590 | 670 | 338 | 561 | 11 | 511 |
| Criminal* | 5245 | 495 | 557 | 3679 | 182 | 161 | 15 | 24 | 6 | 13 | 46 | 33 | 34 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\** See "Explanation of Selected Terms."

# EXPLANATION OF SELECTED TERMS

## Vacant Judgeship Months

"Vacant judgeship months" is the total number of months that vacancies occurred in any judgeship position in a circuit or district. On September 30, 2006, a total of 31 vacancies existed in the district courts, and 14 vacancies existed in the U.S. courts of appeals (excluding the Federal Circuit).

## Visiting Judge Activity

Court profiles for both the courts of appeals and district courts reflect only caseloads within the circuit/district; the profiles do not address visiting judge activity in other circuits/districts. Detailed data on visiting judge activity can be found in Tables V-1 and V-2 of *Judicial Business of the United States Courts.*

## Supervised Release Hearings

Beginning with *2002 Federal Court Management Statistics,* data on hearings on violations of supervised release are included in the district court profiles. These hearings, which are conducted when defendants violate the terms of supervised release, can result in the modification of conditions or the revocation of supervised release. In addition to providing data for the category of supervised release hearings filed per authorized judgeship, data on supervised release hearings are included in the totals for overall filings and terminations, filings and terminations per authorized judgeship, and weighted filings per authorized judgeship. These changes to the district court profiles were approved by the Judicial Conference Subcommittee on Judicial Statistics.

## Weighted Filings

Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions. The federal Judiciary has employed techniques for assigning weights to cases since 1946. In 2004, the Judicial Resources Committee of the Judicial Conference of the United States approved a new civil and criminal case weighting system proposed by the Federal Judicial Center. On a national basis, weighted filings did not change significantly after the implementation of the new case weights. More than two-thirds of all district courts saw their weighted filings change by 10 percent or less. Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed (e.g., a death-penalty habeas corpus case is assigned a weight of 12.89); and cases demanding relatively little time from judges receive lower weights (e.g., a defaulted student loan case is assigned a weight of 0.031). Probation revocation hearings (both evidentiary and non-evidentiary) are included as part of the weighted filings statistics. For comparative analysis in this report, the totals for weighted civil and criminal filings for prior years have been revised based on the new case weighting system. The weighted totals for criminal defendants include reopenings and transfers. Data on civil cases arising by reopening, remand, and transfer to the district by order of the Judicial Panel on Multidistrict Litigation are not included among the totals for weighted filings.

## Median Times: Civil

"Median times" are the median time intervals between the filing of cases and their disposition. Civil median times exclude data for civil cases involving land condemnation, prisoner petitions, deportation reviews, recovery of overpayments, and enforcements of judgments. Because courts can quickly process cases involving the recovery of overpayments (which primarily address veterans' benefits) and enforcements of judgments (which primarily address student loans), including data on these cases would shorten the civil median times for some courts to the point of giving an inaccurate impression of the time usually required to process a case in the federal courts.

## Median Times: From Filing to Trial

The median time for civil cases from filing to trial is calculated from the date a case was filed to the date trial began. For any reopened civil case resulting in a second completed trial, the median time remains based on the original filing date and the date the trial was completed.

## Civil Cases Over Three Years Old

Data for cases pending three years or more may not match those presented in the Civil Justice Reform Act (CJRA) reports because the profiles presented herein include data for cases on appeal in other courts (i.e., the Supreme Court, courts of appeals, other district courts, and state courts), whereas the CJRA reporting guidelines exclude such data. From 2000 to 2005, data for the Eastern District of Michigan included between 10,000 and 14,000 silicone breast implant cases assigned to one district judge that technically were pending, but effectively were stayed pending the resolution of an appeal in a related bankruptcy matter. On October 6, 2005, an order dismissed the 14,000 breast implant cases pursuant to the *In re Dow Corning Corporation* Bankruptcy Joint Amended Plan of Reorganization which went into effect on June 1, 2004. Since 1999, the three-year-old civil pending caseload in the Middle District of Louisiana has included more than 7,000 cases related to oil refinery explosions. For comparative purposes, any statistical average should exclude these cases.

## Civil and Criminal Felony Filings by Nature of Suit/Offense

Prior to 2005, alphabetical codes corresponded to different offenses and natures of suit. Therefore, data for 2005 and thereafter are not comparable to data for earlier years.

# EXHIBIT J

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Stratos Lightwave, Inc. v. E20 Communications, Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
STRATOS LIGHTWAVE, INC.,
Plaintiff/Counterclaim Defendant,
v.
E20 COMMUNICATIONS, INC.,
Defendant/Counterclaim Plaintiff.
**No. CIV.A. 01-309-JJF.**

March 26, 2002.

Donald F. Parsons, Jr., Mona A. Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, for Stratos Lightwave, Inc., plaintiff.
William J. Wade, Richards, Layton & Finger, Wilmington, for E20 Communications, Inc., defendant.

MEMORANDUM ORDER
FARNAN, District J.
**\*1** Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I.11) filed by Defendant E20 Communications, Inc. ("E20"). For the reasons discussed, the motion will be denied.

BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E20 both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E20 is also incorporated in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E20's accused products is conducted in California, where the majority of

E20's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E20 alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1, and 6,320,878BI. (D.I.1). E20 subsequently filed the instant motion to transfer.

DISCUSSION

By its motion, E20 contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E20 contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E20 further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E20 contends that the Central District of California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E20 contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). [FN1]

> FN1. E20 continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E20 in Delaware

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2

Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

because E20 is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E20, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E20's failure to identify non-party witnesses beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D .I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I.15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

Transfer of a civil action is governed by 28 U.S.C. § 1404(a) which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third Circuit, warrant a transfer.

**\*2** The Third Circuit has instructed that when reviewing a motion to transfer under 28 U.S.C. § 1404(a) district courts must consider, among other things, private [FN2] and public [FN3] interests. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir.1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id.* at 883; *see also Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1920). The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *See Continental Cas. Co. v.*

*American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999).

> FN2. The private interests are:
> (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.
> *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir.1995).

> FN3. The public interests are:
> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.
> *Id.*

### I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte,* 431 F.2d at 25. In the instant case, Stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. *See Continental,* 61 F.Supp.2d at 131 (stating that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. *See Joint Stock Society v. Heublein, Inc.,* 936 F.Supp 177, 187 (D.Del.1996). And the fact that E20 has incorporated in Delaware is a rational and legitimate reason for choosing to sue E20 in Delaware. In fact, E20, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 965 (D.Del.1993). Therefore, Stratos' forum preference, as well as E20's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, the private interests weigh in favor of maintaining this action in Delaware.

II. Public Interests

In the Court's view, none of the public interests weigh in favor of transfer. Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E20 to litigate this action in. Accordingly, the motion to transfer will be denied. FN4

FN4. The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar,* Civil Action No.00-20985 (N.D.Ca.) (the "Methode Case"), and its

resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

\*3 NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E20's Motion To Transfer Venue To The Central District Of California (D.I.11) is *DENIED.*

D.Del.,2002.
Stratos Lightwave, Inc. v. E20 Communications, Inc.
Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.